

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed July 28, 2021**

_____
**United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| GVS TEXAS HOLDINGS I, LLC, *et al.* [1] | Case No. 21-31121-MVL |
| Debtors. | **(Jointly Administered)** |

### FINAL ORDER AUTHORIZING THE USE
### OF CASH COLLATERAL AND GRANTING RELATED RELIEF

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: GVS Texas Holdings I, LLC (7458); GVS Texas Holdings II, LLC (1225); GVS Portfolio I, LLC (6441); GVS Portfolio I B, LLC (7171); GVS Portfolio I C, LLC (3093); WC Mississippi Storage Portfolio I, LLC (0423); GVS Nevada Holdings I, LLC (4849); GVS Ohio Holdings I, LLC (6449); GVS Missouri Holdings I, LLC (5452); GVS New York Holdings I, LLC (5858); GVS Indiana Holdings I, LLC (3929); GVS Tennessee Holdings I, LLC (5909); GVS Ohio Holdings II, LLC (2376); GVS Illinois Holdings I, LLC (9944); and GVS Colorado Holdings I, LLC (0408). The location of the Debtors' service address is: 814 Lavaca Street, Austin, Texas 78701.

Upon the motion ("Motion")[2] of GVS Texas Holdings I, LLC and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") for entry of a final order (this "Final Order") (i) authorizing the Debtors' use of Cash Collateral in accordance with the Budget and subject to the Budget Variance (as defined below); (ii) authorizing the Debtors to provide adequate protection on the terms set forth herein; (iii) vacating and modifying the automatic stay to the extent necessary to implement and effectuate the relief set forth herein; and granting related relief, pursuant to sections 105, 361, 362, 363, and 507 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"); and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this matter being a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and the Court being able to issue a final order consistent with Article III of the United States Constitution; and venue of this proceeding and the Motion in this district being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and upon consideration of the record, and the evidence submitted or proffered at the hearing on the interim order (the "Interim Hearing") and/or this Final Order (the "Final Hearing"); and the relief requested in the Motion being in the best interests of the Debtors' estates, their creditors and other parties in interest; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:**

A.     _Disposition_. The relief requested in the Motion is granted on a final basis in accordance with the terms of, and to the extent set forth in, this Final Order. Any and all

---

[2] Each capitalized term used but not otherwise defined herein shall have the meaning ascribed to it in the Motion.

objections to the Motion with respect to the entry of this Final Order that have not been withdrawn, waived or resolved, and all reservations of rights, are hereby denied and overruled on the merits, except as may be set forth herein. This Final Order shall become effective immediately upon its entry.

B.  <u>Jurisdiction</u>. This Court has core jurisdiction over these chapter 11 cases, this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334 and the *District Court's Miscellaneous Order No. 33, Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc dated August 3, 1984*. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.  <u>Notice</u>. Under the circumstances of these cases, proper, timely, adequate and sufficient notice of the Motion, the Interim Hearing, the Interim Order, the Final Hearing, and this Final Order has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, and no other or further notice of the Motion, the Interim Hearing, the Interim Order, the Final Hearing, or this Final Order shall be required.

D.  <u>Necessity of Relief Requested</u>. The Debtors have an immediate and critical need to use the Mortgage Loan Collateral (including Cash Collateral) in order to permit, among other things, the orderly continuation of the operation of their businesses, including through the payment of employee wage costs, payment of insurance and taxes on the real property, payment of vendors and other general unsecured creditors for necessary services, payment of repair and other capital expenditure costs at the properties, and the administration of their chapter 11 cases, in each such case in accordance with the terms of this Final Order, including in accordance with the Budget (as defined below). The access of the Debtors to sufficient working capital and liquidity through the use of Cash Collateral is necessary to preserve and maintain the going

concern value of the Debtors' estates and is vital to the Debtors' reorganization efforts. Without the use of Cash Collateral, the Debtors would not have sufficient liquidity to continue business operations or administer these chapter 11 cases. Entry of this Final Order will preserve the assets of each Debtors' estate and its value and is in the best interests of the Debtors, their creditors, and their estates. The Adequate Protection provided herein, together with the other benefits and privileges provided herein, are consistent with and authorized by the Bankruptcy Code. Absent authorization to immediately access and use Cash Collateral, the Debtors, the estates, and their creditors would suffer immediate and irreparable harm.

