**<u>EXHIBIT A</u>**

**PROPOSED ORDER**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| GVS TEXAS HOLDINGS I, LLC, *et al.*[1] | Case No. 21-31121-MVL |
| Debtors. | **(Jointly Administered)** |

**ORDER (I) APPROVING BIDDING PROCEDURES IN CONNECTION WITH THE
SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS; (II) APPROVING
PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES; AND (III) GRANTING RELATED RELIEF**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: GVS Texas Holdings I, LLC (7458); GVS Texas Holdings II, LLC (1225); GVS Portfolio I, LLC (6441); GVS Portfolio I B, LLC (7171); GVS Portfolio I C, LLC (3093); WC Mississippi Storage Portfolio I, LLC (0423); GVS Nevada Holdings I, LLC (4849); GVS Ohio Holdings I, LLC (6449); GVS Missouri Holdings I, LLC (5452); GVS New York Holdings I, LLC (5858); GVS Indiana Holdings I, LLC (3929); GVS Tennessee Holdings I, LLC (5909); GVS Ohio Holdings II, LLC (2376); GVS Illinois Holdings I, LLC (9944); and GVS Colorado Holdings I, LLC (0408). The location of the Debtors' service address is: 814 Lavaca Street, Austin, Texas 78701.

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (i) authorizing and approving the bidding procedures attached hereto as **Exhibit 1** hereto (the "Bidding Procedures"); (ii) scheduling a bid deadline, auction date, and sale hearing; (iii) approving the assumption and assignment notice, including the procedures and deadlines set forth therein, attached as **Exhibit 2** hereto (the "Assumption and Assignment Notice"); and (iii) granting related relief, pursuant to sections 105(a), 363, 365, and/or 503 of title 11 of the United States Code (the "Bankruptcy Code"), and rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and this Court having jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and this matter being a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and the Court being able to issue a final order consistent with Article III of the United States Constitution; and venue of this proceeding and the Motion in this district being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the relief requested in the Motion being in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**

1.     The relief requested in the Motion is GRANTED as set forth herein.

2.     The Bidding Procedures, substantially in the form attached hereto as **Exhibit 1** are approved and shall apply with respect to the Auction and any sale of the Assets. The Debtors are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

---

[2] Capitalized terms used but not defined herein shall have the meanings given to them in the Motion.

3. The Bid Protections contained in the Stalking Horse Bid, if any, are hereby approved as reasonable and necessary protections for the Stalking Horse Bidder; provided such Stalking Horse Bid be disclosed in advance of the Auction through a notice filing with the Court.

4. All bids must be submitted in writing so that they are actually received no later than **5:00 p.m. (prevailing Central Time) on March 4, 2022** (the "Bid Deadline").

5. The Auction shall take place on **March 28, 2022 at 10:00 a.m. (prevailing Central Time)** at the offices of Debtors' counsel, Sidley Austin LLP, 2021 McKinney Avenue, Suite 2000, or such other location as may be announced prior to the Auction to the Qualified Bidders, at which time the Court shall be available, if needed.  Contact information for the Court will be provided to counsel for the Debtors.  The Debtors are authorized to hold and conduct the Auction in accordance with the Bidding Procedures.

6. As soon as reasonably practicable after the conclusion of the Auction, the Debtors shall file with the Court and serve upon all Qualified Bidders and parties that have requested notice in these cases a notice identifying the Successful Bidder and the Backup Bidder (the "Notice of Successful Bidder") and post such notice on the Debtors' bankruptcy website (https://cases.omniagentsolutions.com/gvs/).

7. All Contract Objections must be filed with this Court, together with proof of service, on or before 5:00 p.m. (prevailing Central Time) on the date that is at least seven (7) days prior to the Sale Hearing.

8. All objections to the Sale must be filed with this Court, together with proof of service, on or before 5:00 p.m. (prevailing Central Time) on the date that is at least seven (7) days prior to the Sale Hearing.

9.      The Sale Hearing shall be held before this Court on April [●], 2022 at [●]:[●] a.m./p.m. (prevailing Central Time).

10.      The Sale Hearing may be continued, from time to time, without further notice to creditors or other parties in interest other than by announcement of said continuance before this Court on the date scheduled for such hearing or in the hearing agenda for such hearing.

11.      The Assumption and Assignment Notice, substantially in the form attached hereto as **Exhibit 2** is hereby approved in its entirety, including all procedures and deadlines set forth therein.

