SIDLEY AUSTIN LLP
Thomas R. Califano (10369867)
Charles M. Persons (24060413)
Maegan Quejada (24105999)
Jeri Leigh Miller (24102176)
Juliana L. Hoffman (24106103)
2021 McKinney Ave
Suite 2100
Dallas, Texas 75201
Telephone: (214) 981-3300
Facsimile: (214) 981-3400

*Counsel for the Debtors and
Debtors in Possession*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>GVS TEXAS HOLDINGS I, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 21-31121-MVL<br><br>**(Jointly Administered)** |

**DEBTORS' REPLY IN SUPPORT OF (A) THIRD AMENDED DISCLOSURE STATEMENT FOR THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF GVS TEXAS HOLDINGS I, LLC AND ITS DEBTOR AFFILIATES, AND (B) DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE ADEQUACY OF THE AMENDED DISCLOSURE STATEMENT, (II) APPROVING THE FORMS OF NOTICES IN CONNECTION WITH CONFIRMATION OF THE AMENDED PLAN, (III) SCHEDULING CERTAIN DATES WITH RESPECT THERETO, AND <u>(IV) GRANTING RELATED RELIEF</u>**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: GVS Texas Holdings I, LLC (7458); GVS Texas Holdings II, LLC (1225); GVS Portfolio I, LLC (6441); GVS Portfolio I B, LLC (7171); GVS Portfolio I C, LLC (3093); WC Mississippi Storage Portfolio I, LLC (0423); GVS Nevada Holdings I, LLC (4849); GVS Ohio Holdings I, LLC (6449); GVS Missouri Holdings I, LLC (5452); GVS New York Holdings I, LLC (5858); GVS Indiana Holdings I, LLC (3929); GVS Tennessee Holdings I, LLC (5909); GVS Ohio Holdings II, LLC (2376); GVS Illinois Holdings I, LLC (9944); and GVS Colorado Holdings I, LLC (0408). The location of the Debtors' service address is: 814 Lavaca Street, Austin, Texas 78701.

GVS Texas Holdings I, LLC and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") submit this omnibus reply (the "Reply") in support of (i) the *Third Amended Disclosure Statement for the Third Amended Joint Chapter 11 Plan of GVS Texas Holdings I, LLC and its Debtor Affiliates* (together with all schedules and exhibits thereto, as may be amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement"), and (ii) *the Debtors' Motion for Entry of an Order (I) Approving the Adequacy of the Amended Disclosure Statement, (II) Approving the Forms of Notices in Connection with Confirmation of the Amended Plan, (III) Scheduling Certain Dates with Respect Thereto, and (IV) Granting Related Relief* [Docket No. 351] (the "Motion"), and in response to (i) the *United States Trustee's Objection to Amended Disclosure Statement for the Joint Chapter 11 Plan of GVS Texas Holdings I, LLC and its Debtors Affiliates* [Docket No. 418] (the "U.S. Trustee Objection"); (ii) *Seth Kretzer's, as Receiver for Great Value Storage, LLC and World Class Capital Group LLC, Limited Objection and Reservation of Rights to the Amended Disclosure Statement for the Joint Chapter 11 Plan of GVS Texas Holdings I, LLC and its Debtor Affiliates* [Docket No. 537] (the "Receiver Objection"); (iii) *Joinder by Princeton Capital Corporation to Seth Kretzer's, as Receiver for Great Value Storage, LLC and World Class Capital Group LLC, Limited Objection and Reservation of Rights to the Amended Disclosure Statement for the Joint Chapter 11 Plan of GVS Texas Holdings I, LLC and its Debtor Affiliates* [Docket No. 539] (the "Princeton Joinder"); (iv) the *Limited Objection of World Class Holdings I, LLC to Debtors' Motion for Entry of an Order (I) Approving the Adequacy of the Amended Disclosure Statement, (II) Approving the Forms of Notices in Connection with Confirmation of the Amended Plan, (III) Scheduling Certain Dates with respect Thereto, and (IV) Granting Related Relief* [Docket No. 538] (the "WCH Objection"); and (v) the *Limited Objection*

*and Reservation of Rights of RREF III Storage LLC to Debtors' Motion for Entry of an Order (I) Approving the Adequacy of the Amended Disclosure Statement, (II) Approving the Forms of Notices in Connection with Confirmation of the Amended Plan, (III) Scheduling Certain Dates with Respect Thereto, and (IV) Granting Related Relief* [Docket No. 546] (the "RREF Objection," and together with the U.S. Trustee Objection, Receiver Objection and the WCH Objection, Princeton Joinder, the "Objections").

