Ian T. Peck (24013306)
Thomas J. Zavala (24116265)
**HAYNES AND BOONE, LLP**
2323 Victory Avenue, Suite 700
Dallas, TX 75219
Telephone: (214) 651-5000
Facsimile: (214) 651-5940
Email: ian.peck@haynesboone.com
Email: tom.zavala@haynesboone.com

*Counsel for The William Warren Group, Inc.
and CBRE WWG Storage Partners JV III, LLC*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| GVS TEXAS HOLDINGS I, LLC, *et al.*[1] | § | Case No. 21-31121-MVL |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

**DECLARATION OF GARY SUGARMAN IN SUPPORT OF SALE OF
SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS REGARDING ADEQUATE
ASSURANCE OF FUTURE PERFORMANCE OF ASSIGNED CONTRACTS**

I, Gary Sugarman, make this Declaration under the penalty of perjury, pursuant to 28 U.S.C. § 1746, and state as follows:

1.  I am the Chief Operating Officer of The William Warren Group, Inc. (together with its wholly owned subsidiaries (direct and indirect), affiliates, investment vehicles, agents, independent contractors and employees, "WWG"). WWG is an indirect owner of CBRE WWG

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: GVS Texas Holdings I, LLC (7458); GVS Texas Holdings II, LLC (1225); GVS Portfolio I, LLC (6441); GVS Portfolio I B, LLC (7171); GVS Portfolio I C, LLC (3093); WC Mississippi Storage Portfolio I, LLC (0423); GVS Nevada Holdings I, LLC (4849); GVS Ohio Holdings I, LLC (6449); GVS Missouri Holdings I, LLC (5452); GVS New York Holdings I, LLC (5858); GVS Indiana Holdings I, LLC (3929); GVS Tennessee Holdings I, LLC (5909); GVS Ohio Holdings II, LLC (2376); GVS Illinois Holdings I, LLC (9944); and GVS Colorado Holdings I, LLC (0408). The location of the Debtors' service address is: 814 Lavaca Street, Austin, Texas 78701.

Storage Partners JV III, LLC, the Purchaser.[2] I was one of the members of the WWG team responsible for negotiating the APA by and among the Purchaser and GVS Portfolio I C, LLC, as Parent, and the Parent's subsidiaries party thereto (together with the Parent, the "Sellers"). I am also one of the WWG team members responsible for the implementation and performance of the Purchaser under the APA.

2. I submit this declaration in support of the Debtors' Proposed Sale Order.

3. Unless otherwise stated, all matters set forth in this Declaration are based on (a) my personal knowledge, (b) my review of relevant documents, (c) information supplied to me by employees at the Debtors, (d) my views, based upon my experience and knowledge of the Debtors' business and financial condition, or (e) as to matters involving United States bankruptcy laws or rules or other applicable laws, my reliance on counsel.

### Background on the Purchaser

4. The Purchaser is a corporate entity that was formed as a joint venture by subsidiaries of WWG and CBRE Investment Management. ("CBRE IM"). WWG is a privately held, entrepreneurial self storage development, acquisition, property, and asset management company based in Santa Monica, California. Since its inception in 1994, WWG has grown to employ a team of over 400 employees, whose focus has been on investments in major metro markets across the United States that offer significant cash flow, revenue growth, and long-term

---

[2] Capitalized terms used but not otherwise defined in this Order shall have the meanings provided to them in the Court's *Order (I) Designating the Stalking Horse Bidder; (II) Approving Revised Bidding Procedures in Connection With the Sale of Substantially All of the Debtors' Assets; (III) Approving Revised Procedures for the Assumption And Assignment of Executory Contracts and Unexpired Leases; and (IV) Granting Related Relief* [Docket No. 626] (the "Bid Procedures Order") or the *Order (I) Approving Sale of Substantially All Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [Docket No. [●]] (the "Proposed Sale Order"), as applicable, the terms of which are fully incorporated as if set forth herein. The Purchaser was designated as the Successful Bidder on March 9, 2022. *See Amended Notice of Successful Bidder* [Docket No. 789].

capital appreciation opportunities. CBRE IM has nearly $142 billion of assets under management and is a leading global real assets investment management firm operating in more than 30 offices and 20 countries around the world.

**Acquisition of the Assigned Contracts and Adequate Assurance of Future Performance**

5. The assets that the Purchaser proposes to acquire pursuant to the APA include certain executory agreements referred to in the APA as the "Assigned Contracts." I have reviewed the proposed list of the Assigned Contracts that the Purchaser intends to acquire pursuant to the APA, am familiar with such list and agreements, and will continue to work with the Debtors to finalize that list of Assigned Contracts.

6. In connection with preparing the APA (and related schedules), I and other representatives of the Purchaser conferred with the Debtors' executives and other business personnel regarding the Debtors' expected cure amounts for the monetary defaults associated with the Assigned Contracts.

