SIDLEY AUSTIN LLP
Thomas R. Califano (10369867)
Charles M. Persons (24060413)
Jeri Leigh Miller (24102176)
Maegan Quejada (24105999)
Juliana L. Hoffman (24106103)
2021 McKinney Ave
Suite 2000
Dallas, Texas 75201
Telephone: (214) 981-3300
Facsimile: (214) 981-3400

*Counsel for the Debtors and
Debtors in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>GVS TEXAS HOLDINGS I, LLC, *et al.*, [1]<br><br>Debtors. | Chapter 11<br><br>Case No. 21-31121-MVL<br><br>**(Jointly Administered)**<br>**Rel. Dkt. No. 618** |

**DECLARATION OF ROBERT D. ALBERGOTTI IN SUPPORT
OF CONFIRMATION OF THE FOURTH AMENDED JOINT CHAPTER 11 PLAN
<u>FOR GVS TEXAS HOLDINGS I, LLC AND ITS DEBTOR AFFILIATES</u>**

I, Robert D. Albergotti, being duly sworn, state the following under penalty of perjury:

1.    I am sole director  of GVS Portfolio I C, LLC and its affiliated debtors and debtors-

in-possession in the above captioned chapter 11 cases (collectively, the "<u>Debtors</u>").  I have over

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: GVS Texas Holdings I, LLC (7458); GVS Texas Holdings II, LLC (1225); GVS Portfolio I, LLC (6441); GVS Portfolio I B, LLC (7171); GVS Portfolio I C, LLC (3093); WC Mississippi Storage Portfolio I, LLC (0423); GVS Nevada Holdings I, LLC (4849); GVS Ohio Holdings I, LLC (6449); GVS Missouri Holdings I, LLC (5452); GVS New York Holdings I, LLC (5858); GVS Indiana Holdings I, LLC (3929); GVS Tennessee Holdings I, LLC (5909); GVS Ohio Holdings II, LLC (2376); GVS Illinois Holdings I, LLC (9944); and GVS Colorado Holdings I, LLC (0408).  The location of the Debtors' service address is: 814 Lavaca Street, Austin, Texas 78701.

forty years of experience in the development and implementation of complex restructuring solutions through internal reorganizations, asset dispositions, divisional shutdowns, and Chapter 11 restructurings.

2.      I submit this declaration (this "Declaration") in support of the confirmation of the Debtors' proposed *Fourth Amended Joint Chapter 11 Plan of Reorganization of GVS Texas Holdings I LLC and its Debtor Affiliates* [Docket No. 618] (as may be amended, modified, or supplemented from time to time, the "Plan")[2] and entry of an order approving the Plan filed contemporaneously herewith (as may be amended, modified, or supplemented from time to time, the "Confirmation Order").

3.       Except as otherwise indicated herein, all statements set forth in this Declaration are based on my personal knowledge and the personal knowledge of the Debtors' advisors.  I am over the age of 18 and authorized to submit this Declaration on behalf of the Debtors.  If called upon to testify, I would testify competently to the facts set forth herein.

4.      Contemporaneously herewith, the Debtors filed the *Debtors' Memorandum of Law in Support of Confirmation of the Fourth Amended Joint Chapter 11 Plan of Reorganization* (the "Confirmation Brief"), which sets forth the factual and legal bases for confirmation of the Plan and responses to objections to the Plan.  I hereby incorporate by reference the Confirmation Brief as if set forth fully herein.

### THE PLAN PROCESS

5.      I have reviewed and am generally familiar with the terms and provisions of the Plan.  With the Debtors' advisors, I was directly involved in the development of and discussions regarding the terms of the Plan and other Plan-related documents.  The Plan is the result of

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

negotiations among the Debtors and other interested parties, including the Lenders, and a sale process that resulted in a net $580 million bid for the Debtors' assets (the "Sale"). These negotiations and the sale process were conducted at all times in good faith and at arm's length. I believe that the Plan has been developed and proposed with the purpose of maximizing recoveries for all of the Debtors' stakeholders.

## COMPLIANCE WITH THE BANKRUPTCY CODE

6. I believe that the Plan complies with the following requirements of the Bankruptcy Code:

7. Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)). I am familiar with the classifications of Claims and Interests in the Plan and believe such classifications are based upon the legal nature and relative rights of such Claims and Interests. The classifications are not proposed for any improper purpose. Each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within such Class.

