

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed March 16, 2022**

_____
**United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| GVS TEXAS HOLDINGS I, LLC, *et al.*,[1] | Case No. 21-31121-MVL |
| Debtors. | **(Jointly Administered)** |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: GVS Texas Holdings I, LLC (7458); GVS Texas Holdings II, LLC (1225); GVS Portfolio I, LLC (6441); GVS Portfolio I B, LLC (7171); GVS Portfolio I C, LLC (3093); WC Mississippi Storage Portfolio I, LLC (0423); GVS Nevada Holdings I, LLC (4849); GVS Ohio Holdings I, LLC (6449); GVS Missouri Holdings I, LLC (5452); GVS New York Holdings I, LLC (5858); GVS Indiana Holdings I, LLC (3929); GVS Tennessee Holdings I, LLC (5909); GVS Ohio Holdings II, LLC (2376); GVS Illinois Holdings I, LLC (9944); and GVS Colorado Holdings I, LLC (0408). The location of the Debtors' service address is: 814 Lavaca Street, Austin, Texas 78701.

**ORDER (I) APPROVING SALE OF SUBSTANTIALLY ALL ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS, (II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (i) approving the sale (the "Sale") of substantially all of the Debtors' assets (the "Assets") free and clear of all liens, claims, encumbrances, and other interests pursuant to the asset purchase agreement (the "APA") entered into between the Debtors and CBRE WWG Storage Partners JV III, LLC (the "Successful Bidder") (and/or any designee of the Successful Bidder that is an assignee under the APA, the "Purchaser"); (ii) authorizing the assumption and assignment of certain executory contracts and unexpired leases as provided by the APA (collectively, the "Assigned Contracts"); and (iii) granting related relief, pursuant to sections 105(a), 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code") and rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and the Debtors having determined, after a reasonable marketing process and after consultation with the Consultation Parties in accordance with the Revised Bid Procedures, that the Purchaser has submitted the highest or otherwise best bid for the Assets; and upon adequate and sufficient notice of the hearing before the Court on or before March 16, 2022 (the "Sale Hearing"); and this Court having reviewed and considered the Motion and all relief related thereto, any objections thereto, and the statements of counsel and evidence presented in support of the relief requested by the Debtors at the Sale Hearing; and it appearing that the Court has jurisdiction over this matter; and it further appearing that the relief requested in the Motion being in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having determined that the legal and factual bases set forth in the Motion establish just

cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

### THE COURT HEREBY FINDS AND DETERMINES THAT:[2]

### Jurisdiction, Final Order and Statutory Predicates

A.      This Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This Court is authorized to issue this Order as a final order consistent with Article III of the United States Constitution.

B.      The statutory predicates for the relief requested in the Sale Motion are sections 105(a), 363 and 365 of title 11 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007 and 9014.

C.      This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable to this proceeding by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

### Notice of the Bidding Procedures and Sale

D.      In accordance with the provisions of the Revised Bid Procedures Order, actual written notice of the Sale Motion, the Revised Bid Procedures, the auction conducted on February

---

[2] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Bankruptcy Rules, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Sale Motion are incorporated herein to the extent not inconsistent herewith. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

28, 2022 (the "Auction"), the Sale Hearing, the sale of the Debtors' Assets, and a reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein, has been afforded to all known interested entities, including, but not limited to the following parties (the "Sale Notice Parties"): (i) all entities known by the Debtors to have expressed an interest in a transaction with respect to the Assets, including all Qualified Bidders;[3] (ii) all state and local taxing authorities or recording offices which have a reasonably known interest in the relief requested; (iii) all insurers; (iv) all non-debtor parties to relevant contracts or leases (executory or otherwise); (v) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or other interest in the Assets; (vi) all entities identified by the Consultation Parties that may have an interest in a transaction with respect to the Assets; (vii) all other creditors required to be provided notice under Bankruptcy Rule 2002(a)(2); and (viii) the Notice Parties.

E.      Notice of the Sale Hearing was reasonably calculated to provide all interested parties with timely and proper notice of the Sale and Sale Hearing. Further, a reasonable opportunity to object to and to be heard regarding the relief granted by this Order has been afforded to parties entitled to notice pursuant to Bankruptcy Rule 6004(a).

F.      On March 9, 2022, the Debtors filed the Amended Notice of Successful Bidder [Docket No. 789] designating the Purchaser as the Successful Bidder and Public Storage as the Back-Up Bidder.

G.      As evidenced by the affidavits of service previously filed with the Court, proper, timely, adequate, and sufficient notice of the Revised Bid Procedures, the Auction, the Sale

---

[3] Capitalized terms used but not otherwise defined in this Order shall have the meanings provided to them in the Motion, the APA, the Revised Bid Procedures, and the Assumption and Assignment Notice, as applicable, the terms of which are fully incorporated as if set forth herein.

