# EXHIBIT B

## REDLINE

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| GVS TEXAS HOLDINGS I, LLC, *et al.*,[1] | Case No. 21-31121-MVL |
| Debtors. | **(Jointly Administered)** |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: GVS Texas Holdings I, LLC (7458); GVS Texas Holdings II, LLC (1225); GVS Portfolio I, LLC (6441); GVS Portfolio I B, LLC (7171); GVS Portfolio I C, LLC (3093); WC Mississippi Storage Portfolio I, LLC (0423); GVS Nevada Holdings I, LLC (4849); GVS Ohio Holdings I, LLC (6449); GVS Missouri Holdings I, LLC (5452); GVS New York Holdings I, LLC (5858); GVS Indiana Holdings I, LLC (3929); GVS Tennessee Holdings I, LLC (5909); GVS Ohio Holdings II, LLC (2376); GVS Illinois Holdings I, LLC (9944); and GVS Colorado Holdings I, LLC (0408).  The location of the Debtors' service address is: 814 Lavaca Street, Austin, Texas 78701.

**ORDER (I) CONFIRMING THE FOURTH AMENDED
PLAN OF REORGANIZATION OF GVS TEXAS HOLDINGS I, LLC AND ITS
DEBTOR AFFILIATES AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"),

having:

a.  commenced, with the exception of GVS Portfolio I C, LLC, on June 17, 2021, (the "Subsidiaries Petition Date") the debtors and debtors in possession, with the exception of GVS Portfolio I C, LLC, filed voluntary petitions for relief under chapter 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Texas (the "Court"). On June 23, 2021 (the "Parent Petition Date," and, together with the Subsidiaries Petition Date, the "Petition Date"), GVS Portfolio I C, LLC filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Court (collectively, the "Chapter 11 Cases");

b.  continued to operate their businesses and manage their properties as debtors in possession in accordance with sections 1107(a) and 1108 of the Bankruptcy Code;

c.  filed, on October 4, 2021, the: (i) *Joint Chapter 11 Plan of Reorganization for GVS Texas Holdings I, LLC and its Debtor Affiliates* [Docket No. 207] (as may be amended, modified, or supplemented, the "Plan")[2] and (ii) the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization for GVS Texas Holdings I, LLC and its Debtor Affiliates* [Docket No. 208] (together with all exhibits thereto, as may be amended, modified, or supplemented, the "Disclosure Statement");

d.  filed, on November 20, 2021, the *Debtors' Motion for Entry of an Order (I) Approving the Adequacy of the Disclosure Statement, (II) Approving the Forms of Notices in Connection with Confirmation of the Third Amended Plan, (III) Scheduling Dates with Respect Thereto, and (VI) Granting Related Relief* [Docket No. 351];

e.  filed, on November 19, 2021, a further revised Plan [Docket No. 342] and further revised Disclosure Statement [Docket No. 343];

f.  executed, on January 18, 2022, that certain asset purchase agreement (as amended from time to time, the "APA"), dated as of January 18, 2022, by and among CBRE WWG Storage Partners JV III, LLC, a Delaware limited liability company ("Purchaser") and the Debtors, as amended by that certain First Amendment to Asset

---

[2] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan and supporting documents filed thereto or the Disclosure Statement Order (defined below), as applicable. The rules of interpretation set forth in Section I.B of the Plan shall apply to this Confirmation Order.

Purchase Agreement dated as of February 1, 2022 and that certain Second Amendment to Asset Purchase Agreement dated as of March 10, 2022;

g. filed, on January 21, 2022, the *Debtors' Motion for Entry of an Order (i) Authorizing the Sale of the Assets of the Debtors Free and Clear of All Liens, Claims, Encumbrances, and Other Interests; (ii) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (iii) Granting Related Relief* [Docket No. 574] (the "Sale Motion");

h. filed, on January 26, 2022, a further revised Plan [588] and a further revised Disclosure Statement [Docket No. 589];

i. filed, on January 30, 2022, a further revised Plan [610] and a further revised Disclosure Statement [Docket No. 611];

j. filed, on February 1, 2022, a further revised Plan [Docket No. 618] and a further revised Disclosure Statement [Docket No. 619];

k. obtained, on February 1, 2022, an *Order (I) Designating the Stalking Horse Bidder; (II) Approving Revised Bidding Procedures in Connection with the Sale of Substantially all of the Debtors' Assets; (III) Approving Revised Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (Iv) Granting Related Relief* [Docket No. 626] (the "Revised Bidding Procedures Order");

l. obtained, on February 2, 2022, an *Order (I) Approving the Adequacy of the Disclosure Statement, (II) Approving the Forms of Notices in Connection with Confirmation of the Fourth Amended Plan, (III) Scheduling Dates with Respect Thereto, and (VI) Granting Related Relief* [Docket No. 631] (the "Disclosure Statement Order");

m. caused, commencing on February 2, 2022, through their claims agent Omni Agent Solutions ("Omni" the "Claims Agent"), the transmittal of the Notices of Non-Voting Status and Confirmation Hearing Notice to Holders of Claims and Interests as described in the *Certificate of Service* [Docket No. 683], in accordance with the Disclosure Statement Order;

n. causecaused, on February 9, 2022, the Claims Agent to publish the Confirmation Hearing Notice in *USA Today*, as evidenced by the *Affidavit of Service of Publication* [Docket No. 742] (the "Publication Affidavit");

o. conducted, on February 28, 2022, an auction to sell (the "Sale") all or substantially all of the Debtors' assets;

p. filed, on March 9, 2022, the *Amended Notice of Successful Bidder* [Docket No. 789] designating the Purchaser as the Successful Bidder;

q. caused, on March 13, 2022, the Claims Agent to file the *Notice of Opt-Out Report* [Docket No. 813] (the "Opt-Out Report");

r. filed, on March 14, 2022, the *Declaration of Robert D. Albergotti in Support of Confirmation of the Fourth Amended Joint Chapter 11 Plan of Reorganization of GVS Texas Holdings I, LLC and its Debtor Affiliates* (the "Albergotti Declaration") and the *Declaration of Stephan M. Pinsly in Support of Confirmation of the Fourth Amended Joint Chapter 11 Plan of Reorganization of GVS Texas Holdings I, LLC and its Debtor Affiliates* (the "Pinsly Declaration"); and

s. filed, on March 14, 2022, the *Debtors' Memorandum of Law in Support of Confirmation of the Fourth Amended Joint Chapter 11 Plan of Reorganization and Response to Objections to Confirmation* (the "Confirmation Brief").

And this Court having:

t. set March 8, 2022 at 4:00 p.m., prevailing Central Time, as the deadline to file and serve objections to confirmation of the Plan (the "Plan Objection Deadline");

u. set March 16, 2022, at 9:30 a.m., prevailing Central Time, as the date and time for the commencement of the Confirmation Hearing pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

v. reviewed the Plan, the Disclosure Statement, the Plan Supplements, the Voting Affidavit, the Albergotti Declaration, the Pinsly Declaration, the Confirmation Brief, and all pleadings, exhibits, statements, responses, and comments regarding Confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket of these Chapter 11 Cases;

w. held the Confirmation Hearing on March 16, 2022;

x. heard the statements, arguments, and objections made by counsel in respect of Confirmation;

y. considered all oral representations, testimony, documents, filings, and other evidence regarding Confirmation;

z. overruled any objections to the Plan and to Confirmation and all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated; and

aa. taken judicial notice of all papers and pleadings filed in these Chapter 11 Cases and all evidence proffered or adduced and all arguments made at the hearings held before the Court during the pendency of these Chapter 11 Cases.

NOW, **THEREFORE**, the Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to confirmation of the Plan has been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and that the legal and factual bases set forth in the pleadings and submissions in support of Confirmation and all evidence presented at the Confirmation Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Court hereby makes and issues the following findings of fact and conclusions of law and orders:

### FINDINGS OF FACT AND CONCLUSION OF LAW

**IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:**

A.     **Findings and Conclusions.**

1.     The findings and conclusions set forth herein, in the recitals, and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any findings of fact constitute conclusions of law, or any conclusions of law constitute findings of fact, they are adopted as such.

B.     **Jurisdiction, Venue, and Core Proceeding.**

2.      The Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. § 1334.  Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  Approval of the confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2), and the Court has exclusive jurisdiction to (a) determine whether the Plan

complies with the applicable provisions of the Bankruptcy Code and should be confirmed and (b) enter a final order with respect thereto.

C.    **Eligibility for Relief.**

3.    The Debtors were and are entities eligible for relief under section 109 of Bankruptcy Code.

D.    **Commencement and Joint Administration of the Chapter 11 Cases.**

4.    On the Petition Date, the Debtors commenced the Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On July 1, 2021, the Court entered an *Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* in accordance with Bankruptcy Rule 1015(b) [Docket No. 34].  The Debtors have operated their businesses and managed their properties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.

5.    On September 29, 2021, RREF III Storage LLC ("RREF") filed a motion for appointment of a chapter 11 trustee. On October 12, 2021, the Office of the United States Trustee, Region 6 ("U.S. Trustee") filed a motion for the appointment of a chapter 11 trustee. On October 13, 2021, RREF voluntarily withdrew its trustee motion without prejudice to refile. On November 5, 2021, the Court denied the U.S. Trustee's motion for appointment of a chapter 11 trustee. No other trustee or examiner has been appointed in these chapter 11 cases.

E.    **Judicial Notice.**

6.    The Court takes judicial notice of (and deems admitted into evidence for Confirmation) the docket of the Chapter 11 Cases maintained by the clerk of the Court or its duly appointed agent, including all pleadings and other documents on file, all orders entered, all

hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases.

F.       **Non-Appointment of Statutory Committees.**

7.       No statutory committee has been requested or appointed in the Chapter 11 Cases.

G.       **Filing of Plan Supplement.**

8.       On March 8, 2022, the Debtors filed the First Plan Supplement [Docket No. 778], and on March 10, 2022, filed the Second Plan Supplement [Docket No. 796], the Third Plan Supplement [Docket No. 797], and the Amendment to the Second Plan Supplement [Docket No. 807], (collectively, the "Plan Supplement").  The Plan Supplement (including as subsequently modified, supplemented, or otherwise amended pursuant to a filing with the Court), complies with the terms of the Plan, and the Debtors provided good and proper notice of the filing in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Disclosure Statement Order, and the facts and circumstances of these Chapter 11 Cases.  No other or further notice is or will be required with respect to the Plan Supplement.  The Plan Supplement consists of the following documents: (a) Notice of Assumption and Assignment and Cure Amounts with Respect to the Executory Contracts and Unexpired Leases (the "Assumption and Assignment Notice"); (b) Second Amendment to the APA; (d) Amended Reserve Proposal; (e)  Estimated Payoff Amounts for the Loans; and (f) Section 1129(a)(5) Disclosures.

H.     **Plan Modifications.**

9.     Pursuant to section 1127 of the Bankruptcy Code, any modifications to the Plan described or set forth in this Confirmation Order constitute technical or clarifying changes, changes with respect to particular Claims by agreement with Holders of such Claims, or modifications that do not otherwise materially and adversely affect or change the treatment of any other Claim or Interest under the Plan.   These modifications are consistent with the disclosures previously made pursuant to the Disclosure Statement and Solicitation Materials served pursuant to the Disclosure Statement Order, and notice of these modifications was adequate and appropriate under the facts and circumstances of these Chapter 11 Cases.   In accordance with Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the solicitation or re-solicitation of votes under section 1126 of the Bankruptcy Code, and they do not require that Holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan. Accordingly, the Plan, as modified, is properly before this Court and all ~~votes cast with respect to~~acceptances of the Plan prior to such modification shall be binding, and shall apply with respect to the Plan.

