## Exhibit A

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| GVS TEXAS HOLDINGS I, LLC, *et al.*, [1] | Case No. 21-31121-MVL |
| Debtors. | **(Jointly Administered)** |

## FOURTH AMENDED JOINT CHAPTER 11 PLAN OF
## GVS TEXAS HOLDINGS I, LLC AND ITS DEBTOR AFFILIATES

**SIDLEY AUSTIN LLP**
Thomas R. Califano (10369867)
Charles M. Persons (24060413)
Maegan Quejada (24105999)
Jeri Leigh Miller (24102176)
Juliana L. Hoffman (24106103)
2021 McKinney Ave
Suite 2000
Dallas, Texas 75201
Telephone: (214) 981-3300
Facsimile: (214) 981-3400

*Counsel for the Debtors and
Debtors in Possession*

Dated: February 1, 2022

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: GVS Texas Holdings I, LLC (7458); GVS Texas Holdings II, LLC (1225); GVS Portfolio I, LLC (6441); GVS Portfolio I B, LLC (7171); GVS Portfolio I C, LLC (3093); WC Mississippi Storage Portfolio I, LLC (0423); GVS Nevada Holdings I, LLC (4849); GVS Ohio Holdings I, LLC (6449); GVS Missouri Holdings I, LLC (5452); GVS New York Holdings I, LLC (5858); GVS Indiana Holdings I, LLC (3929); GVS Tennessee Holdings I, LLC (5909); GVS Ohio Holdings II, LLC (2376); GVS Illinois Holdings I, LLC (9944); and GVS Colorado Holdings I, LLC (0408). The location of the Debtors' service address is: 814 Lavaca Street, Austin, Texas 78701.

## <u>TABLE OF CONTENTS</u>

ARTICLE I:  DEFINED TERMS AND RULES OF INTERPRETATION ................................ 1

    A.    Defined Terms ................................................................................ 1

    B.    Rules of Interpretation ................................................................ 13

    C.    Computation of Time .................................................................. 14

    D.    Reference to Monetary Figures .................................................. 14

    E.    Controlling Document ................................................................ 14

ARTICLE II:  ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY CLAIMS............. 14

    A.    General Administrative Expense Claims ........................................ 14

    B.    Professional Claims .................................................................... 15

        1.    Final Fee Applications and Payment of Professional Claims.................. 15

        2.    Professional Claim Reserve Account.................................................. 15

        3.    Post-Effective Date Fees and Expenses ............................................ 16

    C.    Priority Tax Claim ...................................................................... 16

ARTICLE III:  CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS .... 16

    A.    Classification of Claims and Interests........................................... 16

    B.    Treatment of Claims and Interests ............................................... 17

        1.    Class 1 – Other Secured Claims.................................................... 18

        2.    Class 2 – Other Priority Claims.................................................... 18

        3.    Class 3 – Senior Lender Claims.................................................... 18

        4.    Class 4 – PropCo Debtor Priority Claims ...................................... 19

        5.    Class 5 – PropCo Debtor General Unsecured Claims ........................ 19

        6.    Class 6 – Senior Mezz Lender Claims ............................................ 19

        7.    Class 7 – Senior Mezz Debtor Priority Claims................................. 20

        8.    Class 8 – Senior Mezz Debtor General Unsecured Claims ................... 20

        9.    Class 9 – Junior Mezz Lender Claims ............................................ 20

        10. Class 10 – Junior Mezz Debtor Priority Claims ............................... 21

        11. Class 11 – Junior Mezz Debtor General Unsecured Claims.................. 21

        12. Class 12 – Section 510(a) Subordinated Claims............................... 21

        13. Class 13 – Junior Mezz Debtor Interests ....................................... 22

        14. Class 14 – TopCo Debtor Interests ............................................... 22

    C.    Special Provision Governing Unimpaired Claims............................. 22

    D.    Elimination of Vacant Classes ..................................................... 22

    E.    Acceptance or Rejection of this Plan ............................................ 23

|  |  | 1. | Presumed Acceptance of this Plan | 23 |
|  |  | 2. | Voting Classes | 23 |
|  | F. | Confirmation and 1129(b) of the Bankruptcy Code | | 23 |

**ARTICLE IV: MEANS FOR IMPLEMENTATION OF THIS PLAN** ................................... 23

|  | A. | General Settlement of Claims and Interests | | 23 |
|  | B. | Sale | | 24 |
|  |  | 1. | Cancellation of Existing Agreements | 24 |
|  |  | 2. | Section 1146 Exemption | 24 |
|  |  | 3. | Compliance with APA | 25 |
|  |  | 4. | Effectuating Documents; Further Transactions | 25 |
|  | C. | Preservation of Causes of Action | | 25 |
|  |  | 1. | Maintenance of Causes of Action | 25 |
|  |  | 2. | Preservation of All Causes of Action Not Expressly Settled or Released | 26 |
|  | D. | Disputed Claims Reserve Account | | 26 |
|  | E. | Opt-Out Forms | | 26 |
|  | F. | Closing the Chapter 11 Cases | | 27 |

**ARTICLE V: TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ............................................................................................................ 27

|  | A. | Assumption of Executory Contracts and/or Unexpired Leases | 27 |
|  | B. | Claims Based on Rejection of Executory Contracts and/or Unexpired Leases | 28 |
|  | C. | Cure of Defaults for Assumed Executory Contracts and/or Unexpired Leases | 28 |
|  | D. | Preexisting Obligations to the Debtors Under Executory Contracts and/or Unexpired Leases | 30 |
|  | E. | Insurance Policies | 30 |
|  | F. | Reservation of Rights | 31 |
|  | G. | Contracts and Leases Entered Into After the Petition Date | 31 |

**ARTICLE VI: PROVISIONS GOVERNING DISTRIBUTIONS** ........................................ 31

|  | A. | Timing and Calculation of Amounts to Be Distributed | | 31 |
|  | B. | Disbursing Agent | | 31 |
|  | C. | Rights and Powers of Disbursing Agent | | 32 |
|  |  | 1. | Powers of Disbursing Agent | 32 |
|  |  | 2. | Expenses Incurred on or After the Effective Date | 32 |
|  | D. | Delivery of Distributions and Undeliverable or Unclaimed Distributions | | 32 |
|  |  | 1. | Record Date for Distribution | 32 |
|  |  | 2. | Delivery of Distributions in General | 32 |

     3.    Undeliverable Distributions and Unclaimed Property ............................................. 32

     4.    Surrender of Canceled Instruments or Securities.................................................... 33

E.    Manner of Payment............................................................................................................. 33

F.    Compliance with Tax Requirements.................................................................................. 33

G.    Allocations ......................................................................................................................... 33

H.    No Post-Petition Interest on Claims.................................................................................. 34

I.    Foreign Currency Exchange Rates.................................................................................... 34

J.    Setoffs and Recoupments.................................................................................................. 34

K.    Claims Paid or Payable by Third Parties .......................................................................... 34

     1.    Claims Paid by Third Parties ................................................................................. 34

     2.    Claims Payable by Third Parties............................................................................ 35

     3.    Applicability of Insurance Policies........................................................................ 35

ARTICLE VII:  PROCEDURES FOR RESOLVING CONTINGENT,  UNLIQUIDATED, AND DISPUTED CLAIMS ......................................................................................................... 35

A.    Allowance of Claims.......................................................................................................... 35

B.    Claims Administration Responsibilities ........................................................................... 35

C.    Adjustment to Claims Without Objection.......................................................................... 36

D.    Time to File Objections to Claims ..................................................................................... 36

E.    Disallowance of Claims or Interests ................................................................................. 36

F.    Amendments to Proofs of Claim........................................................................................ 36

G.    No Transfers of Claims After Effective Date ................................................................... 36

H.    No Distributions Pending Allowance ................................................................................ 37

I.    Distributions After Allowance .......................................................................................... 37

ARTICLE VIII:  SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS ................................................................................................................................ 37

A.    Discharge of Claims and Termination of Interests ........................................................... 37

B.    Release of Liens................................................................................................................. 37

C.    Release of Claims and Causes of Action .......................................................................... 38

     1.    Releases by the Debtors and Their Estates ............................................................ 38

     2.    Release by Third Parties ........................................................................................ 40

D.    Waiver of Statutory Limitations on Releases .................................................................... 41

E.    Exculpation ........................................................................................................................ 41

F.    Injunction .......................................................................................................................... 42

G.    Binding Nature of the Plan ................................................................................................ 43

H.    Protections Against Discriminatory Treatment ................................................................. 44

I.   Reimbursement or Contribution ............................................................ 44

ARTICLE IX:  CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THIS PLAN ....................................................................... 45

   A.   Conditions Precedent to the Effective Date .................................... 45

   B.   Waiver of Conditions...................................................................... 46

   C.   Effect of Failure of Conditions ...................................................... 46

   D.   Substantial Consummation ............................................................. 46

ARTICLE X:  MODIFICATION, REVOCATION, OR WITHDRAWAL OF THIS PLAN ..... 47

   A.   Modification and Amendments....................................................... 47

   B.   Effect of Confirmation on Modifications ....................................... 47

   C.   Revocation or Withdrawal of Plan.................................................. 47

ARTICLE XI:  RETENTION OF JURISDICTION.................................................... 47

ARTICLE XII:  MISCELLANEOUS PROVISIONS ................................................. 50

   A.   Immediate Binding Effect............................................................... 50

   B.   Additional Documents .................................................................... 50

   C.   Payment of Statutory Fees .............................................................. 50

   D.   Reservation of Rights...................................................................... 50

   E.   Successors and Assigns................................................................... 51

   F.   Notices ........................................................................................... 51

   G.   Term of Injunctions or Stays........................................................... 51

   H.   Entire Agreement ........................................................................... 52

   I.   Exhibits and Annexes ..................................................................... 52

   J.   Non-severability of Plan Provisions ............................................... 52

   K.   Governing Law ............................................................................... 52

   L.   Waiver or Estoppel ........................................................................ 53

GVS Texas Holdings I, LLC, a Delaware limited liability company, GVS Texas Holdings II, LLC, a Delaware limited liability company, GVS Portfolio I, LLC, a Delaware limited liability company, GVS Portfolio I B, LLC, a Delaware limited liability company, GVS Portfolio I C, LLC, a Delaware limited liability company, WC Mississippi Storage Portfolio I, LLC, a Delaware limited liability company, GVS Nevada Holdings I, LLC, a Delaware limited liability company, GVS Ohio Holdings I, LLC, a Delaware limited liability company, GVS Ohio Holdings II, LLC, a Delaware limited liability company, GVS Missouri Holdings I, LLC, a Delaware limited liability company, GVS New York Holdings I, LLC, a Delaware limited liability company, GVS Indiana Holdings I, LLC, a Delaware limited liability company, GVS Tennessee Holdings I, LLC, a Delaware limited liability company, GVS Illinois Holdings I, LLC, a Delaware limited liability company, and GVS Colorado Holdings I, LLC a Delaware limited liability company (each a "Debtor") and collectively, the "Debtors") propose this third amended joint chapter 11 plan (this "Plan") for the resolution of the outstanding claims against, and equity interests in, the Debtors. Although proposed jointly for administrative purposes, this Plan constitutes a separate Plan for each Debtor. Holders of Claims or Interests may refer to the Disclosure Statement for a discussion of the Debtors' history, business, assets, results of operations, historical financial information, risk factors, marketing process, a summary and analysis of this Plan, and certain related matters.

ALL HOLDERS OF CLAIMS AND INTERESTS ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY.

## ARTICLE I
## DEFINED TERMS AND RULES OF INTERPRETATION

### A. Defined Terms

As used in this Plan, capitalized terms have the meanings set forth below.

1.      "Administrative Expense Claim(s)" means a Claim for costs and expenses of administration of the Chapter 11 Cases arising on or after the Petition Date and until and including the Effective Date that is allowable under section 503(b) of the Bankruptcy Code and entitled to priority under sections 507(a)(2) or 507(b) of the Bankruptcy Code that has not already been paid, including: (a) the actual and necessary costs and expenses of preserving the Estates and operating the Debtors' businesses; (b) the Professional Claims; and (c) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

2.      "Administrative Expense Claims Bar Date" means the deadline for Filing requests for payment of Administrative Expense Claims, which: (a) with respect to General Administrative Expense Claims other than those that were accrued in the ordinary course of business, shall be thirty (30) days after the Effective Date; and (b) with respect to Professional Claims, shall be forty-five (45) days after the Effective Date.

3.      "Affiliate(s)" has the meaning set forth in section 101(2) of the Bankruptcy Code. With respect to any Person or Entity that is not a Debtor, the term "Affiliate" shall apply to such Persons or Entity as if the Person or Entity were a Debtor.

4. "<u>Allowed</u>" means a Claim or Interest (or portion thereof) that (a) is listed in the Schedules, which may be amended by the Debtors, as neither disputed, contingent, nor unliquidated and with respect to which no claim objection or contrary or superseding Proof of Claim has been Filed, and that has not been paid pursuant to an order of this Court or otherwise satisfied prior to the Effective Date; (b) is evidenced by a Proof of Claim Filed on or before the applicable Bar Date for which no objection has been Filed on or before the Claims Objection Deadline; (c) is not the subject of an objection to allowance that was Filed on or before the Claim Objection Deadline that has not been settled, waived, withdrawn, or denied pursuant to a Final Order; or (d) is expressly allowed (i) pursuant to a Final Order, (ii) pursuant to an agreement between the Holder of such Claim or Interest and the Debtors, or (iii) pursuant to the terms of this Plan; *provided*, *however* that proofs of interest need not be Filed with respect to any Interest. A Claim evidenced by a Proof of Claim Filed after the applicable Bar Date shall not be Allowed for any purpose whatsoever absent entry of a Final Order allowing such late-Filed Claim, except as otherwise provided by Bankruptcy Rules 3002(c) and 3003(c).

