## Exhibit A

**Fidelity's Resignation Letter**

010-9449-8743/2/AMERICAS

# Fidelity National Title
**INSURANCE COMPANY**

485 Lexington Avenue, 18th Floor • New York, New York 10017 • (212) 481-5858 • Fax: (212) 481-5996

September 22, 2022

Exchange Equity Parties as set forth in the Escrow Agreement (defined below)
Attn. Natin Paul
814 Lavaca Street
Austin, Texas, 78701
npaul@world-class.com

Sellers in BK (as defined in the Escrow Agreement)
c/o Robert Albergotti
1085 Old Clemson Highway, Suite E
Box No. 114
Seneca, SC 29672
albergottib@gmail.com

RE:    Escrow Agreement dated March 22, 2022 ("Escrow Agreement") between Fidelity National Title
Insurance Company ("Escrow Agent"), Exchange Equity Parties (as defined in the Escrow Agreement
attached hereto) and Sellers in BK (also defined in the Escrow Agreement)

To all under the Escrow Agreement:

Pursuant to the terms of Section 2.4 of the Escrow Agreement, Escrow Agent elects to tender notice of
its resignation as Escrow Agent effective as of October 23, 2022. We will not be distributing any funds
pursuant to current or future requests. We maintain the right to enforce any further provisions
necessary under such Escrow Agreement.

Any further communications regarding this matter should be directed to Gregory Brewer at
gregory.brewer@fnf.com or he can be reached by phone at 972-812-6439.

FIDELITY NATIONAL TITLE INSURANCE COMPANY

BY: _____
NAME:  Larry Boes
TITLE:  SVP

# Fidelity National Title

## INSURANCE COMPANY

485 Lexington Avenue, 18th Floor• New York, New York 10017 • (212) 481-5858 • Fax: (212) 481-5996

Cc:    Travis County Exchange Corporation
2004  Lakeshore Drive
Austin, Texas 78746
cdunagan@dunaganchilds.com

Sidley Austin LLP
2021 McKinney Ave.
Suite 2000
Dallas, TX 75201
Tom.califano@sidley.com
cpersons@sidley.com
sduran@sidley.com

jeffrey.rothleder@squirepb.com
Judith.ross@judithwross.com

Gregory.brewer@fnf.com

Escrow or Title No. <u>58349-NATL</u>
Project reference:

March 22, 2022

Fidelity National Title Insurance Company
865 Merrick Avenue, Suite 500S
Westbury, New York 11590
Attn: Mary McDonough

  This Escrow Agreement (this "<u>**Escrow Agreement**</u>") is entered into effective as of March 22, 2022 by and among Fidelity National Title Insurance Company (the "<u>**Escrow Agent**</u>"), Natin Paul and World Class Holdings I, LLC ("<u>**Exchange Equity Parties**</u>") and GVS Portfolio I C, LLC, GVS Portfolio I B, LLC, GVS Portfolio I, LLC, GVS Texas Holdings I, LLC, GVS Texas Holdings II, LLC, WC Mississippi Storage Portfolio I, LLC, GVS Nevada Holdings I, LLC, GVS Ohio Holdings I, LLC, GVS Ohio Holdings II, LLC, GVS Missouri Holdings I, LLC, GVS New York Holdings I, LLC, GVS Indiana Holdings I, LLC, GVS Tennessee Holdings I, LLC, GVS Illinois Holdings I, LLC and GVS Colorado Holdings I, LLC ("<u>**Sellers in BK**</u>"). The Escrow Agent, Exchange Equity Partners and Seller in BK, are sometimes separately referred to as a "<u>**Party**</u>" and collectively are referred to as the "<u>**Parties**</u>"). Capitalized terms used but not defined herein shall have the meanings assigned to them in the Agreed Order (as defined below).

  **WHEREAS**, that certain Asset Purchase Agreement (the "<u>**Purchase Agreement**</u>"), dated January 18, 2022, was entered into by and among CBRE WWG Storage Partners JV III, LLC, a Delaware limited liability company ("**Purchaser**") and GVS Portfolio I C, LLC, a Delaware limited liability company ("**Seller**") and each of the entities listed on Exhibit A as signatory thereto.

  **WHEREAS**, Exchange Equity Parties and Sellers in BK have entered into that certain Stipulation and Agreed Order with World Class Holdings I, LLC dated March 15, 2022 (as amended by the Order (I) Confirming the Fourth Amended Joint Plan of Reorganization of GVS Texas Holdings I, LLC and its Debtor Affiliates and (II) Granting Related Relief, the "**Agreed Order**") , pursuant to which the Parties agreed to establish an escrow under this Escrow Agreement to hold the Disputed Claim Reserve Funds $32,190,394.66 for the 120-day claims resolution period referenced therein (subject to extension as provided in the Agreed Order), and the Exchange Equity Parties and the Sellers in BK have agreed to deposit funds into an escrow held by the Escrow Agent from the proceeds payable to the Sellers in BK by Purchaser under the Purchase Agreement, with such funds to be held and disbursed by the Escrow Agent in accordance with the terms and conditions of this Escrow Agreement.

  **NOW, THEREFORE**, in consideration of the premises herein, the Parties agree as follows:

**I. Terms and Conditions**

  1.1. <u>Appointment of and Acceptance by Escrow Agent</u>. The Parties hereby appoint the Escrow Agent to serve as escrow agent for the purposes set forth herein, and the Escrow Agent hereby accepts such appointment and agrees to perform its duties as provided herein subject to the protections afforded herein including but not limited to the provisions of Section II herein.

  1.2. <u>Establishment of Escrow.</u>

a. On the Closing Date, Exchange Equity Parties and Sellers in BK will cause the Sellers in BK to deposit (or cause to be deposited through direction of funds received by the Sellers in BK from the Purchaser pursuant to the Purchaser Agreement) with the Escrow Agent $32,190,394.66 (the "**Disputed Claim Reserve Fund**" also herein called Escrow Amount, the "**Escrow Amount**") into a separate and distinct deposit account maintained by the Escrow Agent (the "**Escrow Account**"), pursuant to the hold back or wire instructions provided by the Escrow Agent.

b. The Escrow Agent shall hold the Escrow Amount in a separate and distinct, interest-bearing demand deposit account, together with any dividends, interest, distributions and other income received in respect thereof. No investment of the Escrow Amounts will be permitted during the term of this Agreement, and the Escrow Funds (defined below) shall at all times remain available for distribution in accordance with Section 1.3 below. The Escrow Agent shall promptly acknowledge receipt of the Escrow Amount in this Section 1.2(a)-(b) by providing notice to both the Exchange Equity Parties and Sellers in BK at the email addresses set forth in Section 3.1 as soon as reasonably practicable following receipt thereof.

1.3.    Disbursements of the Escrow Funds. The Escrow Agent shall only disburse from the Escrow Accounts as follows:

a. Upon receipt of a joint written instruction substantially in the form attached hereto as **Exhibit B** (which may not be altered as to the payment instructions to Exchange Equity Parties as set forth in the attached **Exhibit B** unless pursuant to an Order) (a "**Joint Written Instruction**") with respect to the Escrow Amount that shall be required to be delivered by the Parties to the Escrow Agent in accordance with the terms of the Agreed Order, the Escrow Agent shall promptly after receipt of a Joint Written Instruction (and in any event, within two Business Days), disburse all or part of the Escrow Amount (together with any dividends, interest, distributions and other income received in respect thereof), collectively with the applicable Escrow Amount, the "**Escrow Funds**")), as applicable, in accordance with such Joint Written Instruction in the form attached hereto as **Exhibit B** (which may not be altered as to the payment instructions to Exchange Equity Parties as set forth therein unless pursuant to an Order), by transfer of immediately available funds to the account specified in the Joint Written Instruction, with any funds to Exchange Equity Parties to be paid to Travis County Exchange Corporation (the "QI") as qualified intermediary for the Exchange Equity Parties if so instructed that any funds so escrowed are to be released to Exchange Equity Parties; and/or

b. In the event that the Escrow Agent receives a copy or notice of any award or order from the Bankruptcy Court and the written payment instruction to effectuate such award or order ("**Order**"), the Escrow Agent shall promptly disburse all or part of the applicable Escrow Funds in accordance with such Order, with any funds directed pursuant to the Order to be disbursed to the Exchange Equity Parties to be paid to the QI as noted in **Exhibit B.**

c. Any instructions setting forth, claiming, containing, objecting to, or in any way related to the transfer or distribution of any funds on deposit in the Escrow Accounts under the terms of this Agreement must be in writing, executed by Party or Parties as evidenced by the signatures of the person or persons set forth on **Exhibit A-1** and **Exhibit A-2** (the "**Authorized Representatives**") and delivered to the Escrow Agent attached to an e-mail received on a

Business Day to an e-mail address set forth in <u>Section 3.1</u> (and receipt by the Escrow Agent acknowledged) below. In the event a Joint Written Instruction or Order is delivered to the Escrow Agent, the Escrow Agent is authorized to seek confirmation of such instruction by telephone call back to the Authorized Representatives, and the Escrow Agent may rely upon the confirmations of anyone purporting to be an Authorized Representative. If the Escrow Agent is unable to verify the instructions, or is not satisfied with the verification it receives, it will not execute the instruction until all such issues have been resolved. The persons and telephone numbers for call backs may be changed only in writing, executed by an Authorized Representative of the applicable Party and actually received and acknowledged by the Escrow Agent.

## II. Provisions as to the Escrow Agent

2.1     <u>Limited Duties of Escrow Agent</u>. Escrow Agent undertakes to perform only such duties as are expressly set forth in this Escrow Agreement. Escrow Agent is not a party to, and is not bound by, or charged with notice of any agreement out of which this escrow may arise, other than the terms and provisions of this Escrow Agreement.

2.2     <u>Limitations on Liability of Escrow Agent</u>.

a.  Escrow Agent is acting solely as a stakeholder and depository as an accommodation to Exchange Equity Parties and the Seller, and is not responsible or liable for any loss arising out of Escrow Agent's conduct hereunder, except in the case of Escrow Agent's fraud, willful misconduct or gross negligence. Escrow Agent shall not be responsible or liable for the sufficiency, correctness, genuineness, or validity of the subject matter of this Escrow Agreement, or for the identity or authority of any person executing any documents or instruments in connection herewith.

b.  The Escrow Agent shall be entitled to act or rely upon, and the Escrow Agent shall be protected in acting or relying upon the genuineness and validity of any written notice, request, waiver, consent, certificate, receipt, authorization, power of attorney or other document the Escrow Agent shall receive from any Party hereto.

c.  Escrow Agent shall not be liable or responsible for any failure, refusal or inability of Citibank, N.A. to pay the Deposit at Escrow Agent's direction (it being understood that the Escrow Agent shall use commercially reasonable efforts which are consistent with accepted practices in the banking industry to perform its obligations hereunder), or for levies by taxing authorities based upon the taxpayer identification number used to establish this money market account. Escrow Agent shall not be responsible for any interest except for such interest as is actually received.