E.  <u>Acknowledgement of Liens and Claims</u>. The Debtors acknowledge and confirm the validity, priority, and enforceability of, and waive any right to contest, the Secured Lender's liens and claims against the Debtors pursuant to the Mortgage Loan.

F.  <u>Acknowledgement of Oversecured Status and Default</u>. Debtors acknowledge and confirm that Senior Lender is sufficiently oversecured to allow for (1) the payment of post-petition interest payments to Senior Lender at the contractual, non-default rate, and (2) the reimbursement of Senior Lender's post-petition professional fees and expenses. Further, Debtors acknowledge that the Mortgage Loan is in default and that default interest is due and owing, and currently accruing, pursuant to the terms of the Mortgage Loan. The Debtors shall have thirty (30) days following the entry of this Order to contest the allowance of Senior Lender's default interest.

G.  <u>Budget</u>. Attached hereto as <u>Exhibit A</u> is the Budget, which is an integral part of this Final Order. The Debtors represent and warrant that the Budget includes and contains the Debtors' best estimate of all operational receipts and disbursements and all administrative costs, fees, and other expenses during the period covered by the Budget.

H.      Exercise of Debtors' Business Judgment.  Based on the Motion, the First Day

Declaration and the record presented to the Court at the Interim Hearing and Final Hearing, the

terms on which the Debtors may continue to use the Mortgage Loan Collateral (including Cash

Collateral) pursuant to this Final Order are fair and reasonable and reflect the Debtors' exercise

of prudent business judgment consistent with their fiduciary duties.

Based on the foregoing, the Motion, the First Day Declaration and the record made

before the Court at the Interim Hearing and Final Hearing, and good and sufficient cause

appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.      Motion Granted.  The Motion is GRANTED, and the Debtors' use of Cash

Collateral and other Mortgage Loan Collateral on a final basis is authorized, subject to the terms

and conditions of this Final Order.  Any objections, reservations of rights, and/or other

statements are hereby denied and overruled.

2.      Authorization to Use Cash Collateral.  The Debtors are hereby authorized, subject

to the terms and conditions of this Final Order, to use all Cash Collateral to (a) fund the tax

reserve account, the insurance reserve account, and the capital reserve account in the ordinary

course of business and as set forth in the Mortgage Loan; (b) make adequate protection payments

to Senior Lender equal to interest being paid at the contract, non-default rate (default interest to

accrue), plus reimbursement of all of Senior Lender's reasonable post-petition professional fees

and expenses; and (c) satisfy other post-petition operating and reorganization expenses of the

Debtors' business, including but not limited to, (i) operational costs, employee wages, insurance,

utilities, and tax costs; (ii) allowed fees and expenses incurred by professionals retained under

sections 327, 328, 363 and/or 1102 of the Bankruptcy Code by the Debtors and any statutory

committees appointed in these chapter 11 cases; (iii) payments to Robert Albergotti in his capacity as lead independent director to the Debtors, consistent with the terms of that certain appointment letter dated June 16, 2021; and (iv) management fees to Great Value Storage, LLC ("Great Value") according to the terms set forth in the Management Agreements by and between each of the PropCos and Great Value, including through the true-up of management fees owed but not paid in July (*i.e.*, $15,238.36); provided that Senior Lender is granted the adequate protection as hereinafter set forth. The Debtors are also authorized, subject to the terms and conditions of this Final Order, to use the Cash Collateral contained in certain of the reserve accounts as set forth more fully in Paragraph 6(a)–(c) below.