12.      The Assumption and Assignment Notice and the Debtors' compliance with the procedures set forth therein shall constitute sufficient notice of the Debtors' proposed potential assumption, assignment, and Cure Amount for the assumed agreements, and, except as set forth in the Sale Order, no other or further notice of the potential assumption, assignment, and Cure Amount for the Assumed Agreements shall be required to be provided by the Debtors.

13.      Other than the Stalking Horse Bidder, if applicable, no party submitting an offer or bid for the Assets shall be entitled to any expense reimbursement, break-up, termination, or similar fee or payment.

14.      Except as otherwise provided in the Bidding Procedures or this Order, the Debtors further reserve the right, in the exercise of their reasonable business judgment, to: (i) determine which bidders are Qualified Bidders; (ii) determine which Bids are Qualified Bids; (iii) determine which Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal; (iv) reject any Bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (c) contrary to the best interests of the Debtors and their estates; (v) impose additional

terms and conditions with respect to all potential bidders; (vi) extend the deadlines set forth herein; and (vii) continue or cancel the Auction and/or Sale Hearing in open court without further notice.

15. All persons and entities that participate in the bidding process or the Auction shall be deemed to have knowingly and voluntarily submitted to the exclusive jurisdiction of this Court and consented to entry of a final order by this Court with respect to all matters related to the terms and conditions of the transfer of Assets, the Auction and any transaction contemplated herein.

16. Notwithstanding the possible applicability of Bankruptcy Rules 6004, 6006, 9014 or any other provisions of the Bankruptcy Rules stating the contrary, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry and no automatic stay shall apply to this Order.

17. The Debtors are authorized to take all actions necessary or appropriate to effectuate the relief granted pursuant to this Order in accordance with the Motion.

18. In the event there is any inconsistency between the Motion, the Bidding Procedures, or this Order, this Order shall govern.

19. This Court shall retain exclusive jurisdiction to hear and determine all matters related to the implementation, interpretation, or enforcement of this Order and to enter any Orders in aid or furtherance of this Order, and to adjudicate any and all remaining issues concerning the Debtors' right and authority to assume, assign and/or sell the Assets, including to approve the sale at the Sale Hearing. All matters arising from or related to the implementation of this Order may be brought before the Court as a contested matter, without the necessity of commencing an adversary proceeding.

<div align="center"># # # End of Order # # #</div>

## **EXHIBIT 1**

**BIDDING PROCEDURES**

SIDLEY AUSTIN LLP
Thomas R. Califano (10369867)
Charles M. Persons (24060413)
Maegan Quejada (24105999)
Jeri Leigh Miller (24102176)
Juliana L. Hoffman (24106103)
2021 McKinney Ave
Suite 2100
Dallas, Texas 75201
Telephone: (214) 981-3300
Facsimile: (214) 981-3400

*Counsel for the Debtors and
Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| GVS TEXAS HOLDINGS I, LLC, *et al.*,[1] | Case No. 21-31121-MVL |
| Debtors. | **(Jointly Administered)** |

## BIDDING PROCEDURES

On November [•], 2021, the Bankruptcy Court for the Northern District of Texas entered the *Order (I) Approving Bidding Procedures in Connection with the Sale of Substantially all of the Debtors' Assets; (II) Approving Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* (the "Bidding Procedures Order")[2] in the above-captioned chapter 11 cases, which are being jointly administered. Accordingly, the above-captioned debtors (collectively the "Debtors") are soliciting bids pursuant

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: GVS Texas Holdings I, LLC (7458); GVS Texas Holdings II, LLC (1225); GVS Portfolio I, LLC (6441); GVS Portfolio I B, LLC (7171); GVS Portfolio I C, LLC (3093); WC Mississippi Storage Portfolio I, LLC (0423); GVS Nevada Holdings I, LLC (4849); GVS Ohio Holdings I, LLC (6449); GVS Missouri Holdings I, LLC (5452); GVS New York Holdings I, LLC (5858); GVS Indiana Holdings I, LLC (3929); GVS Tennessee Holdings I, LLC (5909); GVS Ohio Holdings II, LLC (2376); GVS Illinois Holdings I, LLC (9944); and GVS Colorado Holdings I, LLC (0408). The location of the Debtors' service address is: 814 Lavaca Street, Austin, Texas 78701.