## PRELIMINARY STATEMENT[2]

1. Since the filing of the Objections, the Debtors have filed amended versions of the Plan and Disclosure Statement reflecting, among other things, the Debtors' designation of a Stalking Horse Bidder and related Bid Protections. The proposed Sale transaction provides for Sale Proceeds of at least $450 million and reflects resolution of the RREF and Receiver Objections. As amended, the Debtors have addressed the legitimate concerns set forth in the Objections, and the Debtors respectfully request that the Court overrule the remaining issues, if any, in the Objections. The Disclosure Statement should be approved, especially in light of the fact that the Plan does not impair any class of claimants and thus, the Debtors will not soliciting the votes of any class.

2. Four parties-in-interest formally objected to the Disclosure Statement and the Motion: (i) the United States Trustee (the "U.S. Trustee"), (ii) Seth Kretzer, as Receiver for Great Value Storage, LLC and World Class Capital Group LLC (the "Receiver"), World Class Holdings I, LLC ("WCH") and RREF III Storage LLC ("RREF"). The arguments in the Objections overlap in part and generally fall into two (2) broad categories: (i) objections to the adequacy of the information contained in the Disclosure Statement (the "Disclosure Objections") and (ii)

---

[2] Capitalized terms not defined herein are afforded the meaning ascribed to them in the Disclosures Statement or the Motion, as applicable.

objections to certain plan provisions that allegedly render the Plan "patently unconfirmable." Additionally, the Receiver Objection and RREF Objection assert more specific objections; each of which is addressed herein.

3. With respect to the Disclosure Objections, the Debtors assert that the Disclosure Statement addresses the alleged deficiencies as outlined in the chart attached hereto as **Exhibit A** (the "Response Chart").

4. The Disclosure Statement, as amended, provides adequate information to enable a hypothetical investor, typical of the Holders in each Class of Claims or Interests in these Chapter 11 Cases, to make an informed judgment about the Plan in satisfaction of the statutory requirements of Section 1125 of the Bankruptcy Code. Accordingly, the Debtors respectfully request that the Court overrule the Objections to the extent not resolved and enter the proposed Order granting the relief requested in the Motion.

## REPLY

### A. The Disclosure Statement Contains Adequate Information

5. The Disclosure Statement complies with all relevant sections of the Bankruptcy Code and Bankruptcy Rules. Section 1125 of the Bankruptcy Code requires a chapter 11 plan proponent to provide to holders of impaired claims and interests entitled to vote on the plan "adequate information" regarding the plan. 11 U.S.C. § 1125. "Adequate information" is defined as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but . . . need not include such information about any other possible or proposed plan and

> in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information[.]

*Id.* at § 1125(a)(1). This Court must determine whether the Disclosure Statement contains "adequate information" to enable a hypothetical investor to make an informed judgment regarding the Plan. *See In re Divine Ripe, L.L.C.,* 554 B.R. 395, 400 (Bankr. S.D. Tex. 2016) ("A disclosure statement must contain 'adequate information' about the debtor and be provided to 'each holder of a claim or interest of a particular class.' "); *Holm v. Wright (In re Holm)*, 931 F.2d 896, 1991 WL 65476 (Table), at *2 (9th Cir. Apr. 24, 1991) ("The primary purpose of a disclosure statement is to assist creditors in determining whether to accept or reject the proposed plan."); *see also In re Rosenblum*, No. 18-17155-MKN, 2019 WL 5782589, at *3 (Bankr. D. Nev. July 15, 2019) (disclosure statement must "provide 'adequate information' to the creditors in order for them to make an 'informed judgment about the plan.' ").