7. I understand that, as to each Assigned Contract, the cure amount is $0.00, as reflected in the Debtors' *Notice of Assumption and Assignment and Cure Amounts with Respect to the Executory Contracts and Unexpired Leases of the Debtors* [Docket No. 763] (the "Assumption Notice"). Nevertheless, pursuant to the APA, I understand that the assumption and assignment of the Assigned Contracts to the Purchaser will require the Debtors to cure all monetary defaults existing under such Assigned Contracts at the time of the sale closing.

8. Sufficient funds will be available to satisfy all of the Debtors' cure payments that must be made in respect of the Assigned Contracts on the expected date of the APA sale closing.

9. The Debtors' sole director, Robert D. Albergotti, and the Debtors' team of professionals will assist the Purchaser after the APA closing in transferring the operations of the

storage facilities acquired pursuant to the APA. The Purchaser expects that the assistance from Mr. Albergotti and the Debtors' professionals, combined with the Purchaser's extensive knowledge of the industry, will help ensure that the acquired assets will operate effectively and in a manner that will allow them to satisfy their obligations (including any assumed cure obligations in respect of Assigned Contracts) as they become due in the ordinary course of business.

### Good Faith Nature of Transaction

10. The Purchaser is not an "insider" or "affiliate" of any of the Debtors, as I understand those terms are defined in section 101 of the Bankruptcy Code, and no common identity of incorporators, directors, managers or controlling stockholders exists between the Purchaser and the Debtors. Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the APA to be avoided under section 363(n) of the Bankruptcy Code. Specifically, the Purchaser has not acted in a collusive manner with any person or entity, and the Purchase Price was not controlled by any agreement among the bidders but was, instead, the result of a double-blind bid procedure at a bankruptcy auction conducted by the Debtors pursuant to the Bid Procedures Order.

11. The Purchaser is purchasing the Assets in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code. Specifically: (i) the Purchaser neither induced nor caused the Debtors' bankruptcy cases; (ii) the APA was heavily negotiated by the Purchaser with the Debtors and their advisors over a significant time period of time; (iii) the Purchaser disclosed all payments to be made by the Purchaser in connection with the Sale; (iv) the Purchaser recognizes that the Debtors were free to deal with any other party interested in purchasing the Assets, and that the Debtors did deal with at least one other party, Public Storage, who was the competing bidder at the auction and was ultimately designated as the Back-Up

Bidder;[3] (v) no common identity of directors, managers, officers or controlling stockholders exists among the Purchaser and the Debtors; (vi) the negotiation and execution of the APA was at arms'-length and in good faith, and at all times the Purchaser and the Debtors were represented by competent counsel of their choosing; (vii) the Purchaser complied in all material respects with the Revised Bid Procedures; and (viii) the Purchaser has not acted in a collusive manner with any person or entity.

12. But for the protections afforded to the Purchaser under the Bankruptcy Code and the Proposed Sale Order, the Purchaser would not have offered the consideration contemplated in the APA and would be unwilling to consummate the transactions set forth in the APA. If the sale of the Transferred Assets (as defined in the APA) were not free and clear of all liens, claims, encumbrances, and interests, or if the Purchaser would—or in the future could—be liable for any such liens, claims, encumbrances, and interests, other than any liens, claims, or encumbrances expressly assumed pursuant to the APA, the Purchaser would not be willing to consummate the transactions to acquire the Transferred Assets.

13. The total consideration to be provided for under the APA reflects the Purchaser's reliance on the Proposed Sale Order to provide, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, that, upon the Closing (as defined in the APA), the Debtors have title to, possession of, and the right to transfer the Transferred Assets free and clear of all liens, claims, encumbrances, and interests (other than liens and claims expressly assumed in the APA).

14. In accordance with section 365 of the Bankruptcy Code, the Purchaser will provide adequate assurance of future performance to all counterparties under any executory contracts or unexpired leases that are to be assumed and assigned pursuant to the APA and the Proposed Sale

---

[3] *See Assumption Notice* at 2.

Order. Accordingly, the Purchaser has the financial credibility, willingness, and ability to perform its obligations under each of the executory contacts and unexpired leases that may be designated as Assigned Contracts (as defined in the APA) in accordance with the terms of the APA.

15. None of the transactions contemplated by the APA, including, without limitation, the Sale or the assumption and assignment of the Assigned Contracts (as defined in the APA), is being undertaken for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof.

16. The Purchaser has been working internally and with its counsel towards consummation of the transactions contemplated by the APA and expects to continue that work if the transactions are approved by the Bankruptcy Court.

17. For the foregoing reasons, I believe that the contract counterparties to the Assigned Contracts are adequately assured of future performance by the Purchaser and entry of the Proposed Sale Order is appropriate and in the best interests of such contract counterparties.

[*Remainder of Page Intentionally Left Blank; Signature Page Follows*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: March 14, 2022

_____
Gary Sugarman
Chief Operating Officer
**The William Warren Group, Inc.**