8. Specified Treatment of Unimpaired and Impaired Claims (11 U.S.C. § 1123(a)(2) and (3)). Article III of the Plan specifies that each of the Classes of Claims are unimpaired.

9. No Discrimination (11 U.S.C. § 1123(a)(4)). The Plan provides for equal treatment within each Class. Further, within each class, the Plan provides the same treatment for each claim or interest within the class. All Holders of Claims and Interests are unimpaired under the Plan and deemed to accept.

10. Adequate Means of Implementation (11 U.S.C. § 1123(a)(5)). The Plan provides for adequate means for implementation. The Debtors plan to close on the Sale shortly after entry of the Sale Order. The Sale Proceeds, along with the Debtors' cash on hand shall be sufficient to

implement the Plan and pay all Claims in full. In addition, the Disputed Claim Reserve will be sufficient to pay all Disputed Claims to the extent they are allowed.

11. Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)). The Plan does not contemplate issuance of any equity securities.

12. Selection of Officer and Director (11 U.S.C. § 1123(a)(7). On the Effective Date, Mr. Stephan M. Pinsly shall be appointed sole officer and director of the Reorganized Debtors. Such appointment is consistent with the interests of the creditors and with public policy.

13. Impairment of Classes (11 U.S.C. § 1123(b)(1)). The Plan provides that all Classes are Unimpaired.

14. Executory Contracts (11 U.S.C. § 1123(b)(2)). Article V of the Plan governs the rejection of the Debtors' Executory Contracts and Unexpired Leases as of the Effective Date, unless such Executory Contract or Unexpired Lease is listed on the Assumption Notice, has been terminated, assumed, or rejected, or is otherwise subject to rejection.

15. Retention of Causes of Action (11 U.S.C. § 1123(b)(3)). Section IV.A of the Plan provides for settlement of Claims and Interests and Section IV.C of the Plan preserves certain Causes of Action.

16. Sale (11 U.S.C. § 1123(b)(4)). Section IV.B of the Plan discusses the Sale and Article VI of the Plan provides for distribution of the Sale Proceeds.

17. Releases, Injunction, Exculpation, Preservation of Claims and Causes of Action (11 U.S.C. § 1123(b)(6)). I believe that the releases of Claims and Causes of Action by the Debtors described in Article VIII.C.1 of the Plan (the "Debtor Release") are in accordance with section 1123(b) of the Bankruptcy Code and the Debtors approved such Debtor Release in a valid exercise of the Debtors' business judgment. The Debtor Release is an integral part of the Plan and is in the

best interests of the Debtors' estates as a component of the terms implemented in the Plan. The Debtor Release offers protection to parties that participated in the Debtors' reorganization process. Each of the Debtor Released Parties made significant concessions or contributions to the Chapter 11 Cases. The Debtor Release for the Debtors' fiduciaries is appropriate because the Debtors' fiduciaries share an identity of interest with the Debtors, supported the Plan and the Chapter 11 Cases, actively participated in meetings, hearings, and negotiations during the Chapter 11 Cases, and have provided other valuable consideration to the Debtors to facilitate the Debtors' reorganization. Further, the Debtors' professionals fulfilled their duties to all parties in interest. The Debtors do not believe that the claims being released have material value, and the *de minimis* value of such claims is far outweighed by the valuable benefits afforded by the Plan.

18.     The release by the Releasing Parties (the "Third Party Release"), set forth in Section VIII.C.2 of the Plan, was consensually provided after due notice and opportunity for a hearing and is an essential provision of the Plan. The Third Party Release is an integral part of the Plan, negotiated at arm's-length. Like the Debtor Release, the Third Party Release facilitated participation in both the Debtors' Plan and the chapter 11 process generally. The Third Party Release was critical to incentivizing parties to support the Plan regarding the parties' respective rights and interests and is provided in exchange for important contribution by the Released Parties to the reorganization, thereby providing a significant benefit to the Debtors' Estates. Furthermore, the Third Party Release is consensual as to all parties in interest, including all Releasing Parties, and followed appropriate procedural safeguards in advance of Confirmation.

19.     Additionally, the exculpation provided under the Plan serves an important function in protecting parties with fiduciary duties to the Estates that have made substantial contributions to the Debtors' restructuring. The scope of the exculpation is appropriately limited to actions taken

or failed to be taken in connection with the Chapter 11 Cases and the negotiation of the Plan. As with the releases, the exculpations are discretionary provisions, which are the product of arm's-length negotiations and are a critical component of the Plan. Likewise, the injunction is a key provision of the Plan because it enforces the release, discharge, and exculpation provision, all of which are vital to the Plan. The injunction is so essential to the Plan that, without it, there is little likelihood of success. The injunction provision is narrowly tailored to achieve its purpose.