Motion, Sale Hearing, Sale and the transactions contemplated thereby, including without limitation, the assumption and assignment of the Assigned Contracts to the Purchaser, was provided in accordance with the orders previously entered by this Court, sections 105(a), 363 and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, 6006, 9007 and 9008. The notices described herein were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Sale Motion, Sale Hearing, Sale or the assumption and assignment of the Assigned Contracts to the Purchaser is or shall be required.

H. The disclosures made by the Debtors concerning the Revised Bid Procedures, Auction, APA, Sale Motion, Sale, assumption and assignment of the Assigned Contracts to the Purchaser and Sale Hearing were good, complete and adequate.

I. A reasonable opportunity to object and be heard with respect to the Sale and the Sale Motion and the relief requested therein has been afforded to all interested persons and entities, including the Notice Parties.

## Good Faith of the Purchaser

J. The APA was negotiated, proposed, and entered into by the Debtors and the Purchaser without collusion, in good faith and from arms'-length bargaining positions.

K. The Purchaser is not an "insider" or "affiliate" of the Debtors as those terms are defined in the Bankruptcy Code. Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the APA to be avoided under section 363(n) of the Bankruptcy Code. Specifically, the Purchaser has not acted in a collusive manner with any person or entity, and the aggregate price to be paid by the Purchaser for the Assets (the "Purchase Price"), was not controlled by any agreement among the bidders. The Debtors and their professionals marketed

the Assets and conducted the marketing and sale process in substantial compliance with the Revised Bid Procedures Order.

L.     The Purchaser is purchasing the Assets in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code. Specifically: (i) the Purchaser neither induced nor caused the Debtors' bankruptcy cases; (ii) the Purchaser disclosed all payments to be made by the Purchaser in connection with the Sale; (iii) the Purchaser recognizes that the Debtors were free to deal with any other party interested in purchasing the Assets; (iv) no common identity of directors, officers or controlling stockholders exists among the Purchaser and the Debtors; (v) the negotiation and execution of the APA was at arms'-length and in good faith, and at all times each of the Purchaser and the Debtors were represented by competent counsel of their choosing; (vi) the Purchaser complied in all material respects with the Revised Bid Procedures; and (vii) the Purchaser has not acted in a collusive manner with any person or entity. Accordingly, the Purchaser is entitled to all of the protections afforded under section 363(m) of the Bankruptcy Code.

## Highest or Otherwise Best Offer

M.     The Debtors conducted an Auction process in accordance with, and have otherwise complied in all material respects with, the Revised Bid Procedures. The Auction process set forth in the Revised Bid Procedures afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Assets. The Auction was duly noticed and conducted in a non-collusive, fair, and good faith manner and a reasonable opportunity has been given to any interested party to make a higher or otherwise better offer for the Assets.

N.      The Purchaser submitted the highest and best offer for the Assets. A reasonable opportunity was given to any interested party to make the highest or otherwise best offer. The Debtors served the Sale Notice on the Notice Parties, and no other entity or group of entities has submitted a binding offer to purchase the Assets for greater economic value to the Debtors' estates than the Purchaser.

O.      In accordance with the Revised Bid Procedures, the Debtors filed a notice with the Court informing the Court and parties in interest that they intend to seek approval of the Sale.

P.      The terms contained in the APA constitute the highest and best offer for the Assets and provide fair and reasonable consideration to the Debtors for the Assets and the assumption of the Assumed Liabilities as defined in the APA (the "Assumed Liabilities"), and the consideration provided by the Purchaser under the APA constitutes reasonably equivalent value under the Bankruptcy Code and under the law of the United States, any state, territory, possession, or the District of Columbia. The Debtors' determination, in consultation with the Consultation Parties and in accordance with the Revised Bid Procedures, that the APA constitutes the highest and best offer for the Assets constitutes a valid and sound exercise of the Debtors' business judgment. Approval of the Sale Motion and the APA and the consummation of the transactions contemplated thereby is in the best interests of the Debtors' Chapter 11 estates (taken as a whole), their creditors, and other parties in interest.

**No Fraudulent Transfer or Merger**

Q.      The consideration provided by the Purchaser pursuant to the APA (i) is fair, reasonable and adequate, (ii) is the highest or otherwise best offer for the Assets, (iii) will provide a greater recovery for the Debtors' respective estates and creditors than would be provided by any other available alternative, and (iv) constitutes reasonably equivalent value (as those terms

are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and section 548 of the Bankruptcy Code) and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia. No other person, entity or group of entities has offered to purchase the Assets for greater economic value to the Debtors' estates than the Purchaser. The Debtors' determination that the APA constitutes the highest or otherwise best offer for the Assets constitutes a valid and sound exercise of the Debtors' business judgment. Approval of the Sale Motion and the APA, and the consummation of the transactions contemplated thereby, is in the best interests of the Debtors, their estates, creditors, and other parties-in-interest.

R. The APA was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia. Neither the Debtors nor the Purchaser is fraudulently entering into the transaction contemplated by the APA.