I.     **Objections Overruled.**

10.     Any resolution or disposition of objections to Confirmation explained or otherwise ruled upon by the Court on the record at the Confirmation Hearing is hereby incorporated by reference.   Any resolutions of objections to Confirmation explained on the record at the Confirmation Hearing are hereby incorporated by reference.   All remaining unresolved objections, statements, informal objections, and reservations of rights, if any, related to Plan, are overruled on the merits, with prejudice.

8

J.      **Disclosure Statement Order.**

11.     On February 2, 2022, the Court entered the Disclosure Statement Order, which, among other things: (a) approved the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017; (b) approved the forms of notices in connection with confirmation of the Plan; (c) scheduled March 8, 2022, at 4:00 p.m. (prevailing Central Time) as the Opt-Out Deadline; (d) scheduled March 8, 2022, at 4:00 p.m. (prevailing Central Time) as the Plan Objection Deadline; and (f) set March 16, 2022, at 9:30 a.m. (prevailing Central Time) as the Confirmation Hearing.  The solicitation of votes on the Plan complied with the Disclosure Statement Order and Solicitation and Voting Procedures, was appropriate and satisfactory in all respects based upon the circumstances of the Chapter 11 Cases, and was in compliance with sections 1125 and 1126 of the Bankruptcy Code and any other applicable provisions of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018 and any other applicable Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law.

K.      **Transmittal of Notice.**

12.     As evidenced by the Publication Affidavit, and the Opt-Out Report, the Debtors provided due, adequate, and sufficient notice of the Plan, the Disclosure Statement, the Disclosure Statement Order, the Non-Voting Status Notice, the Confirmation Hearing Notice, the Plan Supplement, and all of the other materials distributed by the Debtors in connection with Confirmation in compliance with the Bankruptcy Code, Bankruptcy Rules, including Bankruptcy Rules 2002(b), 3017, 3019, and 3020(b), the Local Rules, and the procedures set forth in the Disclosure Statement Order.  The Debtors and their Claims Agent adhered to the terms of the Disclosure Statement Order and the Solicitation and notice procedures.  The Debtors provided

due, adequate, and sufficient notice of the Opt-Out Deadline, the Plan Objection Deadline, the Confirmation Hearing, and any applicable bar dates and hearings described in the Disclosure Statement Order in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Disclosure Statement Order.

13.     On or before the Solicitation Deadline, the Claims Agent mailed to Holders of Claims or Interests in Non-Voting Classes a Notice of Non-Voting Status.  The Notice of Non-Voting Status Opt-Out Form provided sufficient notice of the injunction, release, and exculpation provisions of the Plan and provided the Holders of Claims or Interests receiving such Notice of Non-Voting Status with a sufficient opportunity to elect not to grant the releases included in Section VIII.C of the Plan.

L.      **Opt-Out Report.**

14.     On March 13, 2022, the Claims Agent filed the Opt-Out Report, certifying the method and results of the Opt-Out Notices for each Classes of Claims and Interests, which sets forth those Non-Voting parties that have elected to opt out of the Plan Releases.

M.      **Bankruptcy Rule 3016.**

15.     The Plan and all modifications thereto are dated and identify the Entities submitting them, thereby satisfying Bankruptcy Rule 3016(a).  The Debtors appropriately filed the Disclosure Statement and Plan with the Court, thereby satisfying Bankruptcy Rule 3016(b). The injunction, ~~discharge,~~ release, and exculpation provisions in the Disclosure Statement and Plan describe, in bold font and with specific and conspicuous language, all acts to be enjoined and identify the Entities that will be subject to the injunction, thereby satisfying Bankruptcy Rule 3016(c).  To the extent of any conflict between the Disclosure Statement, the Plan, and this Confirmation Order, this Confirmation Order controls.

N.  **Bankruptcy Rule 3017.**

16.  The Debtors provided proper and sufficient notice of the Confirmation Hearing as required by Bankruptcy Rule 3017(d), as modified by the Disclosure Statement Order. The Confirmation Hearing Notice and Notice of Non-Voting Status, including the Opt-Out Form, were provided to all parties. Accordingly, notice was adequate, satisfied Bankruptcy Rule 3017(e), and was in accordance with applicable procedures contemplated by the Disclosure Statement Order.

O.  **Burden of Proof**

17.  The Debtors, as proponents of the Plan, have met their burden of proving the elements of section 1129 of the Bankruptcy Code by a preponderance of the evidence, the applicable evidentiary standard for Confirmation. Each witness who submitted a declaration or testified on behalf of the Debtors in connection with the Confirmation Hearing was credible, reliable, and qualified as to the topics addressed.

P.  **The Plan's and the Debtors' Compliance with the Bankruptcy Code.**

18.  The Plan and the Debtors have complied with all applicable provisions of section 1129 of the Bankruptcy Code.

1.  **11 U.S.C. § 1129(a)(1) – Plan Compliance with the Applicable Provisions of the Bankruptcy Code.**

19.  As required by section 1129(a)(1) of the Bankruptcy Code, the Plan complies with all applicable provisions of the Bankruptcy Code, including sections 1122 and 1123 thereof.

a.  **Sections 1122 and 1123(a)(1) – Proper Classification of Claims and Interests.**

20.  The classification of Claims and Interests under the Plan is proper under the Bankruptcy Code. Article III of the Plan designates Classes of Claims and Interests, other than

11

General Administrative Expense Claims, Professional Claims, and Priority Tax Claims, which, pursuant to section 1123(a)(1) of the Bankruptcy Code, need not be classified. As required by section 1122(a) of the Bankruptcy Code, each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and the classifications were not promulgated for any improper purpose. The Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

<b>b. Section 1123(a)(2) – Specification of Unimpaired Classes.</b>

21. Article III of the Plan specifies that all Classes of Claims and Interests are Unimpaired by the Plan, within the meaning of section 1124 of the Bankruptcy Code. The Plan therefore satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code.

<b>c. Section 1123(a)(3) – Specification of Treatment of Impaired Classes.</b>

22. Article III of the Plan specifies that there is no Impaired Class under the Plan. The Plan therefore satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

<b>d. Section 1123(a)(4) – No Discrimination.</b>

23. Article III of the Plan provides for equality of treatment of each Claim or Interest within a particular Class, unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest. The Plan therefore satisfies section 1123(a)(4) of the Bankruptcy Code.

e. **Section 1123(a)(5) – Implementation of the Plan.**

24. The Plan and the various documents and forms of agreement included in the Plan Supplement provide adequate and proper means for implementation of the Plan, including, without limitation: general settlement of Claims and Interests; (b) the Sale; (c) the termination or release of all Liens on any property of the Debtors; (d) the rejection of Executory Contracts and Unexpired Leases not previously assumed by the Debtors under section 365 of the Bankruptcy Code or listed on the Assumption and Assignment Notice; (e) exemption from transfer taxes pursuant to section 1146(a) of the Bankruptcy Code; and (f) preservation of certain of the Debtors' Causes of Action. The Plan therefore satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

f. **Section 1123(a)(6) – Non-Voting Equity Securities.**

25. The Debtors are not corporations and the Plan does not contemplate issuance of any equity securities. Accordingly, section 1123(a)(6) of the Bankruptcy Code is not applicable to the Plan.

g. **Section 1123(a)(7) – Selection of Officers and Directors.**

26. The Plan Supplement provides that, as of the Effective Date, the current board shall be dissolved, and Mr. Stephan Pinsly shall be appointed as the sole officer, director, manager, and Disbursing Agent in accordance with Section VI of the Plan. The appointment of the Disbursing Agent is consistent with the interests of creditors and with public policy. The Plan therefore satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

h. **Sections 1123(a)(8) and 1123(c) – No Debtor is an Individual.**

27. None of the Debtors is an individual. Accordingly, sections 1123(a)(8) and 1123(c) of the Bankruptcy Code are not applicable to the Plan.

13

i.       **Section 1123(b) – Discretionary Contents of the Plan.**

28.     The Plan contains various provisions that may be construed as discretionary but not necessary for Confirmation under the Bankruptcy Code. Any such discretionary provision complies with section 1123(b) of the Bankruptcy Code and is not inconsistent with the applicable provisions of the Bankruptcy Code. The Plan therefore satisfies the requirements of section 1123(b) of the Bankruptcy Code.

(i)      **Section 1123(b)(1) – Impairment or Unimpairment of Classes of Claims and Interests.**

29.     Article III of the Plan leaves unimpaired each Class of Claims or Interests. The Plan therefore satisfies section 1123(b)(1) of the Bankruptcy Code.

(ii)      **Section 1123(b)(2) – Assumption and Rejection of Executory Contracts and Unexpired Leases.**

30.     Article V of the Plan governs the Debtors' assumption or rejection of Executory Contracts and Unexpired Leases as of the Effective Date, unless such Executory Contract or Unexpired Lease is listed on the Schedule of Assumed and Assigned Contracts included in the Plan Supplement and becomes an Assigned Contract pursuant to the APA.

(iii)     **Section 1123(b)(3) – Preservation of Claims and Causes of Action.**

31.     <u>Preservation of Claims and Causes of Action</u>. Section IV.C of the Plan appropriately provides that unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Debtors shall convey to the Disbursing Agent all rights to commence, prosecute, settle, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date. The Plan is sufficiently specific with respect to the Causes of Action to be retained by the Debtors, and the Plan and Plan Supplement

provide meaningful disclosure with respect to the potential Causes of Action that the Debtors may retain, and all parties in interest received adequate notice with respect to such retained Causes of Action. The provisions regarding Causes of Action in the Plan are appropriate and in the best interests of the Debtors, their respective Estates, and Holders of Claims or Interests. For the avoidance of any doubt, Causes of Action conveyed pursuant to the Sale or released or exculpated under the Plan will not be retained by the ~~Liquidating~~Reorganized Debtors.

(iv) **Section 1123(b)(6) – Releases, Injunction, Exculpation.**

32. <u>Releases, Injunctions, and Exculpations</u>. The Court has jurisdiction under 28 U.S.C. §§ 1334(a), 1334(b) and 1334(e) to approve the releases, injunctions, and exculpations set forth in Article VIII of the Plan. Section 105(a) of the Bankruptcy Code permits issuance of the injunctions and approval of the releases and exculpations set forth in Article VIII of the Plan because, as has been established here, based upon the record in the Chapter 11 Cases and the evidence proffered or adduced at or prior to the Confirmation Hearing, such provisions: are (a) made in exchange for good and valuable consideration; (b) are essential to the formulation and implementation of the Plan; (c) confer substantial benefits on the Debtors and the Estates; (d) are integral to and non-severable from the Plan; (e) are fair, equitable, and reasonable; and (f) are in the best interests of the Debtors, the Estates, the ~~Liquidating~~Reorganized Debtors, creditors, and other stakeholders. Pursuant to section 1123(b)(3) of the Bankruptcy Code, the releases, injunctions, and exculpations set forth in the Plan, as implemented by this Confirmation Order, are fair, equitable, reasonable, and in the best interests of the Debtors, the Estates, the ~~Liquidating~~Reorganized Debtors, and all Holders of Claims or Interests. The record of the Confirmation Hearing and the Chapter 11 Cases is sufficient to support the releases, injunctions, and exculpations provided for in Article VIII of the Plan. Accordingly, based upon the

15

representations and arguments of counsel to the Debtors and all other testimony either actually given or proffered and other evidence introduced at the Confirmation Hearing and the full record of the Chapter 11 Cases, the Court finds that the releases, injunctions, and exculpations set forth in Article VIII of the Plan are consistent with the Bankruptcy Code and applicable law.