5. "<u>APA</u>" means the Asset Purchase Agreement executed by and between the Debtors and the Purchaser.

6. "<u>Assets</u>" means the Debtors' real and personal property assets.

7. "<u>Assignable Contract(s)</u>" means the Executory Contracts and/or Unexpired Leases identified by the Purchaser in the Assumption Notice as Executory Contracts and/or Unexpired Leases that may be assumed and assigned in accordance with the APA.

8. "<u>Assumed Liabilities</u>" has the meaning set forth in the APA (or such other similar term as may be used in the APA).

9. "<u>Assumption Notice</u>" means the notice of Assignable Contracts that the Debtors and Purchaser believe may be assumed and assigned in connection with the APA, along with a good faith estimate of the amount of Cure costs applicable to each Assignable Contract.

10. "<u>Auction</u>" means the auction process conducted in connection with the Sale.

11. "<u>Bankruptcy Code</u>" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as in effect on the Petition Date, together with all amendments, modifications, and replacements of the foregoing that are made retroactive to the Petition Date, as the same may exist on any relevant date to the extent applicable to the Chapter 11 Cases.

12. "<u>Bankruptcy Rule(s)</u>" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of title 28 of the United States Code and the general, local, and chambers rules of the Court, each as amended from time to time.

13. "<u>Bar Date</u>" means, (a) with respect to any Entity that is not a Governmental Unit or Customer, October 25, 2021, (b) with respect to a Governmental Unit, January 22, 2022, each of which were the dates set by the Court via docket text entry and listed in the *Notice of Commencement* as the date by which Proofs of Claim must be Filed with respect to Claims other than Administrative Expense Claims or other Claims for which the Court enters an order excluding

the Holders of such Claims from the requirement of Filing Proofs of Claim by such date; and (c) with respect to Customers, February 28, 2022 at 4:00 p.m. (prevailing Central Time).

14.    "Bid Procedures" means those certain bidding procedures set forth as Exhibit 1 to the Bid Procedures Order, as such procedures may be amended from time to time thereafter in accordance with the Bid Procedures Order.

15.    "Bid Procedures Order" means the *Order (I) Approving Bidding Procedures in Connection with the Sale of Substantially all of the Debtors' Assets; (II) Approving Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 318] entered on November 10, 2021.

16.    "Business Day" means any day other than a Saturday, Sunday, or other day on which the New York Stock Exchange or NASDAQ is closed for trading.

17.    "Cash" means cash in legal tender of the United States of America and cash equivalents, including bank deposits, checks, and other similar items.

18.    "Causes of Action" means any Claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, Liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise.  Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment; (b) claims under contracts or for breaches of duties imposed by law; (c) the right to object to or otherwise contest Claims or Interests; (d) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; (e) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (f) any claim under any state or foreign law, including, without limitation, any fraudulent transfer or similar claim.

19.    "Chapter 11 Cases" means the cases filed by the Debtors under chapter 11 of the Bankruptcy Code and jointly administered for procedural purposes only as case number 21-31121 pending in the Court.

20.    "Claim(s)" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors.

21.    "Claim Estimation Procedures" means the procedures approved in the *Order Determining Procedures for Estimating Claims Pursuant to 11 U.S.C. §§ 105(a) and 502(c)* [Docket No. 442] and the estimates provided in the *Amended Supplement to the Debtors' Motion for Order Determining Procedures for Estimating Claims Pursuant to U.S.C. §§ 105(a) and 502(c)* [Docket No. 453], which estimate all but the following three claims set forth therein at $0.00. Claims estimated with a value greater than zero are: (a) the Claim of Princeton Capital Corporation, which shall be estimated at $10,000,000; (b) the Claim of American Builders & Contractor Supply, which shall be estimated at $118,918; and (c) the Claim of Melvin Van Brookshire, which shall be estimated at $487,977.32.

22. "Claim Objection Deadline" means the deadline for Filing an objection to any Claim, which deadline shall be thirty (30) days after the Effective Date, subject to any extensions approved by an order of the Court; *provided* *however*, that the Claims Objection Deadline shall not apply to any Claims Filed after the applicable Bar Date.

23. "Claims and Balloting Agent" means Omni Agent Solutions, the notice, claims, and solicitation agent retained by the Debtors in these Chapter 11 Cases.

24. "Claims Register" means the official register of Claims maintained by the Claims and Balloting Agent.

25. "Class" means a category of Holders of Claims or Interests pursuant to sections 1122(a) and 1123(a) of the Bankruptcy Code.

26. "Closing" means such date as set forth in the APA, upon which the Sale will close.

27. "CM/ECF" means the Court's Case Management and Electronic Case Filing system.

28. "Conditions Precedent" has the meaning set forth in Section IX herein.

29. "Confirmation" means the entry of the Confirmation Order on the docket of these Chapter 11 Cases.

30. "Confirmation Hearing" means the hearing(s) before the Court under section 1128 of the Bankruptcy Code at which the Debtors seek entry of the Confirmation Order.

31. "Confirmation Order" means the order of the Court confirming this Plan under section 1129 of the Bankruptcy Code.

32. "Consummation" means the occurrence of the Effective Date.

33. "Court" means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division.

34. "Cure" means payment of all amounts, including an amount of $0.00, required to cure any monetary defaults under any Executory Contracts or Unexpired Leases (or such lesser amount as may be agreed upon by the parties to the Executory Contract or Unexpired Lease) that are to be assumed and assigned by the Debtors pursuant to section 365 or 1123 of the Bankruptcy Code.

35. "Customer(s)" means the individual(s) and/or entity(ies) who have entered into contracts for self-storage units located on the real property of the PropCo Debtors.

36. "D&O Liability Insurance Policies" means all insurance policies issued at any time to any of the Debtors for directors', managers', and officers' liability existing as of the Petition Date (including any "tail policy" or run-off coverage) and all agreements, documents, or instruments relating thereto.

37.    "Debtor(s)" has the meaning ascribed to it in the recitals, along with any post-confirmation successor or assign.

38.    "Debtor Release" means the release of the Debtor Released Parties as provided for in Section VIII.C.

39.    "Debtor Released Parties" means, collectively, (a) the Debtors; (b) the Liquidating Debtors; (c) Robert D. Albergotti, in every capacity in which he serves; (d) each of the Debtors' Professionals; and (e) the Purchaser.

40.    "Debtor Releasing Parties" shall have the meaning ascribed to such term in Section VIII.C.1 herein.

41.    "Designation Deadline" means such date that is on or before five (5) Business Days prior to the Closing of the Sale.

42.    "Disallowed" means a Claim or an Interest (or portion thereof) that has been disallowed, denied, dismissed, or overruled pursuant to this Plan or a Final Order of the Court or of any other court of competent jurisdiction.

43.    "Disbursing Agent" means the Liquidating Debtors or such other Entity designated by the Liquidating Debtors to hold and disburse the Plan Distributions to Holders of Allowed Claims, Allowed Interests, or other eligible Entities pursuant to the terms of this Plan.

44.    "Disclosure Statement" means the disclosure statement for this Plan, filed contemporaneously herewith and incorporated herein by reference (as such may be amended, modified, or supplemented from time to time hereafter), including all exhibits and schedules thereto.

45.    "Disclosure Statement Hearing" means the hearing held by the Bankruptcy Court on the approval of the Disclosure Statement, as such hearing may be continued from time to time.

46.    "Disputed" means a Claim or an Interest (or portion thereof), (a) that is neither an Allowed Claim nor a Disallowed Claim; (b) that is listed on the Schedules as "disputed," "unliquidated," or "contingent"; or (c) for which a timely objection to such Claim has been Filed, which objection has not been withdrawn or determined pursuant to a Final Order.

47.    "Disputed Claims Reserve Account" shall have the meaning ascribed to such term in Section IV.D herein.

48.    "Disputed Claims Reserve Funds" shall have the meaning ascribed to such term in Section IV.D herein.

49.    "Distribution Date" means the date or dates determined by the Debtors or Liquidating Debtors, as applicable, on or after the Effective Date and with the first such date occurring on or as soon as is reasonably practicable after the Effective Date, upon which the Disbursing Agent shall make Plan Distributions in accordance with the terms of this Plan.

50.   "Distribution Record Date" means the record date for purposes of making Plan Distributions under this Plan, which date shall be the Effective Date.

51.   "Distribution Waterfall" means the relative priority of Claims and Interests by which the Sale Proceeds shall be distributed, with distributions applied as follows: first, to the Holders of Senior Lender Claims; second, to the Holders of the PropCo Debtor Priority Claims; third, to the Holders of the PropCo Debtor General Unsecured Claims; fourth, to the Holders of the Senior Mezz Lender Claims; fifth, to the Holders of the Senior Mezz Debtor Priority Claims; sixth, to the Holders of the Senior Mezz Debtor General Unsecured Claims; seventh, to the Holders of Junior Mezz Lender Claims; eighth, to the Holders of the Junior Mezz Debtor Priority Claims; ninth, to the Holders of the Section 510(a) Subordinated Claims; tenth, to the Holders of the Junior Mezz Debtor General Unsecured Claims; eleventh, to the Holders of the Junior Mezz Debtor Interests; and twelfth to the Holders of the TopCo Debtor Interests; provided, however, that no Claims or Interests shall receive its respective distribution unless and until all statutorily and/or structurally senior Claims or Interests are reserved for or satisfied in full.

52.   "Effective Date" means the date that is the first Business Day after Confirmation on which all Conditions Precedent have been satisfied or waived in accordance with this Plan and the Confirmation Order.

53.   "Entity" has the meaning set forth in section 101(15) of the Bankruptcy Code.

54.   "Estate(s)" means the estate(s) of any of the Debtors created under sections 301 and 541 of the Bankruptcy Code upon the commencement of each of the Debtors' Chapter 11 Cases.

55.   "Exculpated Parties" means, collectively, and in each case in their capacity as such: (a) the Debtors, (b) the Liquidating Debtors, and (c) with respect to each of the foregoing Entities, each of their respective Related Persons that served in such capacity.

56.   "Exculpation" means the exculpation provision set forth in Section VIII.E hereof.

57.   "Executory Contract" means a contract to which one or more of the Debtors is a party that is subject to assumption, assumption and assignment, or rejection under section 365 of the Bankruptcy Code.

58.   "Existing Equity" means Natin Paul as the sole owner of 100% common units, either directly or indirectly, in the Debtors.

59.   "Federal Judgment Rate" means the federal judgment rate in effect as of the Petition Date.

60.   "File," "Filed," or "Filing" means file, filed, or filing with the Court or its authorized designee in these Chapter 11 Cases.

61.   "Final Order" means an order or judgment, as applicable, of the Court or other court of competent jurisdiction, with respect to the relevant subject matter, that has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been

taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument, or rehearing shall have been denied, resulting in no modification of such order or judgment, or has been otherwise dismissed with prejudice.

62.     "General Administrative Expense Claim(s)" means an Administrative Expense Claim other than a Professional Claim.

63.     "General Unsecured Claim(s)" means unsecured claim(s) that is not entitled to priority under the Bankruptcy Code and that is not an Intercompany Claim.

64.     "Getzler Henrich" means Getzler Henrich & Associates LLC.

65.     "Governance Order" means the *Governance Order* [Docket No. 319] entered November 10, 2021.

66.     "Governmental Unit" has the meaning set forth in section 101(27) of the Bankruptcy Code.

67.     "Holder(s)" means an Entity holding a Claim or Interest, as applicable.

68.     "Houlihan" means Houlihan Lokey Capital, Inc.

69.     "Impaired" means a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

70.     "Insurance Contracts" means all insurance policies, including the D&O Liability Insurance Policies, that have been issued (or provide coverage) at any time to any of the Debtors (or any of their predecessors) and all agreements, documents, or instruments relating thereto.

71.     "Insurer" means any Entity that issued an Insurance Contract and includes any third-party administrator of or for any Insurance Contract, along with any predecessors, successors, and/or Affiliates thereof.

72.     "Intercompany Claim(s)" means a Claim held by a Debtor against another Debtor.

73.     "Interest(s)" means (a) any equity security (as defined in section 101(16) of the Bankruptcy Code) in any Debtor that existed immediately prior to the Petition Date, including all units, shares, common stock, preferred stock, membership interests, and other instruments evidencing any fixed or contingent ownership in any Debtor or any rights to purchase or demand the issuance of any of the foregoing (including options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, or convertible, exercisable, or exchangeable securities); or (b) any other agreement, arrangement, or commitment of any character relating to, or whose value is related to, any of the foregoing.

74.     "Intercreditor Agreement" means the Intercreditor Agreement by and between the Senior Lender, the Senior Mezz Lender, and the Junior Mezz Lender, dated November 30, 2018.

75.     "Junior Mezz Debtor" means GVS Portfolio I B, LLC.