2.3     <u>Indemnification</u>. Exchange Equity Parties and Seller agree to jointly and severally, indemnify, defend and hold harmless the Escrow Agent from and against any loss, cost, claims, damage or expense, including, without limitation, any and all court costs and attorney's fees and expenses (collectively the "<u>Expenses</u>") incurred by Escrow Agent in connection with or in any way arising out of (a) Escrow Agent's performance of this Escrow Agreement, except to the extent that such Expenses are determined by a court of competent jurisdiction to have been caused by fraud, gross negligence or willful misconduct of the Escrow Agent; and (b) Escrow Agent's following, accepting or acting upon any instructions or directions from the Parties, whether joint or singular, received in accordance with this Escrow Agreement. Escrow Agent shall,

with respect to any claim against the Escrow Agent, promptly notify the Exchange Equity Parties or Sellers in BK of any action commenced against the Escrow Agent, promptly after the Escrow Agent shall have received any such written information as to the nature and basis of the claim; provided, however, that failure to provide such notice shall not relieve Exchange Equity Parties and Seller of any indemnification obligation and/or liability hereunder if Exchange Equity Parties and Seller are not actually prejudiced by such failure. In so agreeing to indemnify and hold harmless the Escrow Agent, Exchange Equity Parties or Sellers in BK agree, solely as between themselves, that any indemnity obligations in respect of the Escrow Agent hereunder shall be apportioned 50% to Exchange Equity Parties and 50% to Sellers in BK and that if either Exchange Equity Parties or Sellers in BK pays amounts pursuant to this Section 2.3, it shall have a right of contribution against the other party for reimbursement of such other party's proportionate share thereof in accordance with the allocation set forth in this sentence. The provisions of this section shall survive the termination of this Escrow Agreement and any resignation or removal of the Escrow Agent.

2.4     Resignation; Removal.

a.  The Escrow Agent may resign and be discharged from its duties and obligations at any time under this Escrow Agreement by providing written notice to Exchange Equity Parties or Sellers in BK. Such resignation shall be effective on the date set forth in such written notice, which shall be no earlier than thirty (30) days after such written notice has been furnished. Thereafter, the Escrow Agent shall have no further obligation except to hold the Escrow Funds as depository and cooperate reasonably in the transfer of the Escrow Funds to a successor escrow agent. Exchange Equity Parties or Sellers in BK shall promptly appoint a successor escrow agent. The Escrow Agent shall refrain from taking any action until it shall receive a Joint Written Instruction designating the successor escrow agent. However, in the event no successor escrow agent has been appointed on or prior to the date such resignation is to become effective, the Escrow Agent shall be entitled to tender into the custody of any court of competent jurisdiction all funds, equity and other property then held by the Escrow Agent hereunder and the Escrow Agent shall thereupon be relieved of all further duties and obligations under this Escrow Agreement.

b.  Exchange Equity Parties or Sellers in BK acting together shall have the right to terminate the appointment of the Escrow Agent upon thirty (30) days' joint written notice to the Escrow Agent specifying the date upon which such termination shall take effect. Thereafter, the Escrow Agent shall have no further obligation except to hold the Escrow Funds as depository and cooperate reasonably in the transfer of the Escrow Funds to a successor escrow agent. The Escrow Agent shall refrain from taking any action until it shall receive a Joint Written Instruction designating the successor escrow agent. However, in the event no successor escrow agent has been appointed on or prior to the date such termination is to become effective, the Escrow Agent shall be entitled to tender into the custody of any court of competent jurisdiction all funds, equity and other property then held by the Escrow Agent hereunder and the Escrow Agent shall thereupon be relieved of all further duties and obligations under this Escrow Agreement.

c.  In the case of a resignation or removal of the Escrow Agent, the Escrow Agent shall have no responsibility for the appointment of a successor escrow agent hereunder. The successor escrow agent appointed by Exchange Equity Parties or Sellers in BK shall execute, acknowledge and deliver to the Escrow Agent and the other parties an instrument in writing

accepting its appointment hereunder, and thereafter, the Escrow Agent shall deliver all of the then-remaining balance of the Escrow Funds, less any reasonable and documented fees and expenses then incurred by and unpaid to the Escrow Agent in connection with the performance of its duties hereunder, to such successor escrow agent in accordance with the Joint Written Instruction of Exchange Equity Parties or Sellers in BK and upon receipt of the Escrow Funds, the successor escrow agent shall be bound by all of the provisions of this Escrow Agreement.

**III. Miscellaneous**

3.1.     <u>Notices</u>.    All notices, consents, waivers, and other communications under this Escrow Agreement must be in writing and will be deemed to have been duly given (a) if personally delivered, on the date of delivery, (b) if delivered by express courier service of national standing for next day delivery (with charges prepaid), on the Business Day following the date of delivery to such courier service, (c) if delivered by electronic mail (unless the sender receives an automated message that the email has not been delivered) on the date of transmission if on a Business Day before 5:00 p.m. local time of the business address of the recipient party (otherwise on the next succeeding Business Day) and (d) if deposited in the United States mail, first-class postage prepaid, on the date of delivery, in each case to the appropriate addresses or email addresses set forth below (or to such other addresses or facsimile numbers as a party may designate by notice to the other parties delivered in accordance with this <u>Section 3.1</u>.

**If to the Escrow Agent:**

Fidelity National Title Insurance Company
865 Merrick Avenue, Suite 500S
Westbury, New York 11590
Attn: Mary McDonough
   Email: mary.mcdonough@fnf.com

**If to Exchange Equity Parties:**
Attn: Natin Paul
814 Lavaca Street
Austin, Texas 78701
(512) 327-3300 / Email npaul@world-class.com

**With copy to:**
Travis County Exchange Corporation, a Texas corporation
2004 Lakeshore Drive, Austin, Texas 78746
(512) 328-8263 x 11 Telephone / (512) 328-8265 - Facsimile
cdunagan@dunaganchilds.com

**If to the Sellers in BK:**
c/o Robert Albergotti
1085 Old Clemson Highway, Ste E
Box No. 114
Seneca, SC 29672
Attention: Robert Albergotti
Email: albergottib@gmail.com

with a copy to (which will not constitute notice):

Sidley Austin LLP
2021 McKinney Ave.
Suite 2000
Dallas, TX 75201
Attention: Thomas Califano / Charles Persons / Sara Duran
Email: tom.califano@sidley.com / cpersons@sidley.com / sduran@sidley.com

3.2.    <u>Governing Law.</u>  This Escrow Agreement shall be governed by the internal laws of the State of Texas (including its statute of limitations), without giving effect to any choice or conflict of law principles or rules that would cause the application of the Laws of any other jurisdiction.

3.3.    <u>Submission to Jurisdiction; Consent to Service of Process.</u>

(a)    Without limiting any Party's right to appeal any Order of the Bankruptcy Court, (i) the Bankruptcy Court shall retain exclusive jurisdiction to interpret and/or enforce the terms of this Escrow Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Escrow Agreement, any breach or default hereunder, and (ii) any and all proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the Parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court and shall receive notices at such locations as indicated in <u>Section 3.1</u>; <u>provided</u>, <u>however</u>, that if the Bankruptcy Cases have closed, the Parties agree to irrevocably submit to the exclusive jurisdiction of the Northern District of Texas, Dallas Division over all claims herein, and each Party hereto hereby irrevocably agrees that all such claims may be heard and determined in such courts. The Parties hereto hereby irrevocably and unconditionally waive, to the fullest extent permitted by applicable Law, any objection which they may now or hereafter have to the laying of venue of any such claim brought in such court or any defense of inconvenient forum for the maintenance of such dispute. Each of the Parties hereto agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by Law.

(b)    Each of the Parties hereto hereby consents to process being served by any Party to this Agreement in any claim by the delivery of a copy thereof in accordance with the provisions of <u>Section 3.1</u> (other than by email) along with a notification that service of process is being served in conformance with this <u>Section 3.3(b)</u>. Nothing in this Escrow Agreement will affect the right of any party to serve process in any other manner permitted by Law.

3.4.    <u>Waiver of Jury Trial</u>. EACH PARTY HERETO ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY WHICH MAY ARISE UNDER THIS ESCROW AGREEMENT IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES, AND THEREFORE IT HEREBY IRREVOCABLY AND UNCONDITIONALLY EXPRESSLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY PROCEEDING OR RELATED CLAIM BROUGHT BY OR AGAINST IT, DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS ESCROW AGREEMENT.

3.5.    <u>Termination</u>. This Escrow Agreement shall terminate upon the earlier of (i) distribution by the Escrow Agent in accordance with this Escrow Agreement of all Escrow Funds held under this Escrow Agreement or (ii) delivery to the Escrow Agent of a written notice of termination jointly executed by the Exchange Equity Parties and Sellers in BK.

3.6.    <u>Assignment</u>. Except as otherwise provided herein, the provisions hereof shall inure to the benefit of, and be binding upon, the successors by operation of law and permitted assigns of the Parties hereto. No assignment of this Escrow Agreement or any of the rights, interests or obligations under this Escrow Agreement may be made by any Party hereto at any time, whether or not by operation of law, without the prior written consent of all other Parties hereto, and any attempted assignment without the required consent shall be void.

3.7.    <u>Amendment and Waiver</u>.  This Escrow Agreement may be amended, supplemented or changed, and any provision hereof or thereof can be waived, only by a written instrument making specific reference to this Escrow Agreement, executed by the party against whom enforcement of any such amendment, supplement, modification or waiver is sought. The waiver by any party of a breach of any provision of this Escrow Agreement shall not operate or be construed as a further or continuing waiver of such breach or as a waiver of any other or subsequent breach. No failure on the part of any party to exercise, and no delay in exercising any right, power or remedy hereunder shall operate as a waiver thereof, nor shall a single or partial exercise of such right, power or remedy by such party preclude any other or further exercise thereof or the exercise of any other right, power or remedy.

3.8.    <u>Severability</u>. Whenever possible, each provision of this Escrow Agreement shall be interpreted in such manner as to be effective and valid under applicable Law, but if any term or other provision of this Escrow Agreement is invalid, illegal, or incapable of being enforced by any Law or public policy, all other terms or provisions of this Escrow Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions in connection with this Escrow Agreement are not affected in any manner materially adverse to any Party. Upon such determination that any term or other provision is invalid, illegal, or incapable of being enforced, in whole or in part, such term or provision is hereby deemed modified to give effect to the original written intent of the Parties to the greatest extent consistent with being valid and enforceable under applicable Law.

3.9.    <u>No Third Party Beneficiaries</u>.  Nothing in this Escrow Agreement, express or implied, is intended to confer upon any Person other than the Parties hereto any rights or remedies of any nature whatsoever under or by reason of this Escrow Agreement.