3.     Budget.  The projected liquidity needs of the Debtors in these chapter 11 cases through October 2021 are set forth in the cash flow forecast attached hereto as Exhibit A (the "Budget").  The Debtors' use of Cash Collateral is subject to and governed by the terms of the Budget, and Senior Lender shall have no obligation to permit the use of Cash Collateral, and the Debtor shall have no authority to use Cash Collateral hereunder other than in accordance with the Budget, subject to the Budget Variance (as defined below), and as set forth in this Final Order.  Starting August 24, 2021 and continuing on the day that is five (5) business days before the end of every month thereafter, the Debtors shall provide Senior Lender, the U.S. Trustee, and the statutory committee appointed by the U.S. Trustee, if any (the "Committee") with an updated Budget (which shall include the prior month of actual results) (the "Proposed Budget").  Each Proposed Budget shall become the Budget seven (7) days after delivery by the Debtors to Senior Lender, the U.S. Trustee, and the Committee, if any, unless an objection is filed by the Senior Lender, U.S. Trustee, or the Committee, if any, in which case the Proposed Budget shall become the Budget upon further order of the Court .

4. <u>Budget Variance</u>. As of any date for which a Variance Report (as defined below) is delivered pursuant to Paragraph 10(b) of this Final Order, the Debtors shall not permit (a) their actual disbursements for non-operating expenses (*i.e.*, adequate protection payments, lead independent director fees and expenses, and administrative expenses incurred in these chapter 11 cases, including professional fees and fees payable to the Office of the United States Trustee for Region 6 (the "<u>U.S. Trustee</u>")) to be greater than 115% of the amount shown for "Non-Operating Cash Disbursements" in the Budget for the applicable Test Period (the "<u>Budget Variance</u>").[3] Operating expenses shall conform to the terms and conditions of 2021 budget provided by the PropCos to Senior Lender; <u>provided</u> <u>that</u> the Budget and Proposed Budget shall not constitute a hard cap on professional fees (for sake of clarity, professional fees in excess of the Budget and the Carveout shall not prime Senior Lender's lien nor be funded by Senior Lender's cash collateral) or fees payable to the office of the U.S. Trustee as necessary to administer these chapter 11 cases.

5. <u>Cash Management</u>. The Lockbox Account will remain in place and continue to be funded and controlled as provided for in the Mortgage Loan, Security Instrument, DACA, and CMA, except as set forth herein. Starting on August 6, 2021 and occurring monthly on each Monthly Payment Date thereafter, Senior Lender shall apply the funds from the Lockbox Account to the items identified in Paragraph 2(a)–(c), in the order set forth therein, all in accordance with the Budget and other conditions, as follows: (a) fund the tax reserve expense account, the insurance reserve expense account, and the capital reserve account in the ordinary course of business and as set forth in the Mortgage Loan;[4] (b) fund the adequate protection

---

[3] "<u>Test Period</u>" shall mean, with respect to each of "Non-Operating Cash Disbursements," the the thirty or thirty-one day period (as applicable) ending the last business day prior to the next Monthly Payment Date.

[4] Notwithstanding anything else herein, Senior Lender is authorized to fund tax and insurance payments out of the tax and insurance reserve accounts in the ordinary course of business.

payment to Senior Lender set forth in Paragraph 7(e) below, including such amounts as are necessary to pay reasonable post-petition professional fees and expenses; (c) fund the post-petition operational expenses of the Debtors, as set forth on the Budget and subject to the Budget Variance, including but not limited to (i) operational costs, employee wages, insurance, utilities, and tax costs, (ii) allowed fees and expenses incurred by professionals retained under sections 327, 328, 363 and/or 1102 of the Bankruptcy Code by the Debtors and any statutory committees appointed in these chapter 11 cases, which shall be held in a professional fee reserve subaccount to the DIP Account, (iii) payments to Robert Albergotti in his capacity as lead independent director to the Debtors, consistent with the terms of that certain appointment letter dated June 16, 2021, which requires payment in advance, and (iv) management fees to Great Value. The amount remaining following application of the funds on the Monthly Payment Date as set forth above shall be transferred to the Cash Reserve (as defined below) all as set forth more fully in Paragraph 6(a) below. To the extent there are insufficient funds in the Lockbox Account to fund each of the amounts above, then, subject to the Budget, Senior Lender shall transfer on the Monthly Payment Date such amounts held in the Cash Reserve (as defined below) as are necessary to fund the items above.