[2] Capitalized terms not defined herein have the meanings ascribed to them in the Bidding Procedures Order.

to these bidding procedures (the "<u>Bidding Procedures</u>"), which govern the submission and consideration of competing plan sponsorship or asset purchase proposals.

**Copies of all documents filed in these chapter 11 cases are available free of charge on the website of the Debtors' noticing and claims agent, Omni Agent Solutions (the "<u>Claims Agent</u>"): https://cases.omniagentsolutions.com/gvs/.**

## A.     Qualified Bid Requirements.

To participate in the Auction, a party (upon approval, each a "<u>Qualified Bidder</u>") interested in submitting a qualified bid (a "<u>Qualified Bid</u>") must, on or before **March 4, 2022 at 5:00 p.m. (prevailing Central Time)** (the "<u>Bid Deadline</u>"), deliver (unless previously delivered) the following documents, statements, or acknowledgements (the "<u>Bid Documents</u>") by the Bid Deadline:

a.     <u>Confidentiality Agreement</u>: an executed confidentiality agreement (the "<u>Confidentiality Agreement</u>"), which will provide that all non-public information about the Debtors and their Assets received by a potential bidder will be kept strictly confidential in accordance therewith and used only in connection with the Sale;

b.     <u>Written Submission of Asset Purchase Agreement</u>: a binding written proposal in the form of an executed asset purchase agreement, together with all exhibits and schedules thereto, that identifies the Assets, or portion of the Assets, sought to be acquired and that specifies the amount of cash and other consideration (the "<u>Purchase Price</u>") to be offered; <u>provided</u> that in determining the value of a bid, the Debtors will not be limited to evaluating the dollar amount of a bid but may also consider other factors affecting the speed, certainty, and value of the proposed transactions;

c.     <u>Identity of Purchaser</u>: full disclosure of the identity of the entity bidding or otherwise financing the bid, including a statement of the representatives who are authorized to appear and act on behalf of the bidder at the Auction;

d.     <u>Commitment to Close or Serve as Back-Up Bidder</u>: a written statement that (i) the bidder is willing to consummate and fund the sale of the Assets pursuant to the asset purchase agreement within three (3) business days after satisfaction of any conditions to closing; and (ii) the bidder is alternatively willing to serve as the Back-Up Bidder;

e.     <u>Irrevocable</u>: a statement that the bid is irrevocable until (i) if the bid is designated as the Successful Bid, the closing of the sale of the Assets to such bidder; and (ii) if such bid is designated as the Back-Up Bid, the earlier to occur of (A) five (5) days after the closing of the transaction by which all of the Assets that were subject to the Back-Up Bid have been transferred to one or more Qualified Bidders at the closing of the sale of the Assets to such bidder(s), or (B) twenty-one (21) days after the Sale Hearing;

f.    <u>Bid Protections</u>:  a statement that, unless such bid is designated as the Stalking Horse Bid (as defined below) by the Debtors in advance of the auction, that such bid is not subject to any break-up fee, transaction fee, termination fee, expense reimbursement, or any similar type of payment or reimbursement obligation (collectively, the "<u>Bid Protections</u>"); <u>provided</u> that if designated as the Stalking Horse Bid (as defined below), such Bid Protections, in the aggregate, shall not exceed a maximum of three percent (3%) of the cash portion of the Purchase Price;

g.    <u>Contingencies</u>:  a statement that the bid is not conditioned on any due diligence, internal approval, financing, regulatory, or other third-party approval contingencies of any kind (other than regulatory contingencies required by law);

h.    <u>"As-Is, Where-Is"</u>:  an acknowledgement and representation that the bidder (i) has had the opportunity to conduct any and all required due diligence regarding the Assets prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in makings its bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Assets or the completeness of any information provided in connection therewith or with the Auction;

i.    <u>Executory Contracts and Unexpired Lease to Be Assumed</u>:  identification with reasonable particularity of the executory contracts and unexpired leases of the Debtors that the bidder seeks to have assumed and assigned pursuant to the asset purchase agreement;

j.    <u>Adequate Assurance</u>:  evidencing the potential bidder's ability to comply with section 365 of the Bankruptcy Code, including providing adequate assurance of such bidder's ability to perform in the future the contracts and leases proposed in its bid to be assumed by the Debtors and assigned to such bidder, in a form that will permit the immediate dissemination of such evidence to the counterparties to such contracts and leases;

k.    <u>Proof of Ability to Close</u>:  proof by the bidder of its financial capacity to close the proposed Bid, including payment of any cure amount with respect to any contract that may be assigned, which may include current unaudited financial statements of, or verified financial commitments obtained by, the bidder, the adequacy of which the Debtors and their advisors will determine in their sole discretion;

l.    <u>Corporate Authority</u>:  evidencing authorization and approval from the bidder's board of directors (or comparable governing body) with respect to the submission of the bid and the consummation of the transactions contemplated in such bidder's asset purchase agreement;

m.    <u>Good Faith Deposit</u>: a deposit paid by wire transfer of immediately available funds or such other form acceptable to the Debtors payable to the order of the Debtors