6. The determination of what constitutes adequate information is determined on a case-by-case basis and is largely within the discretion of the bankruptcy court. *See In re Cajun Elec. Power Co-op, Inc.*, 150 F.3d 503, 518 (5th Cir. 1998) (citing to the legislative history, which, in essence, is a case-by-case determination as to what constitutes adequate information for the particular debtor involved); *In re Ashley River Consulting, LLC*, 2015 WL 6848113, at *1, *7–8 (Bankr. S.D.N.Y. Nov. 6, 2015) (discussing the basis for determining whether a disclosure statement has adequate information, including that the standard was left intentionally vague by Congress in order that courts may have a high degree of flexibility in applying the standard on a case-by-case basis); *see also Computer Task Grp., Inc. v. Brotby (In re Brotby)*, 303 B.R. 177, 193 (B.A.P. 9th Cir. 2003); *Burns v. MacGibbon (In re MacGibbon)*, BAP No. WW-05-1422-PaNK, 2006 WL 6810935, at *4 (B.A.P. 9th Cir. Aug. 14, 2006); *Official Comm. of Unsecured Creditors*

*v. H.B. Michelson (In re Michelson)*, 141 B.R. 715, 718 (Bankr. E.D. Cal. 1992) (noting that "adequate information for making an informed judgment is a flexible concept that permits the degree of disclosure to be tailored to the particular situation"); H.R. Rep. No. 95-595, at 409 (1977), as reprinted in 1978 U.S.C.C.A.N. 5963 ("Precisely what constitutes adequate information in any particular instance will develop on a case-by-case basis. Courts will take a practical approach as to what is necessary under the circumstances of each case. . . . There will be a balancing of interests in each case."). Further, courts have held that even where a disclosure statement could have included more information, "a disclosure statement need not be perfect and may be approved if the information is reasonable in the circumstances." *In re Puff*, Case No. 10-01877, 2011 WL 2604759, at *5 (Bankr. N.D. Iowa June 30, 2011) (internal quotations omitted); *see also In re MacGibbon*, 2006 WL 6810935 at *6 (approving disclosure statement despite parts being somewhat speculative, because "in context . . . the disclosure statement presented a sufficiently accurate picture of [the debtor's] assets, liabilities and financial affairs, and included the essential kinds of information for creditors to evaluate her proposed plan.").

7. Here, the Disclosure Statement contains all the information necessary for it to be meaningfully understood by parties impacted by the Plan. The Debtors have endeavored to include all relevant and available information in the Disclosure Statement to ensure that stakeholders are adequately informed, including among other things:

- a summary of the Plan and its treatment of Claims and Interests (Art. I);
- a discussion of the circumstances leading to the commencement of the Chapter 11 Cases (Art. IV);
- an overview of the Debtors' operations (Art. II);
- an overview of the Debtors' prepetition capital structure (Art. III);
- a liquidation analysis (Art. XIII & Ex. C);
- a discussion of means for implementation of the Plan and classification and treatment of Claims and Interests (Art. VI.);

- a discussion of risk factors affecting the Debtors and confirmation and implementation of the Plan (Art. XVI);
- a discussion of tax consequences of the Plan (Art. XVI);
- a discussion of the treatment of executory contracts under the Plan (Art. VII); and
- a recommendation by the Debtors to accept the Plan (Art. XVIII).

8. These disclosures are consistent with the flexible guidelines courts have articulated for determining whether a disclosure statement contains adequate information. *See, e.g.*, *In re Divine Ripe, L.L.C.*, 554 B.R. 395, 401 (Bankr. S.D. Tex. 2016) (outlining certain items that a disclosure statement should contain); *In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170–71 (Bankr. S.D. Ohio 1988) (listing types of information that should be addressed, but noting that disclosure of all listed information will not be necessary in every case); *In re Metrocraft Pub. Servs., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984) (same).

9. Based on the foregoing and the below, the Debtors submit that the Disclosure Statement satisfies the adequate information standard of Section 1125 of the Bankruptcy Code.

**B. The Disclosure Statement as Amended Addresses the Disclosure Objections**

10. As noted above, the Response Chart attached as Exhibit A summarizes the Disclosure Objections and the Debtors' specific responses thereto. Because the Objections predate the filing of the amended Disclosure Statement, the Response Chart describes how the Debtors have addressed many of the Disclosure Objections in the amended Disclosure Statement and amended Plan. As reflected in the Response Chart, the Debtors have made every effort to appropriately address the legitimate and relevant disclosure concerns raised by the U.S. Trustee, the Receiver, WCH, and RREF; and the Disclosure Statement, as amended, contains more than sufficient information to permit a reasonable, typical Holder of a Claim or Interest to make an informed judgment with respect to the Plan. Accordingly, any remaining Disclosure Objections

should not be permitted to delay these Chapter 11 Cases from advancing and should be overruled.