20.     Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)). To the best of my knowledge, the Debtors have complied with the Bankruptcy Code in proposing the Plan, including disclosure and solicitation requirements of Section 1125 of the Bankruptcy Code.

21.     Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)). To the best of my knowledge, the Plan has been proposed in good faith and is not in any means forbidden by law. The Plan seeks to achieve a result that is consistent with the objectives of the Bankruptcy Code. The goal of the Plan is to maximize distributions to creditors—a legitimate and honest purpose. The Chapter 11 Cases were filed, and the Plan was proposed, with an honest belief that the Debtors were in need of reorganization and for the legitimate purpose of allowing the Debtors to reorganize and emerge from Chapter 11 with sufficient liquidity, capital resources, and sale proceeds to satisfy their creditors in full. The Plan was the subject of extensive arm's-length negotiations among the Debtors and their stakeholders, and their respective representatives and professionals, provides the best available path forward for the Debtors and their Estates, and evidences a good faith effort to repay their creditors in full.

22.     Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). All payments made or promised by the Debtors for services rendered in connection with the Chapter 11 Cases through the Effective Date have been and will be subject to review by the Court

and other parties in interest.  The Debtors' Estates will be able to pay all allowed administrative expenses.

23.    <u>Proper Disclosures (11 U.S.C. § 1129(a)(5))</u>.  The identity of the post-Effective Date director and officer has been identified in the Second Plan Supplement, prior to the Confirmation Hearing, and is consistent with the interests of the creditors and with public policy.

24.    <u>Rate Changes (11 U.S.C. § 1129(a)(6))</u>.  I understand that the Plan does not provide for any change in rates subject to the jurisdiction of any governmental regulatory commission and will not require governmental regulatory approval.

25.    <u>Best Interests of Creditors (11 U.S.C. § 1129(a)(7))</u>.  This requirement is not applicable as there are no Impaired Classes.

26.    <u>Acceptance by Impaired Voting Classes (11 U.S.C. § 1129(a)(8))</u>.  All Classes are Unimpaired under the Plan.

27.    <u>Treatment of Priority Claims (11 U.S.C. § 1129(a)(9))</u>.  The Plan provides for the treatment of Allowed Administrative Expense Claims, Allowed Professional Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, and Allowed Other Secured Claims.

28.    <u>Acceptance by an Impaired Class (11 U.S.C. § 1129(a)(10))</u>.  There are no Impaired Classes.

29.    <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>.  I understand that to satisfy the feasibility requirement, the Debtors must demonstrate that the confirmation of the Plan will not be followed by a reorganization or liquidation that is not proposed in the Plan.  The Sale is expected to be consummated shortly after Confirmation.  The Debtors shall fund distributions under the Plan with cash on hand and the Sale Proceeds in amounts sufficient to pay all Claims in full.  The Debtors project that they will be able to meet their obligations under the Plan.  Accordingly, confirmation

of the Plan is not expected to be followed by further liquidation or the need for further reorganization that is not proposed in the Plan.

30.     Statutory Fees (11 U.S.C. § 1129(a)(12)).  Section XII.C of the Plan provides that all statutory fees will be paid by the Debtors for each quarter until the Chapter 11 Cases are closed.

31.     Inapplicable Provisions (11 U.S.C. § 1129(a)(13), (a)(14), (15), and (16)).  The Debtors do not have any employees, are not subject to any domestic support obligations, are not individuals, and are not nonprofit corporations.

32.     Other Requirements (11 U.S.C. § 1129(c), (d), and (e)).  No other plan has been submitted in the Chapter 11 Cases.  The principal purpose of the Plan is not the avoidance of taxes or application of section 5 of the Security Act of 1933.  None of the Chapter 11 Cases are "small business cases."

## CONCLUSION

33.     In sum, based on my experience in general and my involvement in assisting the Debtors in this matter, it is my view that Confirmation of the Plan is in the best interests of the Debtors' estates and the Debtors' creditors.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated:  March 14, 2022                              */s/ Robert D. Albergotti*
                                                    Robert D. Albergotti
                                                    Director
                                                    **GVS Portfolio I C, LLC,** *et al*