S. The Purchaser is not a mere continuation of the Debtors or their estates and there is no continuity of enterprise between the Purchaser and the Debtors. The Purchaser is not holding itself out to the public as a continuation of the Debtors. The Purchaser is not a successor to the Debtors or their estates, and the Sale does not amount to a consolidation, merger or *de facto* merger of Purchaser and the Debtors.

## Validity of Transfer

T. The Debtors, to the extent necessary and applicable, have (i) full corporate power and authority to execute and deliver the APA and all other documents contemplated thereby, (ii) all corporate authority necessary to consummate the transactions contemplated by the APA, and (iii) taken all corporate action necessary to authorize and approve the APA and the

consummation of the transactions contemplated thereby. The Sale has been duly and validly authorized by all necessary corporate action. No consents or approvals, other than those expressly provided for in the APA, are required for the Debtors to consummate the Sale, execute the APA, or consummate the transactions contemplated thereby.

U.     The Debtors have (except to the extent otherwise provided in the APA) good and marketable title to the Assets and are lawful owners of the Assets. The transfer of the Assets to the Purchaser will be, as of the closing of the transactions contemplated by the APA (the "Closing Date"), a legal, valid, and effective transfer of the Assets, which transfer vests or will vest the Purchaser with all right, title, and interest of the Debtors to the Assets free and clear of (i) all liens relating to, accruing, or arising any time prior to the Closing Date, including, without limitation, any such liens (x) that purport to give to any party a right of setoff or recoupment against, or a right or option to effect any forfeiture, modification, profit sharing interest, right of first refusal, purchase, or repurchase right or option, or termination of, the Debtors' or the Purchaser's interests in the Assets, or any similar rights, or (y) in respect of taxes, restrictions, rights of first refusal, charges or interests of any kind or nature, if any, including, without limitation, any restriction of use, voting, transfer, receipt of income, or other exercise of any attributes of ownership (the "Liens") and (ii) all debts arising under, relating to, or in connection with any act of the Debtors or claims (as that term is defined in section 101(5) of the Bankruptcy Code), liabilities, obligations, demands, guaranties, options, rights, contractual commitments, restrictions, interests, and matters of any kind and nature, whether arising prior to or subsequent to the commencement of these bankruptcy cases, and whether imposed by agreement, understanding, law, equity or otherwise relating to, accruing or arising any time prior to the

Closing Date (collectively in this clause (ii), the "Claims" and, together with the Liens, the "Claims and Interests"), with the exception of any Assumed Liabilities.

## Section 363(f) of the Bankruptcy Code is Satisfied

V.      The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the Debtors may sell the Assets free and clear of any Claims and Interests in the property.

W.      The Purchaser would not have entered into the APA and would not consummate the transactions contemplated thereby if the Sale and the assumption of liabilities and obligations as set forth in the APA by the Purchaser were not free and clear of all Claims and Interests. Unless otherwise expressly included in this Order and the APA, and to the fullest extent permitted by applicable law, the Purchaser shall not be responsible for any Claims and Interests, including but not limited to the following: (a) any labor or employment agreements; (b) all mortgages, deeds of trust and security interest; (c) intercompany loans and receivables between the Debtors and any subsidiaries; (d) any pension welfare compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of any Debtor; (e) any other employee, workers' compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (i) the Employee Retirement Income Security Act, as amended, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the National Labor Relations Act, (vi) the Worker Adjustment and Retraining Act of 1988, (vii) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (viii) the Americans with Disabilities Act of 1990, (ix) the Consolidated Omnibus Budget Reconciliation Act of 1985, (x) state discrimination

laws, (xi) state unemployment compensation laws or other similar state laws or any other state or federal benefits or claims relating to any employment with any of the Debtors or any of their respective predecessors; (f) the environmental condition of or any Environmental Laws with respect to any real property or other Assets owned or operated by the Debtors or any corporate predecessor at any time before the Closing Date; (g) any other liabilities of the Debtors other than the Assumed Liabilities; (h) any bulk sales or similar law; (i) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended and state tax statutes or ordinances providing for the payment of sales taxes; (j) any theories of successor liability, and (k) any other liabilities of the Debtors listed as Excluded Liabilities under the APA (collectively, the "Excluded Liabilities").

X.      The Debtors may sell the Assets free and clear of all Claims and Interests against the Debtors, its estate or any of the Assets (other than expressly provided in this Order and the APA) because, in each case, one or more of the standards set forth in section 363(f)(1)–(5) of the Bankruptcy Code has been satisfied. Those holders of Claims and Interests against the Debtors, their estates or any of the Assets who settled by announcement to the Court during the Sale Hearing or who did not object or who withdrew their objections, if any, to the Sale or the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of such Claims and Interests who did object, if any, fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Claims and Interests, if any, in each instance against the Debtors, their estates, or any of the Assets, attach to the cash proceeds of the Sale ultimately attributable to the Assets in which such creditor alleges an interest, in the same order of priority, with the same validity, force,

and effect that such creditor had prior to the Sale, subject to any claims and defenses the Debtors, their estates, or other parties may possess with respect thereto.