33.     <u>Debtor Release.</u>  The releases of Claims and Causes of Action by the Debtors described in Article VIII.C.1 of the Plan in accordance with section 1123(b) of the Bankruptcy Code (the "<u>Debtor Release</u>") represent a valid exercise of the Debtors' business judgment.  The Debtor Release is fair and equitable and complies with the absolute priority rule.

34.     The Debtor Release is an integral part of the Plan and is in the best interests of the Debtors' Estates.  The value with respect to the released claims and Causes of Action, when weighed against the costs, supports the Debtor Release.  The Plan, including the Debtor Release, was negotiated before and after the Petition Date by sophisticated parties represented by able counsel and advisors, and their respective representatives and professionals.  The Debtor Release is therefore<u>was proposed</u> in good faith.

35.     The Debtor Release appropriately offers protection to parties that participated in the Debtors' reorganization process.  Each of the Released Parties made significant concessions and contributions to these Chapter 11 Cases.  The Debtor Release for the Debtors' fiduciaries is appropriate because the Debtors' fiduciaries share an identity of interest with the Debtors, supported the Plan and these Chapter 11 Cases, actively participated in meetings, hearings, and negotiations during these Chapter 11 Cases, and have provided other valuable consideration, including affirmative consideration and contract rights to support the successful sale of the Debtors' assets, to the Debtors to facilitate the Debtors' reorganization.

36.     The scope of the Debtor Release is appropriately tailored under the facts and circumstances of the Chapter 11 Cases.  The Debtor Release is appropriate in light of, among other things, the value provided by the Released Parties to the Debtors' Estates and the critical nature of the Debtor Release to the Plan.  The record of the pleadings, the Sale, and the Confirmation Hearing and the Chapter 11 Cases is sufficient to support the Debtor Releases. The Debtors, Debtors, Mr. Robert D. Albergotti, the Purchaser, the Professionals, and their representatives, advisors, Affiliates, and agents, and other key stakeholders have played an integral role in, and have provided a tangible benefit to, the Debtors' restructuring efforts.  These parties have worked diligently in connection with the Debtors' Sale and restructuring for the benefit of all stakeholders.   The Debtors, Mr. Robert D. Albergotti, the Purchaser, the Professionals, and their representatives, advisors, Affiliates, and agents, and other key stakeholders (a) assisted in the negotiation and formulation of the Disclosure Statement and Plan and the negotiation and consummation of the Sale; and (b) responded to myriad issues that arose during the restructuring process and the Chapter 11 Cases.  The Debtors,  and other parties provided good and valuable consideration to the Debtors through the Settlements and otherwise. Each of the parties receiving a release under the Plan has participated in the Chapter 11 Cases and the Debtors' restructurings in good faith, and has acted in compliance with all provisions of the Bankruptcy Code, including the negotiation, preparation, and pursuit of confirmation of the Plan, and the negotiation and consummation of the Sale.  Accordingly, the release provisions in Article IXVIII.C.1 of the Plan are appropriate, as they represent a valid exercise of the Debtors' business judgment.

37.     <u>Third-Party Release</u>.  The release by the Releasing Parties (the "<u>Third-Party Release</u>"), set forth in Section IXVIII.C.2 of the Plan (and as modified herein), was consensually

provided after due notice and opportunity for a hearing and is an essential provision of the Plan. The Third-Party Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) materially beneficial to, and in the best interests of, the Debtors, their Estates, and their stakeholders, and is important to the overall objectives of the Plan to finally resolve certain Claims among or against certain parties in interest in these Chapter 11 Cases; (c) fair, equitable, and reasonable; (d) given and made after due notice and opportunity for hearing; (e) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released by the Third-Party Release against any of the Released Parties; and (f) consistent with sections 105, 524, 1123, 1129, and 1141 and other applicable provisions of the Bankruptcy Code.

38.     Like the Debtor Release, the Third-Party Release facilitated participation in both the Debtors' Plan and the chapter 11 process generally, and is an integral part of the Plan.  The Third-Party Release was critical to incentivizing parties to support the Plan.  The Third-Party Release was instrumental in developing a Plan that maximized value for all of the Debtors' stakeholders.  As such, the Third-Party Release appropriately offers certain protections to parties who constructively participated in the Debtors' reorganization process by, among other things, supporting the Sale and the Plan.

39.     The Third-Party Release is consensual as to all parties in interest, including all Releasing Parties, and such parties in interest were provided notice of the Chapter 11 Cases, the Plan, the deadline to object to confirmation of the Plan, and the Confirmation Hearing and were properly informed that all Holders of Claims against or Interests in the Debtors that did not check the "Opt-Out" box on the Opt-Out Form would be deemed to have expressly, unconditionally, generally, individually, and collectively consented to the release and discharge of all Claims and

18

Causes of Action against the Debtors and the Released Parties. Additionally, the release provisions of the Plan were conspicuous, emphasized with boldface type in the Plan, the Disclosure Statement, and the applicable notices. Indeed, a number of entities submitted the opt-out election form without voting.

40. The scope of the Third-Party Release is appropriately tailored under the facts and circumstances of these Chapter 11 Cases, and parties in interest received due and adequate notice of the Third-Party Release. Among other things, the Plan and the Disclosure Statement provide appropriate and specific disclosure with respect to the Entities, Claims, and Causes of Action that are subject to the Third-Party Release, and no other disclosure is necessary. As evidenced by the Opt-Out Report, the Debtors provided sufficient notice of the Third-Party Release, including by providing actual notice to all known parties in interest, including all known Holders of Claims against, and Interests in, any Debtor and publishing notice in national and local publications for the benefit of unknown parties in interest, and no further or other notice is necessary. The Third-Party Release is designed to provide finality for the Debtors, the ~~Liquidating~~Reorganized Debtors, and the Released Parties regarding the parties' respective obligations under the Plan.

41. The Third-Party Release is specific in language, integral to the Plan, and given for adequate consideration. The Releasing Parties were given due and adequate notice of the Third-Party Release, and thus the Third-Party Release is consensual as to those Releasing Parties that did not elect to opt-out of granting the Third-Party Release. In light of, among other things, the value provided by the Released Parties to the Debtors' Estates and the critical nature of the Third-Party Release to the Plan, the Third-Party Release is appropriate. The record of the Confirmation Hearing and the Chapter 11 Cases is sufficient to support the Third-Party Release.

42. <u>Exculpation</u>. The exculpation provisions set forth in Section VIII.E of the Plan (as modified herein) (the "<u>Exculpation</u>") are essential to the Plan. The record in these Chapter 11 Cases fully supports the Exculpation, which is appropriately tailored to protect the Exculpated Parties from inappropriate litigation and to exclude actions to have constituted actual fraud, willful misconduct, or gross negligence. The Exculpated Parties subject to the Exculpation have, and, upon entry of this Confirmation Order will be deemed to have, participated in these Chapter 11 Cases in good faith and in compliance with all applicable laws with regard to the distribution of recoveries under the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation or such distributions made pursuant to the Plan. The Exculpated Parties are found to have fulfilled their fiduciary duties to all parties in interest in these Chapter 11 Cases.

43. <u>Injunctions</u>. The injunction provisions set forth the Plan, including, but not limited to those provided in Section VIII.F of the Plan are hereby authorized, approved and binding on all Persons and Entities described therein. Absent reversal, vacatur or stay of this Order, to the fullest extent permitted under applicable law, no Person or Entity may take any action against any Person or Entity released or discharged (or the property or estate of any such Person or Entity so released and discharged) under the Plan, or otherwise take any action inconsistent with the Plan and the findings of fact and conclusions of law contained in this Order, and this Court shall enter maintain exclusive jurisdiction to enter and implement orders to enforce the injunction provisions contained in the Plan as may be necessary or appropriate to restrain interference by any Entity in connection with actions inconsistent with the Plan and the findings of fact and conclusions of law contained in this Order.

44.     The injunctions are essential to the Plan and are necessary to preserve and enforce the discharge, Debtor Release, the Third-Party Release, and the Exculpation, each as set forth in Sections VIII.A, VIII.C, VIII.D, and VIII.E of the Plan, respectively, and are appropriately tailored to achieve those purposes.

45.     Except as otherwise provided herein, as of the Effective Date, all releases, waivers, discharges, exculpations, and injunctions set forth in the Plan and/or this Confirmation Order shall be effective and binding on all persons.  The Plan and this Confirmation Order shall have *res judicata*, collateral estoppel, and estoppel (judicial, equitable, or otherwise) effect with respect to all matters provided for in, or resolved pursuant to, the Plan and/or this Confirmation Order, including the release, injunction, exculpation, discharge provisions contained in the Plan and/or this Confirmation Order.

(v)     **Section 1123(d) – Cure of Defaults.**

46.     Section V.D of the Plan provides for the satisfaction of Cure costs associated with each Executory Contract and Unexpired Lease to be assumed in accordance with section 365(b)(1) of the Bankruptcy Code.  If there is any dispute regarding any Cure, the ability of the ~~Liquidating~~Reorganized Debtors or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption, then payment of the applicable Cure amount shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption (and, if applicable, assignment), or as may be agreed upon by the Debtors or the ~~Liquidating~~Reorganized Debtors, as applicable, and the counterparty to the Executory Contract or Unexpired Lease.

47. Pursuant to the Plan and Revised Bidding Procedures, the Debtors served the Notice of Assumption and Assignment, which listed proposed cure amounts, based on the Debtors' books and records, for each Executory Contract and Unexpired Lease that was to potentially be assumed and assigned. The Debtors served sufficient notice on the counterparties to such Executory Contracts and Unexpired Leases, and all issues related to Cure and assumption/assignment are resolved. The Plan therefore satisfies the requirements of section 1123(d) of the Bankruptcy Code.

2. **Section 1129(a)(2) – Debtors' Compliance with the Applicable Provisions of the Bankruptcy Code.**

48. The Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126, 1127, and 1128, and Bankruptcy Rule 3017.

49. The Debtors and their agents have distributed applicable notices, including the Opt-Out Notice and Confirmation Hearing Notice, and have participated in the activities described in section 1125 of the Bankruptcy Code fairly, in good faith within the meaning of section 1125(e) of the Bankruptcy Code, and in a manner consistent with the applicable provisions of the Disclosure Statement Order, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Section VIII.E of the Plan.

50. The Debtors, the Debtors' board members and officers, and the Debtors' respective agents have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the offering, issuance, and distribution of

recoveries under the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the distributions made under the Plan.

        3.      **Section 1129(a)(3) – Plan Proposed in Good Faith.**

51.     The Debtors have proposed the Plan (and all documents necessary to effectuate the Plan) in good faith and not by any means forbidden by law. The Chapter 11 Cases were filed, and the Plan was proposed, with an honest belief that the Debtors were in need of reorganization and with the legitimate purpose of maximizing value of the Debtors' Estates and emerging from bankruptcy with sufficient sale proceeds to distribute to their creditors. The Debtors' good faith is evident from the facts and record of the Chapter 11 Cases, the Disclosure Statement, the record of the Confirmation Hearing, and other proceedings held in the Chapter 11 Cases. The Plan and the contracts, instruments, releases, agreements and documents necessary and related to implementing, effectuating and consummating the Plan, including, without limitation, the Sale, is the culmination of extensive good-faith, arm's-length negotiations. Further, the Plan's classification, indemnification, release, injunction, and exculpation provisions have been negotiated in good faith and at arm's length, are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142 of the Bankruptcy Code and applicable law in this Circuit and are each necessary for the Debtors' successful reorganization. In determining that the Plan satisfies section 1129(a)(3) of the Bankruptcy Code, the Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself, and the process leading to Confirmation. The Plan therefore satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code.