76.     "Junior Mezz Debtor General Unsecured Claim(s)" means the General Unsecured Claim(s) held at the Junior Mezz Debtor level.

77.     "Junior Mezz Debtor Interests" means the Interests held in the Junior Mezz Debtor.

78.     "Junior Mezz Debtor Priority Claim(s)" means the Claims entitled to priority under section 507 of the Bankruptcy Code that are asserted against the Junior Mezz Debtor.

79.     "Junior Mezz Lender" means the holder of the Junior Mezz Loan.

80.     "Junior Mezz Lender Claim(s)" means the Claims held by the Junior Mezz Lender pursuant to the Junior Mezz Loan.

81.     "Junior Mezz Loan" means a consolidated  mezzanine facility in the principal amount of $82 million made to GVS Portfolio I B, LLC, which is now held by the Junior Mezz Lender.

82.     "Lien" has the meaning set forth in section 101(37) of the Bankruptcy Code.

83.     "Liquidating Debtor(s)" means, any Debtor or any successor or assign thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

84.     "Mortgage Loan" means that certain Loan Agreement, dated as of November 30, 2018, by and between the Original Lender, and the PropCo Debtors (as amended, restated, supplemented, or otherwise modified from time to time).

85.     "Net Sale Proceeds" shall mean the Sale Proceeds, less actual and customary closing costs and expenses incurred by the Debtors in connection with such Sale.

86.     "Non-Debtor Releasing Parties" means, collectively, the following, in each case in their capacity as such unless noted otherwise: (a) the Holders of Unimpaired Claims or Interests, to the extent such Holder has not returned an Opt-Out Form by the Opt-Out Deadline; and (b) to the extent any Class is deemed Impaired, each Holder of an Impaired Claim or Interest that (i) votes to accept the Plan or (ii) either (1) abstains from voting or (2) votes to reject the Plan and, in the case of either (ii)(1) or (2), does not complete the Opt-Out Form by the Opt-Out Deadline.

87.     "Opt-Out Deadline" means on or before 4:00 p.m. (prevailing Central Standard Time) on a date that is no earlier than twenty-eight (28) days following distribution of the notice of Confirmation Hearing to the applicable Holders of Claims and Interests.

88.     "Opt-Out Form" means the form to be completed and returned by the Opt-Out Deadline by a Holder of a Claim or Interest if such Holder elects to opt-out of the consensual third-party releases set forth in Section VIII.C herein.

89.     "Original Lender" means UBS AG, as original lender under each of the Mortgage Loan, the Senior Mezz Loan, and the Junior Mezz Loan.

90.     "Other Priority Claim(s)" means any Claim other than an Administrative Expense Claim or Priority Tax Claim that is entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

91.     "Other Secured Claim(s)" means any Secured Claim, including any Secured Tax Claim, other than a Senior Lender Claim, a Senior Mezz Lender Claim, or a Junior Mezz Lender Claim.  Other Secured Claims includes any Claim arising under, derived from, or based upon any letter of credit issued in favor of one or more Debtors, the reimbursement obligation for which is either secured by a Lien on collateral or is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

92.     "Parent Petition Date" means June 23, 2021, which is the date GVS Portfolio I C, LLC filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Court.

93.     "Person(s)" has the meaning set forth in section 101(41) of the Bankruptcy Code.

94.     "Petition Date" means the Subsidiaries Petition Date together with the Parent Petition Date.

95.     "Plan" has the meaning ascribed to it in the recitals.

96.     "Plan Distribution" means payment(s) or distribution(s) to Holders of Allowed Claims, Allowed Interests, or other eligible Entities under this Plan.

97.     "Plan Objection Deadline" means the date set by the Court as the deadline for any Person(s) to File an objection to Confirmation of this Plan.

98.     "Plan Supplement" means those documents and forms of documents, agreements, schedules, and exhibits to this Plan, which shall be Filed by the Debtors no later than seven (7) days before the Plan Objection Deadline, or such later date as may be approved by the Court.

99.     "Priority Claim(s)" means a Priority Tax Claim or Other Priority Claim.

100.    "Priority Tax Claim(s)" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

101.    "Pro Rata" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class.

102.    "Professional" means an Entity either (a) employed pursuant to a Court order in accordance with sections 327, 328, 363, or 1103 of the Bankruptcy Code to be compensated for services rendered prior to or on the Effective Date in accordance with sections 327, 328, 329, 330 331, or 363 of the Bankruptcy Code, as applicable; or (b) awarded compensation and reimbursement by the Court pursuant to section 503(b)(4) of the Bankruptcy Code.

103.    "Professional Claim(s)" means a Claim by a Professional seeking an award by the Court of compensation for services rendered or reimbursement of expenses incurred through and

including the Effective Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

104.    "Professional Claim Reserve Account" means a reserve account in an amount equal to the Professional Claim Reserve Amount funded and maintained by the Debtors on the Effective Date solely for the purpose of paying Allowed but unpaid Professional Claims and other Administrative Expense Claims on account of the Professionals.

105.    "Professional Claim Reserve Amount" means the aggregate amount of unpaid and estimated Professional Claims and other Administrative Expense Claims on account of the Professionals (including any transaction or success fees of investment bankers and/or independent directors) incurred upon, and after giving effect to the occurrence of, the Effective Date to be paid by the Debtors, *less* the total of any retainers held by the Professionals.

106.    "Proof of Claim" means a proof of claim Filed against any of the Debtors in these Chapter 11 Cases on or before the applicable Bar Date.

107.    "PropCo(s)" or "ProCo Debtor(s)" means the following Debtors: GVS Colorado Holdings I, LLC, GVS Illinois Holdings I, LLC, GVS Indiana Holdings I, LLC, GVS Missouri Holdings I, LLC, WC Mississippi Storage Portfolio I, LLC, GVS Nevada Holdings I, LLC, GVS New York Holdings I, LLC, GVS Ohio Holdings I, LLC, GVS Ohio Holdings II, LLC, GVS Tennessee Holdings I, LLC, GVS Texas Holdings I, LLC, and GVS Texas Holdings II, LLC.

108.    "PropCo Debtor General Unsecured Claim(s)" means the General Unsecured Claim(s) asserted against a PropCo Debtor.

109.    "PropCo Debtor Priority Claim(s)" means the Claims entitled to priority under section 507 of the Bankruptcy Code asserted against a PropCo Debtor.

110.    "Proposed Lender Resolutions" means the terms of settlements resolving the claims of the Senior Lender, Senior Mezz Lender, and Junior Mezz Lender [Docket Nos. 523, 535, and 578], which are currently before the Court for approval pursuant to Bankruptcy Rule 9019.

111.    "Purchaser" means the purchaser or purchasers under the APA, together with their successors and permitted assigns.

112.    "Related Persons" means, with respect to any Person, such Person's predecessors, successors, assigns, and present and former Affiliates (whether by operation of law or otherwise) and each of their respective subsidiaries, and each of their respective current and former officers, directors, principals, employees, shareholders, members (including *ex officio* members and managing members), managers, managed accounts or funds, management companies, fund advisors, advisory board members, partners, agents, financial advisors, attorneys, accountants, investment bankers, investment advisors, consultants, representatives, and other professionals, in each case acting in such capacity at any time on or after the Petition Date, and any Person claiming by or through any of them, including such Related Persons' respective heirs, executors, estates, servants, and nominees; *provided*, *however*, that Natin Paul, Sheena Paul, Barbara Lee, Great Value Storage, LLC, World Class Capital Group LLC, any non-Debtor Affiliate, or an Insurer of any Debtor shall not constitute a Related Person of any Debtor or Liquidating Debtor.

113.    "<u>Release</u>" means the release given by the Releasing Parties to the Released Parties as set forth in <u>Section VIII.C</u> hereof.

114.    "<u>Released Party</u>" and, collectively, the "<u>Released Parties</u>" means each of the following, in each case in their capacity as such: (a) Debtor Released Parties; and (b) the respective Related Persons of each of the Entities described in the foregoing clause (i), in any and all of their capacities, including, without limitation, as employee, director, officer, creditor or stockholder.

115.    "<u>Releasing Party</u>" has the meaning set forth in <u>Section VIII.C.2</u> hereof.

116.    "<u>Revised Bid Procedures</u>" means the revised bid procedures filed at Docket No. 550 and providing for, among other things, the Debtors' designation of a stalking horse bidder and related bid protections.

117.    "<u>Sale</u>" means the sale of some or all of the Debtors' Assets pursuant to the Bid Procedures, Revised Bid Procedures, and Bid Procedures Order.

118.    "<u>Sale Documents</u>" means the APA and any other document, agreement, certificate or instrument entered into in connection with the Sale.

119.    "<u>Sale Order</u>" means one or more orders of the Court, including the Confirmation Order, in form satisfactory to the Debtors, approving the consummation of the applicable Sale.

120.    "<u>Sale Proceeds</u>" means the Cash and non-Cash consideration provided by the Purchaser in connection with any Sale.

121.    "<u>Schedule(s)</u>" means, with respect to each Debtor, the schedule of assets and liabilities and statements of financial affairs, as such may be further amended, modified, or supplemented from time to time by such Debtor at any point prior to the Effective Date and Filed by such Debtor with the Court pursuant to section 521 of the Bankruptcy Code and Bankruptcy Rule 1007.

122.    "<u>Schedule of Retained Causes of Action</u>" means the schedule of certain Causes of Action of the Debtors that are not released or waived pursuant to the Plan, as such schedule may be amended, modified, or supplemented from time to time.

123.    "<u>Section 510(a) Subordinated Claims</u>" means any Claim against any of the Debtors that is subject to subordination under section 510(a) of the Bankruptcy Code.

124.    "<u>Secured Claim(s)</u>" means a Claim: (a) secured by a valid, perfected, and enforceable Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code; or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

125.    "<u>Secured Tax Claim(s)</u>" means any Secured Claim that, absent its Secured Claim status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

126. "Securities" means any security, as defined in section 2(a)(1) of the Securities Act.

127. "Securities Act" means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a-77aa, or any similar federal, state, or local law.

128. "Senior Lender" means holder of the Mortgage Loan.

129. "Senior Lender Claim(s)" means the Claims held by the Senior Lender pursuant to the Mortgage Loan.

130. "Senior Mezz Debtor" means GVS Portfolio I, LLC.

131. "Senior Mezz Debtor General Unsecured Claim(s)" means the General Unsecured Claim(s) asserted against the Senior Mezz Debtor.

132. "Senior Mezz Debtor Priority Claim(s)" means the Claims entitled to priority under section 507 of the Bankruptcy Code asserted against the Senior Mezz Debtor.

133. "Senior Mezz Lender" means holder of the Senior Mezz Loan.

134. "Senior Mezz Lender Claim(s)" means the Claims held by the Senior Mezz Lender pursuant to the Senior Mezz Loan.

135. "Senior Mezz Loan" means the mezzanine loan in the original principal amount of $103 million made by the Original Lender to GVS Portfolio I, LLC, which is now held by the Senior Mezz Lender.

136. "Solicitation Notice" means, in the event there are insufficient Net Sale Proceeds to reserve for or satisfy in full all Claims and Interests, the notice Filed by the Debtors no later than fifteen (15) days after the Filing of the notice identifying the Successful Bidder (pursuant to the Bid Procedures Order), which shall commence the Solicitation Period.

137. "Solicitation Period" means the thirty-one (31) day period for the Debtors to solicit votes to accept or reject the Plan in the event there are insufficient Net Sale Proceeds to reserve for or satisfy in full any Classes of Claims or Interests; *provided*, *however*, that the solicitation of votes shall apply only to the Holders of Claims or Interests that are not satisfied in full from the Net Sale Proceeds.

138. "Subsidiaries Petition Date" means June 17, 2021, which is the date each of the Debtors, with the exception of GVS Portfolio I C, LLC filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Court.

139. "Third Party Release" means the consensual releases of the Released Parties by the Releasing Parties provided for in Section VIII.C.2.

140. "TopCo Debtor" means GVS Portfolio I C, LLC.

141. "<u>TopCo Debtor Interests</u>" means the Interests held either directly or indirectly by World Class in GVS Portfolio I C, LLC.

142. "<u>Unexpired Lease</u>" means a lease to which one or more of the Debtors is a party that is subject to assumption, assumption and assignment, or rejection under section 365 of the Bankruptcy Code.

143. "<u>Unimpaired</u>" means a Class of Claims or Interests that is not Impaired.

144. "<u>U.S. Trustee</u>" means the Office of the United States Trustee for Region 6.

145. "<u>World Class</u>" means, collectively, World Class Holdings I, LLC, World Class Holdings, LLC, and World Class Holding Company, LLC

### B. Rules of Interpretation

For purposes of this Plan and unless otherwise provided herein: (1) each term, whether stated in the singular or the plural, will include both the singular and the plural; (2) any reference to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (3) any reference herein to an existing document, schedule, exhibit, or annex, shall mean that document, schedule, exhibit, or annex, as it may thereafter be amended, modified, or supplemented; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) all references in this Plan to Section(s) are references to Articles of this Plan, as the same may be amended, waived, or modified from time to time in accordance with the terms hereof; (6) the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular Section, paragraph, or clause contained in this Plan; (7) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation and shall be deemed to be followed by the words "without limitation"; (8) subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release, or other agreement or document entered into in connection with this Plan, the rights and obligations arising pursuant to this Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (9) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (10) all references to docket numbers of documents Filed in these Chapter 11 Cases are references to the docket numbers under the Court's CM/ECF system; (11) any immaterial effectuating provisions may be interpreted by the Debtors or Purchaser, as applicable, in such a manner that is consistent with the overall purpose and intent of this Plan all without further notice to or action, order, or approval of the Court or any other Entity; (12) captions and headings to Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; and (13) any reference to an Entity's "subsidiaries" means its direct and indirect subsidiaries.