3.10.    <u>Titles and Headings</u>.  All titles and headings in this Escrow Agreement are intended solely for convenience of reference and shall in no way limit or otherwise affect the interpretation of any of the provisions hereof.

3.11.    <u>Counterparts; Electronic Execution</u>.  This Escrow Agreement may be executed in two or more counterparts (any of which may be delivered by electronic transmission), each of which shall constitute an original, and all of which taken together shall constitute one and the same instrument. The exchange of a fully executed Escrow Agreement (in counterparts or otherwise) by electronic transmission in .PDF format, or other agreed format shall be sufficient to bind the parties to the terms and conditions of this Agreement. Minor variations in the form of the signature page, including footers from earlier versions of this Escrow Agreement, shall be disregarded in determining the party's intent or the effectiveness of such signature.

3.12.    <u>Entire Agreement; Conflicts.</u>  This Escrow Agreement, and solely as between Exchange Equity Parties and Sellers in BK, the Agreed Order, contain the entire understanding of the Parties with respect to the subject matter contained in this Escrow Agreement herein. Except for the Agreed Order, this Escrow Agreement supersedes all prior and contemporaneous agreements, arrangements, contracts, discussions, negotiations, undertakings and understandings, whether written or oral, among the parties with respect to such subject matter or any prior course of dealings. As between the **Exchange Equity Parties** and Sellers in BK, in the event of any conflict or inconsistency between the terms of the Agreed Order and the terms of this Escrow Agreement, the terms of the Agreed Order shall govern.

3.13.    <u>Rights Cumulative</u>. All rights and remedies of each of the Parties under this Escrow Agreement will be cumulative, and the exercise of one or more rights or remedies will not preclude the exercise of any other right or remedy available under this Escrow Agreement or applicable Law.

3.14.    <u>Further Assurances</u>. If at any time the Escrow Agent shall determine or be advised that any further agreements, assurances or other documents are reasonably necessary or desirable to carry out the provisions of this Escrow Agreement and the transactions contemplated by this Escrow Agreement, the Parties shall execute and deliver any and all such agreements or other documents and do all things reasonably necessary or appropriate to carry out fully the provisions of this Escrow Agreement.

3.15.    <u>Tax Matters</u>.

(a)    To the extent that any interest and other income is earned by the Escrow Amounts, such interest and other income shall be allocated to Exchange Equity Parties. Exchange Equity Parties shall be responsible for and the taxpayer on all taxes due on the income earned, if any, on the Escrow Funds for the calendar year in which such income is earned. The Escrow Agent shall report any income earned on the Escrow Funds, if any, to the IRS or other taxing authority on IRS Form 1099 in respect of U.S. residents. Prior to the date hereof, Exchange Equity Parties shall provide the Escrow Agent with certified tax identification numbers by furnishing appropriate forms W-9 or W-8 as applicable and such other forms and documents that the Escrow Agent may request.

(b)    The Escrow Agent shall be responsible only for income reporting to the Internal Revenue Service with respect to income earned on the Escrow Funds by U.S. residents. Other than in connection with any required withholding or information reporting, the Exchange Equity Parties and Sellers in BK acknowledge and agree that the Escrow Agent shall have no responsibility for the preparation and/or filing of any tax return or withholding with respect to the Escrow Amounts or any income earned by the Escrow Amounts.

(c)    The Escrow Agent, its affiliates, and its employees are not in the business of providing tax or legal advice to any taxpayer.  This Escrow Agreement and any amendments or attachments hereto are not intended or written to be used, and may not be used or relied upon, by any such taxpayer or for the purpose of avoiding tax penalties.  Any such taxpayer should seek advice based on the taxpayer's particular circumstances from an independent tax advisor.

*[Signature Pages Follows]*

**IN WITNESS WHEREOF,** the Parties have executed this Agreement as of the date set forth above.

Exchange Equity Parties:

_____

Natin Paul

World Class Holdings I, LLC

By: _____

Name:_Natin Paul_____

Title: Authorized Agent_____

SELLERS IN BK:

GVS Portfolio I C, LLC

By: _____

GVS Portfolio I B, LLC

By: _____

GVS Portfolio I, LLC
By: _____

GVS Texas Holdings I, LLC
By: _____

GVS Texas Holdings  II, LLC

By: _____

WC Mississippi Storage Portfolio I, LLC

By: _____

GVS Nevada Holdings I, LLC

By: _____

*Signature Page to Escrow Agreement*

DocuSign Envelope ID: 03108926-7F44-4D12-BB57-8CED8FCEFA9D

**IN WITNESS WHEREOF,** the Parties have executed this Agreement as of the date set forth above.

**SELLERS IN BK:**

GVS Portfolio I C, LLC

By: _Stephan Pinsly_
Name: Stephan Pinsly
Title: Authorized Signatory

GVS Portfolio I B, LLC

By: _Stephan Pinsly_
Name: Stephan Pinsly
Title: Authorized Signatory

GVS Portfolio I, LLC

By: _Stephan Pinsly_
Name: Stephan Pinsly
Title: Authorized Signatory

GVS Texas Holdings I, LLC

By: _Stephan Pinsly_
Name: Stephan Pinsly
Title: Authorized Signatory

GVS Texas Holdings II, LLC

By: _Stephan Pinsly_
Name: Stephan Pinsly
Title: Authorized Signatory

WC Mississippi Storage Portfolio I, LLC

By: _Stephan Pinsly_
Name: Stephan Pinsly
Title: Authorized Signatory

*Signature Page to Escrow Agreement*

GVS Nevada Holdings I, LLC

By: *Stephan Pinsly*
Name: Stephan Pinsly
Title: Authorized Signatory

GVS Ohio Holdings I, LLC

By: *Stephan Pinsly*
Name: Stephan Pinsly
Title: Authorized Signatory

GVS Ohio Holdings II, LLC

By: *Stephan Pinsly*
Name: Stephan Pinsly
Title: Authorized Signatory

GVS Missouri Holdings I, LLC

By: *Stephan Pinsly*
Name: Stephan Pinsly
Title: Authorized Signatory

GVS New York Holdings I, LLC

By: *Stephan Pinsly*
Name: Stephan Pinsly
Title: Authorized Signatory

GVS Indiana Holdings I, LLC

By: *Stephan Pinsly*
Name: Stephan Pinsly
Title: Authorized Signatory

GVS, Tennessee Holdings I, LLC

By: *Stephan Pinsly*
Name: Stephan Pinsly
Title: Authorized Signatory

GVS Illinois Holdings I, LLC

By: *Stephan Pinsly*
Name: Stephan Pinsly
Title: Authorized Signatory

*Signature Page to Escrow Agreement*

DocuSign Envelope ID: 03108926-7F44-4D12-BB57-8CED8FCEFA9D

GVS Colorado Holdings I, LLC

By: Stephan Pinsly

Name: Stephan Pinsly

Title: Authorized Signatory

*Signature Page to Escrow Agreement*

Accepted and Agreed to:

**FIDELITY NATIONAL TITLE INSURANCE COMPANY**

By: _____
    Name: Mary R. McDonough
    Title: Assistant Vice President

*Signature Page to Escrow Agreement*

**EXHIBIT A-1**

Certificate as to Exchange Equity Parties' Authorized Signatures

The specimen signatures shown below are the specimen signatures of the individuals who have been designated as authorized representatives of the Exchange Equity Parties and are each authorized to initiate and approve transactions of Exchange Equity Parties types for the escrow account or accounts established under this Agreement, on behalf of the Exchange Equity Parties. The below listed persons have also been designated call back authorized individuals and will be notified by Fidelity National Title Insurance Company upon the release of Escrow Funds from any Escrow Account.

Name / Title / Telephone                    Specimen Signature

Natin Paul
_____          _____
Name                                        Signature

Authorzed Representative
_____
Title

512-529-2222                                512-529-2222
_____          _____
Phone                                       Mobile Phone


_____          _____
Name                                        Signature


_____
Title


_____          _____
Phone                                       Mobile Phone


_____          _____
Name                                        Signature


_____
Title


_____          _____
Telephone                                   Mobile Phone

*Exhibit A-1 to Escrow Agreement*

DocuSign Envelope ID: 03108926-7F44-4D12-BB57-8CED5FCEFA9D

**EXHIBIT A-2**

**Certificate as to the Sellers in BK Authorized Signatures**

The specimen signatures shown below are the specimen signatures of the individuals who have been designated as authorized representatives of the Sellers in BK and are each authorized to initiate and approve transactions of all types for the escrow account or accounts established under this Agreement, on behalf of the Sellers in BK.  The below listed persons have also been designated call back authorized individuals and will be notified by Fidelity National Title Insurance Company upon the release of Escrowed Funds from any Escrow Account.

Name / Title / Telephone                    Specimen Signature

Stephan Pinsly
Name                                         Signature

Chief Executive Officer
Title

(516) 901-4271                               (561) 901-4271
Phone                                        Mobile Phone


Name                                         Signature


Title


Phone                                        Mobile Phone


Name                                         Signature


Title


Telephone                                    Mobile Phone


*Exhibit A-2 to Escrow Agreement*

**EXHIBIT B**
Form of Joint Written Instruction

[Date]

Fidelity National Title Insurance Company
865 Merrick Avenue, Suite 500S
Westbury, New York 11590
Attn: Mary McDonough

RE: Escrow Agreement, dated March 18, 2022 made with Natin Paul and World Class Holdings I, LLC ("**Exchange Equity Parties**") and GVS Portfolio I C, LLC, GVS Portfolio I B, LLC, GVS Portfolio I, LLC, GVS Texas Holdings I, LLC, GVS Texas Holdings II, LLC, WC Mississippi Storage Portfolio I, LLC, GVS Nevada Holdings I, LLC, GVS Ohio Holdings I, LLC, GVS Ohio Holdings II, LLC, GVS Missouri Holdings I, LLC, GVS New York Holdings I, LLC, GVS Indiana Holdings I, LLC, GVS Tennessee Holdings I, LLC, GVS Illinois Holdings I, LLC and GVS Colorado Holdings I, LLC ("**Sellers in BK**") / Escrow Account number: 58349-NATL

Dear Sir/Madam:

We refer to that certain Escrow Agreement, dated March 18, 2022, by and among the above refenced Exchange Equity Parties and Sellers in BK and Fidelity National Title Insurance Company, as Escrow Agent (the "**Escrow Agreement**"). Capitalized terms in this letter that not otherwise defined shall have the same meaning given to them in the Escrow Agreement.

Pursuant to Section 1.3 of the Escrow Agreement, the parties hereto hereby instruct the Escrow Agent to release an amount equal to $ _____ out of the **Escrow Account** to the specified party as instructed below.