6. <u>Reserves</u>.

(a) *Cash Reserve*. Senior Lender shall maintain a cash reserve in the name of the Debtors but subject in all respects to the continuing security interest of the Senior Lender (the "<u>Cash Reserve</u>") for the course of these chapter 11 cases. Except as provided herein, Senior Lender shall not apply the Cash Reserve to the debt or to any other amounts. Nothing herein shall prejudice Debtors' ability to use the amounts in the Cash Reserve for plan confirmation purposes and/or in connection with a sale under section 363 of the Bankruptcy Code.

(b)  *Repairs Reserve*.  The amounts contained in the repairs reserve shall be used by the Debtors to complete the property repairs (the "Required Repairs") identified in Exhibit A to the June 4, 2021 letter from Senior Lender to the Debtors or otherwise provided for in the Budget.  The amounts contained in the repairs reserve shall remain with Senior Lender, and Senior Lender shall disburse to Debtors, or directly to third-party service providers, amounts from the repairs reserve necessary to fund such repairs.  .

(c)  *Capital Expenditure Reserve*.  The amounts contained in the capital expenditure reserve may be used to complete the Required Repairs, subject to the terms and conditions set forth in the "Repairs Reserve" section above.

7.  Adequate Protection of Senior Lender.  Senior Lender is entitled, pursuant to sections 361, 362, 363(e) and 507 of the Bankruptcy Code, to adequate protection of its interests in the Mortgage Loan Collateral (including the Cash Collateral), in an amount equal to the aggregate actual diminution in the value of Senior Lender's interests in the Mortgage Loan Collateral (including Cash Collateral) from and after the Petition Date, if any, for any reason provided for under the Bankruptcy Code, including, without limitation, any such diminution resulting from the depreciation, sale, lease, or use by the Debtors (or any other decline in value) of the Mortgage Loan Collateral (including Cash Collateral, whether pursuant to the Budget or otherwise), the Carve-Out, or the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (collectively, the "Adequate Protection Claim"); provided that the avoidance of any of Senior Lender's interests in Mortgage Loan Collateral shall not constitute diminution in the value of such interests in the Mortgage Loan Collateral.  As adequate protection of the Adequate Protection Claim, Senior Lender is hereby granted the following (collectively, the "Adequate Protection Obligations"):

(a)    *Adequate Protection Liens*.  Pursuant to sections 361 and 363(e) of the

Bankruptcy Code, as adequate protection against any actual diminution (if any) in value of the

Mortgage Loan Collateral (including Cash Collateral), effective as of the Petition Date and

perfected without the need for execution by the Debtors or the recordation or other filing by

Senior Lender of security agreements, control agreements, pledge agreements, financing

statements, mortgages or other similar documents, or the possession or control by Senior Lender

of any Adequate Protection Collateral (as defined below), Senior Lender is hereby granted,

solely to the extent of any actual diminution in value, if any, of the Mortgage Loan Collateral,

valid, binding, continuing, enforceable, fully perfected, first priority senior replacement security

interests in liens on (collectively, the "Adequate Protection Liens") any and all tangible and

intangible pre- and post-petition property of the Debtors, whether existing before, on, or after the

Petition Date, together with any proceeds thereof, including, without limitation, any and all cash

and any investment of such cash, inventory, accounts receivable, other rights to payment whether

arising before or after the Petition Date, contracts, properties, plants, fixtures, machinery,

equipment, general intangibles, documents, instruments, securities, chattel paper, interests in

leaseholds, real properties, deposit accounts, securities accounts, patents, copyrights, trademarks,

trade names, rights under license agreements and other intellectual property, wherever located,

and the proceeds, products, rents and profits of the foregoing, whether arising under section

552(b) of the Bankruptcy Code or otherwise, of all the foregoing (collectively, the "Adequate