273273774v.2

(the "<u>Good Faith Deposit</u>") in the amount of not less than ten percent (10%) of the stated Purchase Price to be held in an account designed by the Debtors to be applied or returned, as applicable, pursuant to the terms of these Bidding Procedures; and

n.      <u>Good Faith of Bidder</u>: a statement that the bid constitutes a good faith, *bona fide* offer to effectuate the proposed transaction

The Bid Documents shall be submitted by e-mail to the following parties:

a.      counsel for the Debtors, Sidley Austin LLP: Thomas R. Califano (tcalifano@sidley.com), Charles Persons (cpersons@sidley.com), Jeri Leigh Miller (jeri.miller@sidley.com), Juliana Hoffman (jhoffman@sidley.com), and Maegan Quejada (mquejada@sidley.com);

b.      the Debtors' investment banker, Houlihan: Matthew Niemann (mniemann@hl.com), Brad Jordan (bjordan@hl.com), and Ross Rosenstein (rrosenstein@hl.com);

c.      the Debtors' Board of Directors: Nate Paul (npaul@world-class.com) and Robert Albergotti (albergottib@gmail.com).

Promptly after the Bid Deadline, the Debtors shall determine, in consultation with their advisors, whether each bidder has submitted an acceptable bid document that is deemed to be a "<u>Qualified Bid</u>" (and such bidder, a Qualified Bidder). All potential bidders, whether deemed Qualified Bidders or not, consent to the jurisdiction of the Court to determine matters concerning the Sale and their bids, the Auction, or the Marketing Process generally, and waive any right to any other venue.

Following the Bid Deadline and in advance of the Auction, the Debtors, in consultation with their advisors, shall determine whether to designate the leading Qualified Bidder as the "<u>Stalking Horse Bidder</u>" and the leading Qualified Bid as the "<u>Stalking Horse Bid</u>." To the extent such designation is made, notice of the Stalking Horse Bid, including any Bid Protections included therein, shall be filed with the Court and served on all parties in interest.

**B.      Access to Due Diligence.**

Only a bidder who has signed a Confidentiality Agreement, submitted a non-binding indication of interest, and provided preliminary proof of its financial capacity to close a proposed transaction, the adequacy of which the Debtors and their advisors will determine in their sole discretion, shall be eligible to receive additional due diligence and access to additional non-public information. Potential bidders interested in conducting due diligence should contact the Debtors' investment banker, Houlihan ("<u>Houlihan</u>"):

- Matthew Niemann (mniemann@hl.com),
- Brad Jordan (bjordan@hl.com), and/or
- Ross Rosenstein (rrosenstein@hl.com).

Any potential bidder meeting the requirements above shall be granted access to all relevant information regarding the Bidding Procedures and the business of the Debtors reasonably necessary to enable a potential bidder to evaluate the Assets and submit a bid proposal. The Debtors shall make such document access available to potential bidders through an electronic data room as soon as reasonably practicable following execution of the Confidentiality Agreement. The Debtors reserve the right to provide information in stages (*e.g.*, after a bidder has demonstrated wherewithal and indicative valuation or interest in a transaction). All due diligence must be completed before the Bid Deadline. No condition(s) allowing or regarding further due diligence will be accepted after the Bid Deadline unless otherwise determined by the Debtors and their advisors.

Notwithstanding the foregoing, Houlihan is not required to provide confidential, business-sensitive or proprietary information to any potential bidder if the Debtors reasonably believe that (i) such disclosure would be detrimental to the interests of the Debtors' estates, or (ii) such potential bidder does not intend in good faith, or the capacity, to consummate its bid. To the greatest extent possible, Houlihan and the Debtors shall ensure that any material due diligence provided to any bidder will be made available to all other bidders who satisfy the requirements herein.