### C. The WCH Objection

11. First, any contention by WCH that the Disclosure Statement contains inadequate information should be rejected on its face. As the Court is well aware, the Debtors and their advisors have continuously sought information and access to the Debtors' information (*see, e.g.* the Diligence Order, the Governance Order and the Enforcement Order) from WCH. WCH and its ultimate equity holders have greater access to relevant information about the Debtors than the Debtors and should not be permitted to benefit from their failure to comply with this Court's orders.

12. WCH argues that it is the "only party whose interest is truly at risk in these Chapter 11 Cases," based on the assertion that "equity retains the right to refinance and pay all existing claims or to propose a 'cure' plan[.]" WCH Objection ¶ 2; *see also id.* ¶ 5 (referencing the original Plan's contemplation of a "toggle" feature permitting WCH to fund a reinstatement of the Debtors' existing debt). Since before the filing, Mr. Paul had the ability to refinance the Debtors' defaulted obligations. In the period of time since this already-existing right was recited in the Governance Order (entered November 10, 2021), Mr. Paul has failed to exercise this right. His failure to accomplish a refinancing should not stand in the way of the Sale or the only viable exit in these cases If the plan transactions are not consummated all creditors stand to lose.

13. Similarly, WCH's repeated claim that it is the "fulcrum security" in these cases is at best disingenuous. It is only through the sale process that the Debtors are currently pursuing that creditors are unimpaired. If the sale process was not pursued, or if the Debtors are liquidated, creditor returns in the magnitude the proposed Sale accomplishes would be far from certain. One need look no further than the prepetition struggles that RREF and its predecessor as Junior Mezz

Lender faced in recovering on their debt to see the risks that creditors face in any other process.

14. Finally, the Debtors take the position that the amended Disclosure Statement adequately and accurately describes the relevant facts regarding the Debtors' prepetition defaults and dealings with their lenders and does not agree with the language proffered by WCH.[3]

**D. The Receiver Objection**

15. In addition to asserting broad Disclosure Objections, the Receiver further complains the Disclosure Statement fails to adequately provide information relevant to his rights and potential recoveries with respect to the Property Manager and World Class Capital Group LLP ("World Class Capital").

16. First, with respect to the potential recoveries available to the Property Manager and World Class Capital, the amended Disclosure Statement and Plan are clear. Pursuant to the Debtors' Schedules and Statement of Financial Affairs [Docket No. 103], the Property Manager was identified as initially holding a general unsecured claim.[4] Pursuant to the Disclosure Statement (*see* Disclosure Statement Art. I.B.4.; *see also id.* Art. I.D.) and the Revised Estimation Order [Docket No. 593], the Debtors have identified the Property Manager as holding an unimpaired subordinated claim that shall be paid in full under the Plan.[5] Non-debtor World Class Capital has not filed a claim in these Chapter 11 Cases and is not entitled to any recovery under the Plan.

---

[3] Although all creditors are deemed to accept and thus will not receive the full Disclosure Statement, the Debtors are willing to include a statement of position by WCH so long as it is clearly attributed to WCH.

[4] The Receiver Objection argues amended Schedules of Financial Affairs should be filed prior the hearing on the amended Disclosure Statement. *See* Receiver Objection ¶ 2.a.iii.. Although the Debtors anticipate filing amended Schedules and Statements and reserve their rights to further amend their Schedules and Statements, such amendments prior to the Disclosure Statement hearing are not necessary in light of no class being impaired and entitled to vote under the amended Plan.

[5] Moreover, as a holder of an unimpaired claim that shall be paid in full, as clearly stated in the Disclosure Statement, the Property Manager is not entitled to vote to accept or reject the Plan. *See* Disclosure Statement Art. VI.B.2.

17.     Second, the Disclosure Statement adequately indicates the rights and powers that may be exercised by the Receiver.  Specifically, that the Receiver was appointed to, among other things, collect judgment from the Property Manager and World Class Capital in the Princeton Case.  *See* Disclosure Statement V.B.Art. 13.  The Receiver has provided no factual or legal basis that would support the position that he holds any rights greater than those afforded to him in the Princeton Case, or rights greater than those afforded to the Property Manager (deemed to accept the Plan) or non-debtor World Class Capital (not entitled to vote under the Plan).

18.     Finally, the Receiver also conclusory objects that the "Plan appears to be a *de facto* consolidation of the assets of the Debtors, its Debtor Affiliates and its non-Debtor affiliates solely for the benefit of the Creditors of the Debtor entities." Receiver Objection ¶ 2(e).  Setting aside the explicit language of the Disclosure Statement stating that the Plan does not contemplate substantive consolidation of the Debtors (*see* Disclosure Statement n.4), the Receiver does not make any argument how *de facto* consolidation (even if true) constitutes grounds for the Court to deny approval of the Disclosure Statement.