### Best Interest of Creditors

Y.     Given all of the circumstances of these Chapter 11 Cases and the adequacy and fair value of the consideration provided by the Purchaser under the APA, the Sale constitutes a reasonable and sound exercise of the Debtors' business judgment, is in the best interests of the Debtors, their bankruptcy estates, their creditors, and all other parties in interest in these Chapter 11 Cases, and should be approved. Time is of the essence in consummating the transactions contemplated by the APA.

Z.     Cause has been shown as to why this Order should not be subject to any stay provided by Bankruptcy Rules 6004(h) or 6006(d).

### Assumption and Assignment of Executory Contracts and Unexpired Leases

AA.     The assumption and assignment of the Assigned Contracts pursuant to the terms of this Order, the APA, the Revised Bid Procedures, and the Assumption and Assignment Notice is integral to the APA and is in the best interests of the Debtors, their estates, creditors, and other parties in interest, and represents the Debtors' reasonable exercise of sound and prudent business judgment.

BB.     The Purchaser has demonstrated adequate assurance of future performance with respect to the Assigned Contracts pursuant to section 365(b)(1)(C) of the Bankruptcy Code.

### Compelling Circumstances for an Immediate Sale

CC.     There is good and sufficient cause for approval of the APA and the Sale. The relief requested in the Sale Motion and as described by the Debtors at the Sale Hearing is in the best interests of the Debtors, their estates, their creditors, and other parties-in-interest. The Debtors

have demonstrated (i) good, sufficient, and sound business purposes and justifications for approving the APA and (ii) compelling circumstances for the Sale outside of the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code that, among other things, the immediate consummation of the Sale to the Purchaser is necessary and appropriate to maximize the value of the Debtors' estates and the Sale will provide the means for the Debtors to maximize distributions to their creditors and other stakeholders as applicable.

DD. The Sale does not constitute a *sub rosa* Chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford. The Sale neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates a liquidating plan of reorganization for the Debtors.

EE. The consummation of the Sale and the assumption and assignment of the Assigned Contracts is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b), and 365(f) of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Sale.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

### General Provisions

1.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to these bankruptcy cases pursuant to Bankruptcy Rule 9014.  To the extent that any of the findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the conclusions of law constitute findings of fact, they are adopted as such.

2.      The relief requested in the Sale Motion and as described by Debtors' counsel at the Sale Hearing, including the Sale, is GRANTED and APPROVED to the extent set forth in this Order.

3.      This Court's Revised Bid Procedures Order is incorporated herein by reference.

4.      All objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled by announcement to the Court during the Sale Hearing or by stipulation filed with the Court, including any and all reservations of rights included in such objections or otherwise are hereby denied and overruled with prejudice. Those parties who did not object or withdrew their objections to the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

5.      Any objections to Cure Costs may not prevent or delay the Debtors' assumption and assignment of the Assigned Contracts or the sale of the Assets. If a party objects solely to a Cure Cost, the Debtors may hold the claimed Cure Cost in reserve pending further order of the Court or mutual agreement of the parties.  So long as the Debtors hold the claimed Cure Cost in reserve, and there are no other unresolved objections to assumption and assignment, the

Debtors may, without further delay, assume and assign to the Purchaser the Assigned Contract that is the subject of the Cure Cost objection. If the parties are able to resolve the dispute with respect to the Cure Cost(s), they may file with the Court a notice signed by both parties that establishes the Cure Cost(s) without further order of the Court. If the parties are unable to resolve the dispute with respect to the Cure Cost(s), the Court shall determine the Cure Cost(s) at a future hearing. Under such circumstances, the objecting party's recourse is limited to the funds held in reserve. For purposes of this paragraph, the term "party" shall mean one or all of the following: the Debtors, the non-debtor counterparty to the Assigned Contract, and the Purchaser.

### Approval of the APA

6.     The APA and all other documents ancillary thereto, and all of the terms and conditions thereof, are hereby approved.

7.     Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Debtors are authorized and empowered to take any and all actions necessary or appropriate to (i) consummate the Sale pursuant to and in accordance with the terms and conditions of the APA, (ii) close the Sale as contemplated in the APA and this Order, and (iii) execute and deliver, perform under, consummate, implement and fully close the APA including the assumption and assignment of the Assigned Contracts to the Purchaser, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA and the Sale.

8.     This Order shall be binding in all respects upon (a) the Debtors, (b) the Debtors' estates, (c) all creditors of, and holders of equity interests in, the Debtors, (d) all holders of Claims and Interests (whether known or unknown) in, against, or on all or any portion of the Assets, (e) the Purchaser and all successors and assigns of the Purchaser, (f) the Assets, (g) all non-debtor counterparties to any Assigned Contract; and (h) any trustees, if any, subsequently appointed in

the Debtors' bankruptcy cases or upon a conversion of one or more of these cases to a case under Chapter 7 under the Bankruptcy Code. This Order and the APA shall inure to the benefit of the Debtors, their estates and creditors, the Purchaser, and the respective successors and assigns of each of the foregoing.