4. **Section 1129(a)(4) – Payments for Services or Costs and Expenses.**

52.     Except as otherwise provided or permitted by the Plan or other orders of the Court, the payments for services or costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incidental to the Chapter 11 Cases, in each case incurred prior to the Effective Date, including Claims for professional fees that have been or will be paid by the Debtors, have been, hereby are, or will be, authorized by order of the Court or are otherwise permitted under the Bankruptcy Code.  The Plan therefore satisfies the requirements of section 1129(a)(4) of the Bankruptcy Code.

5. **Section 1129(a)(5) – Directors, Officers, and Insiders.**

53.     The Disbursing Agent and post-Effective Date management has been disclosed prior to the Confirmation Hearing in the Plan Supplement.  The Plan complies with section 1129(a)(5) of the Bankruptcy Code because of the appointment of the Disbursing Agent and the disclosure thereof is consistent with the interests of the creditors and with public policy.

6. **Section 1129(a)(6) – No Rate Changes.**

54.     The Plan does not provide for any change in rates subject to the jurisdiction of any governmental regulatory commission and will not require governmental regulatory approval.  Accordingly, section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan.

7. **Section 1129(a)(7) – Best Interests of Creditors Test.**

55.     The liquidation analysis attached to the Disclosure Statement as Exhibit C [Docket No. 619], the Albergotti Declaration, and other evidence proffered or adduced at the Confirmation Hearing: (a) are reasonable, persuasive, credible and accurate; (b) use reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that each Holder of a Claim or Interest in an Impaired Class either (i)

24

has accepted the Plan or (ii) will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that it would receive if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on such date. The Plan therefore satisfies section 1129(a)(7) of the Bankruptcy Code.

8.      **Section 1129(a)(8) – No Classes Are Impaired.**

56.    Each Class of Claims or Interests is Unimpaired under the Plan.

9.      **Section 1129(a)(9) – Treatment of Administrative Expense Claims and Priority Tax Claims.**

57.    The treatment of General Administrative Expense Claims, Professional Claims, and Priority Tax Claims under Article II of the Plan and of Other Priority Claims and Other Secured Claims under Article III of the Plan satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code, subject to certain bar date provisions consistent with Bankruptcy Rules 3002 and 3003. The Plan therefore satisfies section 1129(a)(9) of the Bankruptcy Code.

10.    **Section 1129(a)(10) – No Impaired Classes.**

58.    There are no Classes of Claims or Interests that are Impaired under the Plan. Accordingly, section 1129(a)(10) of the Bankruptcy Code is inapplicable to this Chapter 11 Case.

11.    **Section 1129(a)(11) – Feasibility.**

59.    The Plan is feasible within the meaning of section 1129(a)(11) of the Bankruptcy Code. The evidence proffered or adduced at or prior to the Confirmation Hearing and in the Albergotti Declaration, the Pinsly Declaration, the Confirmation Brief, the Opt-Out Report, and the Disclosure Statement, including exhibits thereto: (a) is reasonable, persuasive, accurate and credible as of the dates such analysis or evidence was prepared, presented, or proffered; (b) has

not been controverted by other evidence; (c) uses reasonable and appropriate methodologies and assumptions; (d) establishes that upon Closing of the Sale, the Debtors will have sufficient funds available to meet their obligations under the Plan; and (e) establishes that confirmation of the Plan is not likely to be followed by a liquidation or need for a further reorganization of the ~~Liquidating~~Reorganized Debtors that is not proposed in the Plan. Accordingly, the Debtors have established that the Plan has a reasonable likelihood of success. The Plan therefore is feasible and therefore satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

12.   **Section 1129(a)(12) – Payment of Certain Fees.**

60.   Section XII.C of the Plan provides that all fees payable pursuant to 28 U.S.C. § 1930(a), as determined by the Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid by each of the ~~Liquidating~~Reorganized Debtors (or the Disbursing Agent on behalf of each of the ~~Liquidating~~Reorganized Debtors) for each quarter (including any fraction thereof) until the earlier of entry of a final decree closing such Chapter 11 Cases or an order of dismissal or conversion, whichever comes first. The Plan therefore satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

13.   **Section 1129(a)(13) – Continuation of Retiree Benefits.**

61.   The Debtors provide no retiree benefits of any kind. Accordingly, section 1129(a)(13) of the Bankruptcy Code is inapplicable to these Chapter 11 Cases.

14.   **Sections 1129(a)(14), (15), and (16) – Domestic Support Obligations, Individuals, and Nonprofit Corporations.**

62.   The Debtors owe no domestic support obligations, are not individuals, and are not nonprofit corporations. Accordingly, sections 1129(a)(14), (15) and (16) of the Bankruptcy Code do not apply to the Plan.

15.     **Section 1129(b) – Fair and Equitable; No Unfair Discrimination.**

63.     Each Class of Claims or Interests is Unimpaired under the Plan. Accordingly, section 1129(b) of the Bankruptcy Code is inapplicable to these Chapter 11 Cases.

16.     **Section 1129(c) – Confirmation of Only One Plan.**

64.     The Plan is the only plan of reorganization for the Debtors proposed and considered by the Court for Confirmation. The Plan therefore satisfies the requirements of section 1129(c) of the Bankruptcy Code.

17.     **Section 1129(d) – Principal Purpose of the Plan.**

65.     The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, 15 U.S.C. § 77e, and no governmental unit has objected to the confirmation of the Plan on any such grounds. The Plan therefore satisfies the requirements of section 1129(d) of the Bankruptcy Code.

18.     **Section 1129(e) – Not Small Business Cases.**

66.     These Chapter 11 Cases are not small business cases. Accordingly, section 1129(e) of the Bankruptcy Code does not apply to these Chapter 11 Cases.

Q.      **Disclosure of Agreements and Other Documents.**

67.     The Debtors have disclosed all material facts, to the extent applicable, regarding: (a) the implementation of the Restructuring Transactions; (b) the selection of the Disbursing Agent; (c) the exemption under section 1146(a) of the Bankruptcy Code; (d) all other actions contemplated by the Plan; and (e) the adoption, execution, and delivery of all contracts, leases, instruments, securities, releases, indentures, and other agreements related to any of the foregoing.

R.    **Approval of the Sale.**

68.    Jurisdiction, Final Order and Statutory Predicates.  This Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This Court is authorized to issue the Sale Order as a final order consistent with Article III of the United States Constitution.  The statutory predicates for the relief requested in the Sale Motion are sections 105(a), 363 and 365 of title 11 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007 and 9014.  The Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable to this proceeding by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of the Sale Order, and expressly directs entry of judgment as set forth herein.

69.    Notice of the Bidding Procedures and Sale.  In accordance with the provisions of the Revised Bid Procedures Order, actual written notice of the Sale Motion, the Revised Bid Procedures, the auction conducted on February 28, 2022 (the "Auction"), the Sale Hearing, the sale of the Debtors' Assets, and a reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein, has been afforded to all known interested entities, including, but not limited to the following parties (the "Sale Notice Parties"): (i) all entities known by the Debtors to have expressed an interest in a transaction with respect to the Assets, including all Qualified Bidders;  (ii) all state and local taxing authorities or recording offices which have a reasonably known interest in the relief requested; (iii) all insurers; (iv) all non-debtor parties to relevant contracts or leases (executory or otherwise); (v) all parties who are

known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or other interest in the Assets; (vi) all entities identified by the Consultation Parties that may have an interest in a transaction with respect to the Assets; (vii) all other creditors required to be provided notice under Bankruptcy Rule 2002(a)(2); and (viii) the Notice Parties.

70.     Notice of the Sale Hearing was reasonably calculated to provide all interested parties with timely and proper notice of the Sale and Sale Hearing. Further, a reasonable opportunity to object to and to be heard regarding the relief granted by the Sale Order has been afforded to parties entitled to notice pursuant to Bankruptcy Rule 6004(a).

71.     On March 9, 2022, the Debtors filed the Amended Notice of Successful Bidder [Docket No. 789] designating the Purchaser as the Successful Bidder and Public Storage as the Back-Up Bidder.

72.     As evidenced by the affidavits of service previously filed with the Court, proper, timely, adequate, and sufficient notice of the Revised Bid Procedures, the Auction, the Sale Motion, Sale Hearing, Sale and the transactions contemplated thereby, including without limitation, the assumption and assignment of the Assigned Contracts to the Purchaser, was provided in accordance with the orders previously entered by this Court, sections 105(a), 363 and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, 6006, 9007 and 9008. The notices described herein were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Sale Motion, Sale Hearing, Sale or the assumption and assignment of the Assigned Contracts to the Purchaser is or shall be required.

73.     The disclosures made by the Debtors concerning the Revised Bid Procedures, Auction, APA, Sale Motion, Sale, assumption and assignment of the Assigned Contracts to the Purchaser and Sale Hearing were good, complete and adequate.

74. A reasonable opportunity to object and be heard with respect to the Sale and the Sale Motion and the relief requested therein has been afforded to all interested persons and entities, including the Notice Parties.

75. <u>Good Faith of the Purchaser</u>. The APA was negotiated, proposed, and entered into by the Debtors and the Purchaser without collusion, in good faith and from arms'-length bargaining positions.

76. The Purchaser is not an "insider" or "affiliate" of the Debtors as those terms are defined in the Bankruptcy Code. Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the APA to be avoided under section 363(n) of the Bankruptcy Code. Specifically, the Purchaser has not acted in a collusive manner with any person or entity, and the aggregate price to be paid by the Purchaser for the Assets (the "<u>Purchase Price</u>"), was not controlled by any agreement among the bidders. The Debtors and their professionals marketed the Assets and conducted the marketing and sale process in substantial compliance with the Revised Bid Procedures Order.

77. The Purchaser is purchasing the Assets in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code. Specifically: (i) the Purchaser neither induced nor caused the Debtors' bankruptcy cases; (ii) the Purchaser disclosed all payments to be made by the Purchaser in connection with the Sale; (iii) the Purchaser recognizes that the Debtors were free to deal with any other party interested in purchasing the Assets; (iv) no common identity of directors, officers or controlling stockholders exists among the Purchaser and the Debtors; (v) the negotiation and execution of the APA was at arms'-length and in good faith, and at all times each of the Purchaser and the Debtors were represented by competent counsel of their choosing; (vi) the Purchaser complied in all material respects with the Revised

Bid Procedures; and (vii) the Purchaser has not acted in a collusive manner with any person or entity. Accordingly, the Purchaser is entitled to all of the protections afforded under section 363(m) of the Bankruptcy Code.

78.     <u>Highest or Otherwise Best Offer</u>.  The Debtors conducted an Auction process in accordance with, and have otherwise complied in all material respects with, the Revised Bid Procedures. The Auction process set forth in the Revised Bid Procedures afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Assets.  The Auction was duly noticed and conducted in a non-collusive, fair, and good faith manner and a reasonable opportunity has been given to any interested party to make a higher or otherwise better offer for the Assets.

79.     The Purchaser submitted the highest and best offer for the Assets.  A reasonable opportunity was given to any interested party to make the highest or otherwise best offer. The Debtors served the Sale Notice on the Notice Parties, and no other entity or group of entities has submitted a binding offer to purchase the Assets for greater economic value to the Debtors' estates than the Purchaser.

80.     In accordance with the Revised Bid Procedures, the Debtors filed a notice with the Court informing the Court and parties in interest that they intend to seek approval of the Sale.