### C.     Computation of Time

In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.  In the event that any payment, distribution, act, or deadline under this Plan is required to be made or performed or occurs on a day that is not a Business Day, then such payment, distribution, act, or deadline shall be deemed to occur on the next succeeding Business Day, but if so made, performed or completed by such next succeeding Business Day, shall be deemed to have been completed or to have occurred as of the required date.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

### D.     Reference to Monetary Figures

All references in this Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

### E.     Controlling Document

Except as set forth in this Plan, to the extent that any provision of the Disclosure Statement, the Plan Supplement, or any other order referenced in this Plan (other than the Confirmation Order) conflicts with or is in any way inconsistent with any provision of this Plan, this Plan shall govern and control.  In the event of an inconsistency between the Confirmation Order and this Plan, the Confirmation Order shall control.

## ARTICLE II
## ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, General Administrative Expense Claims, Professional Claims, and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in <u>Section III</u> hereof.

### A.     General Administrative Expense Claims

Unless otherwise agreed to by the Holder of an Allowed General Administrative Expense Claim and the Debtors, each Holder of an Allowed General Administrative Expense Claim that is unpaid as of the Effective Date shall receive, on account and in full satisfaction of such Allowed General Administrative Expense Claim, Cash in an amount equal to the Allowed amount of such General Administrative Expense Claim, to be paid in accordance with the following: (1) if a General Administrative Expense Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed General Administrative Expense Claim is due or as soon as reasonably practicable thereafter); (2) if such General Administrative Expense Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order allowing such General Administrative Expense Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) at such time and upon such terms as may be agreed upon by such Holder and the Debtors; or (4) at such time and upon such terms as set forth in any other order of the Court.

Each Holder of a General Administrative Expense Claim that was not accrued in the ordinary course of business must File and serve a request for payment of such General Administrative Expense Claim on the Debtors no later than the Administrative Expense Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of the Effective Date. Holders of General Administrative Expense Claims that are required to File and serve a request for payment of such General Administrative Expense Claims by the Administrative Expense Claims Bar Date that do not File and serve such a request by the Administrative Expense Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such General Administrative Expense Claims against the Debtors or their respective property, and such General Administrative Expense Claims shall be deemed forever discharged and released as of the Effective Date. Any requests for payment of General Administrative Expense Claims that are not properly Filed and served by the Administrative Expense Claims Bar Date shall not appear on the Claims Register and shall be Disallowed automatically without the need for further action by the Debtors, or further order of the Court.

The Debtors may settle General Administrative Expense Claims without further Court approval. The Debtors may also choose to object to any General Administrative Expense Claim no later than sixty (60) days from the Administrative Expense Claims Bar Date, subject to extensions by the Court, agreement in writing of the parties, or on motion of a party in interest approved by the Court. Unless the Debtors or other party with standing, as applicable, object to a timely Filed and properly served General Administrative Expense Claim, such General Administrative Expense Claim will be deemed Allowed in the amount requested. In the event that the Debtors object to a General Administrative Expense Claim, the parties may confer to try to reach a settlement and, failing that, the Court will determine whether such General Administrative Expense Claim should be Allowed and, if so, in what amount.

## B.     Professional Claims

### 1.     Final Fee Applications and Payment of Professional Claims

All requests for payment of Professional Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be Filed no later than the Administrative Expense Claims Bar Date. The Court shall determine the Allowed amounts of such Professional Claims after notice and a hearing in accordance with the procedures established by the Court. The Debtors shall pay Professional Claims in Cash in the amount the Court allows, including from the Professional Claim Reserve Account, which the Debtors will establish in trust for the Professionals and fund with Cash equal to the Professional Claim Reserve Amount on the Effective Date.

### 2.     Professional Claim Reserve Account

On the Effective Date, the Debtors shall fund the Professional Claim Reserve Account with Cash equal to the aggregate Professional Claim Reserve Amount for all Professionals. The Professional Claim Reserve Account shall be maintained in trust for the Professionals. Such funds in the Professional Claim Reserve Account shall not constitute property of the Debtors' Estates, except as otherwise expressly set forth in the last sentence of this paragraph. The amount of Professional Claims owing to the Professionals on and after the Effective Date shall be paid in Cash to such Professionals from funds held in the Professional Claim Reserve Account, without

interest or other earnings therefrom, as soon as reasonably practicable after such Claims are Allowed by a Court order. When all Allowed Professional Claims have been paid in full, amounts remaining in the Professional Claim Reserve Account, if any, shall revert to the Debtors to be distributed pursuant to the terms of this Plan without any further action or order of the Court.

Professionals shall reasonably estimate their unpaid Professional Claims Reserve Amount and shall deliver such estimate to the Debtors no later than five (5) days before the Effective Date; *provided*, *however*, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of each Professional's final request for payment in these Chapter 11 Cases. If a Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional for purposes of determining the Professional Claims Reserve Amount.

### 3. Post-Effective Date Fees and Expenses

Except as otherwise specifically provided in this Plan, from and after the Effective Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation and Consummation of this Plan incurred by the Debtors. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Court.

### C. Priority Tax Claim

Except as otherwise agreed by a Holder of an Allowed Priority Tax Claim and the Debtors, each Holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction of such Claim, Cash in an amount equal to the Allowed amount of such Priority Tax Claim, to be paid on the Effective Date or as soon as reasonably practicable thereafter.

## ARTICLE III
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### A. Classification of Claims and Interests

The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, Confirmation, and Plan Distribution pursuant to sections 1122 and 1123(a) of the Bankruptcy Code. This Plan deems a Claim or Interest to be classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. A Claim or Interest is in a particular Class for purposes of distribution only to the extent that any such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date. In accordance with section 1123(a)(1) of the Bankruptcy Code and as described in <u>Section II</u> hereof, the Debtors have not classified General Administrative Expense Claims, Professional Claims, and Priority Tax Claims.

The classification of Claims and Interests against the Debtors pursuant to this Plan is as follows:

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 | Senior Lender Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 4 | PropCo Debtor Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 5 | PropCo Debtor General Unsecured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 6 | Senior Mezz Lender Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 7 | Senior Mezz Debtor Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 8 | Senior Mezz Debtor General Unsecured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 9 | Junior Mezz Lender Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 10 | Junior Mezz Debtor Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 11 | Junior Mezz Debtor General Unsecured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 12 | Section 510(a) Subordinated Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 13 | Junior Mezz Debtor Interests | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 14 | TopCo Debtor Interests | Unimpaired | Not Entitled to Vote (Deemed to Accept) |

## B. Treatment of Claims and Interests

Each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under this Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Debtors and the Holder of such Allowed Claim or Allowed Interest, as applicable.  Unless otherwise indicated, the Holder of an Allowed Claim or

Allowed Interest, as applicable, shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

1.    **Class 1 – Other Secured Claims**

    a.    *Classification.* Class 1 consists of Other Secured Claims.

    b.    *Treatment.* Each Holder of an Allowed Other Secured Claim shall receive at the option of the Debtors:

        (i)    payment in full in Cash;

        (ii)    the return of the applicable collateral in satisfaction of the Allowed amount of such Other Secured Claim; or

        (iii)    such other treatment sufficient to render such Allowed Other Secured Claim as Unimpaired.

    c.    *Voting.* Class 1 is Unimpaired under the Plan. Holders of Claims in Class 1 are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject this Plan.

2.    **Class 2 – Other Priority Claims**

    a.    *Classification.* Class 2 consists of Other Priority Claims.

    b.    *Treatment.* On the Effective Date, or as soon as reasonably practicable thereafter, each Holder of an Allowed Other Priority Claim shall receive payment in full in Cash.

    c.    *Voting.* Class 2 is Unimpaired under the Plan. Holders of Claims in Class 2 are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject this Plan.

3.    **Class 3 – Senior Lender Claims**

    a.    *Classification.* Class 3 consists of Senior Lender Claims.

    b.    *Treatment.* Upon the Effective Date, or as soon as reasonably practicable thereafter, the Allowed amount of the Senior Lender Claims shall be paid in Cash from the Net Sale Proceeds.

    c.    *Voting.* Class 3 is Unimpaired under the Plan. Holders of Claims in Class 3 are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject this Plan.

4. **Class 4 – PropCo Debtor Priority Claims**

      a.      *Classification*. Class 4 consists of PropCo Debtor Priority Claims.

      b.      *Treatment*. On the Effective Date, or as soon as reasonably practicable thereafter the Allowed amount of the PropCo Debtor Priority Claims shall be paid in Cash from the available Net Sale Proceeds.

      c.      *Voting*. Class 4 is Unimpaired under the Plan. Holders of Claims in Class 4 are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject this Plan.

5. **Class 5 – PropCo Debtor General Unsecured Claims**

      a.      *Classification*. Class 5 consists of PropCo Debtor General Unsecured Claims.[1]

      b.      *Treatment*. On the Effective Date, or as soon as reasonably practicable thereafter the Allowed amount of the PropCo Debtor General Unsecured Claims, along with postpetition interest at the Federal Judgment Rate or contract rate, as applicable, shall be paid in Cash from the available Net Sale Proceeds.

      c.      *Voting*. Class 5 is Unimpaired under the Plan. Holders of Claims in Class 5 are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject this Plan.

6. **Class 6 – Senior Mezz Lender Claims**

      a.      *Classification*. Class 6 consists of Senior Mezz Lender Claims.

      b.      *Treatment*. On the Effective Date, or as soon as reasonably practicable thereafter, the Allowed amount of the Senior Mezz Lender Claims shall be paid in Cash from the Net Sale Proceeds.

      c.      *Voting*. Class 6 is Unimpaired under the Plan. Holders of Claims in Class 6 are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject this Plan.

---

[1] To the extent that Class 5 includes General Unsecured Claims against multiple Debtors, the treatment of Class 5 described herein potentially constitutes a partial substantive consolidation of the applicable Debtors.

**7. Class 7 – Senior Mezz Debtor Priority Claims**

    a.      *Classification*. Class 7 consists of Senior Mezz Debtor Priority Claims.

    b.      *Treatment*. On the Effective Date, or as soon as reasonably practicable thereafter the Allowed amount of the Senior Mezz Debtor Priority Claims shall be paid in Cash from the Net Sale Proceeds.

    c.      *Voting*. Class 7 is Unimpaired under the Plan. Holders of Claims in Class 7 are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject this Plan.

**8. Class 8 – Senior Mezz Debtor General Unsecured Claims**

    A.      *Classification*. Class 8 consists of Senior Mezz Debtor General Unsecured Claims.

    b.      *Treatment*. On the Effective Date, or as soon as reasonably practicable thereafter the Allowed amount of the Senior Mezz Debtor General Unsecured Claims, along with postpetition interest at the Federal Judgment Rate or contract rate, as applicable, shall be paid in Cash from the Net Sale Proceeds.

    c.      *Voting*. Class 8 is Unimpaired under the Plan. Holders of Claims in Class 8 are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject this Plan.

**9. Class 9 – Junior Mezz Lender Claims**

    a.      *Classification*. Class 9 consists of Junior Mezz Lender Claims.

    b.      *Treatment*. On the Effective Date, or as soon as reasonably practicable thereafter the Allowed amount of the Junior Mezz Lender Claims shall be paid in Cash from the available Net Sale Proceeds.

    c.      *Voting*. Class 9 is Unimpaired under the Plan. Holders of Claims in Class 9 are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject this Plan.

**10. Class 10 – Junior Mezz Debtor Priority Claims**

a. *Classification*. Class 10 consists of Junior Mezz Debtor Priority Claims.

b. *Treatment*. On the Effective Date, or as soon as reasonably practicable thereafter the Allowed amount of the Junior Mezz Debtor Priority Claims shall be paid in Cash from the available Net Sale Proceeds.

c. *Voting*. Class 10 is Unimpaired under the Plan. Holders of Claims in Class 10 are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject this Plan.

**11. Class 11 – Junior Mezz Debtor General Unsecured Claims**

a. *Classification*. Class 11 consists of Junior Mezz Debtor General Unsecured Claims.

b. *Treatment*. On the Effective Date, or as soon as reasonably practicable thereafter the Allowed amount of the Junior Mezz Debtor General Unsecured Claims, along with postpetition interest at the Federal Judgment Rate or contract rate, as applicable, shall be paid in Cash from the available Net Sale Proceeds.

c. *Voting*. Class 11 is Unimpaired under the Plan. Holders of Claims in Class 11 are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject this Plan.

**12. Class 12 – Section 510(a) Subordinated Claims**

a. *Classification*. Class 12 consists of Section 510(a) Subordinated Claims.

b. *Treatment*. On the Effective Date, or as soon as reasonably practicable thereafter the Allowed amount of the Section 510(a) Subordinated Claims shall be paid in Cash from the available Net Sale Proceeds.

c. *Voting*. Class 12 is Unimpaired under the Plan. Holders of Claims in Class 12 are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject this Plan.