*Exhibit B to Escrow Agreement*

| $ [_____] to Sellers in BK: | $ [_____] to Exchange Equity Parties: |
|---|---|
| Wire Instructions: | Wire Instructions: |
| Account Name: _____ | Account Name:   Travis County Exchange Corporation as qualified intermediary for Natin Paul |
| Account Number: _____ | Account Number:   10257122 |
| Bank Name: _____ | Bank Name:   Horizon Bank |
| Bank ABA Number: _____ | Bank ABA Number: 111907940 |
| Bank Address: _____ | Bank Address:   600 Congress Avenue, Suite 400, Austin, Texas 78701 |
| For credit to: _____ | For credit to:   Travis County Exchange Corporation as QI for Natin Paul |
| Special Instructions: _____ | Special Instructions: fbo Natin Paul by TCEC/Accommodation |
| Bank Check: | Bank Check: |
| Payee Name: _____ | Payee Name:   Travis County Exchange Corporation as QI for Natin Paul |
| Mailing Address: _____ | Mailing Address:   2004 Lakeshore Drive, Austin, TX 78746 |

*Exhibit B to Escrow Agreement*

**IN WITNESS WHEREOF**, the parties hereto have caused this Joint Written Direction to be executed as of the date first above written.

**EXCHANGE EQUITY PARTIES:**

_____

**Natin Paul**

World Class Holding I, LLC

By:_____

Name:_____

Title:_____

**SELLERS IN BK:**

GVS Portfolio I C, LLC

By: _____

GVS Portfolio I B, LLC

By: _____

GVS Portfolio I, LLC
By: _____

GVS Texas Holdings I, LLC
By: _____

GVS Texas Holdings  II, LLC

By: _____

WC Mississippi Storage Portfolio I, LLC

By: _____

GVS Nevada Holdings I, LLC

By: _____

GVS Ohio Holdings I, LLC

*Exhibit B to Escrow Agreement*

By: _____

GVS Ohio Holdings II, LLC

By: _____

GVS Missouri Holdings I, LLC

By: _____

GVS New York Holdings I, LLC

By: _____

GVS Indiana Holdings I, LLC

By: _____

GVS Tennessee Holdings I, LLC

By: _____

GVS Illinois Holdings I, LLC

By: _____

GVS Colorado Holdings I, LLC

By: _____

*Exhibit B to Escrow Agreement*

## **<u>Exhibit B</u>**

**Amended Escrow Agreement**

1

## FIRST AMENDMENT TO ESCROW AGREEMENT

This FIRST AMENDMENT TO ESCROW AGREEMENT is made and effective this 6th day of October 2022 by and between NATIN PAUL AND WORLD CLASS HOLDINGS, I, LLC (the "*Exchange Equity Parties*"), GVS PORTFOLIO I, LLC GVS PORTFOLIO I C, LLC, GVS PORTFOLIO I B, LLC, GVS TEXAS HOLDINGS II, LLC, GVS TEXAS HOLDINGS I, LLC, WC MISSISSIPPI STORAGE PORTFOLIO I, LLC, GVS NEVADA HOLDINGS I, LLC, GVS OHIO HOLDINGS I, LLC, GVS OHIO HOLDINGS II, LLC, GVS MISSOURI HOLDINGS I, LLC, GVS NEW YORK HOLDINGS I, LLC, GVS INDIANA HOLDINGS I, LLC, GVS TENNESSEE HOLDINGS I, LLC, GVS ILLINOIS I, LLC AND GVS COLORADO HOLDINGS I, LLC, as Reorganized Debtors (the "*Reorganized Debtors*" or "*Sellers in BK*"), and DELAWARE TRUST COMPANY, as successor and replacement escrow agent to Fidelity National Title Insurance Company (the "*Escrow Agent*").  The Exchange Equity Parties, the Reorganized Debtors and the Escrow Agent are sometimes referred to as a "*Party*" and collectively referred to as the "*Parties*."  Capitalized terms used but not defined herein shall have the meanings ascribed thereto in the Original Escrow Agreement.

WHEREAS, on March 21, 2022, the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "*Bankruptcy Court*") entered the *Order (I) Confirming the Fourth Amended Plan of Reorganization of GVS Texas Holdings I, LLC and its Debtor Affiliates and (II) Granting Related Relief* [Docket No. 873] (the "*Confirmation Order*") whereby the Bankruptcy Court confirmed the *Fourth Amended Plan of Reorganization of GVS Texas Holdings I, LLC and its Debtor Affiliates* [Docket No. 618] (the "*Plan*");

WHEREAS, in connection with the Plan, the Reorganized Debtors sold substantially all of their assets, which sale was approved by the Bankruptcy Court (the "*Asset Sale*");

WHEREAS, the Plan provides, among other things, that the Reorganized Debtors are permitted to enter into such agreement and contracts, including this First Amendment to Escrow Agreement, as are necessary without for approval or authorization from the Bankruptcy Court unless the Plan explicitly provides otherwise;

WHEREAS, on March 22, 2022, the Effective Date of the Plan occurred and the proceeds were distributed in accordance with the Plan including distributions pursuant to and held under that certain *Escrow Agreement* dated as of March 22, 2022, by and between the parties thereto (the "*Original Escrow Agreement*");

WHEREAS, pursuant to the Plan and Confirmation Order, Mr. Robert Albergotti resigned as the sole officer and director of the Sellers in BK and was replaced by Mr. Stephan Pinsly;

WHEREAS, on August 31, 2022, the Bankruptcy Court entered the *Amended Order Granting World Class Holding I, LLC's Motion to Confirm Reinstatement of Natin Paul as Sole Office of the Reorganized Debtors* [Docket No. 1377], a copy of which is attached hereto as Exhibit A, which provides, among other things, that Mr. Natin Paul is appointed, "effective immediately, as the sole officer, director, manager, and Disbursing Agent . . ." for the Sellers in BK and that Mr.

Stephan Pinsly is relieved from his obligations effectively immediately (as evidenced by the attached Actions by Written Consent for each of the Sellers in BK attached hereto as Exhibit B);

WHEREAS, on September 22, 2022, Fidelity National Title Insurance Company (the "*Original Escrow Agent*") provided notice, pursuant to Section 2.4 of the Original Escrow Agreement, that it resigned as Escrow Agent effective as of October 23, 2022 or upon their replacement, whichever occurred first;

WHEREAS, pursuant to Section 2.4.a. of the Original Escrow Agreement, the Sellers in BK and the Exchange Equity Parties have the right to appoint a successor escrow agent upon a resignation;

WHEREAS, pursuant to this First Amendment to Escrow Agreement, the Sellers in BK and the Exchange Equity Parties hereby appoint Delaware Trust Company as successor escrow agent and make such other conforming modifications to the Escrow Agreement.

NOW, THEREFORE, in consideration of the premises herein, the Parties agree as follows:

1.    **Designation of Successor Escrow Agent**.  Pursuant to Section 2.4.a. of the Original Escrow Agreement, the Sellers in BK and the Exchange Equity Parties hereby designate DELAWARE TRUST COMPANY, as the successor escrow agent to Fidelity National Title Insurance Company.  Delaware Trust Company shall succeed to all rights and responsibilities as Escrow Agent, as such are defined in the Original Escrow Agreement, as modified hereby, and by execution of this First Amendment to Escrow Agreement, Delaware Trust Company hereby accepts and acknowledges all such rights and responsibilities.  All references to the Escrow Agent in the Original Escrow Agreement or to the Title Company in any order of the Bankruptcy Court shall hereinafter refer to Delaware Trust Company, solely in its capacity as successor Escrow Agent.

2.    **Amendments to Escrow Agreement**.  The Parties hereby amend the Original Escrow Agreement as follows:

2.1    Section 1.2.b. is deleted in its entirety and replaced with the following:

During the term of this Escrow Agreement, the Escrow Amount shall be invested and reinvested by the Escrow Agent in the investment indicated on Schedule 1 or such other investments as shall be directed in writing by the Parties and as shall be acceptable to the Escrow Agent.  All investment orders involving U.S. Treasury obligations, commercial paper and other direct investments may be executed through broker-dealers selected by the Escrow Agent.  Periodic statements will be provided to the Parties reflecting transactions executed on behalf of the Escrow Amount.  The Parties, upon written request, will receive a statement of transaction details upon completion of any securities transaction in the Escrow Amount without any additional cost.  Should any party hereto opt to receive monthly statements electronically through the Escrow Agent's online service, such party hereby agrees that it shall have no further right under this Escrow Agreement to receive hard copy statements via regular mail.  The Escrow Agent shall have the right to liquidate any

010-9457-9513/2/AMERICAS

investments held in order to provide funds necessary to make required payments under this Escrow Agreement. The Escrow Agent shall have no liability for any loss sustained as a result of any investment in an investment indicated on Schedule 1 or any investment made pursuant to the instructions of the Parties hereto or as a result of any liquidation of any investment prior to its maturity or for the failure of the parties to give the Escrow Agent instructions to invest or reinvest the Escrow Amount. The Escrow Agent may earn compensation in the form of short-term interest ("float") on items like uncashed distribution checks (from the date issued until the date cashed), funds that the Escrow Agent is directed not to invest, deposits awaiting investment direction or received too late to be invested overnight in previously directed investments. The Escrow Agent shall provide notice via email to the Parties at the email addresses set forth in Section 3.1 herein within one (1) business day after receipt of the Escrow Amount from Fidelity National Title Insurance Company, the former Escrow Agent.

2.2     Section 2.2.c is amended to replace Citibank N.A. with US Bank.

The following shall be added to Section 2.2 as subsection d.:

d.      The Escrow Agent may execute any of its powers and perform any of its duties hereunder directly or through agents or attorneys (and shall be liable only for the careful selection of any such agent or attorney) and may consult with counsel, accountants and other skilled persons to be selected and retained by it. The Escrow Agent shall not be liable for anything done, suffered or omitted in good faith by it in accordance with the advice or opinion of any such counsel, accountants or other skilled persons. In the event that the Escrow Agent shall be uncertain as to its duties or rights hereunder or shall receive instructions, claims or demands from any Party which, in its opinion, conflict with any of the provisions of this Escrow Agreement, it shall be entitled to refrain from taking any action and its sole obligation shall be to keep safely all remaining Escrow Amounts until it shall be directed otherwise in writing by all of the Parties or by a fully adjudicated final order or judgment of a court of competent jurisdiction. Anything in this Escrow Agreement to the contrary notwithstanding, in no event shall the Escrow Agent be liable for special, indirect or consequential loss or damage of any kind whatsoever (including but not limited to lost profits), even if the Escrow Agent has been advised of the likelihood of such loss or damage and regardless of the form of action.

2.3     The following shall be added at the end of Section 2.3:

The Parties hereto acknowledge that the foregoing indemnities shall survive the resignation or removal of the Escrow Agent or the termination of this Escrow Agreement. The Parties grant the Escrow Agent a lien on, right of set-off against and security interest in the Escrow Amount (but excluding those amounts comprising of the Remaining Reserves and U.S. Trustee Reserve, each as defined in the *Amended Order Granting World Class Holdings I, LLC's Motion to Confirm Reinstatement of Natin Paul as Sole Officer of the Reorganized Debtors* [Docket

- 3 -

No. 1377]) for the payment of any claim for indemnification, compensation, expenses and amounts due hereunder.