Protection Collateral").  Notwithstanding the foregoing, the Adequate Protection Liens shall not

attach to: (i) the proceeds of claims or causes of action arising under Sections 502(d), 544, 545,

547, 548, 549, 550, 551, or 553 of the Bankruptcy Code (collectively, the "Avoidance Actions");

(ii) to the membership interest or stock pledged by GVS Portfolio I, LLC or GVS Portfolio I B,

LLC to Mezz 1 or Mezz 2 Lender (each as defined below), respectively; (iii) to any of the collateral in which the Mezz 1 Lender received a first-priority security interest from GVS Portfolio I, LLC pursuant to the terms of the Pledge and Security Agreement (Mezzanine 1 Loan), dated as of November 30, 2018; or (iv) to any of the collateral in which the Mezz 2 Lender received a first-priority security interest from GVS Portfolio I B, LLC pursuant to the terms of the Pledge and Security Agreement (Mezzanine 2 Loan), dated as of November 30, 2018.

(b)      The Adequate Protection Liens shall be junior only to (i) the Carve-Out, and (ii) any other valid, enforceable, unavoidable, and properly perfected liens on the Mortgage Loan Collateral existing on the Petition Date with priority over the Mortgage Loan pursuant to the Mortgage Loan documents.  The Adequate Protection Liens shall otherwise be senior to all other security interests in, liens on, or claims against any of the Adequate Protection Collateral.

(c)      The Adequate Protection Liens shall be enforceable against and binding upon the Debtors, their estates and any successors thereto, including, without limitation, any trustee or other estate representative appointed in the Debtors' chapter 11 cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Debtors' chapter 11 cases (collectively, "Successor Cases").  The Adequate Protection Liens shall not be subject to sections 510, 549, or 550 of the Bankruptcy Code.  Nor shall any lien or security interest avoided and preserved for the benefit of any of the Debtors' estates pursuant to section 551 of the Bankruptcy Code be made *pari passu* with or senior to the Adequate Protection Liens.

(d)      *Adequate Protection Superpriority Claims*.  The Adequate Protection Obligations due to Senior Lender shall constitute allowed superpriority administrative expense claims against the Debtors in the amount of any actual diminution (if any) in value of the

Mortgage Loan Collateral (including Cash Collateral) as provided in section 507(b) of the Bankruptcy Code (the "Adequate Protection Superpriority Claims"), subject and subordinate only to the Carve-Out.

(e)     *Payment of Senior Lender's Expenses*.   Senior Lender shall apply the funds in the Lockbox Account to the items identified in Paragraph 5(a)–(c) above on the Monthly Payment Date; provided Senior Lender shall submit to the Debtors and the U.S. Trustee within ten (10) business days after the Monthly Payment Date invoices for the fees, costs, and charges due and owing pursuant to the Mortgage Loan that were paid during the month preceding the Monthly Payment Date and/or received accrued prior to Monthly Payment Date. Such invoices shall include the time detail of services provided, subject to redaction of privileged, confidential, or proprietary information.   The Debtors, U.S. Trustee, and the Committee shall have ten (10) days following their receipt of such invoices to file objections with the Court, with notice to Senior Lender, with respect to the reasonableness of the fees and expenses included therein.  A hearing will be conducted at the next available regularly scheduled omnibus hearing in the Debtors' chapter 11 cases on any objection to Senior Lender's fees, and the Senior Lender shall disgorge any disallowed previously paid amount within ten (10) days after any order of the Court disallowing such previously paid Senior Lender fees or expenses.

(f)     *Accrual of Default Interest*.  All default interest owing under the Mortgage Loan shall accrue monthly during these chapter 11 cases.  Any objection to the allowance of default interest to the Senior Lender, if any, must be made within thirty (30) days of the date of this Order.