Each potential bidder will comply with all reasonable requests for additional information and due diligence access by the Debtors or their advisors regarding such potential bidder and its contemplated transaction. If the Debtors determine at any time in their reasonable discretion that a potential bidder is not reasonably likely to become a Qualified Bidder (as defined below), then the Debtors may terminate the distribution of due diligence information to such potential bidder and all information provided by the Debtors prior to such time will be returned to the Debtors in accordance with the terms of the applicable Confidentiality Agreement.

Each potential bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Assets prior to making any such bids; that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the assets in making its bid; and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures. Neither the Debtors nor any of their employees, officers, directors, affiliates, subsidiaries, representatives, agents, advisors or professionals are responsible for, and shall bear no liability with respect to, any information obtained by bidders in connection with the Sale of the Assets at the Auction.

## C.     Auction.

If one or more Qualified Bids has been submitted in accordance with these Bidding Procedures, the Debtors will conduct an auction (the "Auction") commencing on **March 28, 2022 at 10:00 a.m. (prevailing Central Time)** or such later time as the Debtors shall timely notify the Qualified Bidders.

The auction shall be organized and conducted by the Debtors at the offices of its counsel, Sidley Austin LLP, 2021 McKinney Avenue, Suite 2000, or such other location as may be

273273774v.2

announced prior to the Auction to the Qualified Bidders. The Auction will be recorded by stenographic means by an authorized court reporter.

The Auction will be conducted in accordance with the following procedures (the "Auction Procedures"):

a.    only the Qualified Bidders shall be entitled to bid at the Auction;

b.    only the authorized representatives of each of the Qualified Bidders, the Debtors and their advisors will be permitted to attend the Auction;

c.    to the extent a Stalking Horse Bid is not selected, the Debtors will announce the starting bid at or before the commencement of the Auction;

d.    the Debtors will announce what the bidding increments and minimum overbid are at the Auction, which may be modified as necessary to the extent the Debtors deem appropriate;

e.    each Qualified Bidder will be required to confirm on the record of the Auction that it has not engaged in any collusion with respect to the bidding or the Sale;

f.    absent irregularities in the conduct of the Auction, the Court will not consider Bids made after the Auction is closed; and

g.    the Auction shall be governed by any other Auction Procedures as may be determined by and announced by the Debtors, from time to time, on the record at the Auction.

**D.    Selection of the Successful Bid.**

Upon the conclusion of the Auction, the Debtors in the exercise of their reasonable, good-faith business judgment, shall identify the highest or otherwise best Qualified Bid(s) that in the exercise of their fiduciary duties the Debtors in good faith believe is in the best interests of the Debtors' estates and stakeholders, which will be determined by considering, among other things:

a.    the total expected consideration to be received by the Debtors;

b.    the likelihood of the bidder's ability to close a transaction and the timing thereof;

c.    whether any proposed modification of the Plan require re-solicitation of ballots;

d.    the ability of the bidder to satisfy necessary regulatory approvals and the timing for obtaining such; and

e.    the expected net benefit to the estates, including enhanced treatment of Creditors.

The Qualified Bidder(s) having submitted the successful bid (the "Successful Bid") will be deemed the "Successful Bidder." The Debtors may also designate the Back-Up Bid (as defined below). The Successful Bidder and the Debtors shall, as soon as commercially reasonable and

practicable, complete and sign all agreements, contracts, instruments or other documents evidencing and containing the terms upon which such Successful Bid was made.

The Debtors will present the results of the Auction to the Bankruptcy Court at the Approval Hearing (as defined below), at which certain findings will be sought from the Bankruptcy Court regarding the Auction, including, among other things, that (a) the Auction was conducted, and the Successful Bidder was selected, in accordance with these Bidding Procedures, (b) the Auction was fair in substance and procedure, (c) the Successful Bid is a Qualified Bid as defined in these Bidding Procedures and (d) consummation of the Successful Bid will provide the highest or otherwise best value for the Debtors' assets and is in the best interests of the Debtors' estates. The Debtors reserve the right to modify these auction procedures at any time if they believe it will promote a competitive process or is otherwise in the interests of their Estates.

**E. Sale Hearing.**

A hearing to consider approval of the Successful Bid (the "Sale Hearing"), will be held by the Court at a time to be decided by the Court at the time of the entry of the proposed Order approving the Bidding Procedures. Such Sale Hearing may be continued by the Debtors by the filing of a notice with the Court.