19.     As this Court is well familiar, Section 1125 of the Bankruptcy Code provides the standard for seeking approval of a disclosure statement, requiring that a disclosure statement contain "adequate information" such as "information of a kind, and in sufficient detail, given the nature and history of the debtor and the condition of the debtor's financial records, that will enable the debtor's creditors and investors to make an informed judgment about the plan." *In re Fullmer*, No. 09-50086-RLJ-11, 2009 WL 2778303, at *2 (Bankr. N.D. Tex. Sept. 2, 2009) (citing 11 U.S.C. § 1125).  With respect to the operations of the Debtors, their corporate structure, any connections to non-debtor parties and proposed distributions, the Plan and the Disclosure Statement are clear.  The Debtors have never attempted to hide the connections between these Chapter 11 Cases, the

Debtors, its Debtor Affiliates and its non-Debtor affiliates.[6] Moreover, the Disclosure Statement is clear on its face that no consolidation of the Debtors is contemplated under the Plan. The Receiver's point here is mere speculation unsupported by well pled facts or legal argument. To the extent the Receiver continues to believe the Plan, as amended, constitutes *de facto* consolidation, such objection is more properly raised at the time of confirmation.

### E. The RREF Objection

20. In addition to asserting broad Disclosure Objections and objections regarding the confirmability of the Plan, RREF contends the Disclosure Statement should be amended to reflect that it is an impaired creditor entitled to vote on the Plan. Specifically, RREF asserts: (i) contemplation of less than full payment of RREF's claim; (ii) contemplation of delay in payment of RREF's claim; (iii) failure to pay required interest to RREF; and (iv) the inclusion of certain releases in the Plan render RREF impaired and entitled to vote.

21. However, the revised language of the amended Disclosure Statement [Docket No. 611] and amended Plan [Docket No. 611-1], as well as the pending *Motion of the Debtors Pursuant to Bankruptcy Rule 9019 for Approval of the Proposed Settlement with Junior Mezz Lender* [Docket No. 578] (the "Junior Mezz Settlement Motion") obviate each of RREF's contentions that it should be classified as an impaired creditor entitled to vote.

22. The Junior Mezz Settlement Motion seeks Court approval of a proposed settlement between the Debtors and RREF (the "Junior Mezz Settlement"), which contemplates the resolution of RREF's claims.[7] As set forth in greater detail in the Junior Mezz Settlement Motion and the Junior Mezz Settlement, the settlement provides for the inclusion of interest within RREF's

---

[6] *See e.g.*, Debtors' Organization Chart [Docket No. 343-2].
[7] For a complete and full discussion of the relevant terms of the settlement resolving RREF's claim, the Debtors reference the Court and relevant parties to the RREF Settlement Motion filed on the docket of these Chapter 11 cases.

allowed claim.[8] Additionally, the Junior Mezz Settlement provides that "the Allowed amount of the Junior Mezz Lender Claims shall be paid in full from the Net Sale Proceeds" on the Effective Date.[9] Such terms are memorialized in the amended Disclosure Statement and amended Plan. *See, e.g.,* Disclosure Statement Art. VI.B; Plan Art. III.B. Additionally, the Junior Mezz Settlement contemplates mutual releases of the Junior Mezz Lender Released Parties and the Debtors Released Parties, which includes certain third parties.[10]

23. Based on the foregoing, the Debtors assert each of the bases for RREF's assertion that it is an impaired creditor under the Plan are resolved and should be overruled.

**F. The Release Objections**

24. The Receiver Objection, RREF Objection and U.S. Trustee Objection each argue that the Plan calls for certain third-party releases, exculpation and injunction provisions under the Plan (the "Third-Party Releases"), which render the Plan un-confirmable as a matter of law. *See*, *e.g.*, U.S. Trustee Objection ¶¶ 38-41; RREF Objection ¶ 39. Such contentions should be rejected. Within the last twelve months, courts in this district have confirmed a proposed plan that contained similar opt-out release provisions regarding the release of certain non-debtors. *See In re Bainbridge Uinta*, LLC, No. 20-42794, 2021 WL 2692265, at *3 (Bankr. N.D. Tex. June 28, 2021) (finding "[a]ll holders of Claims or Interests . . . were given the chance to opt out of the Non-Debtor Release by checking the appropriate box on their Ballot or Opt-Out Form. Accordingly, the Non-Debtor Release is consensual and is an integral part of the Plan. The Non-Debtor Release is permissible under Bankruptcy Code § 1123(6)."); *see also In re PHI, Inc.*, No. 19-30923-HDH11, 2019 WL 3539941, at *20 (Bankr. N.D. Tex. Aug. 2, 2019) (finding third-party releases