9. In the event that the Sale to the Buyer does not close as a result of the termination of the APA ("APA Termination Event"), the Debtors are authorized, without further order of the Court, to consummate the Sale to the Back-Up Bidder as soon as is commercially reasonable without further order of the Court upon at least twenty-four (24) hours advance notice, which notice will be filed with the Court.

## Transfer of the Assets

10. Pursuant to sections 105(a), 363(b), 363(f), 365(b), and 365(f) of the Bankruptcy Code, the Debtors are authorized to transfer the Assets to the Purchaser on the Closing Date and such transfer shall (a) constitute a legal, valid, binding and effective transfer of the Assets, (b) vest the Purchaser with title to the Assets and (c) be free and clear of all Claims and Interests (other than as expressly provided in this Order or the APA), including but not limited to, successor or successor-in-interest liability and Claims in respect of the Excluded Liabilities (defined below), with such Liens, including mechanics, materialmen and subcontractor Liens and rights to receive payment of trust funds, Claims and Interests to attach to the proceeds of the Sale in the order of their priority, with the same validity, force and effect which they now have as against the Assets. Upon the closing of the transactions contemplated under the APA and this Order (the "Closing"), the Purchaser shall take title to and possession of the Assets subject only to the Assumed Liabilities and Permitted Liens.

11. All persons and entities that are in possession of some or all of the Assets on the Closing Date are directed to surrender possession of such Assets to the Purchaser at the Closing. Great Value Storage, LLC shall turn over possession and control of all Assets within its possession or control to the Purchaser at Closing, which shall include but not be limited to keys, gate codes, burglar alarm codes, and all other items required to access or operate the Assets. The provisions of this Order authorizing the Sale of the Assets free and clear of all Claims and Interests of any kind or nature whatsoever (other than the Assumed Liabilities and Permitted Liens) shall be self-executing, and neither the Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate and implement the provisions of this Order. Notwithstanding the foregoing, the Purchaser may, at its sole discretion, file this Order and any releases, termination statements, assignments, consents, or other instruments that the Purchaser deems necessary and appropriate to effectuate, consummate, and implement the provisions of this Order, and the Debtors shall cooperate with the Purchaser relating to same.

12. The Debtors are hereby authorized and directed to take any and all actions necessary to consummate the APA, including any actions that otherwise would require further approval by shareholders or any of the Debtors' boards of directors or boards of managers, as the case may be, without the need of obtaining such approvals.

13. The terms of the *Governance Order* [Docket No. 319]; *Supplemental Order Regarding Bank Accounts* [Docket No. 396]; *Order in Furtherance of the Governance Order Directing Access to Diligence Items entered by the Court on December 10, 2021* [Docket No. 410]; and *Order Enforcing the Governance and Diligence Orders* [Docket No. 494] (collectively, the "Enforcement Orders") are hereby incorporated by reference. The Debtors are hereby

authorized to take any such steps as may be necessary or appropriate to transfer title and put Purchaser in actual physical possession and operating control of the Assets, including exercising any rights or remedies the Debtors may have under applicable Law, any Contract, or any Order of the Bankruptcy Court, including the Enforcement Orders. Robert Albergotti, as the sole director of the Debtors, or any successor director pursuant to the Order confirming a plan of reorganization or other Order of the Bankruptcy Court, shall have the authority and ability to execute all necessary documents and instruments. To the extent that any third party, including but not limited to SiteLink Software, Yardi, and Storable, holds any Customer Data (as defined in the APA) including customer credit card and automatic payment data, they are hereby authorized and directed to transfer such Customer Data in unencrypted form to the Purchaser or to the Purchaser's agent at Purchaser's request.

14. A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any Claims and Interests except with respect to Assumed Liabilities and Permitted Liens.

15. If any person or entity which has filed statements or other documents or agreements evidencing any Claims and Interests on, or Claims and Interests in, all or any portion of the Assets (other than statements or documents with respect to the Permitted Liens or Assumed Liabilities) shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of Liens and easements and any other documents necessary for the purpose of documenting the release of all Claims and Interests which the person or entity has or may assert with respect to all or any portion of the Assets, the Debtors are hereby authorized and directed, and the Purchaser is hereby authorized, on behalf of the Debtors and each of the Debtors'

creditors, to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Assets.

16.     On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Debtors' interests in the Assets. This Order is and shall be effective as a determination that, on the Closing Date, all Claims and Interests existing as to the Assets prior to the Closing Date, other than Assumed Liabilities and Permitted Liens, shall have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected; provided, that such Claims and Interests shall attach to the proceeds of the Sale in the order of their priority, with the same validity, force and effect which they now have as against the Assets. This Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.