81.     The terms contained in the APA constitute the highest and best offer for the Assets and provide fair and reasonable consideration to the Debtors for the Assets and the assumption of the Assumed Liabilities as defined in the APA (the "<u>Assumed Liabilities</u>"), and the consideration provided by the Purchaser under the APA constitutes reasonably equivalent value under the Bankruptcy Code and under the law of the United States, any state, territory, possession, or the District of Columbia.  The Debtors' determination, in consultation with the

31

Consultation Parties and in accordance with the Revised Bid Procedures, that the APA constitutes the highest and best offer for the Assets constitutes a valid and sound exercise of the Debtors' business judgment. Approval of the Sale Motion and the APA and the consummation of the transactions contemplated thereby is in the best interests of the Debtors' Chapter 11 Estates (taken as a whole), their creditors, and other parties in interest.

82.     <u>No Fraudulent Transfer or Merger</u>.  The consideration provided by the Purchaser pursuant to the APA (i) is fair, reasonable and  adequate, (ii) is the highest or otherwise best offer for the Assets, (iii) will provide a greater recovery for the Debtors' respective estates and creditors than would be provided by any other available alternative, and (iv) constitutes reasonably equivalent value (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and section 548 of the Bankruptcy Code) and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.  No other person, entity or group of entities has offered to purchase the Assets for greater economic value to the Debtors' Estates than the Purchaser.  The Debtors' determination that the APA constitutes the highest or otherwise best offer for the Assets constitutes a valid and sound exercise of the Debtors' business judgment. Approval of the Sale Motion and the APA, and the consummation of the transactions contemplated thereby, is in the best interests of the Debtors, their Estates, creditors, and other parties-in-interest.

83.     The APA was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia.  Neither the Debtors nor the Purchaser is fraudulently entering into the transaction contemplated by the APA.

84. The Purchaser is not a mere continuation of the Debtors or their estates and there is no continuity of enterprise between the Purchaser and the Debtors. The Purchaser is not holding itself out to the public as a continuation of the Debtors. The Purchaser is not a successor to the Debtors or their Estates, and the Sale does not amount to a consolidation, merger or de facto merger of Purchaser and the Debtors.

85. <u>Validity of Transfer</u>. The Debtors, to the extent necessary and applicable, have (i) full corporate power and authority to execute and deliver the APA and all other documents contemplated thereby, (ii) all corporate authority necessary to consummate the transactions contemplated by the APA, and (iii) taken all corporate action necessary to authorize and approve the APA and the consummation of the transactions contemplated thereby. The Sale has been duly and validly authorized by all necessary corporate action. No consents or approvals, other than those expressly provided for in the APA, are required for the Debtors to consummate the Sale, execute the APA, or consummate the transactions contemplated thereby.

86. The Debtors have (except to the extent otherwise provided in the APA) good and marketable title to the Assets and are lawful owners of the Assets. The transfer of the Assets to the Purchaser will be, as of the closing of the transactions contemplated by the APA (the "<u>Closing Date</u>"), a legal, valid, and effective transfer of the Assets, which transfer vests or will vest the Purchaser with all right, title, and interest of the Debtors to the Assets free and clear of (i) all liens relating to, accruing, or arising any time prior to the Closing Date, including, without limitation, any such liens (x) that purport to give to any party a right of setoff or recoupment against, or a right or option to effect any forfeiture, modification, profit sharing interest, right of first refusal, purchase, or repurchase right or option, or termination of, the Debtors' or the Purchaser's interests in the Assets, or any similar rights, or (y) in respect of taxes, restrictions,

rights of first refusal, charges or interests of any kind or nature, if any, including, without limitation, any restriction of use, voting, transfer, receipt of income, or other exercise of any attributes of ownership) (the "Liens") and (ii) all debts arising under, relating to, or in connection with any act of the Debtors or claims (as that term is defined in section 101(5) of the Bankruptcy Code), liabilities, obligations, demands, guaranties, options, rights, contractual commitments, restrictions, interests, and matters of any kind and nature, whether arising prior to or subsequent to the commencement of these bankruptcy cases, and whether imposed by agreement, understanding, law, equity or otherwise relating to, accruing or arising any time prior to the Closing Date (collectively in this clause (ii), the "Claims" and, together with the Liens, the "<u>Claims and Interests</u>"), with the exception of any Assumed Liabilities.

87.     <u>Section 363(f) of the Bankruptcy Code is Satisfied</u>.  The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the Debtors may sell the Assets free and clear of any Claims and Interests in the property.

88.     The Purchaser would not have entered into the APA and would not consummate the transactions contemplated thereby if the Sale and the assumption of liabilities and obligations as set forth in the APA by the Purchaser were not free and clear of all Claims and Interests. Unless otherwise expressly included in the Sale Order and the APA, and to the fullest extent permitted by applicable law, the Purchaser shall not be responsible for any Claims and Interests, including but not limited to the following: (a) any labor or employment agreements; (b) all mortgages, deeds of trust and security interest; (c) intercompany loans and receivables between the Debtors and any subsidiaries; (d) any pension welfare compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of any Debtor; (e) any other employee, workers' compensation, occupational disease or

unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (i) the Employee Retirement Income Security Act, as amended, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the National Labor Relations Act, (vi) the Worker Adjustment and Retraining Act of 1988, (vii) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (viii) the Americans with Disabilities Act of 1990, (ix) the Consolidated Omnibus Budget Reconciliation Act of 1985, (x) state discrimination laws, (xi) state unemployment compensation laws or other similar state laws or any other state or federal benefits or claims relating to any employment with any of the Debtors or any of their respective predecessors; (f) the environmental condition of or any Environmental Laws with respect to any real property or other Assets owned or operated by the Debtors or any corporate predecessor at any time before the Closing Date; (g) any other liabilities of the Debtors other than the Assumed Liabilities; (h) any bulk sales or similar law; (i) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended and state tax statutes or ordinances providing for the payment of sales taxes; (j) any theories of successor liability, and (k) any other liabilities of the Debtors listed as Excluded Liabilities under the APA (collectively, the "Excluded Liabilities").

89.     The Debtors may sell the Assets free and clear of all Claims and Interests against the Debtors, its estate or any of the Assets (other than expressly provided in the Sale Order and the APA) because, in each case, one or more of the standards set forth in section 363(f)(1)–(5) of the Bankruptcy Code has been satisfied. Those Holders of Claims and Interests against the Debtors, their estates or any of the Assets who settled by announcement to the Court during the Sale Hearing or who did not object or who withdrew their objections, if any, to the Sale or the

Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Those Holders of such Claims and Interests who did object, if any, fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Claims and Interests, if any, in each instance against the Debtors, their estates, or any of the Assets, attach to the cash proceeds of the Sale ultimately attributable to the Assets in which such creditor alleges an interest, in the same order of priority, with the same validity, force, and effect that such creditor had prior to the Sale, subject to any claims and defenses the Debtors, their estates, or other parties may possess with respect thereto.

90.     <u>Best Interest of Creditors</u>.   Given all of the circumstances of these Chapter 11 Cases and the adequacy and fair value of the consideration provided by the Purchaser under the APA, the Sale constitutes a reasonable and sound exercise of the Debtors' business judgment, is in the best interests of the Debtors, their bankruptcy Estates, their creditors, and all other parties in interest in these Chapter 11 Cases, and should be approved.   Time is of the essence in consummating the transactions contemplated by the APA.

91.     Cause has been shown as to why the Sale Order should not be subject to any stay provided by Bankruptcy Rule 6004(h).

92.     <u>Assumption and Assignment of Executory Contracts and Unexpired Leases</u>.   The assumption and assignment of the Assigned Contracts pursuant to the terms of the Sale Order, the APA, the Revised Bid Procedures, and the Revised Assumption and Assignment Notice is integral to the APA and is in the best interests of the Debtors, their estates, creditors, and other parties in interest, and represents the Debtors' reasonable exercise of sound and prudent business judgment.

93.     The Purchaser has demonstrated adequate assurance of future performance with respect to the Assigned Contracts pursuant to section 365(b)(1)(C) of the Bankruptcy Code.

94.     <u>Compelling Circumstances for an Immediate Sale</u>.  The consummation of the Sale and the assumption and assignment of the Assigned Contracts is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a) and 1123 of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Sale.

S.     **Plan Proposed in Good Faith**

95.     The Debtors, the Purchaser, the Senior Lender, Senior Mezz Lender,  and the Junior Mezz Lender (and each of the foregoing parties' Related Parties) have been acting in good faith and will be acting in good faith if they proceed to: (a) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed by this Confirmation Order, in each case, to the extent such actions are consistent with the Plan or this Confirmation Order, as applicable.

T.     **Implementation.**

96.     All documents necessary to implement the Plan have been negotiated in good faith and at arm's length and shall, upon completion of documents and execution, be valid, binding and enforceable agreements and are not in conflict with any federal or state laws.

U.      **Satisfaction of Conditions Precedent to Effective Date.**

97.     Entry of this Confirmation Order shall satisfy the conditions to the Effective Date set forth in Section IX.A of the Plan (other than the condition that this Confirmation Order shall have become a Final Order).   The conditions precedent to the Effective Date set forth in Section IX.A of the Plan may be waived in whole or in part by the Debtors, without notice, leave, or order of the Court or any formal action.

V.      **Satisfaction of Confirmation Requirements.**

98.     Based upon the foregoing and all other pleadings and evidence proffered or adduced at or prior to the Confirmation Hearing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

## ORDER

**BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

99.     This Confirmation Order confirms the Plan, attached hereto as **Exhibit A**, in its entirety.

100.    This Confirmation Order approves the Plan Supplement, including the documents contained therein that may be amended through and including the Effective Date in accordance with and as permitted by the Plan.  The terms of the Plan, the Plan Supplement, and the exhibits thereto are incorporated herein by reference and are an integral part of this Confirmation Order.

101.    Any amendments or modifications to the Plan described or set forth in this Confirmation Order are hereby approved, without further order of this Court.

102.    All Holders of Claims are conclusively presumed to have accepted the Plan.

103.    The terms of the Plan, the Plan Supplement, all exhibits thereto, and this Confirmation Order shall be effective and binding as of the Effective Date on all parties in interest.

104.    The failure to include or refer to any particular article, section, or provision of the Plan, the Plan Supplement or any related document, agreement, or exhibit does not impair the effectiveness of that article, section, or provision; it being the intent of the Court that the Plan, the Plan Supplement, and any related document, agreement, or exhibit are approved in their entirety.

**I.      Objections.**

105.    All objections (including any reservations of rights contained therein) to approval of Confirmation of the Plan that have not been withdrawn, waived, or settled prior to entry of this Confirmation Order, are not cured by the relief granted herein, or are not otherwise resolved as stated by the Debtors on the record of the Confirmation Hearing, are **OVERRULED** on the merits and in their entirety, and all withdrawn objections are deemed withdrawn with prejudice.

**W.      Findings of Fact and Conclusions of Law.**

106.    The findings of fact and the conclusions of law set forth in this Confirmation Order constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014. All findings of fact and conclusions of law announced by the Court at the Confirmation Hearing in relation to Confirmation are hereby incorporated into this Confirmation Order. To the extent that any of the following constitutes findings of fact or conclusions of law, they are adopted as such. To the extent any finding of fact or conclusion of law set forth in this Confirmation Order (including

any findings of fact or conclusions of law announced by the Court at the Confirmation Hearing and incorporated herein) constitutes an order of this Court, it is adopted as such.

      X.    **The Releases, Injunction, Exculpation, and Related Provisions Under the Plan.**

    107.    The discharge, releases, injunctions, exculpations, and related provisions set forth in Article VIII of the Plan are incorporated herein in their entirety, are hereby approved and authorized in all respects, are so ordered, and shall be immediately effective on the Effective Date without further order or action on the part of this Court or any other party. The injunction provisions set forth in Article VIII.F of the Plan are essential to the Plan and are necessary to preserve and enforce the releases and exculpations provided for in the Plan and herein and are appropriately tailored to achieve those purposes.