**13. Class 13 – Junior Mezz Debtor Interests**

      a.      *Classification*.  Class 13 consists of Junior Mezz Debtor Interests.

      b.      *Treatment*.  On the Effective Date, or as soon as reasonably practicable thereafter, the Holders of the Junior Mezz Debtor Interests shall be paid in Cash to the extent of the available Net Sale Proceeds.  The Interests in the Junior Mezz Debtor shall thereafter be extinguished and of no further force or effect.

      c.      *Voting*.  Class 13 is Unimpaired under the Plan.  Holders of Interests in Class 13 are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject this Plan.

**14. Class 14 – TopCo Debtor Interests**

      a.      *Classification*.  Class 14 consists of TopCo Debtor Interests.

      b.      *Treatment*.  On the Effective Date, or as soon as reasonably practicable thereafter, the Holders of the TopCo Debtor Interests shall be paid in Cash to the extent of the available Net Sale Proceeds.  The Interests in the TopCo Debtor shall thereafter be extinguished and of no further force or effect.

      c.      *Voting*.  Class 14 is Unimpaired under the Plan.  Holders of Interests in Class 14 are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject this Plan.

**C.**      **Special Provision Governing Unimpaired Claims**

Except as otherwise provided in this Plan, nothing under this Plan shall affect the Debtors' rights regarding any Unimpaired or reinstated Claim, including, all rights regarding legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired or reinstated Claim.

**D.**      **Elimination of Vacant Classes**

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Court as of the date of the Confirmation Hearing shall be deemed eliminated from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

E.     **Acceptance or Rejection of this Plan**

1.     **Presumed Acceptance of this Plan**

No Classes of Claims or Interests are Impaired under the Plan.  Accordingly, each Class is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

2.     **Voting Classes**

No Classes of Claims or Interests are Impaired under the Plan.  Accordingly, no Classes of Claims or Interests are entitled to vote to accept or reject the Plan.

F.     **Confirmation and 1129(b) of the Bankruptcy Code**

As no Classes of Claims or Interests are Impaired under the Plan, section 1129(a)(10) of the Bankruptcy Code is in applicable for the purposes of Confirmation.  The Debtors reserve the right to modify this Plan in accordance with <u>Section X.A</u> hereof to the extent that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.  If a controversy arises as to whether any Claims or Interests, or any class of Claims or Interests, are Impaired, the Court shall, after notice and a hearing, determine such controversy on or before Confirmation.

**ARTICLE IV**
**MEANS FOR IMPLEMENTATION OF THIS PLAN**

A.     **General Settlement of Claims and Interests**

As discussed in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under this Plan, upon the Effective Date, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to this Plan, including (1) any challenge to the amount, validity, perfection, enforceability, priority, or extent of the Senior Lender Claims; (2) any challenge to the amount, validity, perfection, enforceability, priority or extent of the Senior Mezz Lender Claims; and (3) any challenge to the amount, validity, perfection, enforceability, priority, or extent of the Junior Mezz Lender Claims.  This Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Court that such settlement and compromise is fair, equitable, reasonable and in the best interests of the Debtors and their Estates.  Subject to <u>Section VI.K</u> hereof, all Plan Distributions made to Holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

### B. Sale

The Debtors' Assets will be marketed pursuant to the Bid Procedures and, as appropriate, the Revised Bid Procedures, to effectuate the Sale and to generate Sale Proceeds to be distributed in accordance with the Plan. The actions to implement the Sale may include: (1) the execution and delivery of appropriate agreements or other documents that are consistent with the terms of the Plan and that satisfy the applicable requirements of law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan; (3) the filing of appropriate certificates or articles of incorporation, formation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state or provincial law; and (4) all other actions that the applicable Entities determine to be necessary, including making filings or recordings that may be required by applicable law in connection with the Plan. The Confirmation Order shall, and shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, contemplated by, or necessary to effectuate the Plan.

### 1. Cancellation of Existing Agreements

On the Effective Date, except to the extent otherwise provided in this Plan, the Sale Order, or the Confirmation Order, all notes, instruments, certificates, credit agreements, indentures, and other similar documents evidencing Claims or Interests, shall be cancelled and the obligations of the Debtors thereunder or in any way related thereto shall be deemed satisfied in full, cancelled, discharged, and of no force or effect. Holders of or parties to such cancelled instruments, securities, and other documentation will have no rights arising from or relating to such instruments, securities, and other documentation, or the cancellation thereof, except the rights provided for pursuant to this Plan.

### 2. Section 1146 Exemption

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers of property under this Plan or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors; (b) the Sale; (c) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (d) the grant of collateral as security for the Debtors' obligations under and in connection with the Mortgage Loan, Senior Mezz Loan, or Junior Mezz Loan, as applicable; or (e) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan or the Sale Order, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to this Plan or the Sale Order, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, personal property transfer tax, sales or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and

accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Entity with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### 3. Compliance with APA

The Debtors shall comply with the requirements of Section 7.3 of the APA, including the payment and indemnification of any taxes owed pre-Closing of the Sale or during the taxable period that begins on or before Closing and ends after Closing (such period defined as the "Straddle Period" in the APA). Payment of the taxes estimated under this section shall be paid to the Purchaser at Closing.

### 4. Effectuating Documents; Further Transactions

On and after the Effective Date, the Debtors or Liquidating Debtors, as applicable, and their respective officers, directors, members, or managers (as applicable), are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of this Plan without the need for any approvals, authorization, or consents except for those expressly required pursuant to this Plan or the Sale Order, as applicable.

### C.     Preservation of Causes of Action

### 1. Maintenance of Causes of Action

Except as otherwise provided in this Section IV or elsewhere in this Plan or the Confirmation Order, after the Effective Date, the Liquidating Debtors shall retain all rights to commence, pursue, litigate, or settle, as appropriate, any and all Causes of Action, whether existing as of the Petition Date or thereafter arising, in any court or other tribunal including, without limitation, in an adversary proceeding Filed in these Chapter 11 Cases; _provided_, _however_, that the foregoing shall not be deemed to include any claims or Causes of Action (i) released under Section VIII.C.1 hereof or (ii) exculpated under Section VIII.E hereof to the extent of any such exculpation. The Debtors, Liquidating Debtors, and the Estates, may, and shall have the exclusive right to, enforce, sue on, settle, compromise, transfer or assign (or decline to do any of the foregoing) any or all of such Causes of Action, in each case solely to the extent of the Debtors', Liquidating Debtors', or their Estates' interest therein, without notice to or approval from the Bankruptcy Court. Notwithstanding the foregoing, the Debtors or Liquidating Debtors, as applicable, shall retain all claims and defenses to any Allowed Claims that are Unimpaired pursuant to the Plan. A further description of the retained causes of action shall be filed with the Plan Supplement.

## 2. Preservation of All Causes of Action Not Expressly Settled or Released

The Debtors expressly reserve all Causes of Action for later adjudication by the Debtors or Liquidating Debtors, as applicable, (including, without limitation, Causes of Action not specifically identified or of which the Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances that may change or be different from those the Debtors now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action upon or after the Confirmation or Consummation of this Plan based on the Disclosure Statement, this Plan or the Confirmation Order, except in each case where such Causes of Action have been expressly waived, relinquished, released, compromised or settled in this Plan, the Confirmation Order or any other Final Order, including, without limitation or any other claims or Causes of Action (i) released under Section VIII.C.1 hereof or (ii) exculpated under Section VIII.E hereof to the extent of any such exculpation. In addition, the Debtors and Liquidating Debtors, as applicable, expressly reserve the right to pursue or adopt any claims alleged in any lawsuit in which any of the Debtors are a plaintiff, defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

### D. Disputed Claims Reserve Account

On the Effective Date, and in conjunction with making all distributions required to be made on the Effective Date, the Debtors shall establish the disputed claims reserve account (the "Disputed Claims Reserve Account") in an amount equal to the amount of Disputed Claims (in addition to estimated interest due and owing, either contractually or under the Bankruptcy Code, to each Holder of such Disputed Claims) as of the Effective Date (the "Disputed Claims Reserve Funds"). The amount of the Disputed Claims Reserve Funds shall be reduced upon payment to Holders of Allowed Claims, with any excess Disputed Claim Reserve Funds to be distributed to Holders of Interests. Payments of the Disputed Claim Reserve Funds shall be made to the Holder of an Allowed Claim, which was previously a Disputed Claim, upon the first Distribution Date immediately following the date upon which such Claim became an Allowed Claim.

The Disputed Claims Reserve Account shall be terminated when all Disputed Claims related to such account have either become Allowed Claims or Disallowed with excess Disputed Claim Reserve Funds to be distributed to Holders of Interests

### E. Opt-Out Forms

**All Holders of Claims or Interests will receive an Opt-Out Form to complete and return if such Holder elects to opt-out of the consensual third-party releases set forth in Section VIII.C herein. The Opt-Out Form must be properly executed, completed, and delivered so as to be actually received by Omni on or before the Opt-Out Deadline.**

## F.     Closing the Chapter 11 Cases

The Liquidating Debtors shall, promptly after the full administration of the Chapter 11 Cases, file with the Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Court to close the Chapter 11 Cases; _provided_ that, as of the Effective Date, the Debtors or Liquidating Debtors, as applicable, may submit separate orders to the Court under certification of counsel previously provided to the U.S. Trustee closing certain individual Chapter 11 Cases and changing the caption of the Chapter 11 Cases accordingly.  Nothing in this Plan shall authorize the closing of any case effective as of a date that precedes the date any such order is entered.  Any request for such relief shall be made on motion served on the U.S. Trustee, and the Court shall rule on such request after notice and a hearing.  Upon the filing of a motion to close the last Chapter 11 Case remaining open, the Liquidating Debtors shall file a final report with respect to all of the Chapter 11 Cases pursuant to Local Rule 3022-1(c).

## ARTICLE V
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

## A.     Assumption of Executory Contracts and/or Unexpired Leases

On the Effective Date, except as otherwise provided in Section V.G and elsewhere herein or in the APA, all Executory Contracts and/or Unexpired Leases not otherwise assumed and assigned or rejected will be deemed rejected by the applicable Debtor in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that: (1) are identified on the Assumption Notice; (2) previously expired or terminated pursuant to their own terms; (3) have been previously assumed or rejected by the Debtors pursuant to a Final Order; (4) are the subject of a motion to reject that is pending on the Effective Date; or (5) have an ordered or requested effective date of rejection that is after the Effective Date.

Such automatic assumption, assumption and assignment, or rejection, as applicable, shall be effective without the need for any further notice to or action, order, or approval of the Court, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than any Executory Contracts and/or Unexpired Leases that: (1) have been previously assumed, assumed and assigned, or rejected pursuant to a Court order; (2) are the subject of a motion to assume, assume and assign, or reject such Executory Contract or Unexpired Leases (or of a Filed objection with respect to the proposed assumption, assumption and assignment, or rejection of such Executory Contract or Unexpired Leases) that is pending on the Effective Date; or (3) are a contract, release, or other agreement or document entered into in connection with the Plan or Sale, if applicable.  The assumption and assignment or rejection of Executory Contracts and/or Unexpired Leases hereunder may include the assignment of certain of such contracts to Affiliates.  Entry of the Confirmation Order shall constitute an order of the Court approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts and/or Unexpired Leases as set forth in this Plan or the Assumption Notice, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Except as otherwise specifically set forth herein, assumptions and assignments or rejections of Executory Contracts and/or Unexpired Leases pursuant to this Plan are effective as of the Effective Date.  Any motions to assume Executory Contracts and/or Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order on or after the Effective Date but may be withdrawn, settled, or otherwise prosecuted by the Debtors.

To the maximum extent permitted by law, to the extent any provision in any Executory Contract and/or Unexpired Leases assumed and assigned pursuant to this Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption and assignment of such Executory Contract and/or Unexpired Leases (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by this Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract and/or Unexpired Leases or to exercise any other default-related rights with respect thereto.

**Notwithstanding anything to the contrary in this Plan, the Debtors or the Purchaser, as applicable, reserve the right to alter, amend, modify, or supplement the Assumption Notice at any time up to the Designation Deadline and any Assignable Contract that would otherwise be automatically rejected pursuant to the terms of this Plan may be added to the Assumption Notice and assumed and assigned at any time prior to the Designation Deadline consistent with the terms of the APA, Sale Order, and this Plan.**

### B. Claims Based on Rejection of Executory Contracts and/or Unexpired Leases

Unless otherwise provided by a Final Order of the Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts and/or Unexpired Leases, pursuant to this Plan or the Confirmation Order, if any, must be Filed with the Court by the applicable counterparty within thirty (30) days after the later of (1) the date of entry of an order of the Court (including the Confirmation Order) approving such rejection; (2) the effective date of such rejection; or (3) the Effective Date. Notwithstanding anything to the contrary herein, the Debtors or Liquidating Debtors, as applicable, shall have thirty (30) days following the Filing of the Proof of Claim for rejection damages to object to such Claim. If such objection is timely filed by the Debtors or Liquidating Debtors, the Proof of Claim shall be adjudicated in accordance with the procedures set forth in Section VII hereof.

**Any Claims arising from the rejection of an Executory Contract and/or Unexpired Lease not Filed with the Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Estates, or their property without the need for any objection by the Debtors or further notice to, or action, order, or approval of the Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract and/or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Proof of Claim to the contrary.** All Allowed Claims arising from the rejection of the Debtors' Executory Contracts and/or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with the appropriate Class herein.