2.4 The following shall be added as new Section 2.5:

The Parties agree jointly and severally to (i) pay the Escrow Agent upon execution of this Escrow Agreement and from time to time thereafter reasonable compensation for the services to be rendered hereunder, which unless otherwise agreed in writing shall be as described in Schedule 1 attached hereto, and (ii) pay or reimburse the Escrow Agent upon request for all expenses, disbursements and advances, including reasonable attorney's fees and expenses, incurred or made by it in connection with the preparation, execution, performance, delivery, modification and termination of this Escrow Agreement. The obligations contained in this Section 2.5 shall be the joint obligation of the Parties, and shall survive the termination of this Agreement.

2.5 The notice addresses set forth in Section 3.1 shall be replaced as follows:

**If to the Escrow Agent:**

Delaware Trust Company



**If to the Exchange Equity Parties:**

Attn: Natin Paul
814 Lavaca Street
Austin, Texas 78701
Telephone: 512-327-3300
Email: npaul@world-class.com

**With a copy to:**

Squire Patton Boggs (US) LLP
2550 M Street, NW
Washington, DC 20037
Attn: Jeffrey N. Rothleder, Esq.
Telephone: 202-457-6000
Email: jeffrey.rothleder@squirepb.com

**If to the Reorganized Debtors:**

Attn: Natin Paul
814 Lavaca Street
Austin, Texas 78701

- 4 -

Telephone: 512-327-3300
Email: npaul@world-class.com

**With a copy to:**

Squire Patton Boggs (US) LLP
2550 M Street, NW
Washington, DC 20037
Attn: Jeffrey N. Rothleder, Esq.
Telephone: 202-457-6000
Email: jeffrey.rothleder@squirepb.com

2.6     Exhibit B to the Original Escrow Agreement shall be deleted once the Escrow Amount is transferred from Fidelity National Title Insurance Company to Delaware Trust Company pursuant to Section 2.4.c. of the Original Escrow Agreement.  In addition, Schedule 1 hereto shall be added and incorporated as part of the Escrow Agreement.

2.7     The following shall be added as new Section 3.16:

3.16    Representations.        The signatories hereto make the following representations:

a.      Each of the signatories hereto currently has authority to execute this amendment on behalf of the entity for which they are signing, and such authority is not displaced by any order of the Bankruptcy Court or by any order entered by any other court, including the receivership court.

b.      All necessary board or manager approvals, if any, have been obtained.

c.      Neither the Exchange Equity Parties nor the Sellers in BK have sold or assigned any of their rights under the Original Escrow Agreement, including none of their rights have been assigned to the Disbursing Agent, as defined in the Plan, to Phoenix, or to Princeton.

d.      No approval is required of the Bankruptcy Court or any other court for this amendment.  This amendment is necessary and is not restricted by the Plan.  The terms of this amendment are consistent with the terms of the Plan and all orders entered by the Bankruptcy Court related to the Sellers in BK.

e.      The Plan contains no restrictions regarding the manner of investment of funds in which the Sellers in BK have an interest.

*[Signature Page to Follow]*

IN WITNESS WHEREOF, the Parties have executed this First Amendment to Escrow Agreement as of the date set forth above.

**EXCHANGE EQUITY PARTIES:**

_____
Natin Paul

World Class Holdings I, LLC

By: _____
Name: Natin Paul
Title:  Authorized Agent

**SELLERS IN BK:**

GVS PORTFOLIO I C, LLC

By: _____
Name: Natin Paul
Title:  Authorized  Agent  pursuant  to
Reinstatement Order

GVS PORTFOLIO I B, LLC

By: _____
Name: Natin Paul
Title:  Authorized  Agent  pursuant  to
Reinstatement Order

*[Signature Page to First Amendment to Escrow Agreement]*

GVS PORTFOLIO I, LLC

By: _____
Name: Natin Paul
Title: Authorized Agent pursuant to Reinstatement Order

GVS TEXAS HOLDINGS I, LLC

By: _____
Name: Natin Paul
Title: Authorized Agent pursuant to Reinstatement Order

GVS TEXAS HOLDINGS II, LLC

By: _____
Name: Natin Paul
Title: Authorized Agent pursuant to Reinstatement Order

WC MISSISSIPPI STORAGE PORTFOLIO I, LLC

By: _____
Name: Natin Paul
Title: Authorized Agent pursuant to Reinstatement Order

*[Signature Page to First Amendment to Escrow Agreement]*

GVS NEVADA HOLDINGS I, LLC

By: _____
Name: Natin Paul
Title:  Authorized    Agent    pursuant    to
         Reinstatement Order

GVS OHIO HOLDINGS I, LLC

By: _____
Name: Natin Paul
Title:  Authorized    Agent    pursuant    to
         Reinstatement Order

GVS OHIO HOLDINGS II, LLC

By: _____
Name: Natin Paul
Title:  Authorized    Agent    pursuant    to
         Reinstatement Order

GVS MISSOURI HOLDINGS I, LLC

By: _____
Name: Natin Paul
Title:  Authorized    Agent    pursuant    to
         Reinstatement Order

GVS NEW YORK HOLDINGS I, LLC

By: _____
Name: Natin Paul
Title:  Authorized    Agent    pursuant    to
         Reinstatement Order

*[Signature Page to First Amendment to Escrow Agreement]*

GVS INDIANA HOLDINGS I, LLC


By: _____

Name: Natin Paul
Title:  Authorized     Agent     pursuant     to
Reinstatement Order


GVS TENNESSEE HOLDINGS I, LLC


By: _____

Name: Natin Paul
Title:  Authorized     Agent     pursuant     to
Reinstatement Order


GVS ILLINOIS HOLDINGS I, LLC


By: _____

Name: Natin Paul
Title:  Authorized     Agent     pursuant     to
Reinstatement Order


GVS COLORADO HOLDINGS I, LLC


By: _____

Name: Natin Paul
Title:  Authorized     Agent     pursuant     to
Reinstatement Order


*[Signature Page to First Amendment to Escrow Agreement]*

AGREED AND ACCEPTED:


DELAWARE TRUST COMPANY


By: _____
Name: James L. Grier
Title: Vice President

*[Signature Page to First Amendment to Escrow Agreement]*

**Schedule 1**

**Effective Date:**

**Escrow Agent Fees:**

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
████████████████████████████████

**TRANSACTION FEES:**

██████████████████████████████████████████
████████████████████
████████████████████████████
██████████████████████████
██████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
█████████████████████████████████

**Investment:**                    [select one]

[ ]         BlackRock FedFund Cash Management Class (the "Share Class"), an institutional
money market mutual fund for which the Escrow Agent serves as shareholder
servicing agent and/or custodian or subcustodian.   The parties hereto: (i)
acknowledge Escrow Agent's disclosure of the services the Escrow Agent is
providing to and the fees it receives from BlackRock; (ii) consent to the Escrow
Agent's receipt of these fees in return for providing shareholder services for the
Share Class; and (iii) acknowledge that the Escrow Agent has provided on or before
the date hereof a BlackRock FedFund Cash Management Class prospectus which
discloses, among other things, the various expenses of the Share Class and the fees
to be received by the Escrow Agent.

[ ]    Such other investments as the Parties and Escrow Agent may from time to time mutually agree upon in a writing executed and delivered by the Parties and accepted by the Escrow Agent.

[X]    The Escrow Deposit shall be held in a non-interest bearing account.

## Exhibit A

### Reinstatement Order

*[Signature Page to First Amendment to Escrow Agreement]*



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

*Michelle V. Larson*

**Signed August 31, 2022**

_____
**United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| GVS TEXAS HOLDINGS I, LLC, *et al.*[1] | § | Case No. 21-31121-MVL |
| | § | |
| Reorganized Debtors. | § | (Jointly Administered) |
| | § | |

### AMENDED ORDER GRANTING
### WORLD CLASS HOLDINGS I, LLC'S MOTION TO CONFIRM REINSTATEMENT
### OF NATIN PAUL AS SOLE OFFICER OF THE REORGANIZED DEBTORS

### Amends Docket No. 1329

_____

[1] The Reorganized Debtors in these chapter 11 cases, along with the last four digits of each Reorganized Debtor's federal tax identification number, as applicable, are: GVS Texas Holdings I, LLC (7458); GVS Texas Holdings II, LLC (1225); GVS Portfolio I, LLC (6441); GVS Portfolio I B, LLC (7171); GVS Portfolio I C, LLC (3093); WC Mississippi Storage Portfolio I, LLC (0423); GVS Nevada Holdings I, LLC (4849); GVS Ohio Holdings I, LLC (6449); GVS Missouri Holdings I, LLC (5452); GVS New York Holdings I, LLC (5858); GVS Indiana Holdings I, LLC (3929); GVS Tennessee Holdings I, LLC (5909); GVS Ohio Holdings II, LLC (2376); GVS Illinois Holdings I, LLC (9944); and GVS Colorado Holdings I, LLC (0408). The location of the Reorganized Debtors' service address is: c/o Getzler Henrich & Associates, LLC, 295 Madison Avenue, 20th Floor, New York, NY 10017.

Upon consideration of *World Class Holdings I, LLC's Motion to Confirm Reinstatement of Natin Paul as Sole Officer of the Reorganized Debtors* (the "Motion")[2] requesting that the Court (a) confirm the reinstatement of Mr. Natin Paul, effective immediately, as the sole officer, director, manager, and Disbursing Agent for the Reorganized Debtors, (b) relieve Mr. Stephan Pinsly, effective immediately, as the sole officer, director, manager, and Disbursing Agent for the Reorganized Debtors, (c) permit Mr. Paul, as the sole officer, director, and manager, to make all decisions regarding professionals employed and retained by the Reorganized Debtors from and after the date of this Order, (d) authorize WCH to resolve the administrative expense application and/or proofs of claim filed by Princeton and the Receiver (collectively, the "Outstanding Claims"), including resolution of any pending adversary proceedings, on behalf of the Reorganized Debtors, and (e) direct Fidelity National Title (the "Title Company") to transfer certain reserve funds, except for the Title Company Reserves (as defined below), currently being held by the Title Company, the Court (1) having considered the Motion, (2) finding that (a) notice of the Motion was good and sufficient upon the particular circumstances and that no other or further notice need be given, (b) the Motion is a core proceeding under 28 U.S.C. § 157(b), (c) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and (d) venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409, and (3) relying upon the oral representation to the Court that none of Mr. Natin Paul, any family member of Mr. Natin Paul, any affiliate of Mr. Natin Paul, or any person acting at Mr. Natin Paul's direction, owns or controls the Title Company holding the Title Company Reserves (as defined below), and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.    The Motion is hereby GRANTED as set forth in this Order.