(g)     *Application of Cash Reserve*.   Senior Lender shall be entitled to automatically apply all amounts held in the Cash Reserve to the amounts due under the Mortgage

Loan upon the earlier of (i) the successful exercise of loan default remedies by either of (x) the lender(s) (or their successors thereto) (the "Mezz 1 Lender") on the $103 million mezzanine loan made to GVS Portfolio I, LLC ("Mezz 1"), or (y) the lender(s) (or their successors thereto) (the "Mezz 2 Lender") on the consolidated $82 million mezzanine loan made to GVS Portfolio I B, LLC ("Mezz 2"); (ii) dismissal of the Debtors' bankruptcy cases; or (iii) further order of the Court.

8.     <u>Tax Liens</u>. Notwithstanding any other provisions included in this Final Order, the Interim Order, or any agreements approved hereby, any statutory liens of the Texas ad valorem tax authorities (collectively, the "<u>Tax Liens</u>") and/or right to payment from the proceeds of the sale of their collateral shall not be primed by nor made subordinate to any liens or rights that are acknowledged and/or granted to any party herein (or in any other order) to the extent such Tax Liens are valid, senior, perfected, and unavoidable, and all parties' rights to object to the priority, validity, amount, and extent of the claims and liens asserted by the Texas ad valorem tax authorities are fully preserved.

9.     <u>Portal Access</u>. As soon as reasonably practical, but in any case no later than fourteen (14) business days following entry of the Final Order, Senior Lender shall restart portal access, such that Debtors can monitor real-time the amounts being deposited into the Lockbox Account.

10.     <u>Reporting</u>. The Debtors shall comply with the reporting requirements set forth in the Mortgage Loan, and the Debtors shall provide the following additional reporting to Senior Lender:

(a)     Starting September 6, 2021 and on or before each subsequent Monthly Payment Date thereafter, a report (each a "<u>Variance Report</u>"), in each case certified by the chief

executive officer, chief financial officer, or lead director of the Board of Directors, (i) for the funds disbursed on the immediately precedent Monthly Payment Date, the actual operating expenses paid from the disbursement broken down by line item; and (ii) the variances (as a percentage) of the amounts set forth in clause (i) from the amounts set forth in the Budget; and

(b)     In addition to, and without limiting, whatever rights to access Senior Lender has under the Mortgage Loan, upon reasonable notice, at reasonable times during normal business hours, the Debtors shall cause their representatives and agents to make themselves reasonably available to speak with the representatives and agents of Senior Lender.

11.     <u>Requests for Further Adequate Protection</u>.  Nothing in this Final Order shall waive any right of Senior Lender to request that the Court provide additional or further protection of their interests in the Mortgage Loan Collateral (including Cash Collateral) or to seek further or additional adequate protection in the event Senior Lender contends that the adequate protection provided herein is inadequate, or the ability of the Debtors or any other party in interest to oppose any such relief.

12.     <u>Modification of Automatic Stay</u>.  The automatic stay under section 362(a) of the Bankruptcy Code is hereby modified to the extent necessary to effectuate all of the terms and provisions of this Final Order, including, without limitation, to: (a) permit the Debtors to grant the Adequate Protection Liens and Adequate Protection Superpriority Claims; (b) permit the Debtors to perform such acts as Senior Lender may request to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to Senior Lender under this Final Order; (d) authorize the Debtors to pay, and Senior Lender to retain and apply, any payments made in accordance with the terms of this Final Order; and (e) permit the

Senior Lender, upon the occurrence of the Termination Date (as defined below) and following notice and hearing as set forth herein, to exercise all rights and remedies provided for hereunder.

13. <u>Perfection of Adequate Protection Liens.</u>

(a) Senior Lender is hereby authorized, but not required, to file or record (and to execute in the name of the Debtors, as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing statements, trademark filings, copyright filings, patent filings, mortgages, deeds of trust, notices of lien or similar instruments in any jurisdiction, or take possession of or control over cash or securities, or take any other action in order to validate and perfect the Adequate Protection Liens. Whether or not Senior Lender shall, in its sole discretion, choose to file such financing statements, trademark filings, copyright filings, patent filings, mortgages, deeds of trust, notices of lien or similar instruments, or take possession of or control over any cash, securities or any other property of the Debtors, or take any action that otherwise may be required under federal, state or local law in any jurisdiction to validate and perfect a security interest or lien, in any such case, the Adequate Protection Liens shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute, or subordination (subject to the priorities set forth in this Final Order), at the time and on the date of entry of this Final Order or thereafter. Upon the reasonable request of Senior Lender, each of Senior Lender and the Debtors, without any further consent of any party, is authorized to take, execute, deliver and file such instruments (in each case, without representation or warranty of any kind) to enable Senior Lender to further validate, perfect, preserve and enforce the Adequate Protection Liens. All such documents will be deemed to have been recorded and filed as the entry of this Final Order.