**F. Designation of Back-Up Bidder.**

If for any reason the Successful Bidder fails to consummate the Successful Bid, then the Qualified Bidder with the second highest or otherwise best Bid (the "Back-Up Bidder"), as determined by the Debtors at the conclusion of the Auction and announced at that time to all the Qualified Bidders participating therein, will automatically be deemed to have submitted the highest or otherwise best Bid (the "Back-Up Bid").

The Debtors will be authorized to consummate the transaction pursuant to the Back-Up Bid as soon as is commercially reasonable without further order of the Court upon at least twenty-four (24) hours advance notice, which notice will be filed with the Court. Upon designation of the Back-Up Bidder at the Auction, the Back-Up Bid shall remain open until 21 days after the Sale Hearing.

**G. Return of Good Faith Deposit.**

The Good Faith Deposit of the Successful Bidder shall, upon consummation of the Successful Bid, be credited to the purchase price paid. If the Successful Bidder fails to consummate the Successful Bid, then the Good Faith Deposit shall be forfeited to, and retained irrevocably by, the Debtors, in accordance with the applicable transaction agreement.

The Good Faith Deposit(s) of any unsuccessful Qualified Bidders will be returned within five (5) business days after the Auction unless such Bidder is named the Back-Up Bidder, in which case such Good Faith Deposit shall be returned within five (5) business days after the consummation of the Successful Bid.

**H. Reservation of Rights.**

Notwithstanding anything herein to the contrary, the Debtors reserve their rights to modify these Bidding Procedures in any manner that they believe will best promote the goals of the bidding process or impose, at or prior to the Auction, additional customary terms and conditions on the Sale.

273273774v.2

## EXHIBIT 2

**ASSUMPTION AND ASSIGNMENT NOTICE**

SIDLEY AUSTIN LLP
Thomas R. Califano (10369867)
Charles M. Persons (24060413)
Maegan Quejada (24105999)
Jeri Leigh Miller (24102176)
Juliana L. Hoffman (24106103)
2021 McKinney Ave
Suite 2000
Dallas, Texas 75201
Telephone: (214) 981-3300
Facsimile: (214) 981-3400

*Counsel for the Debtors and*
*Debtors in Possession*

<div align="center">

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

</div>

| | |
|---|---|
| In re:<br><br>GVS TEXAS HOLDINGS I, LLC, *et al.* [1]<br><br>Debtors. | Chapter 11<br><br>Case No. 21-31121-MVL<br><br>**(Jointly Administered)** |

<div align="center">

**NOTICE OF POSSIBLE ASSUMPTION AND**
**ASSIGNMENT AND CURE AMOUNTS WITH RESPECT TO THE**
**EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF THE DEBTORS**

</div>

    **PLEASE TAKE NOTICE** that on June 17, 2021, (the "Subsidiaries Petition Date") the

debtors and debtors in possession, with the exception of GVS Portfolio I C, LLC, filed voluntary

petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: GVS Texas Holdings I, LLC (7458); GVS Texas Holdings II, LLC (1225); GVS Portfolio I, LLC (6441); GVS Portfolio I B, LLC (7171); GVS Portfolio I C, LLC (3093); WC Mississippi Storage Portfolio I, LLC (0423); GVS Nevada Holdings I, LLC (4849); GVS Ohio Holdings I, LLC (6449); GVS Missouri Holdings I, LLC (5452); GVS New York Holdings I, LLC (5858); GVS Indiana Holdings I, LLC (3929); GVS Tennessee Holdings I, LLC (5909); GVS Ohio Holdings II, LLC (2376); GVS Illinois Holdings I, LLC (9944); and GVS Colorado Holdings I, LLC (0408). The location of the Debtors' service address is: 814 Lavaca Street, Austin, Texas 78701.

<div align="center">1</div>

for the Northern District of Texas (the "Court"). On June 23, 2021 (the "Parent Petition Date," and, together with the Subsidiaries Petition Date, the "Petition Date"), GVS Portfolio I C, LLC filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Court.

PLEASE TAKE FURTHER NOTICE that the Debtors may seek to assume and assign certain of their executory contracts and unexpired leases in connection with a potential sale (the "Sale") of all or substantially all of the assets of and equity in the Debtors (collectively, the "Assets"), or some subset(s) thereof.