---

[8] *See*, *e.g.*, Junior Mezz Settlement Motion ¶¶ 3, 44.
[9] *Id.* ¶ 44.
[10] As defined within the Junior Mezz Settlement. *See id.*

were "consensual because they were conspicuously disclosed in boldface type in the Plan, the Disclosure Statement, and on the Ballots, which provided parties in interest with sufficient notice of the releases, and holders of Claims or Equity Interests entitled to vote on the Plan were given the option to opt-out of the Releases."); *In re 4 West Holdings, Inc, et al.*, No. 18-30777 (NDH) (Mar. 6, 2018, Bankr. N.D. Tex. ) Dkt. No. 1361 (finding the use of op-out third-party releases was appropriate).

25. Regardless, although the Receiver, RREF, and the U.S. Trustee raise concerns at this stage regarding the potential impact the currently-drafted Third-Party Releases may have on the ultimate confirmability of the Plan, such issues are not germane to the Court's consideration of the Disclosure Statement. Indeed, it is not the purpose of the Court to "give any holder of a claim or interest a strategic advantage by making it difficult for the [Debtors] to obtain ultimate review of a proposed plan" at the Disclosure Statement stage. *In re Scioto Valley Mortg. Co.*, 88 B.R. 172. "[I]ssues respecting the plan's confirmability will await the hearing on confirmation." *Id.* Therefore, the Debtors need not obtain a party-in-interest's approval of the plan; it need only provide them with adequate information. *See id.* (citing 11 U.S.C. § 1125(a)(1)). *See also In re ReoStar Energy Corp.*, No. 10-47176, 2012 WL 1945801, at *3 (Bankr. N.D. Tex. May 30, 2012) (holding that certain issues as to whether a plan is facially confirmable, which could be cured at confirmation, such as the exculpation of Debtors and certain principals, professions, and employees, should not delay the court's consideration of the disclosure statement).

26. Indeed, such issues are more appropriately addressed at confirmation in light of each class under the Plan being unimpaired and not entitled to vote to accept or reject the Plan. *See In re Wonder Corp. of Am.,* 72 B.R. 580, 593 (Bankr. D. Conn. 1987) ("creditors, unimpaired as a matter of law, *see* § 1124(3) . . . had no standing to object to confirmation") *aff'd* 82 82 B.R.

186 (D. Conn. 1988).

## RESERVATION OF RIGHTS

27. The Debtors continue to reserve all rights, claims, defenses and remedies, including without limitation, the right to amend, modify or supplement the Disclosure Statement and Plan, and to raise additional arguments concerning the Disclosure Statement, and additional amendments, modifications or supplements or confirmation of the Plan (as may be further amended).

## CONCLUSION

28. The Debtors have worked diligently and have addressed, to the extent practicable and appropriate, the Objections with respect to the Disclosure Statement and the Motion. The Disclosure Statement as currently proposed provides adequate information for parties entitled to vote to make an informed decision about whether to accept or reject the Plan, as required by Section 1125 of the Bankruptcy Code. Additionally, none of the Objections identify any issue that would warrant a finding that the Plan is not confirmable as a matter of law. Accordingly, the Debtors respectfully request that the Court enter the revised Order and grant such other and further relief as the Court may deem just and appropriate.

*[Remainder of the Page Intentionally Left Blank]*

Dated: January 30, 2022
       Dallas, Texas

Respectfully submitted,

**SIDLEY AUSTIN LLP**

*/s/ Thomas R. Califano*
SIDLEY AUSTIN LLP
Thomas R. Califano (10369867)
Charles M. Persons (24060413)
Maegan Quejada (24105999)
Jeri Leigh Miller (24102176)
Juliana L. Hoffman (24106103)
2021 McKinney Ave
Suite 2100
Dallas, Texas 75201
Telephone: (214) 981-3300
Facsimile: (214) 981-3400

*Counsel for the Debtors and Debtors in Possession*