17.     To the greatest extent available under applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under any (i) federal, state, or local governmental or regulatory license, permit, registration, and (ii) governmental authorization or approval of the Debtors with respect to the Assets, and all such licenses, permits, registrations and governmental

authorizations and approvals are deemed to have been, and hereby are, transferred to the Purchaser as of the Closing Date.

18.     In accordance with section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Assets sold, transferred, or conveyed to the Purchaser on account of the filing or pendency of the Debtors' bankruptcy cases or the consummation of the transactions contemplated by the APA. Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA and this Order.

19.     All valid and properly perfected Liens against the Assets shall attach to the cash proceeds of the Sale of such Assets, if any, and any cash proceeds of the Sale (net of transaction costs) shall be applied on the Closing Date or as soon as practicable thereafter to repay holders of valid and properly perfected Liens in the order of their priority.

**Prohibition of Actions Against the Purchaser**

20.     Except for the Assumed Liabilities and Permitted Liens, and to the fullest extent permitted by applicable law, the Purchaser shall not have any liability or other obligation of the Debtors arising under or related to any of the Assets.

21.     Except for the Assumed Liabilities and Permitted Liens, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, litigation claimants and other creditors, holding Claims and Interests against or in all or any portion of the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in connection with, or in any way

relating to the Debtors, the Assets, the operation of the Debtors' business prior to the Closing Date or the transfer of the Assets to the Purchaser, hereby are forever barred, estopped, and permanently enjoined from asserting against the Purchaser, any of its affiliates, any of the foregoing's successors, assigns, assets or properties or the Assets, such persons' or entities' Claims and Interests in and to the Assets, including, without limitation, the following actions: (a) commencing or continuing in any manner any action or other proceeding against the Purchaser, any of its affiliates, or any of the foregoing's successors, assigns, assets or properties; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Purchaser, any of its affiliates or any of the foregoing's successors, assigns, assets or properties; (c) creating, perfecting or enforcing any Claims and Interests against the Purchaser, any of its affiliates, or any of the foregoing's successors, assigns, assets or properties; (d) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due the Purchaser, any of its affiliates, or any of the foregoing's successors or assigns; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order, other orders of the Court, the APA or actions contemplated or taken in respect thereof; or (f) revoking, terminating or failing or refusing to transfer or renew any license, permit or authorization to operate any of the Assets or conduct any of the business operated with the Assets. Without limiting the generality of the foregoing, and except as otherwise specified herein or in the APA, the Purchaser shall not be liable for any Claims against the Debtors or any of its predecessors or affiliates, and the Purchaser shall have no successor or vicarious liability of any kind or character, including, but not limited to, under any theory of antitrust law, environmental law, successor or transferee liability, breach of duty, labor law, employment law, employee benefits law, *de facto* merger, mere continuation, or

substantial continuing, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, whether asserted or un-asserted, whether legal or equitable, whether liquidated or unliquidated, including but not limited to, liabilities on account of warranties, intercompany loans and receivables, liabilities related to or arising from any environmental laws, and any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of any of the Assets prior to the Closing.

22.     Notwithstanding any other provisions in this Order, a confirmed plan of reorganization in these cases or an order confirming a plan in these Chapter 11 Cases, the Permitted Liens of the Texas Taxing Authorities, the Certain Texas Taxing Entities (as such entities are defined in their respective Objections),[4] along with Cameron County, Dallas County, Galveston County, Harris County, the City of Mesquite, Mesquite ISD, Tarrant County, and Texas City ISD, (collectively, the "Tax Objectors") that secure all amounts ultimately owed for Current Year Ad Valorem Taxes shall remain attached to the applicable Assets, and the Current Year Ad Valorem Taxes become the responsibility of the Purchaser pursuant to the APA. The Tax Objectors shall retain the right to enforce their liens and take all collection actions provided by Texas Law if the Current Year Ad Valorem Taxes are not paid prior to the state law delinquency date. The Purchase Price shall be reduced by the Estimated Seller Ad Valorem Taxes Amount pursuant to Section 7.3(c) of the APA. In addition, the Debtors shall segregate from the proceeds of the sale an amount equal to the Seller Taxes[5] (the "Segregated Sale Proceeds") to comply with the Debtors' obligations under the APA to pay the Seller Taxes and to provide

---

[4] See Docket Nos. 662 and 663.

[5] Pursuant to the Section 7.3(c) of APA, "Seller Taxes" includes "any Asset Taxes, other than Current Year Ad Valorem Taxes, with respect to a Pre-Closing Tax Period and the portion of any Straddle Period ending on the Closing Date and any other Taxes of the Sellers."

adequate protection to the interests of the Tax Objectors in such proceeds, which Segregated Sale Proceeds shall be distributed only pursuant to a subsequent order of the Court or a plan of reorganization confirmed in these Chapter 11 Cases. Notwithstanding the foregoing or any other provisions of this Order, the Purchaser shall retain all of its rights to challenge or contest the amount and validity of any ad valorem taxes asserted against the Assets under applicable non-bankruptcy laws and regulations.