      Y.    **References to and Omissions of Plan Provisions.**

    108.    References in this Confirmation Order to any article, section, paragraph, or provision of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan. The failure to specifically include or to refer to any particular article, section, paragraph, or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, paragraph, or provision, it being the intent of the Court that the Plan be confirmed in its entirety, except as expressly modified herein, and that the Plan, and all other agreements, instruments, or other documents filed in connection with the Plan and/or executed or to be executed in connection with the transactions contemplated by the Plan, and all amendments and modifications of any of the foregoing made pursuant to the provisions of the Plan governing such amendments and modifications, are approved in their entirety.

Z.  **Headings.**

109.  Headings utilized in this Confirmation Order are for convenience of reference only and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

AA.  **Classifications.**

110.  The terms of the Plan shall govern the classification of Claims and Interests for purposes of the distributions to be made thereunder.

BB.  **Transactions.**

111.  This Confirmation Order shall and shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effectuate any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan.

CC.  **Immediate Binding Effect.**

112.  On the date of and after entry of this Confirmation Order and subject to the occurrence of the Effective Date, the terms of the Plan, the final versions of the documents contained in the Plan Supplements, and any documents related or ancillary thereto  and this Confirmation Order shall be immediately effective and enforceable and not subject to avoidance, recharacterization or other challenge, legal or otherwise, and deemed binding upon the Debtors or the ~~Liquidating~~Reorganized Debtors, as applicable, any and all Holders of Claims or Interests (whether or not Impaired under the Plan and whether or not such Holders have accepted or rejected the Plan or affirmatively voted to reject the Plan), all Entities that are parties to or are subject to the releases, discharges, exculpations, and injunctions described in the Plan, each Entity acquiring property under the Plan or this Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  All Claims and debts

41

shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim has objected to the Plan.

113.    Pursuant to section 1141 of the Bankruptcy Code, subject to the occurrence of the Effective Date and subject to the terms of the Plan and this Confirmation Order, all prior orders entered in these Chapter 11 Cases, all documents and agreements executed by the Debtors as authorized and directed thereunder and all motions or requests for relief by the Debtors pending before this Court as of the Effective Date shall be binding upon and shall inure to the benefit of the Debtors, the ~~Liquidating~~Reorganized Debtors and their respective successors and assigns.

DD.    **Effectiveness of All Actions**

114.    Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan shall be effective on, before, or after the Effective Date pursuant to this Confirmation Order, without further application to, or order of the Court, or further action by the Debtors and/or the ~~Liquidating~~Reorganized Debtors and their respective directors, officers, members, or equity holders, and with the effect that such actions had been taken by unanimous action of such officers, directors, managers, members, or equity holders.

115.    After the Confirmation Date, the Debtors shall be permitted to perform all services relating to the ~~Liquidating~~Reorganized and adjudication and resolution of claims without any further notice to or action, order, or approval of the Court.

EE.    **Implementation of the Plan.**

116.    The provisions of Article IV of the Plan governing the means for implementation of the Plan are hereby approved in their entirety.  Prior to, on, and after the Effective Date, the Debtors and their sole Director, Robert D. Albergotti, and their officers, and authorized persons thereof, and the Disbursing Agent are authorized to and may issue, execute, deliver, file or

record such contracts, instruments, releases, and other agreements and documents and take such actions may be necessary or appropriate to effectuate, implement, and further evidence the terms and provisions of the Sale and the Plan without the need for any further approvals, authorizations, or consents except for those expressly required pursuant to the Plan.

FF.    **Reserves.**

117.    The Reserves set forth in the Amended Reserve Proposal are adequate and necessary for the implementation of the Plan after the Effective Date.  The amount proposed for post-Effective Date professional fees is adequate to allow the Debtors' professionals to complete the claims resolution process and the Court-ordered investigation into post-petition transfers, and the reserve for the United States Trustee fees is sufficient as the Debtors wind down the Estates. The Title Company Reserve is necessary to allow the Debtors to close the Sale and exit these Chapter 11 Cases as efficiently as possible.  Accordingly, the reserves and amounts proposed in the Amended Reserve Proposal are hereby approved in their entirety.

GG.    **Exemption from Certain Transfer Taxes.**

118.    Pursuant to section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to any other Person) of property under the Plan or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, equity Security, or other interest in the Debtors; (b) the Sale; (c) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (d) the making, assignment, or recording of any lease or sublease; or (e) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising

out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, personal property transfer tax, sales or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of this Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

HH. **Preservation of Causes of Action and Settlement of Ordinary Litigation Claims.**

119. Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, conveyed pursuant to the Sale, or settled in the Plan or a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Debtors shall convey to the Disbursing Agent all rights to commence, prosecute, or settle, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, which shall vest in the Disbursing Agent pursuant to the terms of the Plan. The Disbursing Agent may enforce all rights to commence, prosecute, or settle, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, and the Disbursing Agent's rights to commence, prosecute, or

settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Disbursing Agent may, in its reasonable business judgment, pursue such Causes of Action and may retain and compensate professionals in the analysis or pursuit of such Causes of Action to the extent the Disbursing Agent deems appropriate, including on a contingency fee basis. **No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or the Disbursing Agent will not pursue any and all available Causes of Action against it. The Debtors and the Disbursing Agent expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.** Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, conveyed pursuant to the Sale, or settled in the Plan or a Final Order, the Disbursing Agent expressly reserves all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. The Disbursing Agent shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to, or action, order, or approval of, the Bankruptcy Court.

II.     **Corporate Action.**

120.    On the Effective Date, all actions contemplated under the Plan, regardless of whether taken before, on, or after the Effective Date, shall be deemed authorized and approved in

all respects, including: (a) consummation of the Sale; and (b) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan or deemed necessary or desirable by the Debtors before, on, or after the Effective Date involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection with the Plan or the corporate structure of the Debtors, shall be deemed to have occurred and shall be in effect on the Effective Date, without any requirement of further action by the equity holders, directors, managers, or officers of the Debtors. Before, on, or after the Effective Date, the appropriate officers of the Debtors or the Disbursing Agent, as applicable, shall be authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Debtors. The authorizations and approvals contemplated by Section IX.A of the Plan shall be effective notwithstanding any requirements under non-bankruptcy law.

JJ. **Continued Corporate Existence.**

121. On and after the Effective Date, the Debtors shall continue in existence for purposes detailed in the Plan and the Plan Supplement. The ~~Debtors~~Disbursing Agent shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including (i) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court, and (ii) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Disbursing Agent to file motions or substitutions of parties or counsel in each such matter.

KK. **Vesting of Assets in the ~~Liquidating~~Reorganized Debtors.**

122. Except as otherwise provided in the Plan, this Confirmation Order, the APA, the Sale Order, or any agreement, instrument, or other document incorporated herein or therein, or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, any assets of the Debtors remaining after effectuating the Sale shall vest in the ~~Debtors~~Disbursing Agent for the purpose of ~~liquidating~~Reorganized the Estates, free and clear of all Liens, Claims, charges, or other encumbrances. On and after the Effective Date, except as otherwise provided for in the Plan, the APA, or the Sale Order, the Debtors ~~and the Debtors~~ may operate their business and use, acquire, or dispose of property, and compromise or settle any Claims, Interests, or Causes of Action.

LL. **Professional Claims.**

123. All requests for payment of Professional Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than forty-five (45) days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Court. The Disbursing Agent shall pay the amounts of the Allowed Professional Claims in Cash.

MM. **Treatment of Executory Contracts and Unexpired Leases.**

    1. **Assumption and Rejection of Executory Contracts and Unexpired Leases.**

124. The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in Article V of the Plan, including the procedures regarding the resolution of any and all disputes concerning the assumption of such Executory Contracts and Unexpired Leases, are hereby approved in their entirety. Pursuant and subject to Article V of the Plan, except as

47

otherwise provided in the Plan or in this Confirmation Order, as of the Effective Date, each Executory Contract and Unexpired Lease that is not assumed and assigned pursuant to the APA or Sale Order shall be deemed automatically rejected.

125. Such automatic rejection shall be effective without the need for any further notice to or action, order, or approval of the Bankruptcy Court, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than any Executory Contracts and Unexpired Leases that: (a) have been previously assumed, assumed and assigned, or rejected pursuant to a Bankruptcy Court order; (b) are the subject of a motion to assume, assume and assign, or reject such Executory Contract or Unexpired Lease (or of a Filed objection with respect to the proposed assumption, assumption and assignment, or rejection of such Executory Contract or Unexpired Lease) that is pending on the Effective Date; or (c) are a contract, release, or other agreement or document entered into in connection with the Plan. The assumption or rejection of Executory Contracts and Unexpired Leases hereunder or under the Plan may include the assignment of certain of such contracts to Affiliates. This Confirmation Order will constitute an order of the Bankruptcy Court approving, subject to and upon the occurrence of the Effective Date, the above-described assumptions and assumptions and assignments, or rejections, as applicable. Any Filed motion to assume, assume and assign, or reject any Executory Contracts or Unexpired Leases (or Filed objection with respect to the proposed assumption and assignment of such contract) that is pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order but may be withdrawn, settled, or otherwise prosecuted by the ~~Liquidating~~Reorganized Debtors or the Disbursing Agent, with any such disposition to be deemed to effect an assumption, assumption and assignment, or rejection, as applicable, as of the Effective Date.

2. **Cure of Executory Contracts and Unexpired Leases.**

126. Resolution of any disputed Cure amounts will be determined in accordance with the procedures set forth in Section V.C of the Plan, and applicable bankruptcy and non-bankruptcy law. Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and full payment of any applicable Cure pursuant to Section V.C of the Plan shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to this Confirmation Order, and for which any Cure has been fully paid pursuant to Section V.C of the Plan, shall be deemed Disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court.

127. **Any Entity that is required to file a Proof of Claim arising from the rejection of an Executory Contract or an Unexpired Lease that fails to timely do so shall be forever barred, estopped and enjoined from asserting such Claim, and such Claim shall not be enforceable, against the Debtors, the Reorganized Debtors, the Estates, or their respective properties, and the Debtors, the Reorganized Debtors, and their Estates shall be forever discharged from any and all indebtedness and liability with respect to such Claim unless otherwise ordered by the Bankruptcy Court. All such Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in Article VIII.F of the Plan.**

NN. **Distributions under the Plan.**

128. The provisions governing distributions contained in Article VI of the Plan are hereby approved in their entirety.

OO. **Procedures for Resolving Disputed Claims.**

129. The procedures for resolving disputed claims contained in Article ~~VIII~~VII of the Plan are hereby approved in their entirety. The Debtors and the Disbursing Agent are authorized, consistent with the terms of the Plan and this Confirmation Order, to settle, pay, or otherwise resolve Claims, and the Court shall, except as otherwise provided in the Plan or this Confirmation Order, retain jurisdiction to resolve, at the request of the Debtors, any such Claims that the ~~Debtor is~~Debtors are unable to resolve consensually with the Holders thereof.