### C. Cure of Defaults for Assumed Executory Contracts and/or Unexpired Leases

The Debtors shall file the Assumption Notice on or before the date that is five (5) Business Days following the date on which the Sale Order is entered by the Court, identifying all Assignable Contracts that the Debtors and Purchaser believe may be assumed and assigned in connection with the Sale and all Cure amounts relating thereto. The Debtors may amend the list of Assignable

Contracts in the Assumption Notice to add or remove certain Assignable Contracts at any point up until the Designation Deadline.[2]

The Assumption Notice shall include a description of the procedures for objecting to the proposed Cure amounts or the Purchaser's ability to provide "adequate assurance of future performance thereunder" (within the meaning of section 365 of the Bankruptcy Code). Unless otherwise agreed in writing by the parties in the applicable Executory Contract or Unexpired Lease, any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption and assignment or related Cure must be Filed and served on counsel to the Debtors no later than seven (7) days after the Filing of the Assumption Notice.

Any unresolved objection to a proposed Cure that cannot be consensually resolved or settled prior to Confirmation may be adjudicated by the Court at the Debtors' first omnibus setting following the Filing of the objection, or at such other time as such matters are brought before the Court, including at the Confirmation Hearing. Once any such dispute is adjudicated, the Debtors shall retain the right to modify, amend, or supplement the Assumption Notice up until the Designation Deadline.

Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption and assignment or Cure will be deemed to have assented to such assumption and assignment and Cure, and any untimely objection shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Debtor or Purchaser without the need for any objection by the Debtors, Purchaser, or any other party in interest or any further notice to or action, order, or approval of the Court.

Any Cure shall be deemed fully satisfied, released, and discharged upon payment by the Debtors or the Purchaser, as applicable, of the Cure; _provided_ that nothing herein shall prevent the Debtors or Purchaser from paying any Cure despite the failure of the relevant counterparty to File such request for payment of such Cure amount. The Debtors or Purchaser, as applicable may also settle any Cure without any further notice to or action, order, or approval of the Court.

The Debtors or the Purchaser, as applicable, shall pay undisputed Cures, if any, on the Closing of the Sale or as soon as reasonably practicable thereafter, or on such other terms as the parties to such Executory Contracts and/or Unexpired Leases may agree. If there is any dispute regarding any Cure, the ability of the Purchaser or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption, then payment of the applicable Cure amount shall occur at the later of (1) Closing; and (2) fourteen (14) days after entry of a Final Order resolving such dispute, or as may be agreed upon by the Debtors or the Purchaser, as applicable, and the counterparty to the Executory Contract and/or Unexpired Lease.

---

[2] Notwithstanding anything herein to the contrary, in the event that any Executory Contract or Unexpired Lease is added to the Assumption Notice and thereby assumed and assigned after the filing of the Plan Supplement, a notice of Cure amount with respect to such Executory Contracts and/or Unexpired Lease will be sent promptly to the counterparty thereof and such counterparty shall have seven (7) days to object to such notice.

Assumption and assignment of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or any bankruptcy-related defaults, arising at any time prior to the effective date of assumption. **Any and all Proofs of Claim based upon Executory Contracts and/or Unexpired Leases that have been assumed and assigned in the Chapter 11 Cases, including pursuant to the Confirmation Order, shall be deemed Disallowed and expunged as of the latest of (1) the date of entry of an order of the Court (including the Confirmation Order) approving such assumption and assignment; (2) the effective date of such assumption and assignment; and (3) the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Court.**

### D.  Preexisting Obligations to the Debtors Under Executory Contracts and/or Unexpired Leases

Rejection of any Executory Contract and/or Unexpired Lease pursuant to this Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors under such Executory Contracts and/or Unexpired Leases. In particular, notwithstanding any non-bankruptcy law to the contrary, the Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations with respect to goods previously purchased by the Debtors pursuant to rejected Executory Contracts and/or Unexpired Leases.

### E.  Insurance Policies

Notwithstanding anything to the contrary in the Plan, the Plan Supplement, the Confirmation Order, any other document related to any of the foregoing, or any other order of the Court, each of the Debtors' Insurance Contracts shall be treated as Executory Contracts under this Plan.

Unless otherwise provided in this Plan, on and after the Effective Date (1) the Debtors shall be deemed to have assumed and assigned the Insurance Contracts pursuant to sections 105 and 365 of the Bankruptcy Code; (2) nothing shall alter, amend or otherwise modify the terms and conditions of the Insurance Contracts except that, on and after the Effective Date, the Purchaser shall become and remain jointly and severally liable in full for all of their and the Debtors' obligations under the Insurance Contracts, regardless of whether such obligations arise before or after the Effective Date, without the requirement or need for any Insurer to file a Proof of Claim or an Administrative Expense Claim, or to object to any Cure; and (3) the automatic stay of Bankruptcy Code section 362(a) and the injunction set forth in Section VIII.F hereof, if and to the extent applicable, shall be deemed lifted without further order of the Court, solely to permit: (a) claimants with valid direct action claims against an Insurer under applicable non-bankruptcy law to proceed with their claims; (b) Insurers to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of this Court: (i) claims where a claimant asserts a direct claim against any Insurer under applicable non-bankruptcy law, (ii) claims where an order has been entered by this Court granting a claimant relief from the automatic stay or the injunction set forth in Section VIII.F hereof to proceed with its claim; and (iii) all costs in relation to each of the foregoing; and (c) the Insurers to cancel any Insurance Contracts, and take other

actions relating thereto, to the extent permissible under applicable non-bankruptcy law, and in accordance with the terms of the Insurance Contracts.

### F.    Reservation of Rights

Nothing contained in this Plan or the Plan Supplement shall constitute an admission by the Debtors or any other party that any contract is in fact an Executory Contract or Unexpired Lease or that any Debtors have any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory at the time of assumption and assignment or rejection, the Debtors shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter their treatment of such contract.

### G.    Contracts and Leases Entered Into After the Petition Date

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the applicable Debtor or Purchaser in the ordinary course of its business.  Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order; provided, that nothing in this Section V.G shall apply to contracts and leases identified as part of the Debtors' investigation that are subject to avoidance pursuant to section 549 of the Bankruptcy Code.

### ARTICLE VI
### PROVISIONS GOVERNING DISTRIBUTIONS

### A.    Timing and Calculation of Amounts to Be Distributed

Unless otherwise provided in the Plan, on the initial Distribution Date (or if a Claim is not an Allowed Claim or Allowed Interest on the initial Distribution Date, on the next Distribution Date after such Claim or Interest becomes an Allowed Claim or Allowed Interest), or as soon as is reasonably practicable thereafter, each Holder of an Allowed Claim or Allowed Interests (as applicable) shall receive the full amount of the distributions that this Plan provides for Allowed Claims or Allowed Interests (as applicable) in the applicable Class.  If and to the extent that there are Disputed Claims or Disputed Interests, distributions on account of any such Disputed Claims or Disputed Interests shall be made pursuant to the provisions set forth in Section VII.  Except as otherwise provided in this Plan or the Proposed Lender Resolutions, Holders of Claims or Interests shall not be entitled to interest, dividends, or accruals on the distributions provided for in this Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

### B.    Disbursing Agent

All Plan Distributions shall be made by the Disbursing Agent.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Court.  Additionally, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Debtors.

C. **Rights and Powers of Disbursing Agent**

1. **Powers of Disbursing Agent**

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under this Plan; (b) make all Plan Distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Court, pursuant to this Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

2. **Expenses Incurred on or After the Effective Date**

Except as otherwise ordered by the Court, to the extent the Disbursing Agent is an Entity other than the Liquidating Debtors, the amount of any reasonable fees and expenses incurred by such Disbursing Agent on or after the Effective Date (including taxes), and any reasonable compensation and expense reimbursement claims (including reasonable attorneys' fees and expenses), made by such Disbursing Agent shall be paid in Cash by the Liquidating Debtors.

D. **Delivery of Distributions and Undeliverable or Unclaimed Distributions**

1. **Record Date for Distribution**

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making Plan Distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date. If a Claim, other than one based on a publicly traded security, is transferred twenty (20) or fewer days before the Distribution Record Date, the Disbursing Agent shall make distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

2. **Delivery of Distributions in General**

Except as otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims and Allowed Interests (as applicable) as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' records as of the date of any such Plan Distribution; *provided*, *however*, that the manner of such Plan Distribution shall be determined at the discretion of the Debtors.

3. **Undeliverable Distributions and Unclaimed Property**

In the event that any Plan Distribution to any Holder of Allowed Claims is returned as undeliverable, no Plan Distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such Plan Distribution shall be made to such Holder without interest; *provided*, *however*, that such Plan Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date. After such date, all unclaimed property or

interests in property shall revert to the Debtors automatically and without need for a further order by the Court (notwithstanding any applicable federal, provincial or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder of Claims to such property or Interest in property shall be discharged and forever barred.

### 4.     Surrender of Canceled Instruments or Securities

On the Effective Date, or as soon as reasonably practicable thereafter, each Holder of a certificate or instrument evidencing a Claim or an Interest shall be deemed to have surrendered such certificate or instrument to the Disbursing Agent.  Such surrendered certificate or instrument shall be cancelled solely with respect to the Debtors, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such certificate or instrument, including with respect to any agreement that governs the rights of the Holder of a Claim or Interest or a trustee or agent under such documents, which shall continue in effect for purposes of allowing Holders to receive Plan Distribution under this Plan and maintaining priority of payment, and to preserve any applicable charging Liens and reimbursement and/or indemnification rights, in each case as set forth in the applicable certificates or instruments. Notwithstanding anything to the contrary herein, this paragraph shall not apply to certificates or instruments evidencing Claims or Interests that are Unimpaired under this Plan.

### E.     Manner of Payment

All distributions of Cash to the Holders of the applicable Allowed Claims or Interests under this Plan shall be made by the Disbursing Agent on behalf of the Debtors.  At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

### F.     Compliance with Tax Requirements

In connection with this Plan, to the extent applicable, the Debtors, the Disbursing Agent, and any applicable withholding agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all Plan Distributions made pursuant to this Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in this Plan to the contrary, such parties shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under this Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Debtors reserve the right to allocate all distributions made under this Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

### G.     Allocations

Plan Distributions with respect to Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

### H. No Post-Petition Interest on Claims

Unless otherwise specifically provided for in this Plan, the Proposed Lender Resolutions, the Confirmation Order, or required by applicable bankruptcy and non-bankruptcy law, post-petition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on such Claim or right.

### I. Foreign Currency Exchange Rates

Except as otherwise provided in a Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal*, National Edition, on the Effective Date.

### J. Setoffs and Recoupments

Except as expressly provided in this Plan, each Debtor may, pursuant to section 553 of the Bankruptcy Code, set off and/or recoup against any Plan Distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that such Debtor may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment is either (1) agreed in amount among the relevant Debtor(s) and the Holder of the Allowed Claim; or (2) otherwise adjudicated by the Court or another court of competent jurisdiction; *provided*, *however*, that neither the failure to effectuate a setoff or recoupment nor the allowance of any *Claim* hereunder shall constitute a waiver or release by a Debtor or its successor of any and all claims, rights, and Causes of Action that such Debtor or its successor may possess against the applicable Holder. In no event shall any Holder of a Claim be entitled to recoup such Claim against any claim, right, or Cause of Action of the Debtors unless such Holder actually has performed such recoupment and provided notice thereof in writing in accordance with Section XII.F on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

### K. Claims Paid or Payable by Third Parties

#### 1. Claims Paid by Third Parties

The Debtors shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor. Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a Plan Distribution on account of such Claim and receives payment from a party that is not a Debtor on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the Plan Distribution to the applicable Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under this Plan exceeds the amount of such Claim as of the date of any such distribution under this Plan. The failure of such Holder to timely repay or return such Plan Distribution shall result in the Holder owing the applicable Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen (14) day grace period specified above until the amount is repaid.

## 2. Claims Payable by Third Parties

No Plan Distributions shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' Insurance Contracts until the Holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Contract. To the extent that one or more of the Debtors' Insurers agrees to pay in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction or otherwise settled), then immediately upon such Insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Court.

## 3. Applicability of Insurance Policies

Except as otherwise provided in this Plan, payments to Holders of Claims covered by Insurance Contracts shall be in accordance with the provisions of the applicable Insurance Contract and this Plan. Nothing contained in this Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including Insurers under any Insurance Contract, nor shall anything contained herein constitute or be deemed a waiver by such Insurers of any defenses, including coverage defenses, held by such Insurers.

## ARTICLE VII
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

### A. Allowance of Claims

Except as otherwise set forth in this Plan, after the Effective Date, the Debtors shall have and retain any and all rights and defenses they had with respect to any Claim immediately before the Effective Date, including the Causes of Action retained pursuant to <u>Section IV.C</u>. Except as specifically provided in this Plan or an order entered by the Court in the Chapter 11 Cases, no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed in accordance with this Plan. With respect to the Senior Lender, Senior Mezz Lender, and Junior Mezz Lender Claims, the Debtors have resolved such Claims pursuant to the Proposed Lender Resolutions, subject to Court approval. To the extent Court approval of the Proposed Lender Resolutions is not received prior to Confirmation, the Debtors shall reserve those disputed portions of the Senior Lender, Senior Mezz Lender, and Junior Mezz Lender Claims in the Disputed Claims Reserve Account pursuant to the procedures set forth herein. Those undisputed portions of the Senior Lender, Senior Mezz Lender, and Junior Mezz Lender Claims shall be satisfied pursuant to this Plan as of the Effective Date.