2

2.      Within five (5) business days after the entry of this Order (the "Payment Date"), (i) Natin Paul shall be granted control and authority over all amounts in any bank account held by any of the Reorganized Debtors *except for* the funds on deposit with the Title Company that constitute the Professional Fee Reserve, the Remaining Customer Claims Reserve, the U.S. Trustee Reserve, and the Remaining Reserves that are set forth in Paragraph 4 below (collectively, the "Title Company Reserves") and shall be permitted to make disbursements therefrom only in accordance with the terms of this Order, and (ii) the Title Company shall transfer all money in one account held by the Title Company, listed herein as **Exhibit 1**, to an account designated by the Reorganized Debtors *but only after* maintenance of the reserves set forth in Paragraph 4 below.

3.      The Indemnity Escrow Amount (as defined in the APA) of $5,800,000 held in the Indemnity Escrow Account (as defined in the APA and Escrow Agreement ending in XXX1755) (the "Purchaser Indemnity Claims Reserve") are not subject to this Order. The Indemnity Escrow Account is subject to the Purchaser's claims for indemnification related to losses accruing as a consequence of damages at certain of the Facilities, which are still being resolved as the Purchaser continues to prosecute claims against the relevant insurance policies (collectively, the "Indemnity Claims"). This Order does not affect or modify the terms of the Sale Order, APA or Escrow Agreement, and for the avoidance of doubt, the Indemnity Escrow Amount may only be released in accordance with the terms of the APA and Escrow Agreement.

4.      On the Payment Date, the Title Company shall maintain in the existing escrow accounts as Title Company Reserves the reserves for the benefit of the following:

a)   the Reorganized Debtors' estimated professional fees for remaining claims resolution in the amount of $100,000 (the "Professional Fees Reserve");

b)   the Reorganized Debtors' estimated unresolved disputed claims related to unresolved customer claims (the "Remaining Customer Claims") in the amount of $500,000 (the "Remaining Customer Claims Reserve");

3

c) Fees to be paid to the United States Trustee for Region 6 in the amount of $1,000,000 (the "U.S. Trustee Reserve");

d) A disputed claims reserve equal to or set aside for, as applicable (collectively, the "Remaining Reserves"):

  i. The post-petition management fees due to Great Value Storage in the amount of $517,000.00;

  ii. The pre-petition management fees asserted by Great Value Storage, LLC in the proofs of claim filed in these cases, which total approximately $305,000.00;

    iii. The claims of Seth Kretzer, as Receiver, in the amount of $3,500,000.00 (the "Receiver Claims"); and

    iv. The claims of Princeton Capital Corporation ("Princeton") in the amount of $15,000,000 (the "Princeton Claims").

For the avoidance of any doubt, the foregoing reserves in Paragraph 4(a) through and including 4(d)(iv) shall remain in the possession and control of the Title Company for disbursement only in accordance with the terms of this Order.

5.    Notwithstanding anything to the contrary in any escrow agreement or other document executed by the Reorganized Debtors or otherwise, the Title Company Reserves shall be distributed only after such distribution is authorized by the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, the United States District Court for the Northern District of Texas, or any appellate court thereof (any of which shall be referred to herein as the "Court") pursuant to either (a) a final, non-appealable order of the Court and such order directing payment to a specified company or individual; or (b) a final, non-appealable order of the Court approving settlement of the relevant claims directing payment to a specified company or individual, as the case made be. Such order shall be provided to the Title Company in an email copying applicable counsel, if any. However, following entry of this Order, (i) amounts from the Professional Fees Reserve may be disbursed in the ordinary course of business, as provided for

under the Confirmation Order and Confirmation Stipulation, without further order of the Court, and (ii) amounts from the Remaining Customer Claims Reserve shall be disbursed, without further order of the Court, upon entry of an order allowing or disallowing the applicable Remaining Customer Claim(s). WCH shall receive all remaining money in the (a) Professional Fees Reserve after the fees and expenses of the Reorganized Debtors' professionals have been paid in full, and, if applicable, (b) the Remaining Customer Claims Reserve after resolution and payment of all Remaining Customer Claims. Within three (3) business days of its receipt of funds from the Professional Fees Reserve and the Remaining Customer Claims Reserve, WCH shall file a notice with this Court indicating such funds have been received.

6.      After the Payment Date, Mr. Natin Paul shall be appointed, effective immediately, as the sole officer, director, manager, and Disbursing Agent for the Reorganized Debtors.

7.      After the Payment Date, Mr. Stephan Pinsly shall be relieved from his obligations, effective immediately, as the sole officer, director, manager, and Disbursing Agent for the Reorganized Debtors; *provided, however*, that Mr. Pinsly shall transfer all accounting files and information related to the Reorganized Debtors to the person or entity designated by WCH.

8.      After the Payment Date, and upon the filing of a notice of appearance with this Court by replacement counsel for the Reorganized Debtors, Sidley Austin, LLP shall have no further responsibility to the Reorganized Debtors, their Estates or any party in interest, including WCH, other than resolution of the Remaining Customer Claims; *provided, however*, that Sidley Austin, LLP shall provide information as may be requested by counsel to WCH.

9.      After the Payment Date, Mr. Natin Paul shall be permitted, as the sole officer, director, and manager, to make all decision regarding professionals employed and retained by the Reorganized Debtors.

10.     After the Payment Date, Mr. Natin Paul shall be authorized, on behalf of the Reorganized Debtors and WCH, to resolve the Outstanding Claims, including resolution of any pending adversary proceedings, on behalf of the Reorganized Debtors.

11.     It is hereby ordered that Mr. Natin Paul, any family member of Mr. Natin Paul, any affiliate of Mr. Natin Paul, and any person acting at Mr. Natin Paul's direction, shall not seek removal of or to remove from the Title Company the Remaining Reserves until there is either (1) a final, non-appealable order of the Court regarding the Receiver Claims or Princeton Claims, as applicable, which shall direct the Title Company to disburse funds or (2) a final, non-appealable Order of the Court approving a settlement of the Receiver Claims or Princeton Claims, as applicable, which shall direct the Title Company to disburse funds. A certified copy of such order must be provided to the Title Company in an email copying the applicable opposing counsel, if any.

12.     It is further ordered that Mr. Natin Paul, any family member of Mr. Natin Paul, any affiliate of Mr. Natin Paul, and any person acting at Mr. Natin Paul's direction, shall not exert any influence or control over the Title Company, as such influence or control relates to the release of the Remaining Reserves until there is either (1) a final, non-appealable order of the Court regarding the Receiver Claims or Princeton Claims, as applicable, which shall direct the Title Company to disburse funds or (2) a final, non-appealable Order of the Court approving a settlement of the Receiver Claims or Princeton Claims, as applicable, which shall direct the Title Company to disburse funds. A certified copy of such order must be provided to the Title Company in an email copying the applicable opposing counsel, if any.

13.     If this Court finds that Mr. Paul, or any person under his direction or control, or any person working on behalf of Mr. Paul, removes, seeks to remove, or otherwise attempts to remove

all or any portion of the Remaining Reserves from the Title Company without the approval of the

Court by a separate Court order, the Reorganized Debtors (and Mr. Paul, and all of his related

entities) will forfeit their rights, title, and interest in the Remaining Reserves up to the amount of

that certain judgment in favor of Princeton in state court, which judgment includes also all

allowable interest, legal fees, as well reasonable Receiver fees permitted under the Receivership

Order, and other such sums, which will be paid immediately to Princeton and, to the extent

applicable, the Receiver. If this occurs, the balance of the Remaining Reserves, if any, shall be

immediately released and paid to the Reorganized Debtors pursuant to a separate Court order.

14.     Neither the Reorganized Debtors, Natin Paul, any persons or entities controlled by

him, nor any of Mr. Paul's affiliates, or any counsel employed thereby, will make any claims or

requests for payment of administrative expenses to be made from any of the Remaining Reserves;

*provided, however*, any amounts remaining after the disbursement of the Remaining Reserves to

either Princeton and/or the Receiver, shall be remitted to the Reorganized Debtors and shall be

permitted to pay any expenses, including those of professionals, as determined by the Reorganized

Debtors.

15.     Within five (5) business days after entry of this Order, WCH shall provide an

electronic copy of this Order to the Title Company and shall copy counsels for the U.S. Trustee,

the Receiver, and Princeton on such correspondence.

16.     This Order shall be construed and accepted by the Title Company as a joint

instruction for disbursement as required by the Escrow Agreement dated as of March 22, 2022 (the

"Escrow Agreement") and shall, to the extent applicable, be an amendment to the Escrow

Agreement with respect to disbursement procedures regarding the Remaining Reserves*; provided

however*, **before** the initial disbursement of the funds as directed above in Paragraph 2, the Title

Company will receive a copy of this Order immediately and is hereby, to the extent not permitted

under this Order, ORDERED not to disburse any money from any of the Title Company Reserves,

unless explicitly instructed to do so by a separate order of the Court. Further, the Title Company

is explicitly instructed that it is not to release any funds out of the Title Company Reserves at the

direction of Mr. Natin Paul or any other human being. Only an Order from the Court shall permit

the Title Company to disburse funds in the Title Company Reserves.  For the avoidance of doubt

this means that the Remaining Reserves are not to be disbursed by the Title Company *for any*

*reason* until there is a separate Order from the Court instructing the Title Company to do so.

17.    The Reorganized Debtors shall continue to timely file post-confirmation reports as

required by the Office of the United States Trustee and, when fees are due and payable to the

Office of the United States Trustee, the Office of the United States Trustee shall submit statement

for such fees (the "Fee Statements") directly to the Title Company (with a copy to counsels for the

Reorganized Debtors, Princeton, and the Receiver) for payment from amounts held in the U.S.

Trustee Reserve and the Title Company shall, without further order of the Court, pay the Fee

Statements from the U.S. Trustee Reserve as such Fee Statements are due and payable in

accordance with their terms. If the Reorganized Debtors fail to timely file post-confirmation

reports, the United States Trustee reserves the right to submit Fee Statements for estimated fees

with subsequent corrected Fee Statements once delinquent post-confirmation reports are filed.  For

the avoidance of doubt, the Reorganized Debtors remain liable for all United States Trustee fees.

18.    Nothing in this Order shall be construed as an admission as to the validity of any

claim or a waiver of the Reorganized Debtors' rights to subsequently dispute any related or

forthcoming claim(s).

19.    Notice of the Motion as provided therein shall be deemed good and sufficient notice

of such Motion under the circumstances and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

20.     Notwithstanding the applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

21.     WCH and the Reorganized Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Order.

22.     This Court shall retain jurisdiction over all matters arising from or related to the interpretation or implementation of this Order.