(b)     A certified copy of this Final Order (or the notice of the filing hereof) may, in the discretion of Senior Lender, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, deeds of trust, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Final Order or notice for filing and/or recording, as applicable.   The automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit Senior Lender to take all actions, as applicable, referenced in this subparagraph (b) and the immediately preceding subparagraph (a).

14.     <u>Termination of Cash Collateral Authorization</u>.

(a)     Unless otherwise ordered by the Court, the Debtors' authority to use Cash Collateral shall expire on the earlier of (i) the conversion of the Debtors' cases to cases under chapter 7 of the Bankruptcy Code; (ii) the dismissal of PropCos' chapter 11 bankruptcy cases; (iii) the granting to any other claim superpriority status or a lien equal or superior to Senior Lender's prepetition liens or liens granted pursuant to the Final Order, other than the Carve-Out, "Permitted Liens" under the Mortgage Loan, and any senior Tax Liens, without court order or Senior Lender's consent; (iv) the entry of an order reversing, staying, or amending the Final Order; (v) the successful exercise of loan default remedies by either of Mezz 1 or Mezz 2; or (vi) the Debtors' failure to comply with the terms of this Final Order.   Except as set forth below, the occurrence of any event in the preceding sentence shall be considered an event of default (the "<u>Event of Default</u>").   For the purposes of this Final Order, the date following the occurrence of an Event of Default shall be known as the "<u>Termination Date</u>."

(b)     With respect to an event described in Paragraph 14(a)(vi) above, an Event of Default shall not exist until Senior Lender provides the Debtors, the U.S. Trustee, the

Committee, if any, and counsel for certain of the Texas ad valorem tax authorities[5] five (5) business days' notice of such event (the "Notice Period"), with an opportunity for the Debtors to cure such event during the Notice Period before the event becomes an Event of Default.

15. <u>Carve-Out</u>.

(a) The prepetition liens held by Senior Lender, the Adequate Protection Liens, and the Superpriority Claim shall be subject to and subordinate to a Carve-Out. For purposes hereof, the "<u>Carve-Out</u>" means an amount equal to the sum of (i) amounts payable pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the clerk of the Court; (ii) subject to compliance with the Budget and any Budget Variance, accrued but unreimbursed post-petition costs and expenses of administering the Debtors' chapter 11 cases incurred prior to the Event of Default, including professional fees; and (iii) up to $500,000 in accrued but unreimbursed post-petition costs and expenses of administering the Debtors' chapter 11 cases, including the professional fees of the Debtors and the Committee, if any.

(b) Notwithstanding anything to the contrary herein, the Carve-Out shall be senior to all liens and claims granted under this Final Order, including the Adequate Protection Liens, the Adequate Protection Superpriority Claims and any and all other liens or claims securing the Mortgage Loan.

16. <u>Payments Free and Clear</u>. Subject only to the Carve-Out, any and all payments or proceeds remitted to Senior Lender pursuant to the provisions of this Final Order, shall be received free and clear of any claim, charge, assessment or other liability. For the avoidance of doubt, the foregoing shall not include any claim or charge arising out of or based on, directly or

---

[5] Notice shall be provided via e-mail to the following counsel for certain of the Texas ad valorem tax authorities: (a) Laurie A. Spindler, Linebarger Goggan Blair & Sampson, LLP (Laurie.Spindler@lgbs.com); (b) Melissa E. Valdez, Perdue, Brandon, Fielder, Collins & Mott, L.L.P. (mvaldez@pbfcm.com); and (c) Tara LeDay, McCreary, Veselka, Bragg & Allen, P.C. (tleday@mvbalaw.com).

indirectly, section 506(c) of the Bankruptcy Code or the "equities of the case" exception of section 552(b) of the Bankruptcy Code.