PLEASE TAKE FURTHER NOTICE that by order dated October [●], 2021 [Docket No. ●] (the "Bidding Procedures Order"), the Court approved certain procedures (the "Bidding Procedures")[2] that will govern the Auction (as defined below), which are set forth in **Exhibit 1** to the Bidding Procedures Order. Copies of the Bidding Procedures Order and the Bidding Procedures are available via PACER on the Court's website at https://ecf.txnb.uscourts.gov for a fee, and on the Debtors' restructuring website at https://cases.omniagentsolutions.com/gvs/ free of charge. Additionally, the Debtors' notice, claims, and solicitation agent Omni Agent Solutions will provide a copy of the Bidding Procedures Order and the Bidding Procedures upon request within a reasonable period of time.

**PLEASE TAKE FURTHER NOTICE THAT YOU ARE RECEIVING THIS NOTICE BECAUSE YOU MAY BE A PARTY TO AN EXECUTORY CONTRACT OR AN UNEXPIRED LEASE THAT IS POTENTIALLY TO BE ASSUMED AND ASSIGNED (COLLECTIVELY, THE "ASSIGNABLE CONTRACTS"), IN CONNECTION WITH SUCH SALE. A LIST OF THE ASSIGNABLE CONTRACTS IS ATTACHED HERETO AS EXHIBIT A.**

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that the presence of an Assignable Contract on this Assumption and Assignment Notice does not constitute an admission that such Assignable Contract is an executory contract, and the Debtors reserve all rights, claims, defenses and causes of action with respect to all Assignable Contracts listed herein.

**PLEASE TAKE FURTHER NOTICE** that the Debtors have determined the current amounts owing (the "Cure Amounts") under each Assignable Contract and have listed the applicable Cure Amounts on Exhibit A attached hereto.  The Cure Amounts are the only amounts proposed to be paid upon any assumption and assignment of the Assignable Contracts, in full satisfaction of all amounts outstanding under such Assignable Contracts.

**PLEASE TAKE FURTHER NOTICE** that an auction (the "Auction") for the Assets, including the Assignable Contracts, will be conducted on **March 28, 2022 at 10:00 a.m. (prevailing Central Time)** at the offices of Debtors' counsel, Sidley Austin LLP, 2021 McKinney Avenue, Suite 2000, or such other location as may be announced prior to the Auction to the Qualified Bidders.  As soon as reasonably practicable after the Auction, the Debtors will file and serve a notice that identifies the Successful Bidder for the Assets.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of any asset purchase agreement that the Debtors may enter into with the Successful Bidder or Back-Up Bidder, as applicable, the Debtors may seek to assume and assign one or more of the Assignable Contracts to the Successful Bidder or other Back-Up Bidder, as the case may be, subject to approval at the hearing (the "Sale Hearing") to be held on **April [●], 2022, at [●]:[●] a.m./p.m. (prevailing Central Time)** before the Court.

**PLEASE TAKE FURTHER NOTICE** that any objection to (i) the proposed assumption, assignment, or potential designation of such party's Assignable Contract, (ii) the applicable Cure

Amount, or (iii) the provision of adequate assurance of future performance (a "Contract Objection") must be: (i) be in writing; (ii) comply with the Bankruptcy Rules and the Bankruptcy Local Rules; (iii) be filed with the Clerk of the United States Bankruptcy Court for the Northern District of Texas, together with proof of service, on or before 4:00 p.m. (prevailing Pacific Time) on a date that is at least seven (7) days prior to the Sale Hearing (as such may be extended under certain circumstances, as described below, the "Contract Objection Deadline"); (iv) be served, so as to actually be received on or before the Contract Objection Deadline on the Contract Objection Notice Parties (as defined below); and (v) state with specificity the grounds for such objection, including, without limitation, the fully liquidated cure amount and the legal and factual bases for any unliquidated cure amount that the counterparty believes is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code for the Assumed Contract, along with the specific nature and dates of any alleged defaults, the pecuniary losses, if any, resulting therefrom, and the conditions giving rise thereto. The "Contract Objection Notice Parties" are as follows: (i) the Debtors; (ii) counsel to the Debtors; (iii) the Office of the U.S. Trustee for the Northern District of Texas; and (iv) counsel to the Successful Bidder at the address provided in the asset purchase agreement.