23.     The Purchaser shall have no liability, obligation, or responsibility with respect to the environmental condition of any real property or other Assets owned or operated by the Debtors or any corporate predecessor at any time before the Closing Date or under the Comprehensive Environmental Response Compensation and Liability Act or any foreign, federal, state or local labor, employment, or environmental law by virtue of the Purchaser's purchase of the Assets.

24.     On the Closing Date, or as soon as possible thereafter, each creditor is authorized and directed, and the Purchaser is hereby authorized, on behalf of each of the Debtors' creditors, to execute such documents and take all other actions as may be necessary to release Claims and Interests in or on the Assets (except Assumed Liabilities, Permitted Liens, or as otherwise expressly provided in this Order), if any, as provided for herein, as such Liens may have been recorded or may otherwise exist.

25.     All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of any Debtors to sell and transfer the Assets to the Purchaser in accordance with the terms of the APA and this Order.

26.     The Purchaser has given substantial consideration under the APA for the benefit of the Debtors, their estates, and creditors. The consideration given by the Purchaser shall

constitute valid and valuable consideration for the releases of any potential Claims and Interests pursuant to the Order, which releases shall be deemed to have been given in favor of the Purchaser by all holders of Claims and Interests against the Debtors or any of the Assets, other than holders of Claims and Interests relating to Assumed Liabilities, Permitted Liens, or as otherwise provided in this Order. The consideration provided by the Purchaser for the Assets under the APA is fair and reasonable and accordingly the Sale may not be avoided under section 363(n) of the Bankruptcy Code.

<u>**Assumption and Assignment of Assigned Contracts**</u>

27.     Pursuant to the APA, on March 7, 2022, the Debtors filed and served the Assumption and Assignment Notice on each counterparty to the Assignable Contracts reflecting the sole amounts necessary under sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code to cure all monetary defaults and pay all actual pecuniary losses under the Assignable Contracts (the "<u>Cure Costs</u>"). Pursuant to the APA, the Purchaser has elected to assume all of the Assignable Contracts listed on the Assumption and Assignment Notice (*i.e.*, the Assigned Contracts) by the Designation Deadline. The Debtors have provided all required notices to such contract counterparties in accordance with the APA.

28.     Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, and subject to and conditioned upon the closing of the Sale pursuant to the terms of the APA, the Debtors' assumption and assignment to the Purchaser, and the Purchaser's assumption, on the terms set forth in the APA, of the Assigned Contracts is hereby approved, and the requirements of section 365(b)(1) of the Bankruptcy Code with respect thereto are hereby deemed satisfied.

29.     The Debtors are hereby authorized and directed in accordance with sections 363 and 365 of the Bankruptcy Code to (a) assume and assign to the Purchaser, effective upon the

Closing Date, the Assigned Contracts free and clear of all Claims and Interests of any kind or nature whatsoever (except as otherwise assumed in, or permitted by, the APA) and (b) execute and deliver to the Purchaser such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts to the Purchaser.

30. The Assigned Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Purchaser in accordance with their respective terms, notwithstanding any provision in any such Assigned Contract (including those of the type described in sections 365(b)(2), (e) and (f) of the Bankruptcy Code) that prohibits, restricts or conditions such assignment transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to the Assigned Contracts after such assignment to and assumption by the Purchaser.

31. Effective on the Closing Date, subject to the payment of Cure Costs, all defaults or other obligations of the Debtors under the Assigned Contracts arising or accruing prior to the Closing Date (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code), whether monetary or non-monetary, shall be deemed cured.

32. To the extent a counterparty to an Assigned Contract has failed to timely object to a Cure Cost, such Cure Cost shall be deemed to be finally determined and any such counterparty to an Assigned Contract shall be prohibited from challenging, objecting to, or denying the validity and finality of the Cure Cost at any time, and such Cure Cost, when paid, shall completely revive any Assigned Contract to which it relates. No sections or provisions of any Assigned Contract that purport to provide for additional payments, penalties, charges, or other financial accommodations in favor of the counterparty to the Assigned Contracts shall have

any force or effect with respect to the Sale and assignments authorized by this Order, and such provisions constitute unenforceable anti-assignment provisions under section 365(f) of the Bankruptcy Code and are otherwise unenforceable under section 365(e) of the Bankruptcy Code. No assignment of any Assigned Contract pursuant to the terms of the APA shall in any respect constitute a default under any Assigned Contract. The counterparties to each Assigned Contract shall be deemed to have consented to such assignment under section 365(c)(1)(B) of the Bankruptcy Code, and the Purchaser shall enjoy all of the Debtors' rights and benefits under each such Assigned Contract as of the applicable date of assumption without the necessity of obtaining such counterparty's written consent to the assumption or assignment thereof.

33. The counterparties to the Assigned Contracts shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Purchaser, and shall not charge the Debtors or the Purchaser for any instruments, applications, consents, or other documents which may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers of the Assigned Contracts in connection with the Sale.