PP. **Setoff and Recoupment.**

130. Except as expressly provided in the Plan, each ~~Liquidating~~Reorganized Debtor may, pursuant to section 553 of the Bankruptcy Code, set off and/or recoup against any distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that such ~~Liquidating~~Reorganized Debtor may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment is either (1) agreed in amount among the relevant ~~Liquidating~~Reorganized Debtor(s) and the Holder of the Allowed Claim or (2) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided*, *however*, that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by a ~~Liquidating~~Reorganized Debtor, or its successor of any and all claims, rights, and Causes of Action that such ~~Liquidating~~Reorganized Debtor, or its successor may possess against the applicable Holder. In no event shall any Holder of a Claim be entitled to recoup such Claim against any claim, right, or

Cause of Action of the Debtors or the ~~Liquidating~~Reorganized Debtors as applicable, unless such Holder actually has performed such recoupment in advance writing with consents or Court authority and in accordance with the Plan on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

QQ. **Cancellation of Existing Agreements and Interests.**

131. On the Effective Date, except with respect to the extent otherwise provided in the Plan, this Confirmation Order, the APA, or the Sale Order, all notes, instruments, certificates, and other documents evidencing Claims or Interests, including credit agreements and indentures, shall be cancelled and the obligations of the Debtors and any non-Debtor Affiliate thereunder or in any way related thereto shall be deemed satisfied in full, cancelled, discharged, and of no force or effect. Holders of or parties to such cancelled instruments, securities, and other documentation will have no rights arising from or relating to such instruments, securities, and other documentation, or the cancellation thereof, except the rights provided for pursuant to the Plan. Notwithstanding the foregoing, pursuant to section 524(e) of Bankruptcy Code, the discharge of the Debtors from Claims does not affect the liability of any other person or entity for such debt.

RR. **Payment of Statutory Fees.**

132. All fees payable pursuant to section 1930(a) of the Judicial Code, and any interest accruing thereon pursuant to 31 U.S.C. § 3717, shall be paid by each of the ~~Liquidating~~Reorganized Debtors (or the Disbursing Agent on behalf of each of the ~~Liquidating~~Reorganized Debtors) for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

SS.     **Retention of Jurisdiction.**

133.    Notwithstanding the entry of this Confirmation Order, the occurrence of the Effective Date, or the closing of the Chapter 11 Cases, and without limiting any other retention of jurisdiction set forth in this Confirmation Order, pursuant to sections 105 and 1142 of the Bankruptcy Code, the Court, except as otherwise explicitly provided in the Plan or this Confirmation Order, shall retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases to the fullest extent permitted by law, including, but not limited to, jurisdiction over the matters set forth in Article XI of the Plan.

TT.     **Terms of Injunction and Automatic Stay.**

134.    ~~Terms~~ Unless otherwise provided in the Plan, all injunctions or stays arising under sections 105 or 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date shall remain in full force and effect until the Effective Date.

UU.     **Reports.**

135.    After the Effective Date of the Plan, the Debtors have no obligation to file with the Court or serve on any parties reports that the Debtors were obligated to file under the Bankruptcy Code or a Court order, including monthly operating reports (even for those periods for which a monthly operating report was not filed before such Effective Date), ordinary course professional reports, and monthly or quarterly reports for Professionals; *provided, however,* that the Debtors will comply with the U.S. Trustee's quarterly reporting requirements.  From Confirmation through the Effective Date of the Plan, the Debtors will file such reports as are required under the Bankruptcy Local Rules.

VV.    **Closing of Chapter 11 Cases.**

136.    The ~~Liquidating~~Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases, provided, as of the Effective Date, the ~~Liquidating~~Reorganized Debtors may submit separate orders to the Bankruptcy Court under certification of counsel previously provided to the U.S. Trustee closing certain individual Chapter 11 Cases and changing the caption of the Chapter 11 Cases accordingly, provided further that matters concerning Claims may be heard and adjudicated in one of the Debtors' Chapter 11 Cases that remains open regardless of whether the applicable Claim is against a Debtor in a Chapter 11 Case that is closed.  Any request for such relief shall be made on motion served on the U.S. Trustee, and the Bankruptcy Court shall rule on such request after notice and a hearing.  Upon the filing of a motion to close the last Chapter 11 Case remaining open, the ~~Liquidating~~Reorganized Debtors shall file a final report with respect to all of the Chapter 11 Cases pursuant to Local Rule 3022-1.

137.    The Debtors will not receive a discharge pursuant to section 1141(d) of the Bankruptcy Code.

138.    The terms of that certain stipulation and agreed order entered into by and between the Debtors, Natin Paul ("Paul"), and World Class Holdings I, LLC, dated as of March 15, 2022, affixed hereto as **Exhibit B** (together with all exhibits thereto, the "WCH Order") is hereby approved and incorporated by reference; *provided, however*, that Exhibit B thereto shall be replaced with the Reserve Proposal filed at Docket No. 849-1; *provided further* that paragraph 5 is amended to the following:

> The Debtors shall resolve all Disputed Claims within 120 days of
> the entry of the Confirmation Order; *provided, however*, that the

Bankruptcy Court retains the right to extend such deadline. To the extent the Debtors fail to resolve all Disputed Claims within such time period, such claims may be resolved by World Class on behalf of the Debtors, subject to Bankruptcy Court approval.

139. ~~137.~~ When all Disputed Claims have become Allowed or Disallowed and all remaining Cash has been distributed in accordance with the Plan, the Disbursing Agent or Paul, to the extent Paul is restored as the sole officer and director of the Reorganized Debtors in accordance with the WCH Order, shall seek authority from the Bankruptcy Court to close ~~the~~these Chapter 11 ~~Case~~Cases of the Debtors in accordance with the Bankruptcy Code and the Bankruptcy Rules.

WW. **Resolutions to Objections and Informal Comments**

140. ~~138.~~ Nothing in the Confirmation Order or the Plan shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including without limitation any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against any party or person, nor shall anything in the Confirmation Order or the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action, or other proceedings against any party or person for any liability of such persons whatever, including without limitation any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against such persons, nor shall anything in the Confirmation Order or the Plan exculpate any party or person from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue

Code, the environmental laws or any criminal laws of the United States or any state and local authority against any party or person.

141. ~~139.~~ All Distributions to Holders of Interests in Class 14 shall be reserved on the Effective Date, or as reasonably as practicable thereafter, until all Disputed Claims are resolved and all Allowed Claims, which were previously Disputed Claims, are satisfied. Thereafter, Distributions to Holders of Interests in Class 14 shall be distributed to a Debtor-designated account.

142. ~~140.~~ Notwithstanding any other provisions in this Order, the Permitted Liens of the Texas Taxing Authorities, the Certain Texas Taxing Entities (as such entities are defined in their respective Objections),[3] along with Cameron County, Dallas County, Galveston County, Harris County, the City of Mesquite, Mesquite ISD, Tarrant County, and Texas City ISD, (collectively, the "Tax Objectors") that secure all amounts ultimately owed for Current Year Ad Valorem Taxes shall remain attached to the applicable Assets, and the Current Year Ad Valorem Taxes become the responsibility of the Purchaser pursuant to the APA. The Tax Objectors shall retain the right to enforce their liens and take all collection actions provided by Texas Law if the Current Year Ad Valorem Taxes are not paid prior to the state law delinquency date. The Purchase Price shall be reduced by the Estimated Seller Ad Valorem Taxes Amount pursuant to Section 7.3(c) of the APA. In addition, the Debtors shall segregate from the proceeds of the sale an amount equal to the Seller Taxes[4] (the "Segregated Sale Proceeds") to comply with the Debtors' obligations under the APA to pay the Seller Taxes and to provide adequate protection

---

[3] *See* Docket Nos. 662 and 663.

[4] Pursuant to the Section 7.3(c) of APA, "Seller Taxes" includes "any Asset Taxes, other than Current Year Ad Valorem Taxes, with respect to a Pre-Closing Tax Period and the portion of any Straddle Period ending on the Closing Date and any other Taxes of the Sellers."

to the interests of the Tax Objectors in such proceeds, which Segregated Sale Proceeds shall be distributed only pursuant to a subsequent order of the Court or a plan of reorganization confirmed in these Chapter 11 Cases. Notwithstanding the foregoing or any other provisions of this Order or the Sale Order, the Purchaser shall retain all of its rights to challenge or contest the amount and validity of any ad valorem taxes asserted against the Assets under applicable non-bankruptcy laws and regulations.

143.    141. On the Effective Date, as part of the Reserve Proposal set forth in the Plan Supplement, the Debtors shall (i) reserve $3.5 million on behalf of Seth Kretzer, as Receiver for Great Value Storage, LLC ("Receiver") and (ii) consent to Receiver's *Seth Kretzer's, as Receiver for Great Value Storage, LLC, and World Class Capital Group LLC, Motion for Leave Mo to Timely File Claims* [Docket No. 749]. In exchange, the Receiver consents to (i) the appointment of Mr. Stephan PinsleyPinsly as Disbursing Agent and to fulfilfulfill its duties as provided in Article IV of the Plan and (ii) withdraw its Objection to Confirmation [Docket No. 781].

144.    142. Notwithstanding any term in the Plan or this Confirmation Order to the contrary: (A) the Texas Comptroller's setoff rights are preserved under section 553 of the Bankruptcy Code; (B) to the extent the Texas Comptroller's pre-petition tax liabilities are not paid in full on or before the Effective Date, the Texas Comptroller is entitled to interest at the rate of 4.25% from the Effective Date until paid; (C)(i) to the extent a non-Debtor responsible party pays the full amount of Debtors' pre-petition tax liabilities plus accrued post-Effective Date interest, if any, prior to Debtors remitting payment under the Plan, the Texas Comptroller shall withdraw its pre-petition proof of claim within fourteen (14) days of the payment clearing, and (ii) in the event Debtors remit payment to the Texas Comptroller subsequent to payment by a

non-Debtor responsible party but prior to the pre-petition proof of claim being withdrawn, the Texas Comptroller shall refund Debtors' payment directly to Debtors within fourteen (14) days of the payment clearing, without interest, but (iii) in the event a non-Debtor responsible party remits a payment subsequent to Debtors remitting payment to the Texas Comptroller under the Plan, the Debtor shall not be entitled to any refund; (D)(i) the Texas Comptroller shall not be required to file a request for payment or any proof of claim in order to preserve its rights regarding its post-petition tax liabilities, and (ii) Debtors' post-petition tax liabilities to the Texas Comptroller shall be timely reported, paid and otherwise resolved under and in accordance with Texas law; and (E) in the event Debtors' pre-petition tax liabilities require adjustment (*i.e.* upon receipt of partial payment or an amendment to a requisite tax return), the Texas Comptroller may amend its pre-petition proof of claim without leave of court. The Debtors', Reorganized Debtors', and Texas Comptroller's rights and defenses under Texas state law and the Bankruptcy Code with respect to the foregoing are fully preserved.

145. Notwithstanding the above, the reservation of World Class's rights in paragraph 7 of the WCH Order to object to Claims and to any Claim resolution reached by the Debtors shall not apply to the Rule 9019 Orders resolving the Lenders' Claims. The Rule 9019 Orders shall be considered Final Orders under the terms of the Plan. Following World Class's withdrawal of the 9019 Appeals in accordance with paragraph 10 of the WCH Order, neither World Class, Mr. Paul, nor any of their affiliated entities shall file a subsequent Notice of Appeal from the Rule 9019 Orders, a motion to vacate the Rule 9019 Orders, or seek to reverse, stay, amend, challenge, contest, modify or overturn the Rule 9019 Orders in any manner. Further, following the withdrawal of the 9019 Appeals, any amounts designated to be reserved in the Disputed

Claim Reserve Fund on account of such appeals shall be removed from such reserve and such amounts shall be paid in accordance with the Plan and this Confirmation Order.