### B. Claims Administration Responsibilities

Except as otherwise specifically provided in this Plan, after the Effective Date the Debtors may: (1) File, withdraw, or litigate to judgment, objections to Claims; (2) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises or other payments without any further notice to or action, order, or approval by the Court.

**C.      Adjustment to Claims Without Objection**

Any duplicate Claim or any Claim that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Debtors without such Debtor having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Court.

**D.      Time to File Objections to Claims**

Except as otherwise set forth herein, any objections to Claims shall be served and Filed by the Claims Objection Deadline.  All Claims not objected to by the Claims Objection Deadline shall be deemed Allowed unless such deadline is extended upon approval of the Court.

**E.      Disallowance of Claims or Interests**

All Claims of any Entity from which property is sought by the Debtors under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtors allege is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be Disallowed pursuant to section 502(d) of the Bankruptcy Code if: (1) the Entity, on the one hand, and the Debtors on the other hand, agree or the Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code; and (2) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

Except as provided herein or otherwise agreed to by the Debtors in their sole discretion, any and all Claims evidenced by Proofs of Claims Filed after the applicable Bar Date shall be deemed Disallowed as of the Effective Date without any further notice to or action, order, or approval of the Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless such late Proof of Claim has been deemed timely-Filed by a Final Order.

**F.      Amendments to Proofs of Claim**

On or after the earlier of (1) the Effective Date or (2) the Bar Date, a Proof of Claim or Interest may not be Filed or amended without prior authorization of the Court or the Debtors, and any such new or amended Proof of Claim Filed that is not so authorized before it is Filed shall be deemed Disallowed in full without any further action.

**G.      No Transfers of Claims After Effective Date**

After the Effective Date, no Holder of a Claim may sell, transfer, encumber, pledge or assign all or any part of its Claim except (1) to the spouse of such holder; (2) by devise or bequest; or (3) by operation of law. Any purported sale, transfer, encumbrance, pledge or assignment by a Holder of a Claim in violation of this <u>Section VII.H</u> shall be null and void.

### H. No Distributions Pending Allowance

Notwithstanding any other provision of this Plan, if any portion of a Claim is a Disputed Claim, as applicable, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim; *provided* that if only the Allowed amount of an otherwise valid Claim is Disputed, such Claim shall be deemed Allowed in the amount not Disputed and payment or distribution shall be made on account of such undisputed amount.

### I. Distributions After Allowance

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions shall be made to the Holder of such Allowed Claim, satisfying the Allowed amount in full, in accordance with the provisions of this Plan. As soon as reasonably practicable after the date that the order or judgment of the Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the Plan Distribution to which such Holder is entitled under this Plan as of the Effective Date.

## ARTICLE VIII
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

### A. Discharge of Claims and Termination of Interests

Except as otherwise specifically provided in this Plan, the Confirmation Order, or in any contract, instrument, or other agreement or document created pursuant to this Plan, and pursuant to section 1141(d) of the Bankruptcy Code, the distributions, rights, and treatment that are provided in this Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted this Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.

### B. Release of Liens

**Except as otherwise provided in this Plan, the Confirmation Order, or in any contract, instrument, or other agreement or document created pursuant to this Plan, on the**

Effective Date and concurrently with the applicable distributions made pursuant to this Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Debtors and their successors and assigns, including the Purchaser. Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed, at the sole cost and expense of the Debtors to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Debtors or Purchaser, as applicable, to evidence the release of such Lien, including the execution, delivery, and Filing or recording of such releases. The presentation or Filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to this Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps reasonably requested by the Debtors or the Purchaser, as applicable, that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Debtors or Purchaser shall be entitled to make any such filings or recordings on such Holder's behalf.

C.   Release of Claims and Causes of Action

1.   Releases by the Debtors and Their Estates

Under section 1123(b) and any other applicable provisions of the Bankruptcy Code, and except as otherwise expressly provided in this Plan and the Sale Order, effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, the Debtors and the Liquidating Debtors, in their respective individual capacities and as debtors in possession, and on behalf of themselves and their respective Estates, including, without limitation, any successor to the Debtors or any Estate representative appointed or selected under section 1123(b)(3) of the Bankruptcy Code (collectively, the "Debtor Releasing Parties") and their respective assets and properties will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full discharge, waiver and release to each of the Released Parties (and each such Released Party so released shall be deemed forever released, waived and discharged by the Debtor Releasing Parties) (the "Debtor Release") from any and all Claims, Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of

38

federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of (i) the Debtors, the Chapter 11 Cases, the marketing of any of the Debtors' assets, the Disclosure Statement, this Plan, and the Sale Order, (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, (iii) the business or contractual arrangements between any Debtor and any Released Parties, (iv) the negotiation, formulation or preparation of this Plan, the Disclosure Statement, the Sale Documents, or related agreements, instruments or other documents, and (v) the restructuring of Claims or Interests prior to or during the Chapter 11 Cases, (vi) the purchase, sale, or rescission of the purchase or sale of any Claim or Interest of the Debtors or the Liquidating Debtors, and/or (vii) the Confirmation or Consummation of this Plan or the solicitation of votes on this Plan that such Debtor Releasing Party would have been legally entitled to assert (whether individually or collectively) or that any Holder of a Claim or Interest or other Entity would have been legally entitled to assert for, or on behalf or in the name of, any Debtor, its respective Estate or any Liquidating Debtor (whether directly or derivatively) against any of the Released Parties; *provided*, *however*, that the foregoing provisions of this Debtor Release shall not operate to waive, release or otherwise impair: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction and/or (ii) the rights of such Debtor Releasing Party to enforce this Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or assumed under this Plan or assumed under Final Order of the Bankruptcy Court.

The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities released under this Debtor Release. Notwithstanding the foregoing, nothing in this <u>Section VIII.C</u> shall or shall be deemed to prohibit the Debtors or the Liquidating Debtors from asserting and enforcing any claims, obligations, suits, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors or the Liquidating Debtors, unless otherwise expressly provided for in this Plan.

Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release set forth in this <u>Section VIII.C</u>, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtors and their Estates; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing.

### 2. Release by Third Parties

Except as otherwise expressly provided in this Plan, effective as of the Effective Date, to the fullest extent permitted by applicable law, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, and without limiting or otherwise modifying the scope of the Debtor Release provided by the Debtor Releasing Parties above, each Non-Debtor Releasing Party (together with the Debtor Releasing Parties, the "Releasing Parties") will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full discharge, waiver and release to each of the Released Parties (and each such Released Party so released shall be deemed forever released, waived and discharged by the Non-Debtor Releasing Parties) (the "Third Party Release") from any and all Claims, Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of (i) the Debtors, the Chapter 11 Cases, the marketing of any of the Debtors' assets, the Disclosure Statement, the Plan, and the Sale Order, (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (iii) the business or contractual arrangements between any Debtor and any Released Parties, (iv) the negotiation, formulation, or preparation of the Plan, the Disclosure Statement, the Sale Documents, or related agreements, instruments or other documents, (v) the restructuring of Claims or Interests prior to or during the Chapter 11 Cases, (vi) the purchase, sale, or rescission of the purchase or sale of any Claim or Interest of the Debtors or the Liquidating Debtors, and/or (vii) the Confirmation or Consummation of the Plan that such Non-Debtor Releasing Party would have been legally entitled to assert (whether individually or collectively) against any of the Released Parties; *provided, however*, that the foregoing provisions of this Third Party Release shall not operate to waive, release or otherwise impair: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; (ii) any of the indebtedness and obligations of the Debtors and/or the Liquidating Debtors incurred under the Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with the Plan or assumed under the Plan or assumed under Final Order of the Bankruptcy Court; (iii) the rights of such Non-Debtor Releasing Party to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with the Plan or assumed under the Plan or assumed under Final Order of the Bankruptcy Court; and/or (iv) any objections with respect to any Professional's final fee application or Professional Claims in these Chapter 11 Cases.

The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity,

whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities released under this Third Party Release.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Third Party Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Third Party Release is: (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the Claims released by the Third Party Release; (iii) in the best interest of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable and reasonable; and (v) given and made after due notice and opportunity for hearing.

### D.    Waiver of Statutory Limitations on Releases

Each of the Releasing Parties in each of the releases contained above expressly acknowledges that although ordinarily a general release may not extend to Claims which the Releasing Party does not know or suspect to exist in its favor, which if known by it may have materially affected its settlement with the party released, they have carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or claims. Without limiting the generality of the foregoing, each Releasing Party expressly waives any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to claims which the claimant does not know or suspect to exist in its favor at the time of providing the release, which if known by it may have materially affected its settlement with the Released Party. The releases contained in this Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen.

### E.    Exculpation

Effective as of the Effective Date, the Exculpated Parties shall neither have nor incur any liability to any Entity for any claims or Causes of Action arising prior to or on the Effective Date for any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming, or effecting the Confirmation or Consummation of this Plan, the Disclosure Statement, the Sale Documents or any contract, instrument, release or other agreement or document created or entered into in connection with this Plan or any other post-petition act taken or omitted to be taken in connection with the restructuring of the Debtors, the approval of the Sale, the Disclosure Statement or Confirmation or Consummation of this Plan; *provided*, *however*, that the foregoing provisions of this exculpation shall not operate to waive, release or otherwise impair: (i) any Causes of Action expressly set forth in and preserved by this Plan or the Plan Supplement; (ii) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; (iii) any of the indebtedness or obligations of the Debtors and/or the Liquidating Debtors incurred under this Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with the Plan or assumed

41

under this Plan or assumed under Final Order of the Bankruptcy Court, (iv) the rights of any Entity to enforce this Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or assumed under this Plan or assumed under Final Order of the Bankruptcy Court; and/or (v) any objections with respect to any Retained Professional's final fee application or Accrued Professional Compensation Claims in these Chapter 11 Cases; *provided*, *further*, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties under, or in connection with, the above-referenced documents, actions or inactions.

The foregoing exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person. Notwithstanding the foregoing, nothing in this <u>Section VIII.E</u> shall or shall be deemed to prohibit the Debtors or the Liquidating Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors or the Liquidating Debtors, in each case unless otherwise expressly provided for in this Plan.

F.    **Injunction**

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN OR THE CONFIRMATION ORDER, FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS AND ENTITIES ARE, TO THE FULLEST EXTENT PROVIDED UNDER SECTION 524 AND OTHER APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE, PERMANENTLY ENJOINED FROM (I) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY SUIT, ACTION OR OTHER PROCEEDING; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE, OR ORDER; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE; (IV) ASSERTING A SETOFF OR RIGHT OF SUBROGATION OF ANY KIND; OR (V) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, IN EACH CASE ON ACCOUNT OF OR WITH RESPECT TO ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST, OR REMEDY RELEASED OR TO BE RELEASED, SETTLED OR TO BE SETTLED OR DISCHARGED OR TO BE DISCHARGED UNDER THIS PLAN OR THE CONFIRMATION ORDER AGAINST ANY PERSON OR ENTITY SO RELEASED OR DISCHARGED (OR THE PROPERTY OR ESTATE OF ANY PERSON OR ENTITY SO RELEASED, DISCHARGED). ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASES UNDER SECTION 105 OR SECTION 362 OF THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE, SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE.

### G. Binding Nature of the Plan

ON THE EFFECTIVE DATE, AND EFFECTIVE AS OF THE EFFECTIVE DATE, THIS PLAN SHALL BIND, AND SHALL BE DEEMED BINDING UPON, THE DEBTORS, THE LIQUIDATING DEBTORS, ANY AND ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS, ALL PERSONS AND ENTITIES THAT ARE PARTIES TO OR ARE SUBJECT TO THE SETTLEMENTS, COMPROMISES, RELEASES, DISCHARGES, AND INJUNCTIONS DESCRIBED IN THIS PLAN, EACH PERSON ACQUIRING PROPERTY UNDER THIS PLAN, ANY AND ALL NON-DEBTOR PARTIES TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES WITH THE DEBTORS AND THE RESPECTIVE SUCCESSORS AND ASSIGNS OF EACH OF THE FOREGOING, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, AND NOTWITHSTANDING WHETHER OR NOT SUCH PERSON OR ENTITY (I) WILL RECEIVE OR RETAIN ANY PROPERTY, OR INTEREST IN PROPERTY, UNDER THIS PLAN, OR (II) HAS FILED A PROOF OF CLAIM OR INTEREST IN THE CHAPTER 11 CASES.