### # # # END OF ORDER # # #

Form of Order Agreed to By:

**SQUIRE PATTON BOGGS (US) LLP**

*/s/ Jeffrey N. Rothleder*
Sarah K. Rathke (admitted *pro hac vice*)
Peter R. Morrison (admitted *pro hac vice*)
Janine Little (admitted *pro hac vice*)
4900 Key Tower
127 Public Square
Cleveland, Ohio 44114
Telephone: (216) 479-8500
Facsimile: (216) 479-8780
Email: sarah.rathke@squirepb.com
Email: peter.morrison@squirepb.com
Email: janine.little@squirepb.com

Jeffrey N. Rothleder (admitted *pro hac vice*)
2550 M Street NW
Washington DC 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315
Email: jeffrey.rothleder@squirepb.com

Travis A. McRoberts (Bar No. 24088040)
2000 McKinney Ave., Suite 1700
Dallas, TX 75201
Telephone: (214) 758-1589
Facsimile: (214) 758-1550
Email: travis.mcroberts@squirepb.com

Benjamin C. Glassman (admitted *pro hac vice*)
Kyle F. Arendsen (admitted *pro hac vice*)
201 E. Fourth St., Suite 1900
Cincinnati, OH 45202
Telephone: (513) 361-1200
Facsimile: (513) 361-1201
Email: benjamin.glassman@squirepb.com
Email: kyle.arendsen@squirepb.com

*Counsel for World Class Holdings I, LLC*

**ROSS & SMITH, P.C.**

*/s/ Judith W. Ross*
Judith W. Ross
State Bar No. 21010670
Jessica L. Voyce Lewis
State Bar No. 24060956
700 N. Pearl Street, Suite 1610
Dallas, TX 75201
Phone: 214-377-7879
Fax: 214-377-9409
Email: judith.ross@judithwross.com
Email: jessica.lewis@judithwross.com

*Counsel for Princeton Capital Corporation*

**CULHANE MEADOWS PLLC**

*/s/ Lynnette R. Warman*
Lynnette R. Warman
State Bar No. 2086940
13101 Preston Rd., Suite 110-1593
Dallas, Texas 75240
Telephone: (214) 693-6525
Email: LWarman@CM.law

*Counsel for Seth Kretzer, Receiver for Great Value Storage, LLC and World Class Capital Group LLC*

**HAYNES AND BOONE, LLP**

*/s/ Ian T. Peck*
Ian T. Peck
Stephen M. Pezanosky
Jordan E. Chavez
Thomas J. Zavala
2323 Victory Avenue, Suite 700
Dallas, TX 75219
Telephone: (214) 651-5000
Facsimile: (214) 651-5940
Email: ian.peck@haynesboone.com

Email: stephen.pezanosky@haynesboone.com
Email: jordan.chavez@haynesboone.com
Email: tom.zavala@haynesboone.com

*Counsel for The William Warren Group, Inc.*
*and CBRE WWG Storage Partners JV III, LLC*

*[remainder of page intentionally left blank; Exhibit 1 follows]*

<u>Exhibit 1</u>

Title Company Account

████1018

## **Exhibit B**

**Sellers in BK's Actions by Written Consent**

*[Signature Page to First Amendment to Escrow Agreement]*

### ACTION BY WRITTEN CONSENT
### OF
### THE SOLE MEMBER

### GVS Portfolio I, LLC

The undersigned, being the sole member ("Sole Member") of GVS Portfolio I, LLC, a Delaware limited liability company (the "Company"), acting by written consent, do hereby adopt the following resolutions effective as of August 15, 2022 (the "Effective Date").

### Resignation and Appointment of Officer, Director, and Manager

WHEREAS, Mr. Stephan Pinsly has submitted to the Company his resignation as an officer, director, and manager of the Company, effective as of the Effective Date;

WHEREAS, the Sole Member believes it is in the best interests of the Company to confirm Mr. Pinsly's resignation as an officer, director, and manager of the Company, effective as of the Effective Date;

WHEREAS, the Sole Member believes it is in the best interests of the Company to appoint Mr. Natin Paul as an officer, director, and manager of the Company, effective as of the Effective Date;

NOW, THEREFORE, BE IT RESOLVED, that the resignation of Mr. Pinsly as an officer, director, and manager of the Company is hereby confirmed; and, BE IT

RESOLVED FURTHER, that Mr. Paul is hereby appointed as an officer, director, and manager of the Company, to serve at the pleasure of the Sole Member and until his successor is duly elected and qualified; and, BE IT

### Omnibus Resolutions

RESOLVED FURTHER, that the officers of the Company (the "Officers") are, and each of them individually and acting singly is, authorized and directed, in the name and on behalf of the Company, to take any and all actions necessary to effectuate the actions set forth in this resolution; and, BE IT

RESOLVED FURTHER, that the Officers are each hereby authorized, empowered and directed, for and on behalf of and in the name of the Company, to take such actions as such Officers deem necessary and desirable and in the best interests of the Company to transact business on behalf of the Company and to effectuate the purposes of the foregoing resolutions, and to make, execute, deliver, file, including with governmental or regulatory agencies and authorities (including, but not limited to, any federal or state securities filings), and/or record any and all agreements, reports, certificates, instruments or other documents which shall be or become necessary, advisable, proper or convenient to carry out or put into effect the intent and purpose of the foregoing resolutions, and each such Officer's signature, or such action as taken by each such

Officer, shall be deemed to be conclusive evidence that such Officer did deem the same to meet such standards.  Any and all acts which said Officers of the Company may do or perform in conforming with the powers conferred upon them by these resolutions are hereby expressly authorized, approved, ratified and confirmed; and, BE IT

RESOLVED FURTHER, that the Officers, or any one or more of them, are hereby authorized and directed to have authority and control over all Company account(s) at a bank or banks, which such Officer may select in his or her discretion, and that funds from such account(s) may be withdrawn by means of checks or drafts of the Company signed by the Officers; and, BE IT

RESOLVED FURTHER, that any and all acts of any Officer and of any person or persons designated and authorized to act by any Officer, which acts would have been authorized by the foregoing resolutions except that such acts were taken prior to the adoption of such resolution, be and each act hereby is ratified, confirmed and approved in all respects.

**IN WITNESS WHEREOF**, the undersigned Sole Member has duly executed this Action by Written Consent, effective as of the Effective Date.

**SOLE MEMBER:**

GVS PORTFOLIO I B, LLC

By: _____

Name: Mr. Stephan Pinsly

Title: Manager

## ACTION BY WRITTEN CONSENT
## OF
## THE SOLE MEMBER

### GVS Portfolio I B, LLC

The undersigned, being the sole member ("Sole Member") of GVS Portfolio I B, LLC, a Delaware limited liability company (the "Company"), acting by written consent, do hereby adopt the following resolutions effective as of August 15, 2022 (the "Effective Date").

### Resignation and Appointment of Officer, Director, and Manager

WHEREAS, Mr. Stephan Pinsly has submitted to the Company his resignation as an officer, director, and manager of the Company, effective as of the Effective Date;

WHEREAS, the Sole Member believes it is in the best interests of the Company to confirm Mr. Pinsly's resignation as an officer, director, and manager of the Company, effective as of the Effective Date;

WHEREAS, the Sole Member believes it is in the best interests of the Company to appoint Mr. Natin Paul as an officer, director, and manager of the Company, effective as of the Effective Date;

NOW, THEREFORE, BE IT RESOLVED, that the resignation of Mr. Pinsly as an officer, director, and manager of the Company is hereby confirmed; and, BE IT

RESOLVED FURTHER, that Mr. Paul is hereby appointed as an officer, director, and manager of the Company, to serve at the pleasure of the Sole Member and until his successor is duly elected and qualified; and, BE IT

### Omnibus Resolutions

RESOLVED FURTHER, that the officers of the Company (the "Officers") are, and each of them individually and acting singly is, authorized and directed, in the name and on behalf of the Company, to take any and all actions necessary to effectuate the actions set forth in this resolution; and, BE IT

RESOLVED FURTHER, that the Officers are each hereby authorized, empowered and directed, for and on behalf of and in the name of the Company, to take such actions as such Officers deem necessary and desirable and in the best interests of the Company to transact business on behalf of the Company and to effectuate the purposes of the foregoing resolutions, and to make, execute, deliver, file, including with governmental or regulatory agencies and authorities (including, but not limited to, any federal or state securities filings), and/or record any and all agreements, reports, certificates, instruments or other documents which shall be or become necessary, advisable, proper or convenient to carry out or put into effect the intent and purpose of the foregoing resolutions, and each such Officer's signature, or such action as taken by each such

Officer, shall be deemed to be conclusive evidence that such Officer did deem the same to meet such standards.  Any and all acts which said Officers of the Company may do or perform in conforming with the powers conferred upon them by these resolutions are hereby expressly authorized, approved, ratified and confirmed; and, BE IT

RESOLVED FURTHER, that the Officers, or any one or more of them, are hereby authorized and directed to have authority and control over all Company account(s) at a bank or banks, which such Officer may select in his or her discretion, and that funds from such account(s) may be withdrawn by means of checks or drafts of the Company signed by the Officers; and, BE IT

RESOLVED FURTHER, that any and all acts of any Officer and of any person or persons designated and authorized to act by any Officer, which acts would have been authorized by the foregoing resolutions except that such acts were taken prior to the adoption of such resolution, be and each act hereby is ratified, confirmed and approved in all respects.

**IN WITNESS WHEREOF**, the undersigned Sole Member has duly executed this Action by Written Consent, effective as of the Effective Date.

SOLE MEMBER:

GVS PORTFOLIO I C, LLC

By: _____

Name: Mr. Stephan Pinsly

Title: Manager

## ACTION BY WRITTEN CONSENT
## OF
## THE SOLE MEMBER

**WC Mississippi Storage Portfolio I, LLC**
**GVS Nevada Holdings I, LLC**
**GVS Ohio Holdings I, LLC**
**GVS Missouri Holdings I, LLC**
**GVS New York Holdings I, LLC**
**GVS Indiana Holdings I, LLC**
**GVS Tennessee Holdings I, LLC**
**GVS Ohio Holdings II, LLC**
**GVS Illinois Holdings I, LLC**
**GVS Colorado Holdings I, LLC**
**GVS Texas Holdings I, LLC**
**GVS Texas Holdings II, LLC**

The undersigned, being the sole member ("Sole Member") of (i) WC Mississippi Storage Portfolio I, LLC, a Delaware limited liability company ("WC Mississippi"), (ii) GVS Nevada Holdings I, LLC, a Delaware limited liability company ("GVS Nevada"), (iii) GVS Ohio Holdings I, LLC, a Delaware limited liability company ("GVS Ohio I"), (iv) GVS Missouri Holdings, I, LLC, a Delaware limited liability company ("GVS Missouri"), (v) GVS New York Holdings I, LLC, a Delaware limited liability company ("GVS New York"), (vi) GVS Indiana Holdings I, LLC, a Delaware limited liability company ("GVS Indiana"), (vii) GVS Tennessee Holdings I, LLC, a Delaware limited liability company ("GVS Tennessee"), (viii) GVS Ohio Holdings II, LLC, a Delaware limited liability company ("GVS Ohio II"), (ix) GVS Illinois Holdings I, LLC, a Delaware limited liability company ("GVS Illinois"), (x) GVS Colorado Holdings I, LLC, a Delaware limited liability company ("GVS Colorado"), (xi) GVS Texas Holdings I, LLC, a Delaware limited liability company ("GVS Texas I"), and (xii) GVS Texas Holdings II, LLC, a Delaware limited liability company ("GVS Texas II" and, together with WC Mississippi, GVS Nevada, GVS Ohio I, GVS Missouri, GVS New York, GVS Indiana, GVS Tennessee, GVS Ohio II, GVS Illinois, GVS Colorado, and GVS Texas II, the "Companies" and individually, each a "Company"), acting by written consent, do hereby adopt the following resolutions effective as of August 15, 2022 (the "Effective Date").