17.    <u>Effect of Stipulations on Third Parties</u>.  Each of the Debtors' admissions and agreements contained in this Final Order shall be binding upon each of the Debtors and any successor(s) thereto (including, without limitation, any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors) under all circumstances and for all purposes.  Nothing in this Final Order vests or confers on any Person (as defined in the Bankruptcy Code), including any non-statutory committees appointed or formed in these cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, claims or causes of action relating to the Mortgage Loan or the Collateral.

18.    <u>Rights of Third Parties in the Mortgage Loan Collateral</u>.  Nothing in this Final Order shall be held to grant any third parties rights in or to the Mortgage Loan Collateral (including Cash Collateral) and no third parties other than Senior Lender and the Texas ad valorem taxing authorities are found to have any rights in the Mortgage Loan Collateral (including Cash Collateral).

19.    <u>Binding Effect of Final Order</u>.  Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Final Order, including all findings herein, shall be binding upon all parties in interest in these chapter 11 cases, including, without limitation, the Debtors, Senior Lender, and all other creditors of the Debtors, along with the respective successors and assigns for each of the foregoing (including any trustee or other fiduciary hereafter appointed in any of the Successor

Cases), and shall inure to the benefit of the Debtors, Senior Lender, and their respective successors and assigns.

20.  <u>Survival</u>.  The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order (a) confirming any plan of reorganization in any of these chapter 11 cases; (b) converting any of these cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of these cases or any Successor Case; or (d) pursuant to which this Court abstains from hearing any of the cases or any Successor Case.  Notwithstanding the entry of any such order, the terms and provisions of this Final Order, including the claims, liens, security interests and other protections granted to Senior Lender pursuant to this Final Order, shall continue in these cases, in any Successor Cases, or following dismissal of these cases or any Successor Cases, and shall maintain their priority as provided by this Final Order until all of the outstanding debt under the Mortgage Loan has been indefeasibly paid in full in cash, notwithstanding the occurrence of the Termination Date or any earlier termination of the Debtors' authorization to use the Collateral (including Cash Collateral).

21.  <u>Effectiveness</u>.  This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon entry hereof. Notwithstanding any Bankruptcy Rule, any Local Bankruptcy Rule, or any Federal Rule of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

22.  <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any party, creditor, equity holder or other entity other than (i) Senior Lender and its servicers, (ii) the Debtors, (iii) the Texas ad valorem taxing authorities, and (iv) the respective successors and assigns of each of the foregoing.

23. <u>Headings</u>. Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order.

24. <u>Rights Reserved</u>. Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly (a) Senior Lender's right to seek any other or supplemental relief in respect of the Debtors, including the right to seek new, different, or additional adequate protection, as applicable, or the Debtors' or any other party in interest's rights to oppose such relief, (b) Debtors' right to seek any other or supplemental relief in respect of Senior Lender, including the right to seek new, different, or additional adequate protection, or use of Cash Collateral, as applicable, or Senior Lender or any other party in interest's rights to oppose such relief; or (c) any of the rights of the Debtors, Senior Lender, or any other party in interest under the Bankruptcy Code or applicable nonbankruptcy law. Nothing in this Final Order is a finding by the Court of the propriety of any payment made hereunder with respect to the property management company. All parties rights with respect thereto are hereby reserved.

25. <u>Bankruptcy Rules</u>. The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

26. <u>Necessary Action</u>. The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Final Order.

27. <u>Retention of Jurisdiction</u>. The Court shall retain jurisdiction to enforce the provisions of this Final Order, and this Court shall retain jurisdiction over all matters pertaining to the implementation, interpretation and enforcement of this Final Order, including following confirmation and consummation of any chapter 11 plan for any one or more of the Debtors.

# # # END OF ORDER # # #

## EXHIBIT A

**Budget**