**PLEASE TAKE FURTHER NOTICE THAT PRIOR TO THE DATE OF THE CLOSING OF THE TRANSACTIONS CONTEMPLATED BY THE APPLICABLE ASSET PURCHASE AGREEMENT (THE "CLOSING DATE"), THE DEBTORS MAY AMEND THEIR DECISION WITH RESPECT TO THE ASSUMPTION AND ASSIGNMENT OF ANY ASSIGNABLE CONTRACT, INCLUDING AMENDING THE CURE AMOUNT, AND PROVIDE A NEW NOTICE AMENDING THE INFORMATION**

**PROVIDED IN THIS NOTICE, INCLUDING, WITHOUT LIMITATION, A DETERMINATION NOT TO ASSUME CERTAIN ASSIGNABLE CONTRACTS.**

**PLEASE TAKE FURTHER NOTICE** that in the event the Debtors file and serve an amendment to this Assumption and Assignment Notice adding an Assignable Contract or decreasing any proposed Cure Amount on or after the Contract Objection Deadline, the non-Debtor counterparty must file and serve a Contract Objection in accordance with the procedures described above within seven (7) days after the filing of any such amendment. In the event the Debtors amend the Assumption and Assignment Notice to decrease the Cure Amount of an Assignable Contract previously included, any such Contract Objection shall be limited to the Cure Amount only.

**PLEASE TAKE FURTHER NOTICE THAT, IF NO OBJECTION IS TIMELY RECEIVED WITH RESPECT TO THE NOTICED CURE AMOUNT, (I) ANY NON-DEBTOR PARTY TO AN ASSIGNABLE CONTRACT SHALL BE FOREVER BARRED FROM OBJECTING TO THE CURE AMOUNT AND FROM ASSERTING ANY ADDITIONAL CURE OR OTHER AMOUNTS WITH RESPECT TO SUCH ASSIGNABLE CONTRACT; (II) THE CURE AMOUNT SET FORTH ON EXHIBIT A ATTACHED HERETO SHALL BE CONTROLLING, NOTWITHSTANDING ANYTHING TO THE CONTRARY IN ANY ASSIGNABLE CONTRACT, OR ANY OTHER DOCUMENT, AND THE NON-DEBTOR PARTY TO AN ASSIGNABLE CONTRACT SHALL BE DEEMED TO HAVE CONSENTED TO THE CURE AMOUNT; AND (III) THE NON-DEBTOR PARTY TO AN ASSIGNABLE CONTRACT SHALL BE FOREVER BARRED AND ESTOPPED FROM ASSERTING ANY OTHER CLAIMS**

**RELATED TO SUCH CONTRACT AGAINST THE DEBTORS OR THE APPLICABLE TRANSFEREE, OR THE PROPERTY OF ANY OF THEM.**

**PLEASE TAKE FURTHER NOTICE THAT IF NO TIMELY OBJECTION IS RECEIVED WITH RESPECT TO THE ASSUMPTION AND ASSIGNMENT OF AN ASSIGNABLE CONTRACT TO THE SUCCESSFUL BIDDER OR BACK-UP BIDDER, AS APPLICABLE, INCLUDING WITH RESPECT TO THE PROVISION OF ADEQUATE ASSURANCE OF FUTURE PERFORMANCE, ANY NON-DEBTOR PARTY TO SUCH ASSIGNABLE CONTRACT SHALL BE DEEMED TO HAVE CONSENTED TO THE ASSUMPTION, ASSIGNMENT, AND/OR TRANSFER OF THE APPLICABLE ASSIGNABLE CONTRACT TO THE SUCCESSFUL BIDDER OR BACK-UP BIDDER, AS APPLICABLE, AND SHALL BE FOREVER BARRED FROM OBJECTING TO THE ASSUMPTION AND ASSIGNMENT OF SUCH ASSIGNABLE CONTRACT ON ANY BASIS.**

**PLEASE TAKE FURTHER NOTICE** that on the Closing Date, or as soon thereafter as is reasonably practicable, the Debtors will pay the Cure Amounts as set forth on Exhibit A hereto (or as later amended, as described below) with respect to the Assignable Contracts

*[Remainder of page intentionally left blank]*

Dated: October 6, 2021
      Dallas, Texas

Respectfully submitted,

SIDLEY AUSTIN LLP
/s/ *Thomas R. Califano*

Thomas R. Califano (10369867)
Charles M. Persons (24060413)
Maegan Quejada (24105999)
Jeri Leigh Miller (24102176)
Juliana L. Hoffman (24106103)
2021 McKinney Ave
Suite 2000
Dallas, Texas 75201
Telephone: (214) 981-3300
Facsimile: (214) 981-3400

*Counsel for the Debtors and Debtors in Possession*

7