34. With respect to objections to any Cure Costs that remain unresolved as of the Sale Hearing, such objections shall be resolved in accordance with the procedures set forth in this Order.

35. Nothing in this Order, the Sale Motion, or in any notice or any other document is or shall be deemed an admission by the Debtors that any contract or Assigned Contract is an executory contract or unexpired lease or must be assumed and assigned pursuant to the APA to consummate the Sale.

36. The failure of the Debtors or the Purchaser to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such term(s) or condition(s)

or of the Debtors' and Purchaser's rights to enforce every term and condition of such Assigned Contract.

37.     All parties to the Assigned Contracts are forever barred and enjoined from raising or asserting against the Purchaser any assignment fee, default, breach, Claim, pecuniary loss, or condition to assignment arising under or related to the Assigned Contracts existing as of the Closing Date or arising by reason of the Closing, except for any amounts that are Assumed Liabilities or as otherwise provided in this Order or the APA.

38.     38.     Any party having had the right to consent to the assumption or assignment of any Assigned Contract that failed to object to such assumption or assignment by the Contract Objection Deadline is deemed to have waived any objections and consented to such assumption and assignment as required by section 365(c) of the Bankruptcy Code.

### The Sale Does Not Require the Appointment of a Consumer Privacy Ombudsman

39.     Section 363(b)(1) of the Bankruptcy Code provides that a debtor may not sell or release personally identifiable information about individuals unless such sale or lease is consistent with its policies or upon appointment of a consumer privacy ombudsman pursuant to section 332 of the Bankruptcy Code.

40.     The Purchaser shall be subject to reasonable restrictions by the Debtors in order to comply with the Debtors' privacy policy, which broadly provides that, if the Debtors or any portion of their assets are acquired, the Debtors may share all types of information with the acquiring company. Therefore, appointment of a consumer privacy ombudsman is unnecessary.

### Other Provisions

41.     This Order, the APA, and all documents ancillary thereto shall be binding in all respects upon all creditors and equity holders of the Debtors, all non-debtor parties to the

Assigned Contracts, all successors and assigns of the Debtors and any of their respective affiliates and subsidiaries and any trustees, examiners, "responsible persons" or other fiduciaries appointed in the Debtors' bankruptcy cases or upon a conversion of any Debtor's bankruptcy case to a case under Chapter 7 of the Bankruptcy Code in accordance with the Bankruptcy Code and other applicable law. Neither the APA nor any documents ancillary thereto shall be subject to rejection or avoidance under any circumstances.

42.     The APA and all documents ancillary thereto may be modified, amended, or supplemented by the parties thereto in a writing signed by the parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not change the Purchase Price or have a material adverse effect on the Debtors or the Debtors' estates.

43.     The transactions contemplated by the APA are undertaken by the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale, unless such authorization and such Sale are duly stayed pending such appeal. The Purchaser is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

44.     Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (a) these bankruptcy cases, (b) any subsequent Chapter 7 case into which one or more of these bankruptcy cases may be converted, or (c) any related proceeding subsequent to entry of this Order, shall conflict with or derogate from the provisions of the APA (as modified by this Order) or the terms of this Order.

45. No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale. To the extent permitted under applicable law, including section 1146 of the Bankruptcy Code, the Sale and the transactions contemplated thereby shall be exempt from any sales, use, excise, stock transfer, value-added, stamp, recording, registration and other similar taxes, levies and fees (including any penalties, fines and interest), together with any conveyance fees, recording charges and other similar fees and charges, incurred in connection with the APA and the Transactions (collectively, the "Transfer Taxes").

46. Nothing in this Order shall be deemed to waive, release, extinguish or estop the Debtors or their estates from asserting or otherwise impair or diminish any right (including any right of recoupment), claim, cause of action, defense, offset or counterclaim in respect of any asset that is not an Asset.

47. Pursuant to the terms of the APA, the Debtors shall be liable for, and shall indemnify and hold Purchaser harmless against, any Asset Taxes with respect to a Pre-Closing Tax Period and the portion of any Straddle Period ending on the Closing Date and any other Taxes of the Debtors (the "Seller Taxes"). The Debtors shall pay all Seller Taxes on or prior to the due date for any such Seller Taxes.

48. The failure to specifically include any particular provision of the APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA be authorized and approved in its entirety; provided, however, that this Order shall govern if there is any inconsistency between the APA and this Order.

49. The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the APA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to

which any of the Debtors is a party or which has been assigned by the Debtors to the Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Assets to the Purchaser, (b) interpret, implement, and enforce the provisions of this Order, (c) protect the Purchaser against any Claims and Interests in or against the Debtors or the Assets of any kind or nature whatsoever attaching to the proceeds of the Sale and (d) enter any orders under sections 363 or 365 of the Bankruptcy Code with respect to the Assigned Contracts.

50.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

51.     This Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 6004(h), 6006(d), 7062, 9014 or otherwise. The Debtors and the Purchaser are authorized to close the Sale immediately upon entry of this Order.

### End of Order ###