146.    Notwithstanding anything contained herein or in the WCH Order to the contrary, any distributions from the Debtors to the 1031 Agent (as defined in the WCH Order), World Class or any affiliate of either of them are expressly conditioned on, and subject to, prior payment to Barclays Trust on account of the Temporary Restraining Order and Interim Charging Order dated March 10, 2022, obtained in the action *Barclays Trust v. World Class Holding Company, LLC et al*., Case No. 2022-0218-JTL (Del. Ch.) in the amount of $10.6 million from a portion of the Net Sales Proceeds payable to the 1031 Agent, and the closing statement shall be amended to reflect such payment to Barclays Trust.  Upon distribution of such amounts to Barclays Trust, such amounts shall not be included in the funding of the Disputed Claims Reserve Funds.

147.    Notwithstanding anything contrary in the Plan or in this Confirmation Order, to the extent any General Unsecured Claim against the TopCo Debtor is Allowed, such Claim shall be paid in Cash pursuant to the Plan, with post-petition interest at the applicable interest rate as provided for in the Plan or a separate Order of the Court, as if separately classified in an Unimpaired Class in priority to the Interest Holders of the TopCo Debtor (*i.e.* in priority to Class 14).

148.    Notwithstanding anything contrary in the Plan or in this Confirmation Order, any rights, arguments or disputes regarding the applicable post-petition interest rate to be applied to a General Unsecured Claim are preserved for all parties, and any such disputes shall be adjudicated pursuant to Article VII of the Plan or this Confirmation Order.

XX.     **Disbursing Agent.**

149.   ~~143.~~ On and after the Effective Date, the Disbursing Agent, or as applicable, Mr. Paul in accordance with the WCH Order, shall act for the ~~Liquidating~~Reorganized Debtors in the same fiduciary capacity as applicable to a board of managers, directors, officers, or other Governmental Unit, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same). On the Effective Date, the authority, power, and incumbency of the persons acting as managers, officers, and directors of the Debtors shall be deemed to have resigned, solely in their capacities as such, and the Disbursing Agent, or as applicable, Mr. Paul in accordance with the WCH Order, shall be appointed as the sole manager, sole director, and sole officer of the ~~Liquidating~~Reorganized Debtors, and shall succeed to the powers of the ~~Liquidating~~Reorganized Debtors' managers, directors, or officers. From and after the Effective Date, the Disbursing Agent, or as applicable, Mr. Paul in accordance with the WCH Order, shall be the sole representative of, and shall act for, the ~~Liquidating~~Reorganized Debtors, and the managers, directors, and officers shall be released from any claims, now or in the future, relating to or associated with their services or roles with the Debtors. The Disbursing Agent, or as applicable, Mr. Paul in accordance with the WCH Order, shall use commercially reasonable efforts to operate in a manner consistent with the Plan and reserves set forth in the Plan Supplement.

YY.     **Governmental Approvals Not Required.**

150.   ~~144.~~ Except as otherwise specifically provided herein, this Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules or regulations of any state or any other governmental authority with respect to the implementation or

consummation of the Plan and the Disclosure Statement, and any documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Plan, the Disclosure Statement and any documents, instruments or agreements, and any amendments or modifications thereto.

ZZ.     **Additional Plan Modifications.**

151.    All references in the Plan to "Liquidating Debtors" shall be replaced with "Reorganized Debtors."

152.    The following provision shall be added to the end of Section VIII.C.2 of the Plan:

> **The Bankruptcy Court shall retain exclusive jurisdiction over any suit brought on any claim or Cause of Action against an Released Party in connection with or arising out of the administration of these Chapter 11 cases or property to be distributed under this Plan; this Plan and all related agreements, instruments, and other documents (including the Plan Supplement); the solicitation of votes for or confirmation of this Plan; the funding and administration of this Plan; the occurrence of the Effective Date; the Sale or the closing thereof, including all related agreements, instruments, and other documents; or any transactions in furtherance of the foregoing, and any Entity bringing such suit shall do so in the Bankruptcy Court or such other court as the Bankruptcy Court may direct. The protections of this Section VIII.C.2 shall be in addition to, and shall not limit, all other releases, indemnities, injunctions, exculpations and any other applicable law or rules protecting the Released Parties from liability. Nothing in this Plan or the Confirmation Order is intended to affect the police or regulatory activities of governmental agencies.**

153.    The following provision shall be added to the end of Section VIII.E of the Plan:

> **The Bankruptcy Court shall retain exclusive jurisdiction over any suit brought on any claim or Cause of Action against an Exculpated Party in connection with or arising out of the administration of these Chapter 11 cases or property to be distributed under this Plan; this Plan and all related agreements, instruments, and other documents (including the Plan Supplement); the solicitation of votes for or confirmation**

**of this Plan; the funding and administration of this Plan; the occurrence of the Effective Date; the Sale or the closing thereof, including all related agreements, instruments, and other documents; or any transactions in furtherance of the foregoing, and any Entity bringing such suit shall do so in the Bankruptcy Court or such other court as the Bankruptcy Court may direct. The protections of this Section VIII.E shall be in addition to, and shall not limit, all other releases, indemnities, injunctions, exculpations and any other applicable law or rules protecting the Exculpated Parties from liability. Nothing in this Plan or the Confirmation Order is intended to affect the police or regulatory activities of governmental agencies.**

AAA. ~~ZZ.~~ **Post-Confirmation Notices and Bar Dates.**

154. ~~145.~~ Pursuant to Bankruptcy Rules 2002 and 3020(c), no later than seven (7) days after the Effective Date, the ~~Liquidating~~Reorganized Debtors must cause notice of Confirmation and occurrence of the Effective Date (the "Notice of Effective Date") to be served by United States mail, first-class postage prepaid, by hand, or by overnight courier service to all parties served with the Confirmation Hearing Notice.

155. ~~146.~~ The Notice of Effective Date will have the effect of an order of the Court, will constitute sufficient notice of the entry of this Confirmation Order to filing and recording officers, and will be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law.

156. ~~147.~~ Except as otherwise provided in the Plan, requests for payment of General Administrative Expense Claims must be Filed and served on the Debtors, the ~~Liquidating~~Reorganized Debtors, no later than the Administrative Expense Claims Bar Date applicable to the Debtor against whom the General Administrative Expense Claim is asserted pursuant to the procedures specified in this Confirmation Order and the notice of the Effective Date. Subject to further order of the Bankruptcy Court, Holders of General Administrative

61

Expense Claims that are required to File and serve a request for payment of such General Administrative Expense Claims by the Administrative Expense Claims Bar Date that do not File and serve such a request by the Administrative Expense Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such General Administrative Expense Claims against the Debtors, the ~~Liquidating~~Reorganized Debtors, or their respective property and such General Administrative Expense Claims shall be deemed forever discharged and released as of the Effective Date. Subject to further order of the Bankruptcy Court, any requests for payment of General Administrative Expense Claims that are not properly Filed and served by the Administrative Expense Claims Bar Date shall not appear on the Claims Register and shall be disallowed automatically without the need for further action by the Debtors or the ~~Liquidating~~Reorganized Debtors, or further order of the Bankruptcy Court.

BBB. ~~AAA.~~ **Plan and Confirmation Order Nonseverable and Mutually Dependent.**

157. ~~148.~~ The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

CCC. ~~BBB.~~ **Post-Confirmation Modifications.**

158. ~~149.~~ Subject to the limitations set forth in the Plan, after entry of this Confirmation Order but prior to the substantial consummation of the Plan the Debtors may alter, amend, or modify the Plan in accordance with section 1127(b) of the Bankruptcy Code; *provided*, *however*, that the Debtors shall file any such altered, amended or modified version of the Plan on the docket of the Chapter 11 Cases concurrently with the Notice of Effective Date. The Debtors are authorized to make appropriate technical adjustments, remedy any defect or

omission, or reconcile any inconsistencies in the Plan, the Plan Supplement, and this Confirmation Order.

DDD. CCC. **Confirmation Order Supersedes.**

159. 150. This Except with respect to the terms of the WCH Order, which shall be incorporated fully herein by reference, this Confirmation Order shall supersede any Court orders issued in the Chapter 11 Cases prior to the Confirmation Date that may be inconsistent with this Confirmation Order, in each case solely to the extent of the inconsistency. The Debtors are currently unaware of any inconsistency.

EEE. DDD. **Conflicts Between This Confirmation Order and the Plan.**

160. 151. To the extent that any provision of the Disclosure Statement or any other order of the Court (other than this Confirmation Order) referenced in the Plan (or any exhibits, appendices, supplements, or amendments to any of the foregoing) conflicts with or is in any way inconsistent with any provision of the Plan, the Plan shall govern and control. To the extent that any provision in the Plan conflicts with or is in any way inconsistent with any provision of this Confirmation Order, this Confirmation Order shall govern and control.

FFF. EEE. **Recording.**

161. 152. The Debtors and the LiquidatingReorganized Debtors are authorized to deliver a notice or short form of this Confirmation Order, with the Plan attached (in a form complying with any applicable non-bankruptcy rules or regulations), to any state or local recording officer, and such officer shall accept for filing such documents or instruments without charging any stamp tax, recording tax, personal property transfer tax, mortgage, or other similar tax. Such notice (a) shall have the effect of an order of this Court and (b) shall constitute sufficient notice of the entry of this Confirmation Order to such filing and recording officers.

The Court specifically retains jurisdiction to enforce the foregoing direction, by contempt or otherwise.

**GGG.** ~~FFF.~~ **Documents, Mortgages, and Instruments.**

162. ~~153.~~ Each federal, state, commonwealth, local, foreign, or other governmental agency is authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the Plan, the transactions contemplated thereby, and this Confirmation Order.

**HHH.** ~~GGG.~~ **Substantial Consummation.**

163. ~~154.~~ Substantial consummation of the Plan under section 1101(2) of the Bankruptcy Code shall be deemed to occur on the Effective Date.

**III.** ~~HHH.~~ **Applicable Non-Bankruptcy Law.**

164. ~~155.~~ Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan and any related documents, or any amendments or modifications thereto, shall apply and are enforceable notwithstanding any otherwise applicable non-bankruptcy law.

**JJJ.** ~~III.~~ **Waiver of Stay**

165. ~~156.~~ The requirements under Bankruptcy Rule 3020(e) that an order confirming a Plan is stayed until the expiration of fourteen (14) days after entry of the order is hereby waived. This Confirmation Order is a Final Order and shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(h), 6006(d), or 7062. The Debtors are authorized to consummate the Plan on any business day after entry of this Confirmation Order, subject to satisfaction or waiver (by the required parties) of the conditions set forth in Section IX of the Plan.

KKK.  ~~JJJ.~~ **Effectiveness of Confirmation Order; Final Order.**

~~157.  The Confirmation Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 6004(h), 6006(d), 7062, 9014 or otherwise.  The Debtors and the Purchaser are authorized to close the Sale immediately upon entry of the Sale Order~~ and this Confirmation Order.

166.  ~~158.~~ For good cause shown, this Confirmation Order shall take effect immediately and shall not be stayed notwithstanding Bankruptcy Rules 3020(e) and 6004(h), or any other provision of the Bankruptcy Code or the Bankruptcy Rules.  This Confirmation Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing, and the period in which an appeal must be filed shall commence upon entry hereof.

### End of Order ###

| Summary report: | |
|---|---|
| **Litera Compare for Word 11.1.0.69 Document comparison done on 3/17/2022 6:37:29 PM** | |
| **Style name:** Sidley Default | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://SIDLEYDMS/ACTIVE/279230043/6 | |
| **Modified DMS:** iw://SIDLEYDMS/ACTIVE/279230043/10 | |
| **Changes:** | |
| Add | 121 |
| Delete | 97 |
| Move From | 7 |
| Move To | 7 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 232 |