NOTWITHSTANDING ANY PROVISION OF THE PLAN, NOTHING IN THE PLAN IS INTENDED TO BE OR SHALL BE DEEMED TO BE A RELEASE, EXONERATION, OR INJUNCTION PROHIBITING PROSECUTION OF ANY CLAIM OR CAUSE OF ACTION OR DAMAGE OR ATTORNEY'S FEES AVAILABLE TO SETH KRETZER IN HIS CAPACITY AS RECEIVER, APPOINTED BY ANY STATE OR FEDERAL COURT, AND HIS SUCCESSORS AND ASSIGNS, OR PRINCETON CAPITAL CORPORATION, AND ITS SUCCESSORS AND ASSIGNS, AGAINST:

1. **Natin Paul and any individual related to him by blood, adoption, formal or informal marriage or any other relationship, including his parents and siblings, or any friend or associate;**

2. **Any company or partnership, currently or formerly, directly or indirectly, owned or controlled or managed by Natin Paul that is not a Debtor in these Chapter 11 Cases, created or incorporated at any time, regardless of any such company's or partnership's affiliation with any Debtor and including any such company's or partnership's successors and assigns;**

3. **Any alleged trustee of any alleged trust created or settled at any time by Natin Paul or any Person related to him by blood, adoption, formal or informal marriage or any other relationship, including his parents and siblings, or any friend or associate, or an attorney or agent for any of them, or a corporate or partnership entity in which any of them own an interest or control or management, and including any such individual's or company's or partnership's successors and assigns;**

4. **Any alleged trustee of any alleged trust created or settled at any time in which a trustee is alleged to be Natin Paul or any Person related to him by blood, adoption, formal or informal marriage or any other relationship, including his parents or siblings, or any friend or associate, or an attorney or agent for any**

of them, or a corporate or partnership entity in which any of them own an interest or control or management, and including any such individual's or company's or partnership's successors and assigns

5. Any alleged trustee of any alleged trust created or settled at any time in which a beneficiary is alleged to be Natin Paul or any Person related to him by blood, adoption, formal or informal marriage or any other relationship, including his parents, siblings and children, or any friend or associate, or an attorney or agent for any of them, or a corporate or partnership entity in which any of them own an interest or control or management, and including any such individual's or company's or partnership's successors and assigns;

6. Robert R. Burford, Brent Perry, M. Kevin Powers, Zachary Carlson and Burford Perry, LLP, for any claims for recovery of money by Mr. Kretzer, Receiver, in cause number 2021-77945, in the 133rd District Court, Harris County, Texas, or in any other federal or state court action, or in any arbitration proceeding; and

7. Any other Person, individual, trust, trustee, company, partnership or entity not expressly released by name pursuant to this Plan.

H.    Protections Against Discriminatory Treatment

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Debtors or Purchaser, as applicable, or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Debtors, the Purchaser, or another Entity with whom the Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

I.    Reimbursement or Contribution

If the Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (1) such Claim has been adjudicated as non-contingent; or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

**ARTICLE IX**
**CONDITIONS PRECEDENT TO CONFIRMATION**
**AND CONSUMMATION OF THIS PLAN**

A.      **Conditions Precedent to the Effective Date**

The following shall be conditions precedent to the Effective Date (collectively, the "Conditions Precedent"):

1.      The Court shall have entered the Confirmation Order, which shall be a Final Order or not subject to a stay pending appeal, and shall:

(a)      authorize the Debtors to take all actions necessary to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the this Plan;

(b)      decree that the provisions of the Confirmation Order and this Plan are non-severable and mutually dependent;

(c)      authorize the Debtors, as applicable/necessary, to: (i) implement the Sale; (ii) make all distributions and issuances as required under this Plan; and (iii) enter into any agreements, transactions, and sales of property as set forth in this Plan and Plan Supplement;

(d)      authorize the implementation of this Plan in accordance with its terms;

(e)      provide that, pursuant to section 1146 of the Bankruptcy Code, the assignment or surrender of any lease or sublease, and the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with this Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of assets contemplated under this Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax; and

(f)      authorize the payment into the Professional Claim Reserve Account, on or prior to the Effective Date, of the Professional Claim Reserve Amount, all in accordance with the terms of each Professional's engagement letter and subject to a hearing on final fee applications, as necessary.

2.      The Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate this Plan.

3. The final versions of the Plan Supplement and all of the schedules, documents, annexes, and exhibits contained therein shall have been Filed in a manner consistent in all material respects with this Plan in form and substance reasonably acceptable to the Debtors.

4. The Plan Supplement documents shall have been executed by the applicable parties thereto and all conditions precedent to the effectiveness of the applicable Plan Supplement documents shall have been satisfied or waived in accordance with the terms of such Plan Supplement documents.

5. All conditions to Closing the Sale set forth in the APA shall have been satisfied; *provided* that Closing shall not occur until a date to be determined following Confirmation.

6. The APA shall have been executed and remain in full force and effect.

7. All reasonable and documented Allowed Professional Claims shall have been paid in full in Cash.

8. The Debtors shall have implemented the Sale in a manner consistent with this Plan.

**B.     Waiver of Conditions**

The Debtors may waive any one or more of the Conditions Precedent to the Effective Date, without notice, leave, or order of the Court or any formal action other than proceeding to confirm or consummate the Plan.

**C.     Effect of Failure of Conditions**

If Consummation does not occur, this Plan shall be null and void in all respects and nothing contained in this Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by the Debtors, or Claims against, or Interests in, the Debtors; (2) prejudice in any manner the rights of the Debtors, any Holders of Claims or Interests, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders of Claims or Interests, or any other Entity.

**D.     Substantial Consummation**

"Substantial Consummation" of this Plan, as defined in section 1101(2) of the Bankruptcy Code, shall be deemed to occur on the Effective Date.

46

## ARTICLE X
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THIS PLAN

### A.    Modification and Amendments

Except as otherwise specifically provided in this Plan, the Debtors reserve the right to modify this Plan whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Subject to those restrictions on modifications set forth in this Plan and the requirements of section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, each of the Debtors expressly reserves its respective rights to revoke or withdraw, or to alter, amend, or modify this Plan with respect to such Debtor, one or more times, after Confirmation, and, to the extent necessary may initiate proceedings in the Court to so alter, amend, or modify this Plan, or remedy any defect or omission, or reconcile any inconsistencies in this Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of this Plan.

### B.    Effect of Confirmation on Modifications

Entry of the Confirmation Order shall mean that all modifications or amendments to this Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

### C.    Revocation or Withdrawal of Plan

The Debtors reserve the right to revoke or withdraw this Plan prior to the Confirmation Date and to File subsequent plans of reorganization.  If the Debtors revoke or withdraw this Plan, or if Confirmation or Consummation does not occur, then:  (1) this Plan shall be null and void in all respects; (2) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts and/or Unexpired Leases effected under this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void; and (3) nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of such Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other Entity.

## ARTICLE XI
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Court shall retain jurisdiction over all matters arising out of, or relating to, the Chapter 11 Cases and this Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

A.    allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any

request for payment of any Administrative Expense Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

B.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or this Plan;

C.      resolve any matters related to: (1) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cures pursuant to section 365 of the Bankruptcy Code; (2) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed and assigned; (3) the Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Section V hereof, any Executory Contracts to the list of Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (4) any dispute regarding whether a contract is or was executory or expired;

D.      ensure that distributions to Holders of Allowed Claims and Allowed Interests (as applicable) are accomplished pursuant to the provisions of this Plan;

E.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

F.      adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

G.      enter and implement such orders as may be necessary to execute, implement, or consummate the provisions of this Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with this Plan or the Disclosure Statement, except to the extent that a Plan Supplement document provides for exclusive jurisdiction and venue in another forum;

H.      enter and enforce any order for the sale of property pursuant to sections 1123, or 1146(a) of the Bankruptcy Code;

I.      resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of this Plan or any Entity's obligations incurred in connection with this Plan;

J.      issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Entity with Consummation or enforcement of this Plan;

K.      resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, exculpations, and other provisions contained in Section VIII hereof and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

L.      resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to <u>Section VI.K</u> hereof;

M.      enter and implement such orders as are necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

N.      determine any other matters that may arise in connection with or relate to this Plan, the Plan Supplement, the Disclosure Statement, the Sale Order, if applicable, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with this Plan or the Disclosure Statement, except to the extent that any Plan Supplement document provides for exclusive jurisdiction and venue in another forum;

O.      enter an order concluding or closing the Chapter 11 Cases;

P.      adjudicate any and all disputes arising from or relating to distributions under this Plan;

Q.      consider any modifications of this Plan, to cure any defect or omission, or to reconcile any inconsistency in any Court order, including the Confirmation Order;

R.      determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

S.      hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with this Plan, except to the extent that any Plan Supplement document provide for exclusive jurisdiction and venue in another forum;

T.      hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

U.      hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions, and releases granted in this Plan, including under <u>Section VIII</u> hereof;

V.      enforce all orders previously entered by the Court; and

W.      hear any other matter not inconsistent with the Bankruptcy Code.

**As of the Effective Date and notwithstanding anything in this <u>Section XI</u> to the contrary, the APA, and any other documents related thereto, shall be governed by the jurisdictional provisions therein, and the Court shall not retain jurisdiction with respect thereto.**

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

### A.     Immediate Binding Effect

Subject to <u>Section IX.A</u> hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of this Plan (including, the documents and instruments contained in the Plan Supplement) shall be immediately effective and enforceable and deemed binding upon the Debtors, any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted this Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in this Plan, each Entity acquiring property under this Plan, and any and all non-Debtor parties to Executory Contracts or Unexpired Leases with the Debtors.

### B.     Additional Documents

On or before the Effective Date, the Debtors may File with the Court such agreements and other documents as may be necessary to effectuate and further evidence the terms and conditions of this Plan.  The Debtors, all Holders of Claims or Interests receiving Plan Distributions pursuant to this Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

### C.     Payment of Statutory Fees

All fees payable to the U.S. Trustee under 28 U.S.C. § 1930(a)(6) (including interest under 31 U.S.C. § 3717) as of the Confirmation Date will be paid on the Effective Date or as soon as reasonably practicable thereafter.  Notwithstanding anything to the contrary in the Plan, such fees are not subject to an allowance procedure under 11 U.S.C. § 503(b), nor is the U.S. Trustee required to file a request for payment of such fees.

Following confirmation, the Debtors shall pay quarterly fees to the U.S. Trustee  to the extent, and in the amounts, required by 28 U.S.C. § 1930(a)(6) (including interest under 31 U.S.C. § 3717).  Quarterly fees shall be payable for any case that is reopened.  So long as the Debtors or are required to make these payments, the Debtors shall file with the Court quarterly reports in the form specified by the U.S. Trustee for that purpose.

### D.     Reservation of Rights

Except as expressly set forth in this Plan, this Plan shall have no force or effect unless the Court shall enter the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the Filing of this Plan, any statement or provision contained in this Plan, or the taking of any action by any Debtor with respect to this Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

E.     **Successors and Assigns**

The rights, benefits, and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, manager, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

F.     **Notices**

All notices , requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

| Debtors | Counsel to the Debtors |
|---|---|
| GVS Texas Holdings I, LLC<br>1085 Old Clemson Highway, Ste E<br>Box No. 205<br>Seneca, SC 29672<br>Attention: Robert Albergotti | Sidley Austin LLP<br>2021 McKinney Avenue, Ste. 2000<br>Dallas, TX 75201<br>Attention: Thomas R. Califano and Charles Persons |
| **U.S. Trustee** | |
| Office of the United States Trustee<br>Earle Cabell Federal Building<br>1100 Commerce Street, Rm. 976<br>Dallas, TX 75242<br>Attention: Lisa Lambert, Elizabeth Young, and Asher Bublick | |

After the Effective Date, the Debtors have the authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

G.     **Term of Injunctions or Stays**

Unless otherwise provided in this Plan or in the Confirmation Order, all injunctions or stays in effect in these Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in this Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

### H. Entire Agreement

Except as otherwise indicated, this Plan (including, the documents and instruments in the Plan Supplement) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

### I. Exhibits and Annexes

All exhibits, annexes, and documents attached hereto or included in the Plan Supplement are incorporated into and are a part of this Plan as if set forth in full in this Plan. After the exhibits, annexes, and documents are Filed, copies of such exhibits, annexes, and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits, annexes, and documents from the Debtors' restructuring website at https://cases.omniagentsolutions.com/gvs or the Court's website at www.txnb.uscourts.gov. To the extent any exhibit, annex, or document is inconsistent with the terms of this Plan, unless otherwise ordered by the Court or otherwise specifically provided for in such exhibit, annex, or document, the non-exhibit, non-annex, or non-document portion of this Plan shall control.

### J. Non-severability of Plan Provisions

If prior to Confirmation, any term or provision of this Plan is held by the Court to be invalid, void, or unenforceable, the Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to this Plan and may not be deleted or modified without the Debtors' consent; and (3) non-severable and mutually dependent.

### K. Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Texas, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of this Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with this Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters; *provided*, *however*, that corporate governance matters relating to the Debtors not incorporated in Texas shall be governed by the laws of the state of incorporation or formation of the relevant Debtor.

**L.      Waiver or Estoppel**

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in this Plan, the Disclosure Statement, or papers Filed with the Court prior to the Confirmation Date.

*[Remainder of Page Intentionally Left Blank]*

Dated: February 1, 2022                    Respectfully submitted,
       Dallas, Texas

**SIDLEY AUSTIN LLP**

*/s/ Thomas R. Califano*
SIDLEY AUSTIN LLP
Thomas R. Califano (10369867)
Charles M. Persons (24060413)
Maegan Quejada (24105999)
Jeri Leigh Miller (24102176)
Juliana L. Hoffman (24106103)
2021 McKinney Ave
Suite 2100
Dallas, Texas 75201
Telephone: (214) 981-3300
Facsimile: (214) 981-3400

*Counsel for the Debtors and*
*Debtors in Possession*