## Resignation and Appointment of Officer, Director, and Manager

WHEREAS, Mr. Stephan Pinsly has submitted to the Companies his resignation as an officer, director, and manager of each of the Companies, effective as of the Effective Date;

WHEREAS, the Sole Member believes it is in the best interests of the Companies to confirm Mr. Pinsly's resignation as an officer, director, and manager of each of the Companies, effective as of the Effective Date;

010-9420-5053/1/AMERICAS

WHEREAS, the Sole Member believes it is in the best interests of the Companies to appoint Mr. Natin Paul as an officer, director, and manager of each of the Companies, effective as of the Effective Date;

NOW, THEREFORE, BE IT RESOLVED, that the resignation of Mr. Pinsly as an officer, director, and manager of the Companies is hereby confirmed; and, BE IT

RESOLVED FURTHER, that Mr. Paul is hereby appointed as an officer, director, and manager of the Companies, to serve at the pleasure of the Sole Member and until his successor is duly elected and qualified; and, BE IT

## Omnibus Resolutions

RESOLVED FURTHER, that the officers of the Companies (the "Officers") are, and each of them individually and acting singly is, authorized and directed, in the name and on behalf of the Companies, to take any and all actions necessary to effectuate the actions set forth in this resolution; and, BE IT

RESOLVED FURTHER, that the Officers are each hereby authorized, empowered and directed, for and on behalf of and in the name of the Companies, to take such actions as such Officers deem necessary and desirable and in the best interests of the Companies to transact business on behalf of the Companies and to effectuate the purposes of the foregoing resolutions, and to make, execute, deliver, file, including with governmental or regulatory agencies and authorities (including, but not limited to, any federal or state securities filings), and/or record any and all agreements, reports, certificates, instruments or other documents which shall be or become necessary, advisable, proper or convenient to carry out or put into effect the intent and purpose of the foregoing resolutions, and each such Officer's signature, or such action as taken by each such Officer, shall be deemed to be conclusive evidence that such Officer did deem the same to meet such standards.  Any and all acts which said Officers of the Companies may do or perform in conforming with the powers conferred upon them by these resolutions are hereby expressly authorized, approved, ratified and confirmed; and, BE IT

RESOLVED FURTHER, that the Officers, or any one or more of them, are hereby authorized and directed to have authority and control over all Company account(s) at a bank or banks, which such Officer may select in his or her discretion, and that funds from such account(s) may be withdrawn by means of checks or drafts of the Companies signed by the Officers; and, BE IT

RESOLVED FURTHER, that any and all acts of any Officer and of any person or persons designated and authorized to act by any Officer, which acts would have been authorized by the foregoing resolutions except that such acts were taken prior to the adoption of such resolution, be and each act hereby is ratified, confirmed and approved in all respects.

**IN WITNESS WHEREOF**, the undersigned Sole Member has duly executed this Action by Written Consent, effective as of the Effective Date.

<div style="margin-left:40%">

**SOLE MEMBER:**

GVS PORTFOLIO I, LLC

By: _____

Name: Mr. Stephan Pinsly

Title: Manager

</div>

**ACTION BY WRITTEN CONSENT**

**OF**

**THE SOLE MEMBER**

**GVS Portfolio I C, LLC**

The undersigned, being the sole member of GVS Portfolio I C, LLC, a Delaware limited liability company (the "Company"), acting by written consent, do hereby adopt the following resolutions effective as of August 15, 2022 (the "Effective Date").

### Resignation and Appointment of Officer, Director, and Manager

WHEREAS, Mr. Stephan Pinsly has submitted to the Company his resignation as an officer, director, and manager of the Company, effective as of the Effective Date;

WHEREAS, the Sole Member believes it is in the best interests of the Company to confirm Mr. Pinsly's resignation as an officer, director, and manager of the Company, effective as of the Effective Date;

WHEREAS, the Sole Member believes it is in the best interests of the Company to appoint Mr. Natin Paul as an officer, director, and manager of the Company, effective as of the Effective Date;

NOW, THEREFORE, BE IT RESOLVED, that the resignation of Mr. Pinsly as an officer, director, and manager of the Company is hereby confirmed; and, BE IT

RESOLVED FURTHER, that Mr. Paul is hereby appointed as an officer, director, and manager of the Company, to serve at the pleasure of the Sole Member and until his successor is duly elected and qualified; and, BE IT

### Omnibus Resolutions

RESOLVED FURTHER, that the officers of the Company (the "Officers") are, and each of them individually and acting singly is, authorized and directed, in the name and on behalf of the Company, to take any and all actions necessary to effectuate the actions set forth in this resolution; and, BE IT

RESOLVED FURTHER, that the Officers are each hereby authorized, empowered and directed, for and on behalf of and in the name of the Company, to take such actions as such Officers deem necessary and desirable and in the best interests of the Company to transact business on behalf of the Company and to effectuate the purposes of the foregoing resolutions, and to make, execute, deliver, file, including with governmental or regulatory agencies and authorities (including, but not limited to, any federal or state securities filings), and/or record any and all agreements, reports, certificates, instruments or other documents which shall be or become necessary, advisable, proper or convenient to carry out or put into effect the intent and purpose of the foregoing resolutions, and each such Officer's signature, or such action as taken by each such

Officer, shall be deemed to be conclusive evidence that such Officer did deem the same to meet such standards. Any and all acts which said Officers of the Company may do or perform in conforming with the powers conferred upon them by these resolutions are hereby expressly authorized, approved, ratified and confirmed; and, BE IT

RESOLVED FURTHER, that the Officers, or any one or more of them, are hereby authorized and directed to have authority and control over all Company account(s) at a bank or banks, which such Officer may select in his or her discretion, and that funds from such account(s) may be withdrawn by means of checks or drafts of the Company signed by the Officers; and, BE IT

RESOLVED FURTHER, that any and all acts of any Officer and of any person or persons designated and authorized to act by any Officer, which acts would have been authorized by the foregoing resolutions except that such acts were taken prior to the adoption of such resolution, be and each act hereby is ratified, confirmed and approved in all respects.

**IN WITNESS WHEREOF**, the undersigned Sole Member has duly executed this Action by Written Consent, effective as of the Effective Date.

**SOLE MEMBER:**

WORLD CLASS HOLDINGS I, LLC

By: _____

Name: Mr. Natin Paul

Title: Manager

# **Exhibit C**

## **Joint Written Instructions**

1

## **Joint Written Instruction**

October 6, 2022

Fidelity National Title Insurance Company
485 Lexington Ave., 18th Floor
New York, New York 10017
Attn: Larry Boes, Esq., ███████████

RE:  Escrow Agreement, dated March 22, 2022 made with Natin Paul and World Class Holdings I, LLC ("Exchange Equity Parties") and GVS Portfolio I C, LLC, GVS Portfolio I B, LLC, GVS Portfolio I, LLC, GVS Texas Holdings I, LLC, GVS Texas Holdings II, LLC, WC Mississippi Storage Portfolio I, LLC, GVS Nevada Holdings I, LLC, GVS Ohio Holdings I, LLC, GVS Ohio Holdings II, LLC, GVS Missouri Holdings I, LLC, GVS New York Holdings I, LLC, GVS Indiana Holdings I, LLC, GVS Tennessee Holdings I, LLC, GVS Illinois Holdings I, LLC and GVS Colorado Holdings I, LLC ("Sellers in BK") / Escrow Account number: ████████

Dear Sir/Madam:

We refer to that certain Escrow Agreement, dated March 22, 2022, by and among the above referenced Exchange Equity Parties and Sellers in BK and Fidelity National Title Insurance Company, as Escrow Agent (the "Escrow Agreement").  Capitalized terms in this letter that are not otherwise defined shall have the same meaning given to them in the Escrow Agreement.

Pursuant to Section 1.3 of the Escrow Agreement, the parties hereto hereby instruct the Escrow Agent to release the full amount in account number ██████1018 out of the Escrow Account to the specified party as instructed below.

---

The full amount in account number ██████1018 to US Bank

Wire Instructions: _____

Account Name:  __Delaware Trust Company_____
Account Number:  ___███████8891_____
Bank Name:  ____US Bank_____
Bank ABA Number: ___███████_____
Bank Address: ____█████████████████_____

For credit to:  ___████████; WORLD CLASS HOLDINGS I, LLC – GVS PORTFOLIO ESCROW
Special Instructions: _____

Bank Check: _____
Payee Name: _____
Mailing Address: _____

---

IN WITNESS WHEREOF, the parties hereto have caused this Joint Written Direction to be executed as of the date first above written.

EXCHANGE EQUITY PARTIES:

_____
Natin Paul

World Class Holdings I, LLC

By: _____
Name: Natin Paul
Title: Manager

SELLERS IN BK:

GVS Portfolio I C, LLC

By: _____

GVS Portfolio I B, LLC

By: _____

GVS Portfolio I, LLC

By: _____

GVS Texas Holdings I, LLC

By: _____

GVS Texas Holdings II, LLC

By: _____

WC Mississippi Storage Portfolio I, LLC

By: _____

GVS Nevada Holdings I, LLC

By: _____

GVS Ohio Holdings I, LLC

By: _____

GVS Ohio Holdings II, LLC

By: _____

GVS Missouri Holdings I, LLC

By: _____

GVS New York Holdings I, LLC

By: _____

GVS Indiana Holdings I, LLC

By: _____

GVS Tennessee Holdings I, LLC

By: _____

GVS Illinois Holdings I, LLC

By: _____

GVS Colorado Holdings I, LLC

By: _____

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 8th day of October, 2022, I caused a true and correct copy of the foregoing to be filed and served through ECF notification upon all parties who receive notice in this matter pursuant to the Court's CM/ECF filing system.

*/s/ Jeffrey N. Rothleder*
Jeffrey N. Rothleder